UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES GREFER,

                                    Petitioner,

                                                            9:17-cv-1299
v.                                                          (MAD/TWD)

LARRY FRANK,

                                    Respondent.
_____

APPEARANCES:                                 OF COUNSEL:

CHARLES GREFER
Petitioner, *pro se*

HON. LETITIA JAMES                           Matthew B. Keller, Esq.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Respondent
28 Liberty Street
New York, New York 10005

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

This matter has been referred for a Report-Recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District Local Rule 72.3(c), by the Honorable Mae A. D'Agostino, United

States District Judge.  Petitioner Charles Grefer ("Grefer" or "Petitioner"), formerly incarcerated

at Ogdensburg Correctional Facility ("Ogdensburg C.F."), has filed a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 challenging the revocation of his parole and re-incarceration for a

term of 15 months, following a hearing before an administrative law judge.  (Dkt. No. 1.)

Respondent Larry Frank, Superintendent of Ogdensburg C.F. ("Respondent"), sought and

received permission to limit his Answer to the issue of exhaustion.  (Dkt. Nos. 17, 18.)

Respondent timely filed an Answer in Response to the Petition and Memorandum of Law.  (Dkt.

Nos. 20, 21; *see also* Dkt. No. 22.)  Petitioner filed a Reply and an Addendum Reply.  (Dkt. Nos.

23, 24.)  For reasons explained below, the Court recommends that the Petition be denied and

dismissed.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the state court records submitted with the Petition, in January 2014, Grefer

was convicted in Onondaga County Court, upon his guilty plea, of second-degree Grand Larceny

and third-degree Criminal Tax Fraud, and sentenced to concurrent prison terms of 3 1/3 to 10

years and 2 1/3 to 7 years, respectively.  (Dkt. No. 1-1 at 28-29, 51-52.)  On January 23, 2014,

Grefer (DIN 14B0204) was received into the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS").  *Id*. at 29.  On Septmeber 6, 2016, Grefer

was released to parole supervision.  *Id*.

In December 2016, Petitioner was charged with several violations of his parole

conditions in connection with a domestic dispute, including that he drove to Syracuse without

permission, consumed alcohol with an ex-girlfriend and, after an argument, "grabbed her by the

neck and shirt collar."  *Id*. at 71-76.  When police arrived at the scene, they learned Grefer was

also driving without a valid license.  *Id*.

On December 19, 2016, Grefer received a notice of violation of the terms of his parole,

and, on the same date, he requested a hearing.  (Dkt. No. 1 at 1-2.)  Following a two-day

evidentiary hearing, held on February 8, 2017, and March 1, 2017, the presiding administrative

law judge sustained all of the charges, revoked parole, and imposed a 15-month sentence.

Specifically, the ALJ found Petitioner violated the following terms of his release to parole,

including that he (1) purchased alcohol; (2) consumed alcohol; (3) threatened the safety and well-being of another by aggressively grabbing her by the neck; (4) left his residence at an unapproved time; (5) operated a vehicle without a valid driver's license; (6) operated a vehicle with a suspended driver's license; and (7) traveled outside of Monroe County without permission from his parole officer. (Dkt. No. 1 at 1-2.) The ALJ found Grefer's "actions amounted to category one behavior because he violated his parole in an important respect," and, as noted, sentenced Petitioner to a determinate term of 15 months incarceration. *Id*. at 2; *see also* Dkt. No. 1-1 at 77-80.

Petitioner's appeal to the Board of Parole Appeals Unit was initially rejected as untimely but later reinstated. (Dkt. Nos. 1 at 3, 1-1 at 81-85.) In June 2017, while his administrative appeal was pending, Petitioner filed a state petition for habeas corpus. (Dkt. No. 1-1 at 110-21.) The People responded and, on October 20, 2017, the St. Lawrence County Supreme Court dismissed the petition. *Id*. at 41, 27-31. The court found Grefer had not exhausted administrative remedies and that, in any event, state habeas relief was not available because the maximum expiration of Petitioner's sentence would not occur until 2023. *Id*.

On or about November 10, 2017, Petitioner sought leave to appeal the denial of state habeas relief from the Appellate Division, Third Department. (Dkt. No. 1 at 3, 10; *see also* Dkt. No. 17.) Approximately two weeks later, while still pursuing his administrative appeal, which was "currently being perfected" by assigned counsel, and with the application pending before the Appellate Division, Petitioner commenced the instant federal habeas action challenging the revocation of his parole and re-incarceration. (Dkt. No. 1 at 1-2.)

In his Petition, Grefer argues that he is entitled to federal habeas relief on the following grounds: (1) his due process rights under the Fourteenth Amendment and New York Executive

Law § 259-i were violated because (a) the violations were based "on unverified facts" that were not established by a preponderance of evidence, and (b) witnesses were permitted to "present adverse (false) information without witness notification"; (2) his constitutional right to confront adverse witnesses was violated; (3) the officer who stopped his vehicle and arrested him for operating a vehicle without a valid driver's license lacked probable cause to execute the stop; (4) the parole revocation specialist failed to properly investigate the charges and did not fulfill his duties under Executive Law § 259-i; (5) the ALJ "violate[d] his duty as a neutral hearing body" by "answering questions on behalf of witnesses" at the revocation hearing and "disallowing" his counsel from providing "a closing"; (6) the ALJ erred in not striking the accusatory instrument because it was not signed; and (7) the evidence was insufficient to sentence him as either a category one parolee or a category three parolee.  *Id.* at 4-9.

As he acknowledges, Grefer filed his federal habeas Petition "prior to exhausting all state remedies in the interest of justice[.]"  *Id.* at 4.  According to Petitioner, because he "will be released in less than four months," the requirement that he exhaust his state court remedies would "frustrate" his "constitutional rights" and "[c]reate a fundamental miscarriage of justice." *Id.* at 3, 4, 10.

On December 14, 2017, the Court directed Respondent to file an Answer to the Petition. (Dkt. No. 8.)  Thereafter, on January 3, 2018, Petitioner filed a motion requesting a "stay" of the sentence he was already serving on his parole revocation at Ogdensburg C.F., as well as an "expedited proceeding" in this action.  (Dkt. No. 10.)  Generally, Petitioner argued that the briefing schedule in this case would "effectively render any decision from this Court moot" and "frustrate [his] rights" because he would have completed the sentence related to the parole

4

revocation on or about March 15, 2018.  *Id.*  By Order filed January 11, 2018, the Court denied

both requests.  (Dkt. No. 11.)

On January 22, 2018, Petitioner filed a letter advising the Court that he was to be released

on parole on March 15, 2018.  (Dkt. No. 12.)  He also filed a motion for reconsideration of the

Court's January 11, 2018, Order.  (Dkt. No. 13.)

By Decision and Order filed January 20, 2018, the Court granted Petitioner's motion for

reconsideration of the January 11, 2018, Order and, upon reconsideration, denied Petitioner's

motion to expediate this proceeding and for bail or release pending a determination on his federal

habeas Petition.  (Dkt. No. 16.)

On February 7, 2018, the Court granted Respondent's motion to limit the Answer to

"whether petitioner has exhausted his remedies."  (Dkt. Nos. 17, 18.)  The Court directed

Respondent to address whether there is an absence of available State corrective process or

circumstances that render that state corrective process ineffective to protect Petitioner's rights.

(Dkt. No. 18.)  Respondent was directed to file the Answer on or before March 14, 2018.  *Id.*

Petitioner thereafter filed a motion for a default judgment.  (Dkt. No. 19.)  Respondent

filed his Answer and Memorandum of Law on March 9, 2018.  (Dkt. No. 20, 21.)

On March 12, 2018, the Court issued the following Order:

> Respondent timely filed his answer and memorandum of law in
> response to petitioner's habeas petition (Dkt. Nos. 20, 21) on
> March 9, 2018, as required by the Court's February 7, 2018, Text
> Order (Dkt. No. 18).  Petitioner's [(Dkt. No. 19)] motion for a
> default judgment is denied.  However petitioner may file a reply to
> the arguments raised in respondent's memorandum of law, not to
> exceed twenty (20) pages in length, excluding any exhibits.
> Petitioner's reply is due on or before April 9, 2018.

(Dkt. No. 22.)

Petitioner's Reply, dated March 13, 2018, was received for filing on March 16, 2018. (Dkt. No. 23.[1])

On April 2, 2018, Petitioner filed an Addendum Reply. (Dkt. No. 24.) In that submission, *inter alia*, Plaintiff provided an updated address indicating he was no longer in custody of DOCCS. (Dkt. No. 24.) The Clerk confirmed Petitioner was released to parole on March 15, 2018, and updated the docket accordingly. (*See* Docket Report.)

## III.    DISCUSSION

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).

This exhaustion requirement is satisfied if the federal claim has been "'fairly present[ed]'" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (explaining that a petitioner seeking federal habeas relief must raise all claims in state court prior to raising them in the habeas corpus petition, and he must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim"). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus,

---

[1] The March 12, 2018, Order likely crossed in the mail with Petitioner's Reply, dated March 13, 2018. Petitioner states he received a copy of the March 12, 2018, Order, on March 14, 2018. (Dkt. No. 24 at 10.)

"the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

"A petitioner seeking habeas review of his parole revocation is subject to the exhaustion doctrine." *Lebron v. Annucci*, 9:15-CV-0829 (GLS), 2016 WL 1312564, at *2 (N.D.N.Y. Apr. 4, 2016) (citing *Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2003) and *McQueen v. Superintendent, Franklin Corr. Facility*, No. 9:15-CV-77 (JKS), 2015 W L 6449138, at *4 (N.D.N.Y. Oct. 23, 2015) ("Like petitions challenging criminal convictions, habeas petitions addressing parole revocations are subject to the aforementioned exhaustion requirements.")).

"The typical path for exhausting a claim concerning a petitioner's parole revocation proceeding includes both completion of the internal, administrative appeal process within the Division of Parole and, in the event of an adverse determination, commencement of a C.P.L.R. Article 78 proceeding." *Smith v. Smith*, No. 9:17-CV-0258 (DNH), 2018 WL 557877, at *4 (N.D.N.Y. Jan. 22, 2019) (quoting *McCullough v. New York State Div. of Parole*, No. 9:11-CV-1112 (DNH), 2015 WL 2340784, at *4 (N.D.N.Y. Apr. 15, 2015)). If the Article 78 petition is denied, the petitioner must then appeal that denial to the "highest state court capable of reviewing it." *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (quoting *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003)). As an alternative to an Article 78 proceeding, a petitioner may also exhaust by filing a state habeas corpus proceeding pursuant to C.P.L.R. Article 70. *Lebron*, 2016 WL 1312564, at *2. Whichever state court vehicle the petitioner chooses, he must appeal a denial to the highest state court capable of reviewing it before he will be deemed to have exhausted his claims. *Id.*

Here, Petitioner's claims are plainly unexhausted.[2]  The record reflects Petitioner has not given the state courts a complete opportunity to consider any of the claims in the Petition.  As discussed above, Petitioner was actively litigating parallel actions in this Court and in the Appellate Division, in addition to "perfecting" his administrative appeal with DOCCS' Division of Parole Appeals Unit.  (*See also* Dkt. No. 17, attaching copies of Petitioner's state court Notice of Appeal, dated November 10, 2017, and Petitioner's then-most recent filing in that action – a motion for a stay and expedited consideration of the appeal, dated January 22, 2018).

In sum, the Court agrees with Respondent that Petitioner filed his federal habeas Petition prematurely.  (Dkt. No. 20 at 6-8.)

As set forth in Respondent's Memorandum of Law, Petitioner has not alleged, much less proven, circumstances which would excuse him from the exhaustion requirement.  (Dkt. No. 20

---

[2]  The Court further notes that inasmuch as correspondence from Grefer indicates he was released from the challenged reincarceration arising from the 2017 parole revocation hearing (Dkt. No. 24), this Petition may also be moot.  *See Spencer v. Kemna*, 523 U.S. 1, 7-14 (1998) (holding that while "[a]n incarcerated . . . parolee's challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because . . . the incarceration . . . constitutes a concrete injury," where the substance of the suit is parole revocation and the resulting "reincarceration that . . . [occurred] as a result of that action is now over, and cannot be undone," the petitioner is required to demonstrate "collateral consequences adequate to meet Article III's injury-in-fact requirement [which] resulted from petitioner's parole revocation," in order for the petition to survive); *see also Ariola v. LaClair*, No. 9:08-cv-116 (GLS/RFT), 2014 WL 4966748, at *9 (N.D.N.Y. Sept. 30, 2014) (noting "that a prisoner challenging a parole revocation hearing is, at most, entitled to a rehearing, and so, a prisoner who has already served his sentence or who has been released ordinarily would not obtain any legal benefit from a determination that the parole revocation hearing was wrongly decided") (citing *Lebron v. Graham*, No. 09-CV-1021 (GLS), 2010 WL 2771878, at *3 (N.D.N.Y. July 12, 2010)); *see also Fells v. Breslin*, No. 04-CV-03849 (ADS)(JO), 2007 WL 675081, at *3 (E.D.N.Y. Feb. 26, 2007) (noting courts in this Circuit "have dismissed habeas petitions which challenged parole revocation because the petitioner was no longer in prison").  Here, Grefer does not appear to have raised any injuries or collateral consequences which would allow his present Petition to continue under *Spencer*.  *See, e.g.*, *Smith*, 2018 WL 557877, at *4 (noting the petitioner's claims challenging a parole revocation were likely mooted by his release but also determining "engaging in such an analysis [was] fruitless because petitioner's claims were not properly exhausted and, even when deemed exhausted, [were] procedurally defaulted").

at 8-11.)  At the time Petitioner commenced this action, he had state court remedies available to him, and was, in fact, in the process of exhausting those remedies.  (Dkt. No. 1 at 1-2; *see also* Dkt. No. 20 at 8-20.)

To the extent Petitioner asserts administrative remedies were unavailable at the time he commenced this action because he "will be released in less than four months," this argument fails because Grefer had available options and was, in fact, simultaneously pursuing them in state court.  *See* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented.").  Courts in this Circuit have dismissed petitions for failure to exhaust state court remedies, even when the sentence imposed may be completed before the exhaustion process is complete.  *See Mothersell v. Hanna*, No. 9:17-CV-0771 (GTS/DEP), 2017 WL 4444040, at *2-3 (N.D.N.Y. Oct. 4, 2017) (rejecting petitioner's argument that he was not required to exhaust his state court remedies because he may have completed his sentence before doing so; explaining that such a circumstance "do[es] not render exhaustion . . . futile" under 28 U.S.C. § 2254(b)(1)(B)); *see also Jumpp v. Cournoyer*, No. 3:15-CV-0892, 2016 WL 3647146, at *4 (D. Conn. June 30, 2016) ("Even if [petitioner's] claims do become moot, neither the State's inherent adjudication process or its processing of this particular case is at fault.").

Accordingly, while he did not avail fully himself of the avenues of relief, the Court finds the appropriate state remedies, at the time he commenced this action, were in fact available to Petitioner.  *See Smith*, 2018 WL 557877, at *6 (finding state remedies available even though the petitioner did not avail himself of those avenues of relief).

As to whether "circumstances exist that render such process ineffective to protect the rights of the applicant," the Court agrees with Respondent and the reasoning set forth in his Memorandum of Law, that at the time this narrow exception was fully briefed, almost three years ago, Petitioner had a viable avenue by which to exhaust his claims in state court, and, thereafter, return to federal court if necessary. (Dkt. No. 20 at 8-11.) *See Nordahl v. Riveria*, No. 08 Civ. 5565, 2010 WL 9444862, at *2 (S.D.N.Y. Apr. 7, 2010) (explaining that if the petitioner "can present an appropriate claim to the state court, the state court is in an equal position with the federal court to grant a remedy").

Additionally, to the extent Petitioner asserted that his release from the challenged re-incarceration before the state court reached a decision, therefore rendering the state corrective process ineffective, the Court agrees with Respondent that any ineffectiveness was caused by the length of Petitioner's relatively short sentence of 15-months reincarceration, which does not amount to futility. (Dkt. No. 20 at 8-11). *See Nordahl*, 2010 WL 9444862, at *2 (noting potential state court remedy is not futile, merely because the conclusion of the petitioner's sentence of incarceration may arrive before consideration of his petition in federal court is complete); *see also Jordan v. Bailey*, 985 F. Supp. 2d 431, 437 (S.D.N.Y. 2013) (explaining that futility is present only "when there is a 'complete absence of a mechanism for correction of the alleged unconstitutional violation' or the petitioner is 'precluded by an unconscionable breakdown from using the process that exists'"), *aff'd*, 570 F. App'x 42 (2d Cir. 2014) (summary order) (quoting *Francis S. v. Stone*, 995 F. Supp. 368, 380 (S.D.N.Y. 1998)). Nor, as pointed out by Respondent, has Petitioner demonstrated a "substantial delay in the state criminal appeal process" or a constitutional right "plainly and grossly violated," sufficient to excuse the exhaustion requirement. (*See* Dkt. No. 20 at 8-9.)

Based on the foregoing, the Court finds Petitioner has not even alleged, much less proven, circumstances which would excuse him from the exhaustion requirement. Moreover, to the extent Petitioner seeks "a stay of decision and order until a time when the Appellate Division of The NYS Supreme Court has completed review and rendered a decision as the state remedy of an Administrative Appeals has been exhausted as of Feb. 8, 2018 in the interest of economy of judicial resources and action" (Dkt. No. 24 at 1), "there is no basis to retain jurisdiction over a petition that contains only unexhausted claims." *Pantoja v. N.Y. State Div. & Bd. of Parole*, No. 11 Civ. 9809 (CS)(PED), 2013 WL 866869, at *6 (S.D.N.Y. Jan. 10, 2013) (quoting *Shomo v. Maher*, No. 04 Civ. 4194 (KMK), 2005 WL 743156, at *7 n.12 (S.D.N.Y. Mar. 31, 2005)).

Accordingly, the Petition is unexhausted and the Section 2254(b)(1)(B) exceptions do not apply. Thus, dismissing the Petition without prejudice, the relief requested by Respondent, is warranted. Nevertheless, at this juncture, Petitioner's claims are also procedurally defaulted because Petitioner now has no avenue by which to exhaust them in state court due to the passage of time. *See, e.g.*, *Morgan v. Fillion*, 98 Civ. 986, 2000 WL 235986, at *5 (S.D.N.Y. Jan. 31, 2000) ("Although it is apparent that petitioner has not exhausted in the state courts all the claims he presents herein, it is also apparent that the state would no longer entertain such claims because petitioner failed to present them properly when he had the opportunity.").

On the present record, Petitioner has not alleged and the record does not suggest that Petitioner instituted an Article 78 proceeding after the Board of Parole Appeals dismissed the administrative appeal in February 2018, and given such actions must be brought within four months of the conclusion of the administrative hearings, that time has likely long since expired.[3]

---

[3] Although Petitioner has periodically corresponded with the Court (*see* Dkt. Nos. 27-30), he has not provided an update as to the status of his appeal to the Third Department nor

*See* N.Y. C.P.L.R. § 217.  Further, "[u]nder New York law, petitioner must appeal an adverse

Article 78 determination within thirty days after being served with a copy of the judgment."

*Scales*, 396 F. Supp. 2d at 428; *see also Santiago v. Unger*, No. 1:12-CV-133, 2013 WL 227757,

at *8 (W.D.N.Y. Jan. 22, 2013) (explaining that the first step after the denial of an Article 78

petition is to "then appeal the denial to New York's intermediate appellate court, the Appellate

Division.").  Moreover, as noted, the status of Petitioner's appeal to the Third Department is also

unclear.

"[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement

would now find the claims procedurally barred,' the federal habeas court should consider the

claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting

*Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  Unexhausted claims may be deemed

exhausted if "it is clear that the unexhausted claim is procedurally barred by state law," rendering

presentation of the claim in state court "futile."  *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*,

118 F.3d 136, 139 (2d Cir. 1997)).[4]

---

indicated whether he timely commenced an Article 78 proceeding, and whether he appealed any
such denial to the highest state court capable of reviewing it.  (*See* Dkt. No. 20 at 6-7.)

[4] Although Respondent has argued lack of exhaustion, he has not claimed that Grefer is
procedurally barred.  (*See* Dkt. Nos. 20, 21.)  However, the Court has no information from
Grefer regarding the status of his state claims.  (*See* Docket Report.)  While a district court may
raise failure to exhaust and procedural default *sua sponte*, the Second Circuit has held that before
dismissing on procedural grounds on its own initiative, the court must afford the petitioner notice
and an opportunity to be heard.  *Acosta v. Artuz*, 221 F.3d 117, 124-26 (2d Cir. 2000).  Courts
have found raising these arguments in a timely filed objection to a report-recommendation
provides such adequate notice and an opportunity to be heard.  *See Garner v. Superintendent of
Upstate Correctional Facility*, No. 9:01-CV-0501 (LEK/DEP), 2007 WL 2846907, at *13 n.8
(N.D.N.Y. Sept. 26, 2007).

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To establish cause, a petitioner must demonstrate that some objective external factor impeded his ability to comply with the procedural rule at issue. *Maples v. Thomas*, 565 U.S. 266 (2012); *Coleman*, 501 U.S. at 753; *accord Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) ("A factor is external to the defense if it 'cannot fairly be attributed to' the prisoner.") (quoting *Coleman*, 501 U.S. at 753). On the present record, cause is not demonstrated. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985). "Prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to his "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).

The second exception is extremely narrow and is "concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("[A]ctual innocence means factual innocence, not mere legal insufficiency."). Therefore, to meet this standard, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Here, however, although Grefer claims to be an "unjustly incarcerated innocent petitioner," Petitioner is not challenging his underlying conviction, but rather revocation of parole and, in any event, is no longer incarcerated. (Dkt. No. 1; *see also* Dkt. No. 24 at 1, 11.)

Accordingly, for reasons discussed above, while Petitioner's claims are admittedly unexhausted, when deemed exhausted they are procedurally defaulted from habeas review and, therefore, the Court recommends denying and dismissing the Petition on this procedural basis.

**WHEREFORE**, it is hereby

**RECOMMENDED** that the Petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED AND DISMISSED**; and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of the claims set forth in the Petition as Petitioner has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED** that the Clerk provide Petitioner a copy of this Report-Recommendation and Order, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 3, 2021
     Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 15 of 130
Lebron v. Annucci, Not Reported in Fed. Supp. (2016)
2016 WL 1312564

2016 WL 1312564
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Elvin LEBRON, Petitioner,
v.
Anthony J. ANNUCCI, Respondent.

9:15-CV-0829
|
Signed 04/04/2016

**Attorneys and Law Firms**

FOR THE PETITIONER: ELVIN LeBRON, 64972-054, Lewisburg U.S. Penitentiary, Inmate Mail/Parcels, P.O. Box 1000, Lewisburg, PA 17838, Petitioner, Pro Se.

FOR THE RESPONDENT: HON. ERIC T. SCHNEIDERMAN, Office of the Attorney General, 120 Broadway, OF COUNSEL: THOMAS B. LITSKY, Assistant Attorney General, New York, NY 10271, Attorney for Respondent.

**DECISION AND ORDER**

GARY L. SHARPE, Senior United States District Judge

**I. INTRODUCTION**

 **\*1** Petitioner *pro se* Elvin LeBron filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, dated July 8, 2015. Dkt. No. 1, Petition ("Pet."). [1] On October 5, 2015, petitioner filed, and the Court accepted, a Supplem ent to the Petition. Dkt. No. 11, Supplement to Petition ("Supp. Pet."). Petitioner was convicted of federal crimes while he was on parole for a prior state conviction. After petitioner pleaded guilty in federal court, respondent issued a parole violation warrant to the Federal Bureau of Prisons. Petitioner alleges he was entitled to a hearing after the warrant was issued and that his due process rights were violated when he was not afforded a speedy hearing. Pet. at 2-3, 7-9. Respondent opposes the petition. Dkt. No. 13, Answer; Dkt. No. 12, Memorandum of Law Supporting Response to Petition for Writ of Habeas Corpus ("Resp. Mem."); Dkt. No. 14, State Court Records (SR). [2] Petitioner filed a Reply. Dkt. No. 15, Reply.

[1] The cited page numbers for the petition refer to those generated by the court's electronic filing system (ECF).

[2] The cited page numbers for the Answer (Dkt. No. 13), Respondent's Memorandum of Law (Dkt. No. 12), and Petitioner's Reply (Dkt. No. 15) refer to those generated by ECF. The "SR" page numbers for the state court records filed at Docket Number 14 appear at the top center of each page.

For the reasons that follow, the petition is denied and dismissed.

**II. BACKGROUND**

In 1994, petitioner plead guilty in Supreme Court, New York County, to the crimes of Manslaughter in the First Degree, Robbery in the First Degree, and Criminal Possession of a Weapon in the Third Degree. *See People v. LeBron*, 238 A.D.2d 150 (1st Dep't 1997). At that time, he was sentenced to an indeterminate prison term of eleven to twenty-two years on the robbery conviction, and lesser, concurrent sentences on the remaining convictions. *Id.* The Appellate Division, First Department, unanimously affirmed the judgment of conviction, and the New York State Court of Appeals denied petitioner's application f or leave to appeal. *LeBron*, 238 A.D.3d 150, *lv. denied*, 90 N.Y.2d 895 (1997).

On October 23, 2009, petitioner was conditionally released from prison to parole supervision by the New York State Department of Correctional Services (DOCS). SR 31-32; *LeBron v. Graham*, No. 9:09-CV-1021 (GLS), 2010 W L 2771878, at \* 1. [3]

[3] Petitioner previously filed a habeas petition on September 4, 2009, asserting claims that his parole applications were wrongfully denied. *LeBron,* 2010 WL 2771878, at \*1. The petition was dismissed as moot because petitioner was conditionally released on parole at the time of the court's decision. *Id.*

On April 13, 2011, petitioner was arrested on federal criminal charges while on parole. A Violation of Release Report, dated May 12, 2011, was submitted to the New York State Parole Board as a result of petitioner's arrest. SR 33-35, 38. Petitioner subseq uently pleaded guilty and was convicted in the Southern District of New York of Conspiracy to Distribute and Possession with Intent to Distribute Crack, *see* 21 U.S.C. § 846. *Id.* at 42-43. Petitioner was sentenced to seventy

months in prison and is currently in the custody of the United States Bureau of Prisons, and housed at the United States Pen itentiary in Lewisburg, Pennsylvania. *Id.* Petitioner's projected release date is May 11, 2016. *Id.* at 36.

**\*2** On April 10, 2013, the New York State Parole Board held that, as a result of his federal conviction, petitioner was delinquent with regards to the conditions of his parole dating back to his arrest on April 13, 2011. *Id.* at 39. On April 11, 2013, DOCS issued Parole Warrant No. 64280 at the federal prison where petitioner was incarcerated. *Id.* at 49. Petitioner requested DOCS vacate the warrant, which was denied on June 19, 2014. *Id.* at 9. Petitioner was informed that he would be brought back to New York pursuant to the warrant filed with the Federal Bureau of Prisons after he was released from federal custody and, at that time, a parole revocation hearing would be held. *Id.*

Petitioner then brought a New York CPLR Article 78 Petition in the Supreme Court, Albany County, on September 9, 2014. *Id.* at 1-9. Petitioner challenged DOCS June 19, 2014 decision which denied his request to vacate the parole warrant. Petitioner maintained he was denied his right to due process and equal protection because he did not receive a speedy parole hearing after DOCS issued the parole violation warrant. *Id.*

In a Decision and Order, dated February 23, 2015, Supreme Court denied the Article 78 petition. *Id.* at 52-56. Specifically, Supreme Court found that, pursuant to New York Executive Law § 259-i(3)(a)(iii), where the alleged parole violator is detained in another state pursuant to a parole warrant, the warrant "will not be deemed to be executed until the alleged violator is detained exclusively on the basis of such warrant." *Id.* at 54. Accordingly, Supreme Court concluded that DOCS "had no obligation to conduct a parole violation hearing while the petitioner was incarcerated in a federal prison in another state." *Id.* at 55.

DOCS served petitioner a copy of the Supreme Court Decision and Order on March 16, 2015, with notice of entry. *Id.* at 51-57. On May 17, 2015, petitioner filed a motion in the Appellate Division, Third Department, requesting an extension of time to appeal. *Id.* at 58-71. The Appellate Division denied petitioner's request in an Order dated July 30, 2015. *Id.* at 72.

Petitioner then sought leave to appeal to the Court of Appeals. *Id.* at 95-96. Respondent opposed the motion. *Id.* at 97-98.

On November 24, 2015, the Court of Appeals dismissed petitioner's motion for leave to appeal on the ground that the order sought to be appealed from was not a final order determining the proceedings and therefore was not appealable. *LeBron v. Annucci*, 26 N.Y.3d 1058 (2015).

## III. DISCUSSION

### A. Exhaustion and Procedural Bar

Petitioner argues his constitutional right to due process was violated because he did not receive a speedy parole hearing after DOCS issued the parole violation warrant with the Federal Bureau of Prisons. Pet. at 7-9. Petitioner's claim, however, is not exhausted.

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court. 28 U.S.C.A. § 2254(b). T his requirement is not satisfied unless each federal claim is "fairly presented" to the state courts. 28 U.S.C. § 2254(b), (c); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (explaining that a petitioner seeking federal habeas relief must raise all claims in state court prior to raising them in the habeas corpus petition, and he must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim").

A petitioner seeking habeas review of his parole revocation is subject to the exhaustion doctrine. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2003) (finding a state prisoner challenging his parole revocation must bring a habeas proceeding pursuant to section 2254); *McQueen v. Superintendent, Franklin Corr. Facility*, No. 9:15-CV-77 (JKS), 2015 W L 6449138, at \*4 (N.D.N.Y. Oct. 23, 2015) ("Like petitions challenging criminal convictions, habeas petitions addressing parole revocations are subject to the aforementioned exhaustion requirements").

**\*3** "To exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78." *Johnson v. Carlsen*, No. 9:09-CV-66 (GTS/DRH), 2010 WL 1817343, at \*2 (N.D.N.Y. Mar. 29, 2010) (internal quotation marks omitted); *McCullough v. NYS Div. of Parole*, No. 9:11-CV-1112 (DNH/DEP), 2015 W L 2340784, at \*4 (N.D.N.Y. Apr. 15, 2015) ("The typical path for exhausting a claim concerning a petitioner's parole revocation proceeding includes both completion of the internal, administrative

appeal process within the Division of Parole and, in the event of an adverse determination, commencement of a CPLR Article 78 proceeding"). "If the Article 78 petition is denied, the petitioner must appeal that denial to the 'highest state court capable of reviewing it.'" *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (quoting *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003)).

Here, although petitioner filed an Article 78 proceeding in state court, he did not timely appeal Supreme Court's denial of his Article 78 petition to the highest court capable of reviewing it. Pursuant to Section 5513(a) of New York's Civil Practice Laws and Rules, an appeal in state court "must be taken within thirty days after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry." Respondent served petitioner a copy of Supreme Court's decision denying his Article 78 petition on March 16, 2015, with notice of entry. SR at 100-06. Petitioner did not file a notice of appeal within thirty days, but instead waited sixty-two days until May 17, 2015, to request an extension of time to take an appeal. *Id.* at 58-71. The Appellate Division denied petitioner's request for an extension of time to appeal, (*id.* at 72), and the Court of Appeals concluded it could not review the Appellate Division's order because the order did "not finally determine the proceeding within the meaning of the Constitution." *Lebron v. Annucci*, 26 N.Y.3d at 1058. Accordingly, petitioner's claims are unexhausted because the state appellate courts have not reviewed petitioner's claims on the merits.

Petitioner's claims may be deemed exhausted however, because petitioner no longer has a remaining avenue to raise the claims in state court due to his procedural default. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (" When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile"). The dismissal of petitioner's Article 78 proceeding was subject to an appeal to the Appellate Division, and an application for leave to appeal to the Court of Appeals. Because the time to appeal has long since past, and petitioner is now foreclosed from pursuing such appeals in state court, the Court deem s petitioner's instant claims exhausted, but procedurally defaulted.

A procedural default does not automatically bar a petitioner from habeas relief if the petitioner can show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e. that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (" Actual innocence means factual innocence, not mere legal insufficiency.") (internal citation omitted). To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

**\*4** Petitioner's only attempt to show cause is claiming that all his "personal property was packed for forwarding" to the prison where he now resides near the time that Supreme Court dismissed his Article 78 petition, and that he did not receive these personal items back until after the time to appeal had passed. Reply at 3-4. According to petitioner, he also did not have "at will access" to the prison's law library computers, and did not otherwise have "access to state law." *Id.* at 4.

These contentions are insufficient to establish "cause." Petitioner does not indicate how his lack of "at will access" to the law library computers prevented him from timely filing a notice of appeal. Nor does petitioner identify what materials were transferred, or how his inability to access the packed materials impeded him from filing a timely notice of appeal. Furthermore, respondent served Supreme Court's decision dismissing his Article 78 petition on March 16, 2015, ten days before he was transferred to another facility on March 26, 2015. SR at 100-06; Reply at 2. Petitioner provides no explanation for why he could not file a notice of appeal during that ten-day period after he received the Supreme Court's decision. As such, petitioner has not demonstrated cause for his default, and the Court need not consider whether petitioner demonstrated prejudice. *See Murray v. Carrier*, 477 U.S. at 496; *Stepney v. Lopes*, 760 F.2d at 45.

Finally, petitioner does not allege "actual innocence;" therefore, this Court's decision to not review his claims will

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 18 of 130

Lebron v. Annucci, Not Reported in Fed. Supp. (2016)

2016 WL 1312564

not result in a miscarriage of justice. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (internal quotation omitted) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence"). Petitioner has not presented any new evidence that he is actually innocent, or that the failure to review his claim would result in a fundamental miscarriage of justice. *House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327. Accordingly, petitioner's claims that he was denied due process because he did not receive a speedy parole hearing are procedurally barred from habeas review. Nevertheless, out of an abundance of caution, the Court has reviewed the merits of the petition and, for the reasons that follow, finds them lacking.

**B. Standard of Review on the Merits**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Richter*, 562 U.S. at 103).

**\*5** Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico*, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).

**C. Due Process Claim**

Petitioner maintains that his constitutional due process rights were violated because he was not afforded a speedy parole revocation hearing after DOCS issued a parole violation warrant to the Federal Bureau of Prisons. Dkt. No. 1, Pet. at 7-9.

It is well settled that "the constitutional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards." *Moody v. Daggett*, 429 U.S. 78, 85-86 (1976) (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). Among the due process rights afforded is "the right to a hearing at which the court determines two issues: whether the [parolee] violated a condition of [parole] as a matter of fact and, if so, whether this fact warrants revocation." *United States v. Jetter*, 577 F. App'x 5, 7 (2d Cir. 2014) (quoting *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000)). Due process also requires that a person accused of violating parole must receive a revocation hearing "within a reasonable time after [the person] is taken into custody." *Morrissey*, 408 U.S. at 488.

In *Moody v. Daggett*, 429 U.S. 78 (1976), the Supreme Court held that the revocation hearing mandated in *Morrissey* "is required only after the person charged with violating parole

Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 19 of 130

Lebron v. Annucci, Not Reported in Fed. Supp. (2016)

2016 WL 1312564

is taken into custody for the parole violation, and that the issuance of a warrant and the lodging of a detainer, while the person is incarcerated elsewhere for a separate crime, do not constitute being taken into custody." *United States v. Wall*, 208 F.3d 204, *2 (2d Cir. 2000) (citing *Moody*, 429 U.S. at 86-87). Simply stated, "it is the *execution* of the warrant, after termination of the intervening sentence, that takes the person into custody for the parole violation and triggers the obligation for a *Morrissey* hearing." *Id.* (citing *Moody*, 429 U.S. at 89) (emphasis in original); *United States v. Ramos*, 401 F.3d 111, 115 (2d Cir. 2005) (" After an arrest warrant for a parolee or releasee has been issued on the basis of his or her parole or supervised release violation, there is 'no constitutional duty to provide [the parolee] an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant.'") (quoting *Moody*, 429 U.S. at 89.); *Jetter*, 577 F. App'x at *7 ("The Supreme Court has held that 'execution of the warrant and custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole revocation.'") (quoting *Moody*, 429 U.S. at 87).

*6 In New York, when a parole violation warrant is executed, DOCS must provide the alleged parole violator a preliminary revocation hearing within fifteen (15) days. *See* Executive Law § 259-i(3)(c)(I). However, where an alleged parole violator is "detained in another state pursuant to such warrant ... the warrant will not be deemed executed until the alleged violator is detained exclusively on the basis of such warrant and the department has received notification that the alleged violator (A) formally waived extradition to this state or (B) has been ordered extradited to this state pursuant to a judicial determination." Executive Law § 259-i(3)(a)(iii). In other words, the warrant is only "deemed to be executed" once the violator is within the control of DOCS. *Id.* Accordingly, when DOCS "lodges a detainer against an alleged violator in an out-of-state facility, the 15-day period is not triggered until the individual has completed the out-of-state sentence and is available for extradition." *People ex rel. Matthews v. New York State Div. of Parole*, 95 N.Y.2d 640, 645 (2001).

Here, petitioner was on parole when he was arrested on federal criminal charges in 2011. After petitioner pleaded guilty and was convicted of certain charges in the Southern District of New York, DOCS issued a parole violation warrant in 2013 to the Federal Bureau of Prisons. Since petitioner has not completed his federal sentence yet, the parole violation warrant has not been executed. Petitioner is not being detained in federal prison pursuant to the parole violation warrant,

and therefore, the right to a *Morrissey* hearing has not been triggered. *See* Executive Law § 259-i(3)(a)(iii); *see also United States v. Wall*, 208 F.3d at *2 (holding that the lapse of time between the issuance of the federal warrant in 1992 and its execution in 1998 was "of no constitutional significance" because it is the execution of the warrant after termination of the intervening sentence that takes the person into custody and triggers the due process rights to a hearing).

To the extent that petitioner argues he is now subject to "higher federal security housing" and cannot participate in "Federal half-way house early release placement" as a result of issuance of the parole violation warrant, the claim fails. Pet. at 9. The petitioner in *Moody* raised a similar claim, arguing that a detainer issued in connection with his parole revocation adversely affected his prison classification and ability to qualify for certain programs. *Moody*, 429 U.S. at 88. The Supreme Court held that prison officials have discretion in controlling the conditions of confinement and that the petitioner had " no legitimate statutory or constitutional entitlement sufficient to invoke due process." *Id.* at 88, n.9. Accordingly, that petitioner is now subject to higher federal security housing classifications as a result of the issuance of a parole violation warrant does not set forth a constitutional due process claim. *Id.*

Finally, to the extent petitioner contends his "New York State Constitutional right to a timely and speedy hearing, as required by the due process and equal protection clauses of New York State" were violated, (Pet. at 8), or that his parole revocation warrant should be vacated as "void" because his state sentence was set to end in September 2015, (Supp. Pet. at 1), the Court finds such claims are not cognizable on habeas review. *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). As the Second Circuit has concluded, " it is not the province of a federal habeas court to reexamine ... determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67-68; *see Gittens v. Thomas*, No. 7:02-CV-9435, 2003 WL 21277151, at *2 (S.D.N.Y. May 30, 2003) (finding the petitioner's claim that the parole board did not properly apply state law did not present a federal question subject to habeas review).

*7 In sum, the Court finds petitioner's claims are exhausted but procedurally defaulted, and otherwise lack merit or are not

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 20 of 130
Lebron v. Annucci, Not Reported in Fed. Supp. (2016)
2016 WL 1312564

cognizable on habeas review. The petition is therefore denied and dismissed.

## IV. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) and supplemental petition (Dkt. No. 11) are **DENIED AND DISMISSED**; and it is further

**ORDERED** that no Certificate of Appealability (COA) shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires. [4] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

[4]     *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 1312564

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Smith v. Smith, Not Reported in Fed. Supp. (2018)

2018 WL 557877

2018 WL 557877
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert F. SMITH, Petitioner,
v.
Brandon SMITH, Superintendent, Greene
Correctional Facility, Department of
Corrections and Community Supervision,
and Board of Parole, Respondents.

9:17-CV-0258
|
Signed 01/22/2018

**Attorneys and Law Firms**

ROBERT F. SMITH, 44 Grand Street, Newburgh, New York
12550, Petitioner, pro se.

HON. ERIC T. SCHNEIDERMAN, OF COUNSEL: PAUL
B. LYONS, ESQ., Ass't Attorney General, New York State
Attorney General, 120 Broadway, New York, New York
10271, Attorneys for Respondents.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**I. INTRODUCTION**

**\*1** Petitioner Robert Smith ("Smith" or "petitioner") has
filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging a parole revocation determination. Dkt. No. 1,
Petition ("Pet."). Respondents initially filed a motion to
dismiss the petition without prejudice for a lack of exhaustion
or, in the alternative, permission to limit their answer solely
to the issue of exhaustion. Dkt. No. 3, Respondents' Motion
to Dismiss.

On June 22, 2017, respondents' motion to dismiss was denied
but their request to file a limited response to the petition was
granted. Dkt. No. 7. Thereafter, respondents filed an answer,
memorandum of law, and pertinent records from the state
court proceedings related to the limited issue of exhaustion.
Dkt. No. 13, Respondents' Answer; Dkt. No. 14, Respondents'
Memorandum of Law in Opposition to the Petition for a Writ
of Habeas Corpus ("R. Mem."); Dkt. No. 15, State Court
Records ("SCR"). [1] Petitioner filed a reply. Dkt. No. 17,

Traverse; Dkt. No. 17-1, Petitioner's Memorandum of Law
(Pet. Mem.).

[1]    Petitioner filed a set of state court records with
his petition as well. Dkt. No. 3-1. It appears that
respondents' submission is more comprehensive
(Dkt. No.15, SCR) and therefore, for the sake of
clarity and efficiency, all references to the state
court records will be to that attachment filed with
the respondents' moving papers.

For the reasons that follow, Smith's petition is denied and
dismissed.

**II. BACKGROUND**

**A. Prior Conviction**
On May 10, 1993, Smith was convicted in Orange County
Supreme Court of rape in the first degree in violation of
N.Y. Penal Law § 130.35 and of criminal possession of a
weapon in the third degree in violation of § 265.02. SCR 1-2.
Petitioner was sentenced, as a second felony offender, to two
indeterminate terms of imprisonment—12.5 to 25 years on
the rape charge and 2 to 4 years on the weapons charge—to
run concurrent with one another. *Id.*

**B. Parole Proceedings**
In May 2015, Smith was released to post release supervision.
SCR 3-15. However, on October 31, 2015 a warrant was
issued and executed for petitioner's detention in connection
with several violations of petitioner's parole conditions. SCR
16; *see also* SCR 18 (Notice of Violation); SCR 19-22
(Violation of Release Report & Case Summary).

On November 9, 2015, a preliminary revocation hearing
occurred. SCR 17. Based on the proffered testimony, a
hearing officer from the Board of Parole determined that there
was sufficient evidence to establish probable cause for the
alleged violations of Smith's parole conditions. *Id.*

On April 5, 2016, a final revocation hearing was held
before a Board of Parole administrative law judge ("ALJ").
SCR 32-156. Smith was represented by counsel. *See* SCR
33 (noting appearance of counsel for parolee). The ALJ
heard testimony from petitioner (SCR 140-152), an offender
rehabilitation counselor (SCR 46-61), and two parole officers
(SCR 61-139) before reserving judgment (SCR 154-55).

Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 22 of 130

Smith v. Smith, Not Reported in Fed. Supp. (2018)

2018 WL 557877

In a written decision dated April 29, 2016, the ALJ held that the New York State Department of Corrections and Community Supervision ("DOCCS") had successfully met its burden of proof on four of the five charges and found that Smith violated several of his parole supervision conditions. SCR 159-65. Accordingly, petitioner's parole was revoked and he was ordered held in prison until the maximum expiration date of his sentence. SCR 164.

**\*2** The ALJ's written decision ended with a notice that was in bold font and all capital letters reading, "**NOTICE: YOU HAVE THE RIGHT TO APPEAL THIS DECISION.**" SCR 165. However, Smith did not administratively appeal the revocation of his parole. SCR 356-57.

### C. State Court Proceedings

On or about April 8, 2016, Smith filed a petition for a writ of habeas corpus with the Orange County Supreme Court. SCR 166-72. Petitioner claimed that his detention pursuant to the October 2015 parole warrant was illegal because the warrant was forged and that these actions represented several violations of various New York State laws and regulations. SCR 168.

In May of 2016, Smith filed an amended petition for a writ of habeas corpus. SCR 173-86. This petition presented the same allegations but included more detail and further exhibits. SCR 173-86. [2] Concurrently, petitioner also successfully received in forma pauperis status for his state court proceeding. SCR 201-02.

[2]     Concurrently, petitioner was also sending letters to various individuals regarding his illegal detention. SCR 181-85. Attached as exhibits to his state habeas corpus petitions are letters addressed to Sheriff Dubois and Sgt. Proscia regarding petitioner's detention and the parole warrant. *Id.*

On June 30, 2016, respondents filed a motion to change venue from Orange County Supreme Court to Greene County Supreme Court. SCR 203-08.

On July 11, 2016, Smith filed a response to the motion to change venue, proffering the same arguments set forth in his habeas petition: (1) the parole warrant was forged and, therefore, illegally executed and enforced on him; and (2) he was being illegally detained. SCR 228-62.

On July 13, 2016, respondents' motion to change venue to Greene County was granted. SCR 263-64. Thereafter, respondents argued the state petition should be dismissed because: (1) the petition failed to name a necessary party; (2) petitioner did not administratively appeal the revocation of his parole, and the time limit for such an appeal had expired; and (3) habeas corpus is an appropriate remedy only if petitioner is entitled to immediate release from custody, and in this case, petitioner would not be entitled to immediate release even if his factual allegations were true. SCR 265-94.

Smith filed a seventeen-page reply. SCR 295-311; *see* SCR 312-46 (exhibits attached to reply). Petitioner addressed each of respondents' arguments, specifically contending that the "Board of Parole ha[d] no jurisdiction for review [of the revocation decision]: ... ALJ[s] ... do not have jurisdiction over issues stemming from preliminary hearing proceedings and the matter may not be appealed...." SCR 298.

Smith further argued that the parole warrant was improperly executed in violation of New York State statutes and regulations, with one exception. SCR295-311. In one of the final paragraphs, petitioner included a citation to the Fourth and Fourteenth Amendments. SCR 310 ("There is clear evidence of PO Flynn's actions of bad faith, willful and negligent disregard of warrant requirement which has been a pattern as well as a practice of inattention to warrant requirement. U.S.C.A. Const. Amends. 4, 14; Executive Law § 259-i(3)(a)(i); 9 NYCRR 8004.2 (a, b).").

**\*3** On October 31, 2016, relying solely on state law, the Greene County Supreme Court issued a decision denying and dismissing Smith's petition in its entirety. SCR 354-59. First, the Court held that a necessary party was missing, which alone would constitute reason to dismiss. SCR 356. Second, the Court found that petitioner was not entitled to immediate release. SCR 356. Third, and most relevant to the present petition, the Court determined that petitioner failed to exhaust his administrative remedies prior to commencing suit. SCR 356. Specifically, the Court held:

Since [petitioner] has not filed an appeal or otherwise challenged the final parole revocation issued on April 5, 2016, he has failed to exhaust his administrative remedies. This result remains the same whether the action is brought as a habeas corpus or as the properly converted article 78 petition, as "[h]abeas corpus is a summary remedy; it is not an appropriate vehicle to bypass administrative remedies when there are disputed factual issues present (*see Matter of Trimaldi v. Superintendent of Washington Corr. Fac.*,

Smith v. Smith, Not Reported in Fed. Supp. (2018)

2018 WL 557877

169 AD2d 960, 960-61 [3d Dept 1991] [citations omitted] ["The doctrine of exhaustion of administrative remedies would clearly bar any relief under CPLR article 78, and we see no reason for reaching a different result even if we accept petitioner's claim that habeas corpus is an appropriate remedy."] ).

SCR 357. Finally, the Court dismissed any remaining arguments on the merits. SCR 357.

It does not appear that Smith appealed from this adverse decision. Indeed, as of August 22, 2017, the Appellate Division, Third Department had no record of any appeal of the October 31, 2016 decision denying the petition. Respondents' Answer ¶ 4; *see also* Pet. ¶ 12(d)(4) & (7) (explaining the "judge rendered an arbitrary and capricious ruling that left [petitioner] with the assumption [his] ... constitutional rights would not be protected in the State Courts and [he] ... would not obtain the relief sought.")

### III. THE PRESENT PETITION

Construed liberally, Smith raises the following grounds for habeas relief in his federal habeas petition and memorandum of law:[3] (1) he was illegally detained due to a forged and invalid warrant; (2) he was subjected to an illegal, unconsented to, and warantless search; (3) the denial of his state court writ of habeas corpus was "arbitrary and capricious" and in violation of his right to equal protection; and (4) he is being unlawfully detained beyond the expiration date of his sentence. Pet. ¶¶ 9-12.

[3] For the sake of clarity and ease of discussion, petitioner's claims have been renumbered and reorganized.

Respondents' arguments are limited to claims of exhaustion and procedural default. R. Mem. at 5-15. In his reply, Smith asserts that his arguments in the state proceeding were "premised on state statutory law, [but also] allege[d] a los[s] of liberty pursuant to an invalid warrant ... which alerts the state court of a constitutional claim." Pet. Mem. at 11.[4]

[4] The pagination referenced herein is that generated by CM/ECF and located on the top of each document.

Further, with respect to exhaustion, Smith contends that any attempt to appeal the final revocation of his parole was not possible because the issues were not reviewable administratively and that he "attempted to exhaust available administrative remedies ... but all were indifferent to the rights of the petitioner and had not responded." Pet. Mem. at 9, 15.

### IV. DISCUSSION

As an initial matter, recent correspondence from Smith suggests that he has been released from incarceration and therefore his present petition is moot. *See Spencer v. Kemna*, 523 U.S. 1, 7-14 (1998) (holding that while "[a]n incarcerated ... parolee's challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because ... the incarceration ... constitutes a concrete injury, where the substance of the suit is parole revocation and the resulting "reincarceration that ... [occurred] as a result of that action is now over, and cannot be undone," the petitioner is required to demonstrate "collateral consequences adequate to meet Article III's injury-in-fact requirement [which] resulted from petitioner's parole revocation," in order for the petition to survive).

**\*4** Smith does not appear to have raised any injuries which would allow his present petition to continue under *Spencer*. However, engaging in such an analysis is fruitless because petitioner's claims were not properly exhausted and, even when deemed exhausted, are procedurally defaulted.

### A. Exhaustion

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii).

In other words, it must first be determined whether Smith is barred from raising his claims based on a failure to present them to the highest state court capable of reviewing them or his failure to raise them in federal constitutional terms in his administrative and state proceedings before the merits of his petition can be addressed.

Importantly, a petitioner must exhaust his or her claim both procedurally and substantively. "A petitioner seeking habeas review of his parole revocation is subject to the exhaustion doctrine." *Lebron v. Annucci*, No. 9:15-CV-0829 (GLS), 2016 WL 1312564, at *2 (N.D.N.Y. Apr. 4, 2016) (citing, *inter alia*, *Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003)).

Case 9:17-cv-01299-MAD-TWD Document 35 Filed 03/03/21 Page 24 of 130

Smith v. Smith, Not Reported in Fed. Supp. (2018)

2018 WL 557877

## 1. Procedural Exhaustion

Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Accordingly, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"The typical path for exhausting a claim concerning a petitioner's parole revocation proceeding includes both completion of the internal, administrative appeal process within the Division of Parole and, in the event of an adverse determination, commencement of a CPLR Article 78 proceeding." *McCullough v. New York State Div. of Parole*, No. 9:11-CV-1112 (DNH), 2015 WL 2340784, at *4 (N.D.N.Y. Apr. 15, 2015) (citations omitted); *see also* N.Y. COMP. CODES R & REGS tit. 9, § 8006.1.

"If the Article 78 petition is denied, the petitioner must then appeal that denial to the 'highest state court capable of reviewing it.' " *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (quoting *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003)); *see also Santiago v. Unger*, No. 1:12-CV-133, 2013 WL 227757, at *8 (W.D.N.Y. Jan. 22, 2013) (explaining that the first step after the denial of an Article 78 petition is to "then appeal the denial to New York's intermediate appellate court, the Appellate Division.").

Smith failed to procedurally exhaust any of his claims through either administrative or judicial channels. First, petitioner participated in a final revocation hearing where the ALJ ultimately revoked petitioner's parole and detained him. In that hearing decision, petitioner was specifically advised that his final parole revocation could be administratively appealed.

Regardless of whether such an administrative appeal would be ineffective, Smith was provided with information on how to challenge the revocation decision but failed to do so. As properly noted by the Greene County Supreme Court when determining petitioner's court-converted state habeas petition to an Article 78 claim, petitioner failed to administratively appeal his final parole revocation determination, rendering his claims procedurally unexhausted.

**\*5** Second, Smith failed to exhaust his claims in state court because he failed to appeal the decision on his state habeas petition-turned-Article 78 proceeding. Per respondents' answer, no appeal was filed in the Appellate Division and therefore, no appeal was taken in the case. Respondents' Answer ¶ 4. There is also nothing in the record to indicate that petitioner filed any leave application with the New York Court of Appeals. Accordingly, petitioner did not properly present the appeal to either of the next two higher level courts capable of reviewing it.

Smith contends that he successfully exhausted his claims by sending letters to individuals who he thought had the power to rectify the violations that he suffered. However, "informal communications ... [by petitioner] are insufficient to satisfy § 2254(b)(i)'s exhaustion requirement." *Owens v. New York State Parole Bd.*, No. 13-CV-8057, 2014 WL 5089364, at *3 (S.D.N.Y. Sept. 25, 2014). Accordingly petitioner has failed to appropriately exhaust his remedies in state court. *See e.g., O'Sullivan*, 526 U.S. at 845.

## 2. Substantive Exhaustion

Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) (holding petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.").

"While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.' " *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Carvajal*, 633 F.3d at 104).

A petitioner satisfies the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal*, 633 F.3d at 104 (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)); *see Baldwin*, 541 U.S. at 33 ("Reese, however, has not demonstrated that

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 25 of 130
Smith v. Smith, Not Reported in Fed. Supp. (2018)
2018 WL 557877

Oregon law uses the words 'ineffective assistance' in the manner he suggests, that is, as referring only to a federal-law claim.").

Even assuming Smith procedurally exhausted his claims, he failed to fairly present his claims to any court or administrative body in federal constitutional terms. Consistently throughout his filings, petitioner has admittedly relied upon New York state statutes, regulations, and case law.

Smith did not substantively rely on any federal statutes or federal cases. In his reply, petitioner cited to *Smith v. Doe*, 538 U.S. 84 (2003) to support his argument about his incarceration's maximum expiration date. SCR 299. But *Smith* is irrelevant here—it determined whether the retroactive application of an Alaskan Sex Offender Registration Act was a punishment precluded by the *ex post facto* clause. *Id.* The issues in this petition are completely unrelated to petitioner's claims of a forged warrant and illegal detention.

 **\*6** Similarly, none of the handful of state cases Smith cited utilized any type of constitutional analysis. Petitioner relied on one state case in his amended state court habeas petition (SCR176) and four additional state cases in his reply papers (SCR 308).

Two of these cases dealt with the validity of property transfers given to interested witnesses, forgeries, and other deed deficiencies. *See Armstrong v. Combs*, 15 A.D. 246 (3d Dep't 1897); *Caccippoli v. Lemmo*, 152 A.D. 650 (2d Dep't 1912).

One case determined what the New York State Legislature's statutory intent was regarding the definition of forgery and interpreted the New York State Penal Code accordingly. *People v. Abeel*, 182 N.Y. 415 (1905).

The other two cases involved attorney disciplinary matters. The first opinion was about an attorney who was censured for making misleading statements in an affidavit. *See In re Matter of Napolis*, 169 A.D. 469 (1st Dep't 1915). The second case citation was incorrect, but independent research uncovered five cases entitled "*In re Brooklyn Bar Ass'n*" or "*In the Matter of Brooklyn Bar Association*."

All five of those decisions also related to attorney disciplinary matters. *See in re Brooklyn Bar Ass'n*, 92 A.D. 612 (2d Dep't 1904); *In re Brooklyn Bar Ass'n*, 93 A.D. 618 (2d Dep't 1904);

*In re Brooklyn Bar Ass'n*, 223 A.D. 149 (2d Dep't 1928); *In the Matter of Brooklyn Bar Ass'n*, 213 A.D. 876 (2d Dep't 1925); *In re Matter of the Brooklyn Bar Ass'n*, 217 A.D. 758 (2d Dep't 1926).

In sum, all of these cases concern state statutory and administrative issues. None of these cases included allegations of or discussions about the deprivation of constitutional rights nor did the court engage in a constitutional analysis. There has been no allegation or pattern of facts that are within the mainstream of constitutional litigation. To the contrary, Smith's claims primarily revolve around allegations of a forged warrant and resulting parole consequences, none of which were asserted in particular language reminiscent of constitutional rights.

Notably, Smith made one passing reference to two constitutional amendments in a citation in his reply papers. However, that reply was for the present petition and those references were not found in any of the paperwork that was previously filed in state court. Regardless, presentation of such issues in a reply brief is insufficient to satisfy the fair presentation requirement. *See Rustici v. Phillips*, 308 Fed.Appx. 467, 469 (2d Cir. 2009).

To the extent that Smith's arguments about the invalidity of the warrant were supposed to alert the state courts to the presence of violations of the Fourth and Fourteenth Amendments, there is no explanation in any of petitioner's state court papers as to how or why the allegedly forged warrant and subsequent detention implicates, let alone violates, the constitutional amendments identified. Accordingly, petitioner's claims are also substantively unexhausted.

### 3. Lack of Available State Remedies
In Smith's reply to respondents' motion to dismiss, petitioner argues that he was "time barred to effectively exhaust his state court remedies [and] if ... the court [should] dismiss his federal habeas petition, there is no state remedy available." Dkt. No. 8, ¶ 23.

This argument fails primarily because Smith had several options to timely exhaust his claims but simply failed to pursue any of them. *See* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented."). Accordingly, while he did not avail himself of

Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 26 of 130

Smith v. Smith, Not Reported in Fed. Supp. (2018)
2018 WL 557877

those avenues of relief, the appropriate state remedies were in fact *available* to petitioner.

**B. Underline Procedural Default**

**\*7** Smith's claims are also procedurally defaulted because petitioner now has no avenue by which to exhaust them in state court.

"[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted).

Unexhausted claims may be deemed exhausted if "it is clear that the unexhausted claim is procedurally barred by state law," rendering presentation of the claim in state court "futile." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). A "procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." *Aparicio*, 269 F.3d at 91 (citing *Coleman v. Thompson*, 501 U.S. 722, 748-49 (1991)).

To establish cause, petitioner must demonstrate that some objective external factor impeded his ability to comply with the procedural rule at issue. *Maples v. Thomas*, 565 U.S. 266, 132 S. Ct. 912, 922 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

In this case, all of Smith's claims are unexhausted and can no longer be raised in state court. "Petitioner can no longer bring an administrative appeal because he failed to file a notice of appeal within thirty days of his final parole revocation hearing [in April of 2016] ...." *Roundtree v. Bartlett*, No. 1:10-CV-633, 2011 WL 5827315, at \*4 (W.D.N.Y. Nov. 18, 2011); *see also* N.Y. COMP. CODES R. & REGS tit. 9, § 8006.1(b) ("The appeal process [from a final determination of the Board of Parole] is initiated by the filing of a notice of appeal within 30 days of the date that the inmate ... receives written notice of the final decision....").

Further, Smith can no longer bring an appeal to the Appellate Division from the dismissal of his converted state habeas petition on October 31, 2016, because the time to do so has expired. *See Scales*, 396 F. Supp. 2d at 429 ("Under New York law, petitioners must appeal an adverse Article 78 determination within thirty days after being served with a copy of the judgment.").

Moreover, Smith cannot institute a new Article 78 proceeding because such actions must be brought within four months of the conclusion of the administrative hearings, namely the parole revocation hearing; given that the revocation hearing was decided in October 2016, that time has long since expired. *See* N.Y. CPLR § 217. Because state remedies are no longer available, petitioner's claims are deemed exhausted and procedurally defaulted. *Aparicio*, 269 F.3d at 90.

Smith's claims cannot be saved from procedural default via one of the previously identified exceptions as neither has been demonstrated in this case. While petitioner has seemingly offered several different reasons for his failure to appeal his parole revocation or Article 78 dismissal, none are sufficient to establish cause and prejudice or petitioner's actual innocence.

**\*8** First, Smith conclusorily references the "[i]neffective assistance of counsel" as a reason for failing to present his claims in state and federal court. Pet. ¶ 13(b). However, it is unclear what the facts are supporting this claim as none are alleged. Further, as the Article 78 was a civil proceeding, the Sixth Amendment does not guarantee counsel and therefore there is no action for ineffective assistance of counsel associated with a petitioner's representation during the course of that proceeding. *Salahuddin v. Unger*, No. 1:04-CV-2180, 2005 WL 2122594, at \*9 (E.D.N.Y. Sept. 2, 2005) (citations omitted). Lastly, as petitioner did not articulate an ineffective assistance of counsel claim earlier in any of his filings, he cannot use that to serve as the cause to excuse his default. *See e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000).

Second, Smith contends that he only learned of the forgery of the warrant during the final revocation hearing, so he was precluded from raising it as a claim because it was too late to do so; instead, the claim could only properly be raised during the preliminary revocation hearing. Pet. ¶ 12, Ground One (b). Petitioner also explains that because his state habeas petition was filed prior to the decision revoking his parole, he was unable to fairly present his claims. Pet. Mem. at 19.

Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 27 of 130

Smith v. Smith, Not Reported in Fed. Supp. (2018)
2018 WL 557877

These arguments are untenable. To the extent Smith is attempting to allege that his state habeas petition was premature, which precluded his ability to advance his arguments surrounding his parole revocation, such arguments are meritless. As explained in the Greene County Court's decision, there was still an audience and opportunity for petitioner to assert these arguments via an appeal to the appropriate appellate division of the converted Article 78 dismissal. *See* SCR 356-57 (explaining that an Article 78 proceeding is the appropriate procedural vehicle to challenge a final revocation hearing—hence the conversion—but regardless petitioner failed to timely allege his claims via any avenue rendering them unexhausted); *see also McCullough*, 2015 WL 2340784, at *4 (explaining that, after exhausting all administrative appeals offered in connection with a parole revocation, the next procedural step is to file an Article 78); *Scales*, 396 F. Supp. 2d at 428 (clarifying that when an Article 78 petition is denied it too must be appealed); *Santiago*, 2013 WL 227757, at *8 (stating that an Article 78 appeal is next filed with the appropriate appellate division).

With respect to Smith's latter contention, while his state habeas petition was filed prior to the final revocation decision, he subsequently corresponded with the court—substantially so with regard to the reply he filed on August 13, 2016—which allowed ample opportunity for petitioner to address his perceived issues with the warrant and final decision.

If Smith had pursued any of the available avenues for appeal, he could have presented these arguments to any number of decision makers. However, petitioner failed to follow the directions regarding appeal that were, at a minimum, provided to him in the parole revocation decision. Petitioner contends this constitutes appropriate cause because he was barred from raising his claim. But even if this were accurate, it does not address why petitioner failed to pose his claims regarding the forgery and detention in constitutional claims in any of his filings.

Third, Smith alleges that the Greene County Supreme Court was biased and acted in an "arbitrary and capricious manner" in denying his claims and therefore petitioner was certain that his constitutional rights could not be properly protected in any state court proceedings. Pet. ¶ 12, Ground One(d)(7); ¶ 13(a) Ground Three(a).

**\*9** These claims are completely unsupported by the state court records. Regardless, "[i]t is well established that a petitioner may not bypass state courts merely because they may be unreceptive to the claim." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted). Accordingly, Smith has not established any cause sufficient to excuse his default. [5]

[5]   Because there was no cause demonstrated, the Court need not address whether the petitioner suffered resulting prejudice. *Murray*, 477 U.S. at 496. Further, petitioner has not alleged, let alone established, that he is actually innocent.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. The petition, Dkt. No. 1, is **DENIED AND DISMISSED IN ITS ENTIRETY**;

2. No Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2); [6]

[6]   *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).

3. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and

4. The Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2018 WL 557877

**Smith v. Smith, Not Reported in Fed. Supp. (2018)**

2018 WL 557877

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2340784
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David McCULLOUGH, Petitioner,

v.

NYS DIVISION OF PAROLE, Respondent.

No. 9:11–CV–1112.
|
Signed April 15, 2015.

**Attorneys and Law Firms**

David McCullough, Syracuse, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Thomas B. Litsky, Esq., Ass't Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION and ORDER

DAVID N. HURD, District Judge.

**\*1** Pro se petitioner David McCullough brought this petition for habeas relief pursuant to 28 U.S.C. § 2254. On March 23, 2015, the Honorable David E. Peebles, United States Magistrate Judge, advised, by Report–Recommendation, that the petition be dismissed and no certificate of appealability be issued. No objections to the Report–Recommendation were filed.

Based upon a careful review of entire file and the recommendations of the Magistrate Judge, the Report–Recommendation is accepted in whole. See 28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. The petition for a writ of habeas corpus is DENIED and DISMISSED;

2. Because petitioner has not made a substantial showing of the denial of any constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253; and

3. The Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules, enter judgment accordingly, and close the file.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* petitioner David McCullough, a New York State prisoner, has commenced this proceeding pursuant to 28 U.S.C. § 2254 seeking habeas relief. [1] McCullough's petition centers upon a parole revocation proceeding that resulted in an additional two-year period of incarceration, following his initial release on parole. McCullough contends that during the revocation hearing, he was deprived of the effective assistance of counsel and his due process rights were violated.

[1]   At the time McCullough filed his petition, he was released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") on parole. *Dkt. No 1 at 1.* According to publicly available information, however, petitioner is currently in DOCCS custody once again. DOCCS Inmate Information, http:// nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130 (last visited Mar.23, 2015).

In opposition to the petition, the respondent, the New York State Division of Parole, argues that (1) McCullough has forfeited the right to pursue either ground based upon his failure to exhaust those claims by first presenting them to the highest court in New York State, and is now procedurally barred from raising his claims in state court; and (2) all of petitioner's claims lack merit. For the reasons set forth below, I concur on both counts and recommend that McCullough's petition be dismissed.

### I. *BACKGROUN*

Following a jury trial in Onondaga County, petitioner was convicted in 1995 of rape, sodomy, unlawful imprisonment, and assault. *Dkt. No. 12–1 at 61–62.* [2] As a result of his criminal history, which included prior felony convictions, petitioner was sentenced to concurrent prison terms of between ten and twenty years on the rape and sodomy

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.    1

charges, and one year each with respect to the unlawful imprisonment and assault counts. *Id.* Following a remand for an evidentiary hearing to address issues raised by the petitioner, McCullough's conviction was affirmed on appeal, and leave to appeal was subsequently denied by the New York State Court of Appeals, both initially and on request for reconsideration. *See People v. McCullough,* 248 A.D.2d 938 (4th Dep't 1998), *aff'd following remand, People v. McCullough,* 254 A.D.2d 750 (4th Dep't 1998), *lv. denied,* 92 N.Y.2d 1035 (1998), *reconsideration denied,* 92 N.Y.2d 1035 (1998). An application for a writ of error *coram nobis* was subsequently denied by the New York State Supreme Court, Fourth Department. *People v. McCullough,* 261 A.D.2d 975 (4th Dep't 1999), *lv. to appeal dismissed,* 93 N.Y.2d 1004 (1999). [3]

[2]     The court appreciates that the pertinent state court records submitted by respondent's counsel have been indexed and paginated for ease of reference.

[3]     A subsequent petition to this court for a writ of habeas corpus in connection with that conviction was initially granted. *McCullough v. Bennett,* 317 F.Supp.2d 112 (N.D.N.Y.2003) (Hurd, J.). That determination, however, was reversed on appeal. *McCullough v. Bennett,* 143 F. App'x 379 (2d Cir.2005), *cert. denied,* 546 U.S. 1079 (2005), *reh'g denied,* 546 U.S. 1211 (2006).

**\*2** McCullough was released to parole supervision on April 28, 2009. *Dkt. No. 12–1 at 65.* Petitioner's release conditions included electronic monitoring and a requirement that he obtain permission before leaving Onondaga County or being out of his residence between 9:00 p.m. and 7:00 a.m. *Id.* at 69–70.

On May 13, 2009, petitioner was accused of committing four separate violations of those two conditions of supervised release. *Id.* at 65. After being served with the notice of violation, petitioner executed a written waiver of his right to a preliminary hearing concerning the charges on that same date. *Dkt. No. 12–1 at 64.* The Frank H. Hiscock Legal Aid Society ("Legal Aid") was subsequently assigned on May 20, 2009 to represent McCullough in the matter. *Id.* at 135. A notice of appearance on petitioner's behalf was filed by Lawrence J. Young, Esq., an attorney with Legal Aid, on May 22, 2009. *Id.* at 136. On that same date, Attorney Young corresponded by letter with the petitioner, informing him that he would be representing him in connection with the matter. *Id.* at 20.

On May 26, 2009, Parole Revocation Specialist Mary Hotaling forwarded a notice to petitioner's counsel advising that a parole revocation hearing in the matter had been scheduled for June 2, 2009. *Dkt. No. 12–1 at 21.* The hearing was subsequently convened on that date before Administrative Law Judge ("ALJ") Gerald Hamill. *Id.* at 22–32. During the hearing, ALJ Hamill established that petitioner had received a copy of the violation report and inquired as to whether petitioner's counsel had received adequate notice of the hearing, to which he replied, "Yes, I did." *Id.* at 25. ALJ Hamill then asked petitioner's counsel, "Are there any issues outstanding as to the notice?", and counsel responded, "There are not." *Id.* After confirming that Attorney Young had advised petitioner concerning his rights and available options, ALJ Hamill placed on the record an agreement that was reached between the Division of Parole and petitioner, whereby, in return for McCullough's guilty plea, the ALJ would recommend that the parole board impose a twenty-four month period of incarceration as a sanction for the violations. *Id.* at 25, 26–27. Based upon that agreement, petitioner entered a plea of guilty to two of the four counts charged in the violation notice. *Id.* at 28. After acknowledging he had made "bad decisions" and needed "to be able to do the right thing by following the rules and regulations of parole," petitioner was advised of the ALJ's recommendation that he receive a "time assessment" of twenty-four months, and counts one and three of the violation notice were dismissed. *Id.* at 28–30.

## II. *PROCEDURAL HISTORY*

### A. *State Court Proceedings*

On November 1, 2009, petitioner, acting *pro se,* filed a petition seeking a writ of habeas corpus pursuant to New York Civil Practice Law and Rules ("CPLR") Article 70 in New York State Supreme Court, Orleans County, challenging certain aspects of the parole revocation hearing. *Dkt No. 12–1 at 13–18.* In support of his application for state court habeas relief, McCullough argued that he was not provided with at least fourteen days' notice of the revocation hearing, as required by N.Y. Executive Law § 259–i(f) (iii), and that he received ineffective assistance of counsel in connection with his revocation hearing. *Id.* Specifically, in that petition McCullough argued that Attorney Young (1) never visited him to discuss the violation charges, (2) spoke only briefly with him prior to commencement of the hearing, (3) did not argue for or suggest a twelve-month assessment, and (4) failed to object to the untimely hearing notice. *Id.* at 16. McCullough's state court habeas petition was denied by

Case 9:17-cv-01299-MAD-TWD Document 35 Filed 03/03/21 Page 31 of 130
McCullough v. NYS Div. of Parole, Not Reported in F.Supp.3d (2015)
2015 WL 2340784

Acting Supreme Court Justice James P. Punch on February 18, 2010. *Dkt. No. 12–1 at 7–12.* In his decision, Justice Punch rejected both claims and specifically found that the petitioner's counsel had provided adequate representation and had sufficient time to prepare for the hearing. *Id.* at 11–12. That determination was upheld on appeal to the New York State Supreme Court Appellate Division, Fourth Department, on March 25, 2011.[4] *See People ex rel. McCullough v. N.Y. State Div. of Parole,* 82 A.D.3d 1640 (4th Dep't 2011). In its decision, the Fourth Department concluded that petitioner had waived any issue concerning the allegedly untimely notice of the revocation hearing and his ineffective assistance of counsel claim could not be raised in an Article 70 proceeding, and the court declined to convert the petition to one seeking relief under Article 78 of the CPLR. *People ex rel. McCullough,* 82 A.3d at 1640. Leave to appeal to the New York Court of Appeals was subsequently denied. *People ex rel. McCullough v. N.Y. State Div. of Parole,* 17 N.Y.3d 704 (2011).

[4]  Petitioner was represented by counsel in connection with both his appeal to the Fourth Department and his subsequent efforts to obtain leave to appeal to the New York Court of Appeals.

### B. *Proceedings Before This Court*

**\*3** Petitioner commenced this proceeding on September 20, 2011. *Dkt. No. 1.* In his petition, McCullough asserts two grounds for relief, including (1) ineffective assistance of counsel based upon the fact that his attorney did not meet with him until twenty minutes before the scheduled revocation hearing, had no strategy or plan, failed to return his telephone calls or visit him to discuss the case, and did not object to the late hearing notice; and (2) violation of due process based upon the untimely notice. *Id.* at 4. The petition, which sets forth the grounds in only summary terms, was not augmented by a legal memorandum or briefing providing further elaboration regarding those claims. *See generally id.* Respondent has since answered the petition, arguing that petitioner's claims are forfeited based upon his failure to properly present them to the state courts and the fact that he is now precluded from doing so, and additionally arguing that the claims lack merit. *See generally Dkt. No. 11.* McCullough's petition, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Exhaustion*

Before addressing the merits of petitioner's two habeas claims, the court must first determine whether he is procedurally barred from raising them, as respondent argues, based on his failure to present them to the state courts for determination.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights. *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269 (1995). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982); *see also Galdamez v. Keane,* 394 F.3d 68, 72 (2d Cir.2005) ("Comity concerns lie at the core of the exhaustion requirement."). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez,* 394 F.3d at 72 (citing *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye,* 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been " 'fairly present[ed]' " to the state court. *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye,* 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

**\*4** Like petitions challenging criminal convictions, those addressing parole revocations are subject to this exhaustion requirement. *Blanchard v. West,* No. 04–CV–1492, 2008 29429 2949388, at \*3 (N .D.N.Y. July 30, 2008) (Sharpe, J., *adopting report and recommendation by* Treece, M.J.); *Scales v. N.Y. State Div. of Parole,* 396 F.Supp.2d 423, 428 (S.D.N.Y.2005).[5] The typical path for exhausting a

claim concerning a petitioner's parole revocation proceeding includes both completion of the internal, administrative appeal process within the Division of Parole and, in the event of an adverse determination, commencement of a CPLR Article 78 proceeding. *Blanchard,* 2008 WL 2949388, at *3; *Scales,* 396 F.Supp.2d at 428. Alternatively, a parolee may exhaust a constitutional claim by commencing a state court habeas corpus proceeding pursuant to Article 70 of the CPLR. *Hall v. N.Y. State Div. of Parole,* No. 99–CV–11317, 2000 WL 33952256, at *4 (S .D.N.Y. Nov. 29, 2000).

5          Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

In this instance, petitioner's ineffective assistance of counsel claim is unexhausted because it was not presented to a court in a manner under which it could have been addressed on the merits—that is, by way of an Article 78 petition. Under New York law, it is well established, as the Fourth Department held in this instance, that Article 70 does not provide relief based upon an alleged denial of effective assistance of counsel in the context of a parole revocation hearing. *People ex rel. McCullough v. N.Y. State Div. of Parole,* 82 A.D.3d 1640, 1640 (4th Dep't 2011); *see also People ex rel. Santoro v. Hollins,* 273 A.D.2d 829 (4th Dep't 2000); *People ex rel. Dell v. Walker,* 186 A.D.2d 1043, 1043–44 (4th Dep't 1992). Petitioner has therefore failed to exhaust his ineffective assistance of counsel claim. 6

6          Respondent also argues that the ineffective assistance of counsel claim is unexhausted because petitioner did not parse out and present to the New York courts the portions of his claim that rely on his attorney's failure to meet with him before the hearing and object to the allegedly inadequate notice of the proceeding, thereby alerting the state courts of the constitutional basis of his claim. *Dkt. No. 11 at 9–10.* Although petitioner presented his ineffective assistance of counsel claim to the state courts by citing state law, it is well settled that the state and federal standards governing such a claim are materially different. *Cornell v. Kirkpatrick,* 665 F.3d 369, 376 (2d Cir.2011). Accordingly, petitioner did not fairly present this claim to the state courts, thereby providing an additional ground upon which the court could conclude that petitioner's ineffective assistance of counsel claim

was never fairly presented to the state courts prior to commencement of this proceeding. *See Cornell,* 665 F.3d at 376 ("[A petitioner]'s mere mention of 'ineffective assistance of counsel' in a filing in the Appellate Division, without more, is insufficient to alert the New York courts to the possible federal basis of that claim.").

Petitioner's due process claim is similarly unexhausted. There is nothing in petitioner's state-court briefs suggesting that, by referencing the concept of due process, he intended to set forth a constitutional basis for his claim, especially in light of his reliance on New York Executive Law § 259. *Dkt. No. 12–2 at 15–18.* The mere incantation of the phrase "due process" is insufficient to give rise to a finding that the state courts were placed on notice that petitioner intended to advance a federal constitutional claim. *See Grady v. LeFevre,* 846 F.2d 862, 864 (2d Cir.1988) (finding that the mere reference to "constitutional rights" did not alert the state court to a confrontation clause issue); *Petrucelli v. Coombe,* 735 F.3d 684, 688 (2d Cir.1984) ("[A] mere statement that 'due process' rights have been violated does not necessarily give rise to a specific federal constitutional claim. 'Due process,' like 'fair trial,' can be a catchphrase used by habeas petitioners as part of an allegation about any type of trial court error, including errors in rulings based on state law.").

While the petitioner has failed to exhaust both of the claims now before this court, it is clear that he is no longer in a position to do so and his claims therefore should be considered to have been both exhausted and procedurally defaulted. *See Aparicio,* 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an absence of available State corrective process under § 2254(b)(1) (B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). The dismissal of petitioner's Article 70 state court habeas petition was the subject of both an appeal to the Appellate Division and an application for leave to appeal to the New York Court of Appeals, and he is now foreclosed from further state court appeals with regard to that petition. *Id.* at 91. While it is true that petitioner could have presented at least certain portions of his ineffective assistance of counsel claim in an Article 78 proceeding, he is now precluded from doing so because the time for the commencing such a proceeding is four months from the date of the accrual of the claim, a deadline that has long since passed. 9 N.Y.C.R.R. § 8006.2(a); *see also Matter of Sumpter v. Supreme Court of Bronx Cnty.,* 76 A. D.3d 1155, 1156 (3d Dep't 2010) (dismissing the

petitioner's request for a writ of habeas corpus because he failed to perfect his administrative appeal).

**\*5** Based upon petitioner's procedural default, this court may not engage in habeas review of his claims unless he demonstrates either (1) good cause for and actual prejudice resulting from his procedural default, or (2) that "he is actually innocent." [7] *Bousley v. United* States, 523 U.S. 614, 622 (1998); *accord, Clark v. Perez,* 510 F.3d 382, 393 (2d Cir.2008). To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Examples of such external mitigating circumstances can include ineffective assistance of counsel, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." [8] *Murray,* 477 U.S. at 488 (quotation marks and citations omitted); *Coleman,* 501 U.S. at 753. When a petitioner has failed to establish adequate cause for his procedural default, the court need not proceed to examine the issue of prejudice because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *accord, Long v. Lord,* No. 03–CV–0461, 2006 WL 1977435, at \*6 (N.D.N.Y. March 21, 2006) (McCurn, J.).

[7]   Because petitioner in this case has not claimed actual innocence and there is nothing before me to suggest that this exception applies, I have not addressed it in this report. *See Clark,* 510 F.3d at 393 (addressing cause and prejudice because "actual innocence [was] not in issue").

[8]   It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error .' " *Coleman,* 501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488).

In this case, petitioner has failed to establish adequate cause for his procedural default, thereby obviating the need to examine the issue of prejudice. Accordingly, I recommend a finding that petitioner has procedurally forfeited the right to pursue both of the claims set forth in his petition. [9]

[9]   Notwithstanding this recommendation, I have addressed the merits of petitioner's contentions out of an abundance of caution.

**B.** *AEDPA Standard of Review on the Merits*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 1398, 1400 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore,* —— U.S. ——, 131 S.Ct. 733, 739 (2011); *Thibodeau v. Portuondo,* 486 F.3d 61 (2d Cir.2007) (Sotomayor, J.). The AEDPA " 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.' " *Felker v. Jackson,* —— U.S. ——, 131 S.Ct. 1305, 1307 (2011) (*per curiam* ) (quoting *Renico v. Lett,* 559 U.S. 766, 773 (2010)); *accord, Cullen,* 131 S.Ct. at 1398. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.' " *Schriro v. Landrigan,* 550 U.S. 465, 473–74 (2007) (quoting § 2254(e)(1)); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro,* 550 U .S. at 473 (citing *Williams v. Taylor,* 529 U.S. 362, 410 (2000)).

**\*6** As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen,* 131 S.Ct. at 1398; *Wash. v. Schriver,* 255 F.3d 45, 52–55 (2d Cir.2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001).

## C. *Ineffective Assistance of Counsel*

In his first habeas claim, McCullough argues that he did not receive effective assistance of counsel from Attorney Young, the attorney assigned to represent him at the revocation hearing. *Dkt. No. 1 at 4.*

### 1. *Clearly Established Supreme Court Precedent*

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Wash.,* 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz,* 497 F.3d 178, 198 (2d Cir.2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance ." *Strickland,* 466 U.S. at 690; *accord, Rivas v. Fischer,* —— F.3d ——, No. 13–2974, 2015 WL 1036047, at *15 (2d Cir. Mar. 11, 2015). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland,* 466 U.S. at 689; *see also Rivas,* 2015 WL 1036047, at *15 (noting the court's "scrutiny of counsel's performance must be 'highly deferential' " (quoting *Strickland,* 466 U.S. at 689)).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see*

*also Murden,* 497 F.3d at 198 ("Under *Strickland, a* defendant must show that ... there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted))

### 2. *State Court Determination*

In his determination in connection with McCullough's state court habeas petition, Acting Supreme Court Justice James P. Punch concluded that petitioner's ineffective assistance of counsel claim was without merit because, based on his review of the plea agreement and statements made at the parole revocation hearing, petitioner's attorney provided "adequate representation." *Dkt. No. 12–1 at 12.*

### 3. *Contrary to or Unreasonable Application of Controlling Supreme Court Precedent*

**\*7** As was discussed above, to establish the denial of effective assistance of counsel as guaranteed by the Constitution and judged according to the standard set forth in *Strickland, a* petitioner must show that his counsel's conduct fell below an objective standard of reasonableness, and that, but for they attorney's substandard performance, the outcome would have been different. Petitioner in this matter has made neither of these showings. Although it is true that New York Executive Law § 259–i(3)(f)(iii) provides that both the alleged parole violator and counsel "shall be given written notice of the date, place and time of the hearing ... at least fourteen days prior to the scheduled date," a requirement that was not satisfied in this case, petitioner has failed to demonstrate how he was prejudiced by Attorney Young's failure to object to the untimely notice. As respondent argues, even assuming Attorney Young did interpose an objection on this ground, the appropriate remedy would have been adjournment of the hearing. *See People ex rel. Smith v. N.Y. State Bd. of Parole,* 131 A.D.2d 401, 403 (1st Dep't 1987) (finding that, where the petitioner was not provided adequate notice pursuant to Executive Law § 259–i, adjournment of the hearing was required, notwithstanding that the hearing would then have been deemed untimely). By regulation, final revocation hearings must be held within ninety days of a waiver of the preliminary hearing. 9 N.Y.C.R.R. § 8005.17(a). Because the preliminary waiver hearing occurred on May 13, 2009, a revocation hearing could have been adjourned until, at the latest, August 11, 2009. Petitioner has not demonstrated, or even suggested, how an adjournment would have produced a different result.

Similarly, petitioner has not demonstrated any prejudice with respect to his claim that Attorney Young attended the parole revocation hearing without a "strategy or plan." *Dkt. No. 1 at 4.* A review of the strategy employed by petitioner's counsel, encouraging McCullough to plead guilty, reveals no departure from the norm. With the assistance of Attorney Young, petitioner was able to enter into a plea bargain whereby the ALJ would recommend an additional two-year period of incarceration in exchange for petitioner's plea of guilty to the two charges accusing him of violating the parole restrictions concerning curfew and movement outside of Onondaga County. *Dkt. No. 12–1 at 26–27.* Given the nature of petitioner's underlying conviction and his prior criminal history, I am unable to conclude that the plea agreement was unreasonable or that Attorney Young's counseling petitioner to enter into that agreement was objectively unreasonable.

Petitioner has also failed to provide any indication as to an alternative strategy that could have been employed, had Attorney Young met with him prior to the day of the revocation hearing. As was discussed above, to prevail on his ineffective assistance of counsel claim, petitioner must demonstrate that a different result was attainable absent Attorney Young's conduct.

**\*8** In sum, the state court's finding that petitioner was not denied effective assistance of counsel was neither contrary to nor an unreasonable application of the Supreme Court's *Strickland* standard.

### D. *Due Process Claim*
The second claim raised by the petitioner asserts a deprivation of process, based upon the Division of Parole's failure to provide him with adequate notice of the revocation hearing. *Dkt. No. 1 at 4.*

#### 1. *Clearly Established Supreme Court Precedent*
The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment applies to the revocation of parole. *Morrissey v. Brewer,* 408 U.S. 471, 481–82 (1972); *see also Greenholtz v. Inmates of the Neb. Penal & Corr. Complex,* 442 U.S. 1, 9 (1979). Individuals in parole revocation proceedings, however, are not entitled to "the full panoply of rights" that are accorded in a criminal prosecution. *Morrissey,* 408 U.S. at 480 (citing *Mempa v. Rhay,* 389 U.S. 128 (1967)). Rather, given that the state has an "overwhelming" interest in being able to return parole violators to prison "without the burden of a new adversary

criminal trial," the Due Process Clause merely requires that an "informal hearing" be held "to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 483–84. Thus, the Supreme Court has delineated the following "minimum requirements of due process" to include

(a) written notice of the claimed violations of parole;

(b) disclosure to the parolee of evidence against him;

(c) opportunity to be heard in person and to present witnesses and documentary evidence;

(d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

(e) a 'neutral and detached' hearing body; and

(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489; *accord, Calhoun v. N.Y. State Div. of Parole Officers,* 999 F.2d 647, 652 (2d Cir.1993) (holding that the state may not revoke a person's parole without providing minimum due process protections which include "a preliminary probable cause hearing ..., as well as a final revocation hearing, at which a parolee may present evidence and confront witnesses"). *Morrissey* represents the "clearly established Federal law" for purposes of federal habeas review. 28 U.S.C. § 2254(d)(1). Further, the Second Circuit has determined that the procedures set forth in New York Executive Law § 259–i generally satisfy due process. *Calhoun,* 999 F.2d at 652 (citing N.Y. Exec. Law § 259–i(3) (f)).

#### 2. *State Court Determination*
In his decision in connection with McCullough's state court habeas petition, Acting Supreme Court Justice Punch found, in essence, that the question of whether petitioner's counsel received timely notice was "irrelevant" based upon statements by the attorney that he had in fact received adequate notice of the hearing and there were no outstanding issues concerning the notice. *Dkt. No. 12–1 at 11–12.* On appeal, the Fourth Department concluded that any argument regarding the alleged untimeliness of the revocation hearing notice was waived. *People ex rel. McCullough,* 82 A.D.3d at 1640.

### 3. *Contrary to or Unreasonable Application of Controlling Supreme Court Precedent*

**\*9** In this case it is unnecessary to address the question of whether the state courts' determination regarding the due process claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent. Regardless of whether the notice received by petitioner of his hearing was constitutionally adequate, petitioner waived any defect by his guilty plea during the revocation hearing. *See Johnson v. Carlsen,* No. 09–CV–0066, 2010 WL 1817343, at *7 (N.D.N.Y. Mar. 29, 2010) (Homer, M.J.), *report and recommendation adopted by* 2010 WL 1837779 (N.D.N.Y. May 5, 2010) (Suddaby, J.), (concluding that, even assuming the petitioner's constitutional rights were violated by an untimely final parole revocation hearing, the petitioner "waived all hearing defects by pleading guilty") (citing *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.1996)). Absent a basis to conclude that the plea was not knowing and voluntary, *Johnson,* 2010 WL 1817343, at *7,-and none has been presented—McCullough's plea of guilty waived any claim that he was deprived of due process by the short notice of the revocation hearing. Having carefully reviewed the transcript of the revocation hearing and petitioner's plea allocution, I find no basis to conclude that his counselled plea was not knowing and voluntary. In this regard, it is worth noting that petitioner took full responsibility for the parole violations during the revocation hearing. *Dkt. No. 12–1 at 28–29.* Indeed, he admitted to making "bad decision[s]" and acknowledged his need to "follow[ ] the guidelines and regulations established by parole." *Id.* Accordingly, I recommend a finding that petitioner has waived his right to raise a due process claim with regard to the notice of the revocation hearing.

### D. *Certificate of Appealability*

To appeal a final order denying a request for habeas relief by a state prisoner, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1) (A); *see also* Fed. R.App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio,* 726 F.3d 144, 152 (2d Cir.2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2); *Hoffler,* 726 F.3d at 154. A

petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; ... a court could resolve the issues in a different manner; or ... the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4 (1983) (quotation marks and alterations omitted); *see also Slack v. McDaniel,* 529 U.S. 473, 478 (2000) ("[A] COA should issue ... if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."). In this instance, I conclude that the petitioner has not made a substantial showing of the denial of a constitutional right and therefore recommend against the issuance of a COA.

### IV. *SUMMARY AND RECOMMENDATION*

**\*10** Because the two claims raised by the petitioner in this matter are both unexhausted and procedurally barred based upon his failure to properly present those claims to the highest court in New York State prior to commencing this proceeding, they are subject to dismissal in this procedural basis. Addressing the merits, and applying the deferential standard required under the AEDPA, I conclude that petitioner has failed to establish a basis to conclude he received constitutionally deficient representation during the course of the revocation hearing, and further that, by his plea of guilty, he waived the procedural defects associated with the revocation hearing, including any claim of inadequacy of the notice provided to him. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is hereby further

RECOMMENDED, based upon my finding that McCullough has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 37 of 130
McCullough v. NYS Div. of Parole, Not Reported in F.Supp.3d (2015)
2015 WL 2340784

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: March 23, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2340784

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 227757
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

John SANTIAGO, Petitioner,

v.

David UNGER, Superintendent, Respondent.

No. 12–CV–00133MAT.
|
Jan. 22, 2013.

**Attorneys and Law Firms**

John Santiago, Attica, NY, pro se.

Paul B. Lyons, Office of New York State Attorney General,
New York, NY, for Respondent.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

**\*1** *Pro se* Petitioner John Santiago ("Petitioner") has filed
a petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254 challenging the constitutionality of certain
administrative decisions made by the New York State
Division of Parole with respect to the revocation of his parole.

**II. Factual Background and Procedural History**

**A. Petitioner's State Court Convictions and
Sentencing**

On March 18, 1992, Petitioner was sentenced in Bronx
County Supreme Court to an aggregate indeterminate
sentence of 8 to 24 years upon his convictions for first-
degree manslaughter, second-degree criminal possession of
a weapon, and second-degree assault. *See* Pet., Attach. [1]
at p. 1; Resp't Ex. A at p. 14; [2] Resp't Ex. E at Aff.
¶ 5. He was released from New York State Department
of Correctional Services ("DOCS") [3] custody to parole
supervision on September 6, 2000, having served over eight
years, the minimum term of his indeterminate sentence. *See*
Resp't Ex. A at p. 14.

[1]     In between pages 5 and 6 of the pre-printed
form habeas petition, Petitioner inserts a seven
page typed document entitled "Statement of Facts,
Procedural History & Grounds One and Two."
This document is separately paginated with the
numbers 1–7. To avoid confusing the page numbers
of the form habeas petition with those of the
attached document, the Court hereinafter refers
to the document entitled "Statement of Facts,
Procedural History & Grounds One and Two" as
the "attachment" to the habeas petition.

[2]     The Court refers to the CM/ECF pagination for this
Exhibit, as it is comprised of numerous numbered
and unnumbered pages.

[3]     DOCS and the New York State Division of Parole
have since been merged to form the Department of
Corrections and Community Services.

On July 8, 2006, while still on parole, Petitioner was arrested
in connection with new criminal charges. *See* Resp't Ex.
A at p. 14; Resp't Ex. E at Ex. A. In February 2007, he
pleaded guilty in Rockland County Court to second-degree
attempted criminal possession of a forged instrument, a
felony, and on March 22, 2007, he was sentenced, as a
second felony offender, to an indeterminate term of 1½
to 3 years imprisonment. *See* Pet., Attach. at 1; Resp't
Ex. A at p. 14; Resp't Ex. E at Aff. ¶¶ 3–4. The Rockland
County Court directed that Petitioner's 2007 sentence be
served "consecutive to any undischarged determinate or
indeterminate sentence." *See* Resp't Ex. A at p. 14; Resp't
Ex. E at Ex. H (Sentencing Mins. at p. 4). Petitioner's parole was
automatically revoked by operation of law as a result of his
2007 conviction. *See* Resp't Ex. E at Aff. ¶ 5; *see also* New
York Executive Law ("Executive Law") § 259–i(3)(d)(iii).

Petitioner was received back into DOCS custody on March
29, 2007, and was certified as entitled to 264 days of jail
time credit. *See* Pet., Attach. at 1; Resp't Ex. E at Ex.
A. At the time Petitioner was received back into custody,
DOCS determined that Petitioner still owed 8 years, 2
months, and 20 days against the undischarged maximum
term of his 1992 indeterminate sentence. That undischarged
term was aggregated with the maximum term of Petitioner's
2007 indeterminate sentence pursuant to Penal Law §
70.30(1)(b). *See* Resp't Ex. A at p. 14. Accordingly, on or
about April 9, 2007, DOCS calculated Petitioner's parole
eligibility, conditional release, and maximum expiration dated
with respect to his multiple sentences as January 4, 2008,

2013 WL 227757

December 27, 2013, and September 24, 2017, respectively. *See* Resp't Ex. A at p. 14 and attached Ex. B (DOCS Legal Date Computations). On June 1, 2007, the Division of Parole issued a Notice of Final Declaration of Delinquency stating that Petitioner had been found delinquent on his conditions of parole as of July 8, 2006 (in connection with his arrest and conviction for a felony while on parole) and that his maximum expiration date had been extended, pursuant to Executive Law § 259–i(3)(d)(iii), based on the undischarged indeterminate sentence from his prior conviction. *See* Resp't Ex. A at attached Ex. J (Notice of Final Declaration of Delinquency by Board of Parole).

**\*2** On October 31, 2007, Petitioner appeared before the Parole Board in anticipation of his January 4, 2008 parole eligibility date. At the conclusion of the hearing, parole was denied and Petitioner was directed to be held for an additional 24 months, with his next Parole Board appearance scheduled for November 2009. *See* Pet., Attach. at 1; Resp't Ex. A at p. 14–15 and attached Exs. C (Parole Board decision), K (transcript of 10/31/07 parole board hearing).

Petitioner then filed an administrative appeal with the Division of Parole Appeals Unit (hereinafter "Appeals Unit"). *See* Resp't Ex. A at p. 15 and attached Ex. D (Letter from Appeals Unit); Resp't Ex. E at Ex. G. In a letter to Petitioner dated November 13, 2007, the Appeals Unit acknowledged that it had received Petitioner's notice of appeal on that date and that the latest date for submitting documentation for perfecting his appeal was March 13, 2008. *See* Resp't Ex. A at Ex. D (Letter from Appeals Unit). On appeal,[4] Petitioner did not challenge "the parole denial itself," but rather sought modification of the "excessive" 24–month hold imposed by the Parole Board. *See* Resp't Ex. E at Ex. G, ¶ 1. The Appeals Unit failed to issue a determination on Petitioner's appeal. *See* Pet., Attach. at 1–2; Resp't Ex. A at p. 15 and attached Ex. F.

[4]   The cover page of Petitioner's appeal is date-stamped by the Appeals Unit, indicating that it was "[r]eceived March 13, 2008." *See* Resp't Ex. E at Ex. D (cover page).

### B. The Article 78 Proceeding

Petitioner subsequently filed in Franklin County Supreme Court a *pro se* petition dated December 23, 2008, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), challenging "the decision by the division of parole at [his] parole eligibility hearing on October 31, 2007

which denied parole[ ] and scheduled a re-appearance parole eligibility date for Nov. 2009." *See* Resp't Ex. A at p. 9, ¶ 3.

In the Article 78 petition, Petitioner argued that the approximately 8–year undischarged maximum term from his 1992 indeterminate sentence was entirely separate from his 2007 sentence of 1½ to 3 years, such that he would "not commence the undischarged [8–year] term [from the 1992 sentence] until he complete[d] the 3 year maximum on the new [2007] sentence." *See* Resp't Ex. A at p. 19–20. Petitioner argued that, although the Parole Board properly calculated his January 4, 2008 parole eligibility date based on the 1½ year minimum term under his 2007 sentence, the Board improperly scheduled his next Parole Board hearing for November of 2009, even though that was approximately six months after his 2007 sentence had already expired on July 4, 2009. *See* Resp't Ex. A at p. 20. Petitioner argued further that when he completed the maximum term of his 2007 sentence on July 4, 2009, the Division of Parole should hold a final revocation hearing under Executive Law § 259–i(3)(f)(x) with respect to the 8–year undischarged term of his 1992 sentence, at which hearing he would be given a "delinquent time assessment." *See* Resp't Ex. A at p. 20–21.

**\*3** Petitioner also claimed that his equal protection rights were violated because of the different parole revocation procedures afforded a parolee convicted of a new felony, depending on whether the new conviction was in New York or in another state. *See* Resp't Ex. A at p. 21–25.

Respondent, the Division of Parole, moved to dismiss the petition on the ground that Petitioner had failed to exhaust his administrative remedies. *See* Resp't Ex. B. On June 23, 2009, the Franklin County Supreme Court denied Respondent's motion, finding that the issues raised in Petitioner's Article 78 proceeding "were not cognizable in the context of an administrative appeal from a parole denial determination." Resp't Ex. D. The Division of Parole then filed its answer to the petition, and Petitioner filed a Reply. *See* Resp't Exs. E, F. On November 4, 2009, the county court directed the Division of Parole to address Petitioner's equal protection claim. *See* Resp't Ex. G. The Division of Parole filed an affirmation in response, and also asserted that all of Petitioner's claims were moot in light of Petitioner's second appearance before the Parole Board in 2009.[5] By Order dated February 24, 2010, the Franklin County Supreme Court dismissed the Article 78 proceeding. *See* Resp't Ex. J. Petitioner moved for reargument, which was denied on July 22, 2010. *See* Resp't Exs. K, M.

5    While Petitioner's Article 78 proceeding was pending, Petitioner reappeared before the Parole Board on September 15, 2009, and again parole was denied and Petitioner was ordered held for an additional 24 months, with Petitioner's next parole board appearance scheduled for September 2011. *See* Resp't Ex. H at Aff. ¶¶ 6–7.

**C. Appeal of the Article 78 Petition**
Petitioner filed a *pro se* appeal with the Appellate Division, Third Department, asserting the same two claims that he raised in his Article 78 petition. *See* Resp't Ex. N. On January 27, 2011, the Appellate Division unanimously affirmed the judgment dismissing Petitioner's Article 78 proceeding. *See Matter of Santiago v. Alexander,* 80 A.D.3d 1105, 916 N.Y.S.2d 529 (3d Dep't 2011) (Resp't Ex. Q). Petitioner applied to the Appellate Division for permission to appeal to the Court of Appeals (Resp't Ex. R), and Petitioner's motion was denied on March 25, 2011 (Resp't Ex. S). Petitioner then applied directly to the Court of Appeals for leave to appeal, which was denied on June 28, 2011. *See Santiago,* 17 N.Y.3d 705 (2011) (Resp't Ex. V).

**D. The Federal Habeas Corpus Petition**
On January 10, 2012, Petitioner filed the instant habeas petition, wherein he seeks relief on what he has termed a "constitutional and statutory due process violation" and an "equal protection violation" related to the revocation of his parole. *See* Pet., Grounds One–Two (Dkt. No. 1). As Petitioner has pled these claims in the instant proceeding, they appear to be the same two claims upon which he sought relief in his Article 78 petition. Respondent filed an Answer and Memorandum in Opposition to the habeas petition on August 17, 2012 (Dkt.Nos.7, 8), and Petitioner filed a Reply thereto on October 1, 2012 (Dkt. No. 11). At the request of the Court, Respondent submitted supplemental papers addressing the issue of timeliness (Dkt.Nos.13–15), and Petitioner submitted a supplemental Reply (Dkt. No. 16).

**\*4**  For the reasons stated below, habeas corpus relief is denied and the petition is dismissed.

**III. Venue**
By Order dated May 10, 2012, this Court (John T. Curtin, D.J.) instructed Respondent, *inter alia,* to "address whether the Western District of New York is an appropriate and/ or most convenient forum for this proceeding." *See* Order dated 05/10/12 (Dkt. No. 3) at 2–3. Respondent submits that venue is appropriate for the instant proceeding in the Western District, but that venue is also appropriate in the Northern District. *See* Resp't Mem. of Law at p. 12–13.

28 U.S.C. § 2241(d) provides that:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

28 U.S.C. § 2241(d).

Because Petitioner was in custody at the Wyoming Correctional Facility, which is located in Wyoming County, at the time he filed his habeas petition, venue is appropriate in the Western District of New York. *See* 28 U.S.C. § 2241(d); 28 U.S.C. § 112(d). To the extent petitioner seeks to challenge the outcome of the parole proceedings that took place at the Franklin Correctional Facility, which is located in Franklin County, venue would also be proper in the Northern District of New York. *See* 28 U.S.C. § 112(a); *Brooks v. Strack,* No. 98–CV–6528 (JG), 1999 U.S. Dist. LEXIS 13199, 1999 WL 672949, at \*4–5 (E.D.N.Y. Aug.25, 1999) (where habeas petition challenged parole hearing procedures, venue was proper where parole hearing took place and where parole decision was made); *see also Robinson v. Atkinson,* No. 03

2013 WL 227757

Civ. 5176, 2004 WL 1798129, at *4–5 (S.D.N.Y. Aug.5, 2004).

Although venue is appropriate in both this District and the Northern District, the Court sees no need to transfer the petition to the Northern District. As Respondent points out, the convenience of witnesses is not an issue in this case, nor do the parties dispute that Petitioner's claims were adjudicated on the merits in the state court. *See* Resp't Mem. of Law at 13. Although, the parties dispute the timeliness of the petition (*see* discussion, *infra* ), the Court is in receipt of the state court records relevant to the instant habeas proceeding and the parties have extensively briefed the issues necessary for this Court to resolve the habeas petition. Thus, the proximity of the judicial forum to Franklin County, the location of the parole proceedings, is not necessary to the adjudication of this petition.

## IV. Timeliness of the Petition

**\*5** Respondent asserts untimeliness as an affirmative defense to the petition. *See* Resp't Mem. of Law, Point I. Petitioner maintains that the petition is timely, arguing that Respondent miscalculated the date the statute of limitations began to run. Petitioner also argues that, even assuming *arguendo* Respondent's calculation is correct, said calculation does not properly take into account tolling. *See* Pet'r Reply at ¶¶ 5–13. Supplemental papers were submitted by the parties with respect to the issue of timeliness, and the issue is ripe for review. After having reviewed the parties' submissions, the Court finds that the petition is timely.

### (A) AEDPA's One–Year Statute of Limitations

A state prisoner may file a § 2254 petition no later than one year from the last of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In cases such as this where a habeas petition challenges a decision of the state Parole Board, or challenges an allegedly unauthorized action by DOCS, the applicable start-date is found in 28 U.S.C. § 2244(d)(1)(D), "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Cook v. N.Y. State Div. of Parole,* 321 F.3d 274, 280–81 (2d Cir.2003) (quotations omitted); *accord Jenkins v. Farrell,* No. 07 Civ. 6937, 2009 WL 1616008, at *2–3 (S.D.N.Y. June 9, 2009) (applying § 2244(d)(1)(D) to habeas claim regarding an alleged unauthorized action by DOCS). The Second Circuit held in *Cook* that the "factual predicate" for a petitioner challenging a parole revocation "is the revocation of his parole." *Id.* (finding that "[t]he limitations time therefore did commence at a time set by the statute, when that 'factual predicate [for his] claim ... could' reasonably have been discovered, i.e., when Cook was notified that the administrative decision to revoke his parole had become final") (ellipsis and alteration in original).

Here, the Division of Parole issued a Notice of Final Declaration of Delinquency on June 1, 2007, stating that Petitioner had been found to be delinquent on his conditions of parole and that his maximum expiration date had been extended. *See* Resp't Ex. A attaching Ex. J. On October 31, 2007, Petitioner appeared before the Parole Board, and his parole was denied and his next parole board appearance scheduled for November 2009. On November 13, 2007, Petitioner filed a notice of appeal with the Appeals Unit, and timely perfected that appeal on March 13, 2008. *See* Resp't Ex. A attaching Exs. D, E. The Appeals Unit failed to issue a determination within the four-month time period set forth in 9 N.Y.C .R.R. § 8006.4[c]. Thus, July 13, 2008—four months after the Appeals Unit failed to act on Petitioner's appeal— was the last possible date on which Petitioner could have been notified that the Parole Board's decision had been affirmed on administrative appeal. Petitioner had one year from that date, or until July 13, 2009, to file his habeas petition.

**\*6** In opposition to the petition, Respondent submits that the statute of limitations commenced four months after November 13, 2007 (the date Petitioner filed his notice of appeal with the Appeals Unit), or on March 13, 2008.

*See* Resp't Mem. of Law at 18. The Court rejects this argument insofar as 9 N.Y.C.R.R. § 8006.4[c], which governs the determination of administration appeals, provides, in pertinent part, that, "[s]hould the appeals unit fail to issue its findings and recommendation within four months of *the date that the perfected appeal was received,* the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken." 9 N.Y.C.R.R. § 8006.4[c] (emphasis added). In this case, the perfected appeal was received by the Appeals Unit on March 13, 2008, and the appeal was therefore deemed exhausted four months after that on July 13, 2008 when the Appeals Unit failed to act on the appeal. [6]

[6]    The Court notes that, although Respondent has not alleged so, June 1, 2007 or October 31, 2007, could also be considered as the date when Petitioner was notified that the administrative decision(s) relating to the revocation of his parole became final. Nonetheless, given the complex factual background of this case, the Court gives Petitioner the benefit of the later date, and finds that July 13, 2008, is the appropriate date that the statute of limitations began to run.

Turning to Petitioner's argument, he offers a different start date altogether, and maintains that the statute of limitations began to run on June 28, 2011, the date the New York Court of Appeals denied leave to appeal the dismissal of his Article 78 petition. *See* Pet'r Reply at p.. 4–12. Petitioner reasons that June 28, 2011 is the appropriate start date for the limitations period because the claims raised in the Article 78 petition are "completely unrelated to the parole board's discretionary release appeal of October 2007." Supplemental Reply at p. 3, ¶ 8. The Court finds Petitioner's argument unavailing and his position curious, given that the record clearly reflects that he challenged the Parole Board's October 31, 2007 determination in his Article 78 proceeding, and given that, as a conceptual matter, a state proceeding brought pursuant to CPLR Section 78 is one which specifically allows plaintiffs in New York to challenge administrative determinations. *See* Resp't Ex. A at p. 9, ¶ 3. Accordingly, the Court rejects Petitioner's argument and finds no basis to conclude that the statute of limitations commenced on June 28, 2011.

**(B) Statutory Tolling**

Title 28, Section 2244(d) provides that the limitations period is tolled in "[t]he time during which a properly filed

application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. 2244(d)(2); *see also Fernandez v. Artuz,* 402 F.3d 111, 116 (2d Cir.2005).

Here, Petitioner filed an Article 78 petition on December 23, 2008, 163 days after the statute of limitations had begun to run on July 13, 2008, which tolled the statute of limitations. *See e.g.,* *McPherson v. Burge,* No. 9:06 Civ. 1076 (GTS/VEB), 2009 U.S. Dist. LEXIS 126805, 2009 WL 1293342, at *7 (N.D.N.Y. January 27, 2009) (one-year statute of limitations statutorily tolled during pendency of habeas petitioner's filed Article 78 proceeding). In other words, at the time he filed the Article 78 petition, Petitioner had 202 days remaining in the one-year limitations period.

 *7 The limitations period was tolled during the pendency of the Article 78 petition, or until June 28, 2011, when the New York court of appeals denied leave to appeal the dismissal of the Article 78 petition. The limitations period then ran for another 196 days, from June 28, 2011, until January 10, 2012, the date of Petitioner's federal habeas petition. Accordingly, because the limitations period ran for an additional 196 days, and Petitioner had 202 days remaining in the limitations period, the habeas petition was timely filed.

Petitioner maintains that, in addition to the Article 78 petition, a motion to vacate, filed on or about November 30, 2007, [7] in Rockland County Court challenging his 2007 conviction also tolled the statute of limitations. *See* Pet'r Reply at p. 11–12; Pet'r Supplemental Reply at p. 1–2. Respondent counters, and argues that said motion, which challenged solely Petitioner's underlying conviction in Rockland County for second-degree attempted criminal possession of a forged instrument on the basis that he received ineffective assistance of counsel in conjunction with his guilty plea, did not work to toll the limitations period because it did not challenge the administrative decisions of the Division of Parole revoking Petitioner's parole. *See* Resp't Supplemental Mem. of Law. The Court agrees.

[7]    The supplemental records submitted by Respondent (Dkt. No. 15) reflect that the county court denied motion and Petitioner sought leave to appeal, which was denied on August 25, 2008.

Section 2244(d) (2) "by its plain language" tolls "the limitations period only for those applications that seek review of part or all of the pertinent judgment." *Collins v.*

*Ercole,* 667 F.3d 247, 251 (2d Cir.2012); *see also Hodge v. Greiner,* 269 F.3d 104, 107 (2d Cir.2001). Here, the "pertinent judgment" is the Division of Parole's administrative decisions related to the revocation of Petitioner's parole. Petitioner did not directly challenge said decisions in his motion to vacate. Rather, in his motion, Petitioner sought to vacate his 2007 judgment of conviction on the basis that he received ineffective assistance of counsel with respect to his guilty plea. In short, Petitioner's motion to vacate did not constitute an application for review of the "pertinent judgment" within the meaning of § 2244(d)(2). As Respondent points out, *Collins* is instructive on this issue. *See* Resp't Supplemental Mem. of Law at 3–4. In *Collins,* the habeas petitioner argued that his Article 78 petition—which asserted that the DOCS had wrongly determined that his most recent sentence should run consecutively, rather than concurrently, to a separate previous sentence—tolled the AEDPA statute of limitations. *See Collins,* 667 F.3d at 250. The Court of Appeals rejected this argument, finding that the "Petitioner did not challenge any aspect of his 2001 conviction or sentence. Rather, he argued that DOCS ... wrongly determined that his unchallenged 2001 sentence should run consecutively, rather than concurrently, to a previous unchallenged sentence imposed pursuant to a separate conviction for robbery." *Id.* "An application seeking such relief," the Court concluded, "is not an application for review of the judgment itself" within the meaning of § 2254(d)(2). *Id.* at 251. Here, Petitioner's motion to vacate challenging his 2007 judgment of conviction on the basis of ineffective assistance of counsel did not seek review or reconsideration of the pertinent judgment so as to toll the statute of limitations under § 2254(d)(2).

**\*8** The Court now turns to the merits of the petition, and finds that habeas corpus relief is not warranted.

**V. Exhaustion**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(b)(1)(A); *see, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 843–44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *accord, e.g., Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

In order to exhaust claims stemming from a denial of parole under New York law, a habeas petitioner must first file an administrative appeal with the Division of Parole's Appeals

Unit. *Morel v. Thomas,* No. 02 CV 9622(HB), 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n. 3 (S.D.N.Y. June 26, 2003) (citing N.Y. Comp.Codes. R. & Regs. tit. 9, § 8006.1). If that appeal is denied, he must seek relief in New York State Supreme Court pursuant to CPLR Article 78. *Id.* (citing *Desire v. New York Division of Parole,* 2001 U.S. Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001)). Assuming his Article 78 petition is denied, the inmate must then appeal the denial to New York's intermediate appellate court, the Appellate Division. *See Morel,* 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n. 3 ("Morel did appeal his denial to the Appeals Unit, and he also filed an appeal in New York Supreme Court pursuant to Article 78.).

Here, Petitioner properly raised his habeas claims in the state courts. Petitioner filed an administrative appeal with the Division of Parole's Appeals Unit, which was timely perfected on March 13, 2008. *See* Resp't Ex. A at attached D, E. The Appeals Unit did not rule on the appeal, and the appeal was therefore deemed exhausted after four months. *See* 9 N.Y.C.R.R. § 8006.4[c]. Petitioner filed an Article 78 petition, which was denied. Petitioner then appealed the denial, which was denied. He sought leave to appeal, which was denied by the New York Court of Appeals on June 28, 2011. *See* Resp't Exs. N, Q, R, S, V. Accordingly, Petitioner's claims are exhausted and are properly before this Court.

**VI. The AEDPA Standard of Review**

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In this case, Petitioner's claims were adjudicated on the merits in the state court, and the AEDPA standard of review therefore applies. Under that standard, Petitioner's claims are meritless.

**VII. Analysis of the Petition**

**1. Due Process Claim**

**\*9** At ground one of the petition, Petitioner claims that he is entitled to habeas relief on the basis of a "constitutional and statutory due process violation." In support of this claim, he

sets forth various arguments all of which revolve around and/or involve the allegedly improper revocation of his parole. Specifically, he argues that the process afforded him by the State of New York did not comport with the requirements of due process set forth in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), insofar as he was deprived of a final parole revocation hearing. *See* Pet., Attach. at 3–5; Pet'r Reply at p. 13–33; *see also* Pet'r Supplemental Reply. As discussed below, this claim is meritless.

Initially, to the extent Petitioner's "due process" claim is based upon and/or derived from perceived violations of state law—namely particular sections of New York's Executive Law—the claim is not cognizable on federal habeas review and is denied on that basis. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law"); *Vasquez v. Walker,* 2004 U.S. Dist. LEXIS 4830, 2004 WL 594646, at *4 (S.D.N.Y. Mar.25, 2004) ("[v]iolations of state statutory rights are not reviewable by federal habeas courts").

Similarly, Petitioner's claim that the State's failure to comply with the two-step process set forth in *Morrissey* violates his federal due process rights, said claim is also meritless and provides no basis for habeas relief. In *Morrissey v. Brewer,* 408 U.S. at 482, the Supreme Court held that the requirements of due process apply to the revocation of parole. The Court established two criteria with regard to the process that is due. First, there must be a preliminary hearing "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485. Second, there must be a revocation hearing, if desired by the parolee, that "lead[s] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488.

In the instant case, Petitioner claims that he was not provided with a final hearing in violation of the second-step of the process set forth in *Morrissey.* Petitioner, however, was not provided a final hearing because, under New York law, his conviction on a new felony charge automatically required revocation of his parole. *See* Executive Law § 259–i(3)(d)(iii) ( "when a parolee ... has been convicted of a new felony committed while under his present parole ... and a

new indeterminate sentence has been imposed, the board's rules shall provide for a final declaration of delinquency."). Under such circumstances, due process does not require a final hearing. In *Alevras v. Neubert,* 727 F.Supp. 852 (S.D.N.Y.1990), the court discussed the import of the *Morrissey* decision in light of New York's Executive Law provisions. Speaking of the requirements in *Morrissey,* the court held:

> **\*10** Those requirements were set forth in the context of parolees suffering revocation based on charges made by their parole officers, and theretofore not established as true by any court or administrative body. In *Black v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985), ... the Court stated that *Morrissey* did not consider the hearing requirements of "a revocation proceeding in which the fact finder was required by law to order incarceration upon finding that the defendant had violated a condition of ... parole.... Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue ... parole.

*Alevras,* 727 F.Supp. at 853.

Because revocation is based upon a conviction on new felony charges, "the requirements of establishing probable cause and then an actual violation of parole have been satisfied by the [individual's] convictions. The requirement that [he] have an opportunity to show 'that circumstances in mitigation suggest that the violation does not warrant revocation,' [as set out in *Morrissey* ] has been made unnecessary by the New York State Legislature's determination that revocation should be automatic when the parolee is convicted of a felony while on conditional release." *Id.* Under these circumstances, there is no need to conduct a final hearing. *Keyes v. Juul,* 270 F.Supp.2d 327, 329 (E.D.N.Y.2003) (Where, as here, a parolee is arrested and convicted of a new crime, the need for a final hearing to protect a parolee's due process rights by determining if the parolee has in fact "violated one or more of the conditions of release in an important respect" evaporates because the requirements of due process are satisfied either by the trial underlying the parolee's conviction or waived by his plea of guilty). These statutory provisions have withstood constitutional challenge. *See Alevras,* 727 F.Supp. at 853 ("[t]here is nothing constitutionally improper in the Legislature's determination."); *People ex rel. Maggio v. Casscles,* 28 N.Y.2d 415, 418, 322 N.Y.S.2d 668, 271 N.E.2d 517 (1971) ("The conviction of another crime ... is

adequate, in and of itself, to support a revocation, and, in such cases, a new inquiry is hardly necessary."); *Pickens v. Butler,* 814 F.2d 237, 239 (5th Cir.1987) ("*Morrissey* did not hold that a state is prohibited from declaring that parole will be automatically revoked for serious violations such as conviction of a felony.")); *People ex rel. Harris v. Sullivan,* 74 N.Y.2d 305, 308, 546 N.Y.S.2d 821, 545 N.E.2d 1209 (1989) (Under New York Law, a parolee convicted of committing a new felony and sentenced to an indeterminate term of imprisonment is not entitled to a final revocation hearing because they are subject to revocation of parole by operation of law without any hearing.).

In this case, Petitioner's federal due process rights under *Morrissey* were not violated when the Division of Parole failed to conduct a final parole revocation hearing subsequent to his 2007 conviction. The record clearly demonstrates—and Petitioner does not dispute—that he was convicted of a new felony in 2007 and was sentenced to an indeterminate term of 1½ to 3 years imprisonment. The 2007 felony was committed while he was on parole stemming from his 1992 conviction, and his parole was therefore revoked by operation of law. Since Petitioner was therefore not entitled to a final revocation hearing, his claim that his parole was not properly revoked because he never had such a final hearing is necessarily without merit.

 **\*11**  Accordingly, Petitioner's claim is meritless and does not warrant habeas relief. It cannot be said therefore that the state court's adjudication of this claim contravened or unreasonably applied clearly established Supreme Court law. The claim is denied in its entirety.

### 2. Equal Protection Claim

At ground two of the petition, Petitioner claims that his equal protection rights were violated. Specifically, he claims that New York parolees who are convicted of a new felony in New York (such as himself) do not receive a final parole revocation hearing, while New York parolees who are convicted of a new felony in another state are given a parole revocation hearing to determine whether and for how long they should be returned to prison. *See* Pet., Attach. at 5–7; Pet'r Reply at p.. 34–37. As discussed below, this claim is meritless.

As an initial matter, the Court notes that Petitioner frames this claim in the habeas petition as an equal protection violation and expressly refers to it as such in paragraph 33 of his Reply. However, in the section of his Reply entitled "Reply to Respondent's Opposition–Point II" (paragraphs 33–

36), he appears to be raising several of the same arguments that he raised in his due process claim, namely, that the State's failure to conduct a final parole revocation hearing violated his constitutional rights under the second-step set forth in *Morrissey.* To the extent he is raising the same issues/arguments he raised in his due process claim, but has simply "repackaged" them under the guise of an alleged equal protection violation, said issues/arguments have already been addressed (*see* discussion *supra* ) and found to be meritless. To the extent he is raising a Fourteenth Amendment equal protection claim, that claim is meritless.

Under the Equal Protection Clause of the Fourteenth Amendment, "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). However, "[a] legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). "Thus, the Supreme Court has held that—unless the legislature utilizes a classification that is inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right—[courts must] exercise only a limited review power over the acts of legislatures." *Hayden v. Paterson,* 594 F.3d 150, 169 (2d Cir.2010) (citing *Plyler,* 457 U.S. at 216–17). "Under this limited review power, [courts] will uphold forms of state action under the Equal Protection Clause so long as the classification at issue bears some rational relationship to a legitimate state interest." *Id.* (citing *Plyler,* 457 U.S. at 216). Here, the rational basis standard applies, because Petitioner does not allege purposeful discriminatory treatment based on his membership in a suspect class or an infringement upon the exercise of his fundamental rights. Thus, the relevant legislation "is presumed to be valid." *Cleburne,* 473 U.S. at 440.

 **\*12**  Petitioner has not rebutted that presumption of rationality. Moreover, in *People v. ex rel. Harris v. Sullivan,* 74 N.Y.2d 305, 546 N.Y.S.2d 821, 545 N.E.2d 1209 (1989), the New York Court of Appeals found a rational basis for the particular parole revocation statute at issue here. The *Harris* court explained that, "[a]s a general rule, a parolee detained in New York for allegedly violating parole is entitled to a preliminary hearing within 15 days of the execution of the parole warrant (Executive Law § 259–i[3][c][i] ) and to a final

revocation hearing within 90 days of the preliminary hearing (Executive Law § 259–i[3][f][i] ).” *Harris,* 74 N.Y.2d at 308, 546 N.Y.S.2d 821, 545 N.E.2d 1209. However, “a parolee convicted of committing a new felony and sentenced to an indeterminate term is not even entitled to a final revocation hearing,” but is rather “subject to revocation of parole by operation of law without any hearing.” *Id.* “The dispensation from hearing is the exception from the general requirement and cannot, under its enacted wording, be applicable against parolees subsequently convicted and sentenced from an out-of-State felony. Unlike a parolee convicted for a new felony and serving a new New York indeterminate sentence, the parolee who served a felony sentence outside New York still needs a new release consideration date to be set by the Parole Board by way of the timely final parole revocation hearing procedural mechanism.” *Id.* at 309, 546 N.Y.S.2d 821, 545 N.E.2d 1209. Indeed, the *Harris* court explained the legislative basis for this exception:

> The legislative history of subdivision (3)(d)(iii) of Executive Law § 259–i—the revocation hearing exemption—confirms that the exception was intended to dispense with the requirement of a final revocation hearing in only the one instance where the hearing served no apparent purpose—that is, where the parolee has been convicted of a new felony and has been sentenced to a new indeterminate sentence. In those circumstances, a final parole revocation hearing would be a vain gesture because no fact finding by the Board of Parole would be necessary to ascertain that the parolee has in fact violated the conditions of his parole. The court of conviction and sentence would have already indisputably established that reality. Additionally, when a parolee is convicted of a new New York felony and a new indeterminate sentence is imposed, a final parole revocation hearing is not needed to fix the parolee's reappearance before

the Board because the violator's reappearance date is automatically fixed by law at the time of sentencing for the new felony (Penal Law § 70.00[3]; § 70.25[2–a]; Executive Law § 259–i[3][d] ).

*Harris,* 74 N.Y.2d at 310, 546 N.Y.S.2d 821, 545 N.E.2d 1209.

Given the rational basis of the statute challenged by Petitioner, the state court's adjudication of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law. The claim is therefore denied in its entirety.

## VI. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied and the petition is dismissed. Because Petitioner has failed to make “a substantial showing of a denial of a constitutional right,” 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. *See, e.g., Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–113 (2d Cir.2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**\*13** Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## IT IS SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2013 WL 227757

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 47 of 130

Mothersell v. Hanna, Not Reported in Fed. Supp. (2017)

2017 WL 4444040

2017 WL 4444040
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert MOTHERSELL, Petitioner,
v.
William J. HANNA, III, Respondent.

9:17-CV-0771 (GTS/DEP)
|
Signed 10/04/2017

**Attorneys and Law Firms**

ROBERT MOTHERSELL, 87003682, Jamesville
Correctional Facility, 6660 East Seneca Turnpike, Jamesville,
NY 13078, Petitioner, pro se.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**I. INTRODUCTION**

**\*1** On July 14, 2017, Robert Mothersell–who is presently
confined at the Onondaga County Jail–filed a petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No.
1. On the same date, the Court administratively closed this
action due to petitioner's failure to pay the statutory filing fee,
or to seek leave to proceed in forma pauperis, but afforded
petitioner the opportunity to comply with this requirement.
Dkt. No. 2 at 1-2.

On July 19, 2017, the Court received petitioner's payment of
the statutory filing fee and reopened this action. Dkt. No. 4.

For the reasons that follow, this action is dismissed without
prejudice.

**II. THE PETITION**

Petitioner does not appear to be challenging a judgment
of conviction, but rather a decision revoking his probation
related to an earlier conviction and resentencing him to nine
months incarceration. *See* Dkt. No. 1. More specifically,
in his petition, petitioner asserts that, in February 2017, in
the Syracuse City Court, he pleaded guilty to one count of
criminal possession of stolen property and one count of petit

larceny. *Id.* at 1. [1] He was sentenced to three years probation
on each charge, to be served concurrently. *Id.*

[1]     Page references to the petition refer to the
        pagination generated by CM/ECF, the Court's
        electronic filing system.

On April 3, 2017, petitioner was arrested and charged
with criminal possession of a controlled substance in the
fourth degree. *Id.* at 5. On April 12, 2017, members of the
Onondaga County Probation Department's "warrant squad
broke into [petitioner's] house and arrested him for a
probation violation," predicated on his arrest for "possession
of drugs." *Id.* at 3.

On July 10, 2017, petitioner appeared in the Syracuse City
Court, and the judge advised him that the "drug charge"
had been "dismissed." *Id.* at 8. However, petitioner was
charged with violating his probation based on an alleged
failed urine test that he provided to his probation officer in
February 2017 (although he was not charged with a violation
until after "they broke into his house on April 12, 2017").
*Id.* at 10. A hearing was held on an unspecified date, at
which petitioner's probation officer testified with respect to
petitioner's urine sample. *Id.* at 10. After the hearing, the
Syracuse City Court "sentenced petitioner to 9 months and 6
months to run consecutively for an alleged dirty urine." *Id.*
at 8.

Petitioner did not appeal from the judgment revoking his
probation and resentencing him to jail. *Id.* at 2. On or about
May 7, 2017, petitioner filed a petition for state habeas corpus
relief in the Onondaga County Supreme Court. *Id.* at 3. That
petition was dismissed on May 12, 2017. Dkt. No. 1-1, Order
and Judgment of Dismissal. Additionally, on or about May 25,
2017, petitioner filed another petition for state habeas corpus
relief in the Onondaga County Supreme Court. Dkt. No. 1 at
4. That petition was dismissed in June 2017. Dkt. No. 7, Order
and Judgment of Dismissal. [2]

[2]     Petitioner filed a copy of the Onondaga County
        Supreme Court's Order and Judgment of Dismissal
        on July 21, 2017. Dkt. No. 7.

**\*2** Based upon these allegations, petitioner appears to assert
that he is entitled to habeas relief on the following grounds:
(1) he was subjected to an unconstitutional search and seizure
when "members of the warrant squad broke into [his] house"
and arrested him for a probation violation without a warrant;

2017 WL 4444040

(2) his due process rights under the Fourteenth Amendment of the U.S. Constitution and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), were violated, because he did not receive a "preliminary hearing," was not afforded notice of his alleged violation(s) of probation, and was not given the opportunity to present evidence or confront adverse witnesses; (3) the sentence imposed on resentencing was cruel and unusual; and (4) his rights under the Fourth and Fourteenth Amendments were violated because he was resentenced based on a failed urine test, despite the fact that he was not charged with the failed test until he was rearrested, and his probation officer testified that he performed only a screening test (and not a confirmation test). Dkt. No. 1 at 5-10.

Setting aside the state court petitions referenced above, petitioner asserts that he has not pursued his claims by way of an appeal in state court because doing so "would result in petitioner sitting in jail until his scheduled release on Jan[uary] 12, 2018." *Id.* at 1; *accord, id.* at 7 ("Petitioner believes that an appeal would result in him being held for a longer period."), 9 ("Petitioner feels an appeal will result in him doing the remainder of the Court's sentence."), 10 ("Petitioner believes it would result in him sitting in jail another 6 months."), 12 ("Petitioner feels the appeals process would result in him completing his sentence.").

### III. DISCUSSION

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 148-49 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To properly exhaust his claims, petitioner must do so both procedurally and substantively. Procedural exhaustion requires that he raise all claims in state court prior to raising them in a federal habeas corpus petition. Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). In other words, petitioner "must give the

state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985).

Based upon petitioner's papers (including petitioner's express assertions that he has not filed an appeal from the judgment and resentencing), no state court has decided his claims, much less the highest state court capable of reviewing them. Moreover, even assuming that a state habeas action is a proper method to challenge a revocation of probation, petitioner has not indicated whether he appealed the dismissal of the petitions filed in state court. *See* Dkt. No. 1.

There is no basis on the record before this Court to conclude that there is an absence of available State corrective process (*e.g.*, where there is no further state proceeding for a petitioner to pursue) or circumstances exist that render that state court process ineffective to protect petitioner's rights (*e.g.* where further pursuit would be futile). 28 U.S.C. § 2254(b)(1)(B)(i), (ii); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000). Petitioner has available state court remedies, and once his appeals and/or other state court collateral proceedings, if necessary, are exhausted, he may then seek federal habeas relief. *See, e.g., Simone v. Lewin*, No. 1:05-CV-8925, 2006 WL 2468624 at *1-5 (S.D.N.Y. Aug. 11, 2006) (deciding federal habeas petition brought pursuant to section 2254 in which the petitioner challenged the revocation of probation after he was sentenced for the violation, appealed from the judgment, the Appellate Division affirmed, and the New York Court of Appeals denied leave to appeal further).

**\*3** Petitioner's only argument related to his calculated decision to *not* exhaust his claims in state court is that, as he speculates, he would finish serving his sentence before his appeals are complete. However, these circumstances do not render exhaustion in his state court remedies futile. Futility exists only "when there is a 'complete absence of a mechanism for correction of the alleged unconstitutional violation' or the petitioner is 'precluded by an unconscionable breakdown from using the process that exists.' " *Jordan v. Bailey*, 985 F. Supp. 2d 431, 437 (S.D.N.Y. 2013), *aff'd*, 570 Fed.Appx. 42 (2d Cir. 2014) (summary order) (quoting *Francis S. v. Stone*, 995 F. Supp. 368, 380 (S.D.N.Y. 1998)). "In other words, there must be *no opportunity* to obtain redress in state court or the state process must be

*so clearly deficient* as to render *futile* any effort to obtain relief." *Jumpp v. Cournoyer*, No. 3:15-CV-0892, 2016 WL 3647146, at *3 (D. Conn. June 30, 2016) (citing *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam)). While an inordinate delay attributable to the state court process may present circumstances suggesting that the corrective process is "ineffective to protect the rights of the" petitioner under 28 U.S.C. § 2254(b)(1)(B)(ii), nothing in the petition supports the conclusion that petitioner's efforts to seek relief have been, or will be, subject to a delay that would excuse him from exhausting his state court remedies. *See, e.g., Jumpp*, 2016 WL 3647146, at *3 (rejecting petitioner's arguments that the processing of his case was "unreasonably delayed," and noting that, "[e]ven if his claims do become moot [upon his release from prison], neither the State's inherent adjudication process or its processing of this particular case is at fault"); *cf. Hill v. Mance*, 598 F. Supp. 2d 371, 375-76 (W.D.N.Y. 2009) (rejecting respondent's argument that petitioner's claims were unexhausted, concluding in the alternative that exhaustion was not required, and noting that "[e]xhaustion is not mandated where the state consideration would be either futile or where state procedures do not provide *swift review* of petitioner's claims") (emphasis added) (internal quotation marks omitted); *see generally Nordahl v. Rivera*, No. 08-CV-5565, 2010 WL 9444862, at *2 (S.D.N.Y. Apr. 7, 2010), *adopted*, 2013 WL 1187478, at *1 (S.D.N.Y. Mar. 21, 2013) ("Petitioner believes he is entitled to immediate release, and that any delay in a court's consideration of his claim may prevent him from actually achieving release before his sentence is complete. However, this is not a situation where the available state court remedy can be said to be futile–if Petitioner can present an appropriate claim to the state court, the state court is in an equal position with the federal court to grant a remedy. The potential state court remedy is not futile, merely because the conclusion of Petitioner's sentence of incarceration ... may arrive before consideration of his Petition in this Court is complete.").

Based on the foregoing, the petition is dismissed without prejudice to re-filing once petitioner has pursued and exhausted all the claims he wants to raise in the state courts. *See Diguglielmo v. Senkowski*, 42 Fed.Appx. 492, 496 (2d Cir. 2002) ("[B]ecause the New York Court of Appeals has not yet had an opportunity to address DiGuglielmo's federal claims, comity requires that we allow that court an opportunity to do so. Accordingly, we dismiss DiGuglielmo's petition without prejudice. This will allow DiGuglielmo to pursue any procedural options available to him in New York state court,

and then take whatever steps may be appropriate to return to federal court if necessary.") (footnote omitted).[3]

3    The Court notes that if petitioner's claims are unsuccessful in state court, a subsequent habeas petition should not run afoul of the "second or successive petition" limitations because this petition is being dismissed for failure to exhaust and not on the merits. *Burton v. Stewart*, 549 U.S. 147, 155 (2007) (per curiam) (citing *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)).

Additionally, under the AEDPA, habeas petitions challenging a state-court judgment of conviction are subject to a one-year statute of limitations. The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A). When petitioners do not seek certiorari in the United States Supreme Court, a state conviction becomes final ninety (90) days after the New York Court of Appeals denied leave to appeal. *Gonzales v. Thaler*, 565 U.S. 134, 148-49 (2012); *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009). Properly filed state court applications for relief operate to toll the limitations period if those applications are filed before the one-year limitations period expires. 28 U.S.C. § 2244(d)(2); *Saunders*, 587 F.3d at 548. The tolling provision excludes from the limitations period only the time that the state relief application remains undecided, including the time during which an appeal from the denial of the application was taken. *Saunders*, 587 F.3d at 548. The AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). To warrant equitable tolling, a petitioner must show " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. § 2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, —— U.S. ——, 133 S. Ct. 1924, 1928, 1931 (2013). To avoid any problems with the statute of limitations, petitioner should

promptly re-file his federal habeas petition, if necessary, upon exhaustion of his state remedies.

## IV. CONCLUSION

**\*4  WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available state court remedies; and it is

**ORDERED** that no certificate of appealability ("COA") shall issue in this case because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). [4] Any further request for a COA must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is

[4]     *See* Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) ("§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' ").

**ORDERED** that the Clerk serve a copy of this Decision and Order on petitioner in accordance with the Local Rules.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4444040

---

    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 51 of 130

Jumpp v. Cournoyer, Not Reported in Fed. Supp. (2016)

2016 WL 3647146

2016 WL 3647146
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Junior JUMPP, Petitioner,
v.
Anne M. COURNOYER and
Scott Semple, Respondents.

Civil Case Number: 3:15-cv-00892 (VLB)
|
Signed 06/30/2016

**Attorneys and Law Firms**

Junior Jumpp, Uncasville, CT, pro se.

Neil D. Parille, Attorney General's Office, Hartford, CT,
Joanne Sulik, Chief State Attorney Office, Civil Litigation
Bureau, Rocky Hill, CT, for Respondents.

**Memorandum of Decision**

Vanessa L. Bryant, United States District Judge

*1 Junior Jumpp, pro se and incarcerated at the Cheshire
Correction Institution in Cheshire, Connecticut, petitions for
writ of habeas of corpus pursuant to 28 U.S.C. § 2254.
He argues that the sentencing court erred by relying on
his youthful offender adjudication and that his counsel was
ineffective for failing to raise this claim. Jumpp raises both
of these claims in a state habeas corpus proceeding, but that
proceeding remains pending. The issue is whether the state
proceeding is so deficient as to render futile Jumpp's efforts to
obtain relief. It is not. The delay is attributable to Jumpp, not
the State. Jumpp waited 569 days after his conviction became
final before raising his claims (in a second habeas corpus
petition). He waited almost a year to respond to the requests
necessary to address his motion for appointment of counsel.
He has not filed any motions to expedite the state proceeding.
These claims could have been remedied more efficiently by
appeal or motion to correct an illegal sentence. The Court thus
dismisses the petition without prejudice to refiling once the
claims are exhausted in state court.

**Factual and Procedural Background**

In Connecticut state court, Jumpp pleaded guilty to
threatening and illegal possession of a firearm in a motor
vehicle. *State v. Jumpp*, Dkt. No. H14H-CR110653409-S,
*available at* http://www.jud2.ct.gov/crdockets (last visited
June 30, 2016). On January 12, 2012, he was principally
sentenced to five years' imprisonment, execution suspended
after three years' imprisonment, to be followed by three years'
probation. *Id.* Jumpp did not appeal, so his conviction became
final on February 1, 2012. ECF No. 1 at 3. While Jumpp
was released twenty-two months after being sentenced, he
later pleaded guilty to violating the terms of his probation and
in March 2015 was sentenced to two years' imprisonment.
*Jumpp*, Dkt. No. H14H-CR11-0653409-S.

Jumpp argued in a state habeas petition that the sentencing
court imposed an illegal sentence by sentencing him to a
term of incarceration over the legal limit, a claim not relevant
here. ECF No. 23-5 at 22–29. The petition was dismissed, *id.*
at 34, and the state appellate courts affirmed the dismissal,
*Jumpp v. Comm'r of Corr.*, 153 Conn.App. 912 (2014), *aff'd*,
315 Conn. 913 (2015). In a second habeas petition dated
August 23, 2013, Jumpp argued, in relevant part, that the
sentencing court erred by relying on his youthful offender
adjudication and that his counsel was ineffective for failing to
raise this claim. ECF No. 23-11 at 31. Shortly after receiving
his filing, the state court referred his case to the Office of the
Chief Public Defender. ECF No. 23-12. But Jumpp failed to
respond to that office's "repeated requests" for information.
ECF No. 23-13. Jumpp's counsel filed a notice of appearance
in September 2014. *See Jumpp v. Warden, State Prison*, TSR-
CV134005680-S, *available at* http://www.civilinquiry.jud.ct.gov/
GetDocket.aspx (last visited June 30, 2016). The pleadings
closed in February 2015, and a trial was scheduled for October
2016. *Id.* The last docket activity occurred in January 2016.
*Id.*

*2 In a Section 2254 petition dated May 15, 2015, Jumpp
raises the claims raised in his second state habeas petition—
those are, the sentencing court erred by relying on his youthful
offender adjudication and that his counsel was ineffective for
failing to raise this claim.[1] ECF Nos. 1, 1-1, 1-2. Jumpp
acknowledges that these claims are unexhausted, but argues
that "they scheduled a trial date for (3) yrs later to purposely
prolong the case under 10/31/2016 when it should not take
that long as filed in 2013." ECF No. 1 at 6. In response to this
Court's order to show cause, Jumpp reiterates his argument
that three years is too long to adjudicate his claims.[2] ECF
No. 8. Respondent moves to dismiss for failure to exhaust,
arguing that the delay is not substantial enough to constitute

Jumpp v. Cournoyer, Not Reported in Fed. Supp. (2016)

2016 WL 3647146

inordinate delay and that some of the delay is attributable to Jumpp. ECF No. 24 at 14–16. In opposition, Jumpp reiterates his objection and adds that his attack will be moot by the time the case proceeds to trial. ECF No. 26.

1      Respondent does not construe Jumpp to be raising a claim for ineffective assistance of counsel. ECF No. 24 at 11 ("In his petition, the petitioner raises a single ground for relief—that the sentencing court violated his constitutional rights by considering his youthful offender record when imposing the sentence."). The Court disagrees because Jumpp states "failure of due process and [double jeopardy] an[d] [ineffective] assistance counsel" in his state habeas petition, attached to his initial filings in this Court. ECF No. 1-2 at 25. This ineffective assistance claim is so intertwined with the clearly identified claim that liberal construction requires the Court to construe him to also be raising an ineffective assistance claim. Conversely, the Court does not construe Jumpp to be raising the other claims from his second state habeas petition because those claims are unrelated to his youthful offender adjudication, the only claim asserted in his form petitions. But even assuming that he is also raising those claims, it would not alter this Court's ruling because those claims are also pending in state court.

2      The Court's show-cause order also ordered him to explain why the Section 2254 petition should not be dismissed as time-barred. ECF No. 7. Contrary to the Court's initial calculation, the petition is timely because the Court was unaware of the earlier filed state habeas petition, filed before the expiration of the one-year deadline.

## Legal Discussion

A state habeas petitioner first must exhaust his state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). A constitutional claim is not exhausted until it has been "fairly presented" in state court. *Bierenbaum v. Graham*, 607 F.3d 36, 47 (2d Cir. 2010) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). A claim is fairly presented if the highest state court was appraised of both the factual and legal bases for the claim, such that "the nature of the claim" was likely to "alert the court to the claim's federal nature." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quotation

marks omitted). A claim remains unexhausted, rather than procedurally defaulted, if the petitioner can still raise his claim in state court. *See Galdamez v. Keane*, 394 F.3d 68, 73–74 (2d Cir.), *cert. denied*, 544 U.S. 1025 (2005).

**\*3** But the exhaustion requirement may be overcome if the petitioner establishes futility. Exhaustion is futile if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). In other words, there must be *no opportunity* to obtain redress in state court or the state process must be *so clearly deficient* as to render *futile* any effort to obtain relief. *See Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam). The Second Circuit has found that futility may arise in cases of inordinate delay. *See, e.g., Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991) (nine-and-one-half-years delay); *Mathis v. Hood*, 851 F.2d 612, 614 (2d Cir. 1988) (six-year delay). The Second Circuit has refused to set any definitive amount of time that would constitute sufficient delay. *Simmons v. Reynolds*, 898 F.2d 865, 870 (2d Cir. 1990). A district court in this Circuit also has found the futility exception applies when exhaustion would effectively moot the present claims for relief. *See Hill v. Mance*, 598 F. Supp.2d 371, 375-76 (W.D.N.Y. 2009). In both cases, however, the absence of state corrective process must be attributable to the state, not the petitioner. *Cf. Brown v. Scully*, 1987 WL 15901, at *2 (E.D.N.Y. Aug. 5, 1987).

The parties do not dispute that the claims are unexhausted, that those claims may be raised in state court, and that the process is now properly being utilized. The issue is whether Jumpp has demonstrated that the state corrective process is so clearly deficient as to render futile any effort to obtain relief. He has not. He offers two reasons, but neither are persuasive.

Jumpp first argues that a delay of three years is too long, implying both that the process was unreasonably delayed and that it was unreasonably long. Jumpp fails on either count. The three-year delay cannot be attributed to the State. The state habeas court attempted to appoint counsel, yet Jumpp failed to respond to that office's "repeated requests" for information. Because of Jumpp's repeated lack of diligence in failing to prosecute his case by responding, counsel could not be appointed until September 2014, approximately a year after Jumpp first filed his petition. A trial is set for October 2016. The state habeas proceeding appears to be moving along at a normal pace: the pleadings were closed several months after Jumpp's counsel filed a notice

2016 WL 3647146

of appearance, a scheduling order setting an October 2016 trial date was issued, and there has been docket activity as recently as January 2016. The only delay apparent from the state court docket is the delay occasioned by Jumpp's failure to prosecute. Nothing on the record in the state proceeding indicates that the case did not proceed timely in the ordinary course.

The Court cannot say that two years is too long a period to resolve Jumpp's habeas petition. Jumpp raises more than one claim, and the state court has set a trial date, implying the need to resolve factual disputes. Congress has set a goal that federal courts resolve cases within three years of the date they are filed. 28 U.S.C. § 476(a)(3). Even with Jumpp's failure to prosecute for a year, the case is on schedule to be resolved within that time standard. By that standard, the State's disposition of a case within two years is imminently reasonable. Finally, Jumpp did not move to expedite his state case before invoking this Court's jurisdiction. *Cf. Mathis*, 851 F.2d at 614 (ruling that exhaustion would be futile because common law writ of *error coram nobis* could not remedy the state appellate delay).

 **\*4** Jumpp's second argument is that the current schedule effectively moots his claims. The Court disagrees, even assuming that Jumpp will be released from prison before his habeas proceeding goes to trial. *See Levine v. Apker,* 455 F.3d 71, 77 (2d Cir. 2006) (holding that case or controversy exists where favorable appellate decision might prompt district court to "modify the length of [defendant's] supervised release"). Even if his claims do become moot, neither the State's inherent adjudication process or its processing of this particular case is at fault. Jumpp waited 569 days after his conviction became final before raising his claims (in a second habeas corpus petition). He waited almost a year to respond to the requests necessary to address his motion for appointment of counsel. He has not filed any motions to expedite the state proceeding. These claims could have been remedied more efficiently by appeal or motion to correct an illegal sentence.

<u>Conclusion</u>

The Court dismisses the Section 2254 petition without prejudice to refiling upon exhaustion of his state court remedies. The Court denies a certificate of appealability because jurists of reason would not find this procedural ruling debatable. *See Slack v. McDaniel*, 529 U.S. 473 (2000). The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith.

IT IS SO ORDERED.

Dated at Hartford, Connecticut: June 30, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3647146

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   3

2010 WL 9444862
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Blane D. NORDAHL, Petitioner,

v.

Francisco RIVERA, Superintendent,
Wallkill Correctional Facility, Respondent.

No. 08 Civ. 5565(KMK)(LMS).
|
April 7, 2010.

### REPORT AND RECOMMENDATION

LISA MARGARET SMITH, United States Magistrate Judge.

**\*1  TO: THE HONORABLE KENNETH M. KARAS, UNITED STATES DISTRICT JUDGE**
*Pro se* petitioner, Blane Nordahl ("Petitioner"), files this petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction under Dutchess County Indictment Number # 73/03, based on his plea of guilty to one count of Burglary in the Second Degree (N.Y. Penal Law § 140.25(2)) and one count of Burglary in the Third Degree (N.Y. Penal Law § 140.20). Pet. at 1. On December 21, 2004, Petitioner was sentenced in the County Court of Dutchess to a determinate term of eight years with five years' post-release supervision for the Burglary in the Second Degree count and to a concurrent indeterminate term of three and one-half to seven years on the Burglary in the Third Degree count. Aff. in Answer to Pet. at 3. Petitioner is currently incarcerated in the Wallkill Correctional Facility.

Petitioner seeks habeas relief on four grounds: (1) that Petitioner's due process rights were violated when the state prosecutor used statements made during a federal plea agreement negotiation to acquire an indictment on the charges at issue in this habeas petition; (2) that the state prosecutor had no "lawful subject matter jurisdiction" over the information garnered from the federal plea negotiations; (3) that Petitioner's Fourth Amendment rights were violated by an unconstitutional search and seizure of his car by State authorities while Petitioner was in Federal custody; and (4) that Petitioner was denied the effective assistance of counsel. Pet. at 4; Petitioner's Mem. of Law at iv.

Petitioner moved to "delete" his second claim by Notice of Motion dated October 26, 2008. *See* Docket # 9. The motion was granted by the undersigned by memo endorsement dated November 20, 2008. *See* Docket # 12. This issue will be addressed further *infra.*

On March 9, 2010, the undersigned issued an Order staying consideration of the instant Petition because the last claim, asserting ineffective assistance of counsel, had not been exhausted by presenting it to the state courts, and granting Petitioner the opportunity to exhaust that claim. *See* Docket # 20. The claim is largely based on matters outside the trial record, and thus there is no record for this Court's consideration, and the claim could not be denied on the merits, as permitted under 28 U.S.C. § 2254(b)(2). Petitioner asserted in his Petition that this Court should ignore the exhaustion requirements because habeas corpus "is the only legal mechanism to remedy the Federal Constitutional Due Process violations." Petition at XVIII. The undersigned issued the Order staying the proceeding because the state court mechanism must be permitted to function, and no argument has been made that the state court process, available pursuant to N.Y.Crim. Proc. L. § 440.10, is ineffective for this purpose.

Petitioner then submitted a letter to the Court, dated March 17, 2010, in which he sought to "withdraw claim (4) ineffective assitance [sic] of counsel to the extent this Court does not believe it qualifies to be heard under 28 U.S.C. 2254(b)(1)(B)(ii)." *See* Docket # 22. That request was deemed a letter motion, and was granted. *See* Docket # 23. The undersigned then prepared to finalize the instant Report and Recommendation on the remaining two claims.

**\*2**  The Court is now confronted with further arguments on this issue from Petitioner. The first, entitled "Objection to Magistrate's Order," and directed to Your Honor, is, of course, not directed to the undersigned; nevertheless, it raises an issue not addressed in the Order staying consideration of the Petition. Specifically, Petitioner now asserts that the ineffective assistance of counsel claim was not raised "as a claim 'per se' because [Petitioner] had no intent for this to be a 'mixed petition.' " "Objection to Magistrate's Order dated March 20, 2010. [1] Petitioner asserts that the language of 28 U.S.C. § 2254(b)(1)(B)(ii) permits him to raise this unexhausted claim, along with the two other exhausted claims, because "circumstances exist that render such process ineffective to protect the rights of the appellant." 28 U.S.C. §

2254(b)(1)(B)(ii). It appears to the undersigned that Petitioner argues that the claim of ineffective assistance of counsel is a federal constitutional claim, and therefore properly should be considered in federal court, and that the ineffectiveness of the process is caused by the imminence of Petitioner's release from state custody. Thus, it appears that Petitioner is arguing that the circumstances which would prove the process ineffective is not any failure of the state court system of review, but the passage of time since his case was filed in federal court.

1        The Clerk is directed to docket the "Objection to Magistrate's Order" along with this Report and Recommendation.

The provision in § 2254(b)(1)(B)(ii) has been found to have applied to situations where "further pursuit [of the issue in state court] would be futile [.]" *Lurie v. Wittner,* 228 F.3d 113, 124 (2nd Cir.2000). This provision has been compared to a 1981 Supreme Court ruling which "cautioned that an exception to the exhaustion requirement is appropriate only where there is no opportunity to obtain redress in state court or where the state corrective procedure is so clearly deficient that any attempt to obtain relief is rendered futile. *See Duckworth v. Serrano,* 454 U.S. 1, 3 (1981); 28 U.S.C. § 2254(b)(1)(B)(ii) (exhaustion not required if 'circumstances exist that render such process ineffective to protect the rights of the applicant')." *Gaymon v. Strange,* No. 3:09 Civ. 982(JCH), 2009 WL 2590103, at * 1 (D.Conn. Aug. 18, 2009). However, the current situation is not similar to the situation where futility was found in *Brooks v. Jones,* 875 F.2d 30 (2nd Cir.1989), where a state court assigned counsel, and the Appellate Division of the state court failed to take any action for a period of many years on a petitioner's initial state court appeal, thereby effectively preventing him from pursuing his claims in federal court—and making any further pursuit of those state court remedies futile. Similarly, in *Morales v. Portuondo,* 154 F.Supp.2d 706 (S . D.N.Y.2001), the Court was satisfied that the petitioner had sufficiently established that there was a significant risk that he would suffer a miscarriage of justice, and that the record of the case was sufficient to permit the federal court to review the claim on habeas. Here, Petitioner believes he is entitled to immediate release, and that any delay in a court's consideration of his claim may prevent him from actually achieving release before his sentence is complete. However, this is not a situation where the available state court remedy can be said to be futile —if Petitioner can present an appropriate claim to the state court, the state court is in an equal position with the federal court to grant a remedy. The potential state court remedy

is not futile, merely because the conclusion of Petitioner's sentence of incarceration (but not his postrelease supervision term) may arrive before consideration of his Petition in this Court is complete. Moreover, and perhaps most importantly, the record on which Petitioner seeks redress for the claimed ineffective assistance of counsel consists of his own self-serving statements; there has been no hearing at which counsel or the prosecutor, or any other participant to the guilty plea proceeding, has been asked to testify about the contents of their off the record discussions with Petitioner, which constitute the gravamen of his claim here. The requirement for exhaustion of state court remedies before consideration by this Court would permit an appropriate record to be made, and would then allow the state court, and, if necessary, this Court, to consider the claim. Thus, although Petitioner has filed an "Objection" to the Stay Order (as that Order is not a Report and Recommendation it would be more appropriate to call the "Objection" an appeal, which requires a claim that the Order was clearly erroneous or contrary to law, *see* 28 U.S.C. § 636(b)(1)(A)), I respectfully recommend that Your Honor should find the "Objection" to the Stay Order to be without merit. The undersigned has granted Petitioner's request to withdraw the claim of ineffective assistance of counsel (Docket # 23), and this Report and Recommendation therefore considers only the remaining two counts. [2]

2        If Your Honor disagrees with my conclusion, I will be happy to prepare a further Report and Recommendation on the claims which Petitioner sought to withdraw.

*3  Petitioner has also now submitted a "Supplemental Reply to Letter Reply of March 17, 2010," and a "Supplemental Submission Concerning District Court Order." [3] Petitioner, despite his repeated efforts to elicit a Report and Recommendation expeditiously, now renews his requests for the Court to review and consider the Grand Jury minutes from his case, even though the undersigned has previously noted that "Most claims of defect in proceedings before a Grand Jury are waived by entry of a guilty plea[.]" *See* Docket # 10. Nothing has been offered by Petitioner which would alter the Court's assessment in that regard, and I respectfully recommend that Your Honor should decline to Order production of those Grand Jury minutes.

3        The Clerk is directed to docket the "Supplemental Reply to Letter Reply of March 17, 2010," as well as the "Supplemental Submission Concerning

District Court Order" at the time this Report and Recommendation is docketed.

Petitioner also now claims, for the first time, that "each claim [in the Petition] actually has several claims within them." Supplemental Reply to Letter Reply of March 17, 2010, at p. 2. He appears now to claim that his withdrawal of the second claim was not as to the entire claim, but was only "to the extent that I used 'prosecutorial misconduct[,]' a legal term not exhausted [.]" *Id* at p. 3.

The Petitioner's Motion sought "deletion of GROUND TWO (2) of the Petition on 'Prosecutorial Misconduct'." Notice of Motion, Docket # 9. The Petitioner's Affirmation filed with the Notice of Motion requested that the Court "issue an order permitting the claim of 'Prosecutorial Misconduct' in GROUND TWO (2) of the Petition be deleted." It also sought "to Amend my Petition by deleting the claim of 'Prosecutorial Misconduct' GROUND TWO (2)[,]" and "grant this motion and delete the claim of 'Prosecutorial Misconduct" GROUND TWO (2), as well as such other relief as may be just and proper." Affirmation, Docket # 9. Also attached was a "REQUEST TO AMEND PETITION BY DELETING THE CLAIM OF GROUND TWO (2)." In this document Petitioner made a "request to withdraw ground two (2) of the Petition." He also asked the Court to "grant the request to delete and excise Ground Two (2) of the Petition." Request to Amend Petition, Docket # 9. Finally, in the appended "Memorandum of Law," Petitioner sought to "withdraw and delete this issue of 'Prosecutorial Misconduct', GROUND TWO (2)." He followed this with a request that the Court permit him to "amend the Petition by deleting GROUND TWO (2) where it may relate to anything unexhausted." Finally, he concluded with "WHEREFORE, based on the foregoing reasons, Petitioner will respectfully request that the Petition be Amended by deleting GROUND TWO (2)." Memorandum of Law, Docket # 9.

The undersigned concluded, and respectfully recommends that Your Honor should also conclude, that this was a request to withdraw his second claim, which asserts that "THE STATE DISTRICT ATTORNEY HAD NO SUBJECT MATTER JURISDICTION OVER THE INFORMATION AND DOCUMENTATION FROM A PRIOR FEDERAL CASE WHICH WAS USED BEFORE THE DUTCHESS COUNTY. THESE ACTIONS AMOUNT TO A FORM OF PROSECUTORIAL MISCONDUCT." Petition at XII. To the extent that Petitioner now claims that there was a distinction between his jurisdictional claim in Ground Two and his prosecutorial misconduct claim, the undersigned finds that

there is no distinction. The Petitioner moved to withdraw the claim and that motion was granted. There is no reason at this stage to reconsider that issue, which, in any event, was not exhausted by presentation to the state courts, either on a claim of lack of jurisdiction or on a claim of prosecutorial misconduct. *See* Petition at ¶ 10.

**\*4** I therefore conclude, and respectfully recommend that Your Honor should conclude, for the reasons set forth herein, that the first claim raised in the Petitioner's habeas Petition is procedurally barred, but is addressed on the merits and should be denied; that the second claim has been withdrawn by Petitioner; that the third claim is barred from consideration on habeas review under the doctrine of *Stone v. Powell;* and that the final claim has been withdrawn by Petitioner, but it is in any event unexhausted and therefore not subject to review.

## I. *BACKGROUND*

### A. *The Crimes*

At some point between January 28, 2002, and January 30, 2002, Petitioner entered the home of Richard Jenrette, known as the Edgewater Estate, in Red Hook, New York, without the permission of Mr. Jenrette, by removing a glass panel from an exterior door. Resp't Ex. 8 (Plea) at 15–17; Resp't Ex. 11 (Resp't Appellate Brief) at 2. Thereafter, Petitioner stole approximately 112 pieces of silverware, including a tea set, a Tiffany compote and a vase, valued at $19,500. *Id.* At some point between January 27, 2002, and January 29, 2002, Petitioner entered the Wilderstein National Historic Site in Rhinebeck, New York, without permission, by removing a glass panel from an exterior door and another glass panel from an interior door. Resp't Ex. 8 (Plea) at 17–18; Resp't Ex. 11 (Resp't Appellate Brief) at 2–3. Thereafter, Petitioner stole silverware, a Tiffany Lamp, and various other silver objects valued at approximately $50,000 to $60,000. *Id.*

### B. *Procedural History*

On July 23, 2003, Petitioner was indicted in Dutchess County, indictment number 73/03, for one count of Burglary in the Second Degree (N.Y. Penal Law § 140.25(2)), two counts of Grand Larceny in the Third Degree (N.Y. Penal Law § 155.35), and one count of Burglary in the Third Degree (N.Y. Penal Law § 140.20). Aff. in Answer to Pet. at 2. Petitioner then, through his attorney, filed a pre-trial Omnibus Motion to dismiss on the ground, among others, that Grand Jury proceedings were defective because the prosecution had introduced evidence of a federal proffer agreement and a

statement subsequently made by Petitioner to the Grand Jury. *Id;* Resp't Ex. 4 (Omnibus Motion). Petitioner also sought suppression of physical evidence obtained from his car by New York State authorities while Petitioner was being held by federal authorities. *Id.* On July 29, 2004, Petitioner's Omnibus Motion to dismiss was denied with regard to the presentation of the federal proffer agreement and Petitioner's statement before the Grand Jury, as well as to that portion of the motion that sought suppression of physical evidence. Resp't Ex. 7 (Decision and Order) at 2–5.

On the eve of trial, specifically September 27, 2004, Petitioner pled guilty to the two burglary counts contained in the indictment. Resp't Ex. 8 (Plea) at 15–19. On December 21, 2004, Petitioner was sentenced to eight years incarceration with five years post-release supervision on the count of Burglary in the Second Degree and to three and one-half to seven years incarceration on the count of Burglary in the Third Degree, both sentences to run concurrently. Aff. In Answer to Pet. at 3. Petitioner appealed to the New York State Supreme Court, Appellate Division, Second Department and his judgment was affirmed by a Decision and Order dated December 4, 2007. Resp't Ex. 13. Petitioner then sought leave to appeal to the New York State Court of Appeals but leave was denied on April 10, 2008. *People v. Nordahl,* 10 N.Y.3d 842 (2008). On May 21, 2008, Petitioner timely filed this writ of habeas corpus, and he has no other petitions or appeals pending regarding this matter. Pet. at 5.

## II. DISCUSSION

### A. *Standard of Review*

**\*5** "Habeas review is an extraordinary remedy." *Bousley v. United States,* 523 U.S. 614, 621 (1998) (citing *Reed v. Farley,* 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *See Coleman v. Thompson,* 501 U.S. 722, 731 (1991); see also *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 190–91 (2d Cir.1982). The exhaustion requirement of

the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. *See Klein v. Harris,* 667 F.2d 274, 282 (1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. *Picard v. Connor,* 404 U.S. at 275–76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " *Jones v. Vacco,* 126 F.3d 408, 413 (2d Cir.1997) (quoting *Daye,* 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." *Daye,* 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. *Klein,* 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. *See Daye,* 696 F.2d at 186; *Irving v. Reid,* 624 F.Supp. 787, 789 (S.D.N.Y.1985).

2010 WL 9444862

**\*6** Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. *Klein,* 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. *Id.* (citing *Williams v. Greco,* 442 F.Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See *Klein,* 667 F.2d at 282; *see also Johnson v. Metz,* 609 F.2d 1052, 1055–56 (2d Cir.1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to N.Y.Crim. Proc. Law § 440.10). If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. *Id.* at 282–83.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while "... a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending...." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### B. Petitioner's Claims

**1. Petitioner's due process rights were not violated by the prosecution's use of statements Petitioner made in a federal proffer agreement before the Grand Jury that issued an indictment in his case.**

This same issue was raised in Point I of Petitioner's state court appellate brief (Resp't Ex. 10), and was also raised in Petitioner's application for leave to appeal to the Court of Appeals. *People v.. Nordahl,* 10 N.Y.3d 842 (2008). It has therefore been fully exhausted.

Petitioner contends that his due process rights were violated when the prosecution presented to the Grand Jury statements that Petitioner made under the protection of a federal proffer agreement which implicated him in the crimes charged in the burglary indictment. Pet. at 4. Petitioner claims that the use of such statements violates Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6), which render statements made during a plea negotiation inadmissable in any civil or criminal proceeding. Pet. Memo. of Law at viii. Respondent makes the argument that any defects or deficiencies during Grand Jury proceedings are not errors that are reviewable in a petition for a writ of habeas corpus and, even if such a matter was reviewable, it does not rise to the level of a constitutional violation. Resp't Mem. of Law at 3–5.

**\*7** The Appellate Division rejected this claim concluding that Petitioner had "forfeited judicial review of the alleged defect in the grand jury proceedings." Resp't Ex. 13 (Decision and Order) at 1–2; *People v. Nordahl,* 46 A.D.3d 579, 580 (2d Dept.2007). This conclusion was based on state court decisions which themselves were primarily based on the New York State Constitution and laws. This decision acts, therefore, as a procedural bar to consideration of the issue on habeas review. The decision of the Appellate Division presents an independent and adequate state procedural bar which prevents review by this court unless Petitioner establishes both cause and prejudice for the default. *Teague v. Lane,* 489 U.S. 288, 298 (1989). Petitioner has shown neither. Nevertheless, in an abundance of caution, I will address the merits of this claim.

"Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." *Davis v. Mantello,* 42 Fed. Appx. 488, 2002 WL 1032687 at \*490 (2d Cir. May 22, 2002). This is based on the theory that any defect in the grand jury proceeding is cured by the consideration of all the evidence and the subsequent conviction by the petit jury at trial. See generally *Lopez v. Riley,* 865 F.2d 30 (2d Cir.1989). "Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.* at 32.

In this case, Petitioner did not have a trial, but rather he elected to plead guilty to two of the charges in the indictment. Resp't Ex. 8 (Plea). The same analysis applies, however, and the fact that Petitioner pled guilty rather than going through a trial does not change the outcome in this case. "A plea of guilty is an admission of guilt and a waiver of all non jurisdictional defects." *United States v. Spada,* 331 F.2d 995 (2d Cir.1964). "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he [or she] is in fact guilty of the offense with which he is charged, he [or she] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). When a Petitioner admits his or her guilt in a guilty plea, "any errors in the grand jury proceeding [are] rendered harmless." *Jordan v. Dufrain,* No. 98 Civ 4166(MBM), 2003 WL 1740439 at *3 (S.D.N.Y. April 2, 2003);[4] *see also Alston v. Ricks,* No. 01 Civ. 9862(GWG), 2003 WL 42144 at *7 (S.D.N.Y. Jan. 7, 2003) ("[A] guilty plea extinguishes the ability of a habeas petitioner to raise a claim regarding misconduct before a grand jury"). Thus, when Petitioner pled guilty to the burglary counts in the indictment, he forfeited his right to raise any grand jury defects in the instant habeas petition.

[4]    In the spirit of Local Civil Rule 7.1(c), copies of the opinions with only WestLaw cites are attached to the copy of this Report and Recommendation which is sent to Petitioner.

**\*8**  Additionally, "[f]ederal habeas relief 'does not lie for errors of state law.' " *McCall v. Artus,* No. 06 CV 3365(SAS), 2008 WL 4501834 at *8 (S.D.N.Y. Sept. 29, 2008) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67 (1991)). In other words, "... a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). Therefore, for Petitioner to sustain his cause of action, he must show that any error of state law—such as defects in the state grand jury proceedings—" 'render[ed] petitioner's state trial fundamentally unfair' and thus violated his constitutional due process rights." *Herring v. Meachum,* 11 F.3d 374, 377 (2d Cir.1993) (quoting *Tribbitt v. Wainwright,* 540 U.S. 840 (5th Cir.1976).

Although Petitioner cites to the Federal Rules of Evidence and the Federal Rules of Criminal Procedure, Petitioner has not established that the alleged violation in the state

grand jury proceedings rises to the level of a constitutional deprivation, as is required in order for a federal court to review such a matter. "Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury." *Alexander v. Louisiana,* 405 U.S. 625, 633 (1972); *See also Fields v. Soloff,* 920 F.2d 1114, 1118 (2d Cir.1990) ("The Fifth Amendment right to indictment by a grand jury was not incorporated by the Due Process Clause of the Fourteenth Amendment, and, accordingly, does not pertain to the states"). Thus, Petitioner has not shown that defects in state grand jury proceedings rise to the level of a constitutional violation and I respectfully recommend that his claim be denied.

### 2. *Petitioner's second claim was withdrawn.*

By letter motion dated October 26, 2008, Petitioner asked that his second claim regarding Prosecutorial Misconduct be withdrawn. Docket # 9. The motion was granted and the letter was memo endorsed by the undersigned Judge on November 20, 2008. Docket # 12. Therefore, Petitioner's second claim will not be considered.

### 3. *Petitioner's Fourth Amendment claim is not reviewable under the Stone v. Powell doctrine.*

This same issue was raised in Point I of Petitioner's state court appellate brief (Resp't Ex. 10), and was also raised in Petitioner's application for leave to appeal to the Court of Appeals. *People v.. Nordahl,* 10 N.Y.3d 842 (2008). It has therefore been fully exhausted.

Petitioner's third asserted ground for relief is that his Fourth Amendment rights were violated when state authorities searched his car, which had been legally seized by federal authorities, while Petitioner was in federal custody. Petitioner's Mem. of Law at XIV–XVI. Respondent argues that Petitioner had a full and fair opportunity to litigate this claim in the state courts and, therefore it is not reviewable in a petition for a writ of habeas corpus. Resp't Mem. of Law at 6–9.

**\*9**  Petitioner's Fourth Amendment claim is automatically barred under the *Stone v. Powell* doctrine. In *Powell,* the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was

introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 482 (1976). *See also Capellan v. Riley,* 975 F.2d 67 (2d Cir.1992).

In this case, Petitioner was afforded two separate opportunities to address his Fourth Amendment issue. First, Petitioner made an omnibus pre-trial motion which included his Fourth Amendment claim and, second, Petitioner raised this same issue in his appellate brief. Resp't Ex. 4 (Omnibus Motion) at 13–15; Resp't Ex. 10 (Petitioner's Appellate Brief) at 44–47. In both instances, the court denied Petitioner's claim. Resp't Ex. 7 (Decision and Order) at 4–5 ("Any items seized or inventoried under [the federal] arrest were no longer in his custody or control and he had no reasonable expectation of privacy relative to them"); Resp't Ex. 13 (Decision and Order, Appellate Division) at 2 ("Further, the defendant had no reasonable expectation of privacy with regard to his property, which was seized and vouchered by federal authorities upon his arrest for violation of his parole"). I conclude, and respectfully recommend that Your Honor should conclude, that because the State provided Petitioner with "an opportunity for full and fair litigation" of his Fourth Amendment claim, Petitioner's argument for habeas relief based on such a claim must be denied.

### 4. *Petitioner's fourth claim was withdrawn.*

By letter motion dated March 17, 2010, Petitioner asked that his fourth claim regarding Ineffective Assistance of Counsel be withdrawn. Docket # 23. The motion was granted and the letter was memo endorsed by the undersigned Judge on March 22, 2010. Docket # 23. Therefore, Petitioner's fourth claim will not be considered.

### CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed. As the petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue. *Rodriguez v. Scully,* 905 F.2d 24 (2d Cir.1990) (*per curiam* ); *Alexander v. Harris,* 595 F.2d 87, 90–91 (2d Cir.1979). I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. § 1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438 (1962)

### NOTICE

Pursuant to 28 U.S.C. 5636(b)(1), as amended, and Fed.R.Civ.P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed.R.Civ.P. 6(e), or a total of seventeen (17) working days, *see* Fed.R.Civ.P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

**\*10** Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 9444862

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 866869
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Rafael PANTOJA, Petitioner,
v.
NEW YORK STATE DIVISION AND
BOARD OF PAROLE, Respondent.

No. 11 Civ. 9709(CS)(PED).
|
Jan. 10, 2013.

**Attorneys and Law Firms**

Rafael M. Pantoja Coxsackie, NY, pro se.

**REPORT AND RECOMMENDATION**

PAUL E. DAVISON, United States Magistrate Judge.

**\*1 TO: THE HONORABLE CATHY SEIBEL UNITED STATES DISTRICT JUDGE**

**I. *INTRODUCTION***

By his *pro se* petition, Rafael Pantoja ("Petitioner") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.[1] On March 14, 2008, by way of guilty plea, Petitioner was convicted of grand larceny in the first and second degrees and sentenced to two, concurrent terms of four and one-half to nine years imprisonment (Hubert, J.). This matter comes before me pursuant to an Order of Reference dated March 7, 2012. (Dkt.45.) For the reasons set forth below, I respectfully recommend that the petition be **DISMISSED WITHOUT PREJUDICE.**

[1]　Petitioner initiated this action *pro se,* filing the petition, an amended petition, and an extensive reply memorandum on his own behalf. The *habeas corpus* action was fully submitted as of June 19, 2012.

On December 2, 2012, however, counsel filed a notice of appearance on Petitioner's behalf. On December 10, 2012, I granted incoming counsel's request for an extension of time, until December

30, 2012, to submit a reply brief in connection with Petitioner's *pro se* motion seeking reconsideration of an order dated October 2, 2012, denying Petitioner's letter application for an order vacating a temporary order of protection filed against him by local authorities in the Town of Harrison, New York. (I have denied the motion for reconsideration by separate order.) However, counsel did not submit a reply brief nor has counsel filed any other papers on Petitioner's behalf.

**II. *BACKGROUND*[2]**

[2]　Except where specifically indicated, this synopsis is taken from a review of Respondent's Affidavit in Opposition to the Petition ("Resp't Aff.") (Dkt.50), Respondent's Affirmation in Opposition to Petitioner's § 440.10 Mot. ("Resp't's § 440.10 Affirm .") (attached to Resp't's Mem. of Law & Exs. ("Resp't's Mem."), at Ex. 13 (Dkt.51)), and Respondent's Memorandum of Law. All exhibits cited herein are attached to Respondent's Memorandum. (Dkt.51).

**A. *The Crimes***

On or about August 20, 2004, Petitioner completed a loan application with Banco Popular in which he falsely represented that he was an attorney and in which he used a social security number that was not his own. Petitioner obtained a mortgage in the amount of $1,186,250.00 with this application. The mortgage was underwritten by PHH Mortgage Corp. ("PHH") and secured by property located at 764 Lake Street, West Harrison, New York. The mortgage was recorded with the Westchester County Clerk's Office on January 11, 2005. On May 4, 2006, the mortgage was assigned to JP Morgan Chase Bank and this assignment was recorded on July 17, 2006.

On or about January 25, 2005, Petitioner submitted a letter to Countrywide Home Loans, Inc. ("Countrywide") which falsely purported to be prepared by his accountant. The letter falsely stated that Petitioner was an attorney and that his company was in good financial standing. It also provided a social security number that was not Petitioner's. As a result of this information, Petitioner obtained a home equity loan from Countrywide in the amount of $600,000.00. The loan was secured by a mortgage on the property located at 764 Lake

2013 WL 866869

Street, West Harrison, New York. The mortgage was recorded on June 23, 2005.

## B. The Complaints and Indictment

On February 13, 2007, two felony complaints were filed in Westchester County against Petitioner. One charged him with grand larceny in the first degree and alleged that he stole $1,186,250.00 from Banco Popular. The other charged him with grand larceny in the second degree and alleged that he stole $600,000.00 from Countrywide. A fourteen-count indictment was thereafter filed. Among other charges, Petitioner was indicted on one count of grand larceny in the first degree for stealing $1,186,250.00 from PHH, and one count of grand larceny in the second degree for stealing $600,000.00 from Countrywide. [3]

3    Respondent acknowledges that it changed the name of the victim of the first-degree grand larceny count from Banco Popular to PHH. With respect to this change, Respondent states:

   After the filing of the Felony Complaints, [Respondent] spoke at length with representatives of [PHH] and came to understand that the relationship between Banco Popular and PHH was such that PHH was the actual lender and the party to whom the petitioner owed the 1.1 million dollars. Thereafter, it was established before the Grand Jury that PHH was the party who suffered the loss.

   (Resp't's Aff. at 2.) Respondent also notes that it "was not aware of any criminal proceedings pending against Banco Popular at the time petitioner's case was pending." (Id.)

## C. The Trial, Guilty Plea, and Sentencing

Among other things, the evidence introduced at trial established that PHH was not identified on any mortgage or assignment that had been recorded in the Westchester County Clerk's Office for the property located at 764 Lake Street, West Harrison, New York. (See Tr., at 370–72.) An employee of PHH also testified that PHH and Banco Popular worked together to approve and service loans, and that PHH was the entity that actually lent Petitioner the $1,186,250.00 loan secured by the mortgage. (See id. at 571–80.)

*2  On February 6, 2008, on the third day of Petitioner's trial, Petitioner accepted a plea bargain and pled guilty, in full

satisfaction of the indictment, to grand larceny in the first and second degrees for the incidents involving Banco Popular/ PHH and Countrywide. [4] During his plea, Petitioner stated that he understood, inter alia, that by withdrawing his plea of not guilty and by entering pleas of guilty, he would receive two concurrent sentences, as a second felony offender, of four and one-half to nine years' imprisonment, (id. at 613–14, 627–28); that civil restitution judgments would be entered that, as a condition of his plea bargain, he agreed not to contest, (id. at 613–14); and that he waived his right to appeal pretrial and trial related matters, (id. at 614–15, 628). He also stated that he was pleading guilty freely and voluntarily, that no one had threatened or coerced him into pleading guilty, and that he was pleading guilty because he was in fact guilty. (Id. at 617.)

4    "A person is guilty of grand larceny in the first degree when he steals property and when the value of the property exceeds one million dollars. Grand larceny in the first degree is a class B felony." N.Y. Penal Law § 155.42. "A person is guilty of grand larceny in the second degree when he steals property and when ... [t]he value of the property exceeds fifty thousand dollars.... Grand larceny in the second degree is a class C felony." Id. § 155.40(1).

Petitioner then stated that he understood he was pleading guilty to a class B felony for which the maximum sentence was twelve and one-half to twenty-five years imprisonment, as well as a class C felony for which the maximum sentence was seven and one-half to fifteen years imprisonment. (Id. at 617–19.) With respect to restitution, he specifically stated he understood that as a condition of his plea bargain, he waived his right to contest the amount of restitution ordered, that an order of $1,186,250.00 would be entered in favor of PHH, and that should the bank proceed with foreclosure in order to satisfy the judgment, Petitioner would be entitled to seek any surplus from the foreclosure sale via a surplus action. (Id. at 619–20, 623–24; see also id. at 621–23 (discussing foreclosure proceedings).) Petitioner also specifically stated he understood that as a condition of his plea bargain, an order of restitution in favor of Countrywide would be entered in the amount of $600,000.00. (Id. at 624.) Petitioner then agreed:

   [T]hat [he] did steal property from PHH Mortgage Corporation, specifically mortgage proceeds secured by property situated at 764

Lake Street, West Harrison, New York, having an aggregate value of $1,186,250.00, and that [he] did so by filling out a loan application in which [he] provide[d] a false Social Security and stated that [he was] an attorney at law when in fact [he was] not.

(*Id.* at 630–31.) He also agreed that he stole "property from Countrywide Mortgage, specifically mortgage proceeds secured by property situated at 764 Lake Street, West Harrison, New York, having a value of $600,000.00," and that he did so "by filling out a loan application in which [he] placed a false Social Security number and indicated that [he was] an attorney at law when [he] in fact [was] not." (*Id.*)

Petitioner did not move to withdraw his guilty plea. On March 14, 2008, he was sentenced, as a second felony offender and in accordance with the terms of his plea bargain, to concurrent terms of four and one-half to nine years imprisonment on both counts.[5] Restitution judgments were also entered as described above.

[5]      On October 20, 1995, Petitioner was convicted in New York County, upon pleas of guilty, to grand larceny in the second degree, attempted grand larceny in the second degree, and grand larceny in the third degree. He was sentenced to four to twelve years imprisonment. (*See* Resp't's Mem., at 2; Resp't's § 440.10 Affirm., at 2 n. 3.) On December 8, 1995, Petitioner was also convicted in New York County of attempted assault in the second degree and sentenced to one and one-third to four years imprisonment. (*See* Resp't's § 440.10 Affirm., at 2 n. 3.) He was disbarred from the practice of law on February 8, 1996. (*See id.* at 2.) On January 17, 2002, Petitioner pled guilty to criminal trespass in the third degree and was sentenced to one year conditional discharge and ordered to pay $10,000.00 restitution. (*See* Resp't's Mem., at 2.) On February 17, 2010–two years after being sentenced in the instant matter-Petitioner pled guilty in the Eastern District of New York to two counts of bank and wire fraud conspiracy. (*See id.* at 4.)

**D. *Direct Appeal***

**\*3** Petitioner filed a notice of appeal and the Second Department granted his request to proceed as a poor person and assigned him appellate counsel. Counsel thereafter filed an *Anders* brief attesting that there were no non-frivolous issues to raise on appeal .[6] Petitioner was granted leave to file a supplemental *pro se* brief, which argued;

[6]      *Anders v. California,* 386 U.S. 738 (1967).

(1) The trial court lacked subject matter jurisdiction over the first-degree grand larceny count of the indictment because PHH was not listed on documents that were recorded with the Westchester County Clerk's Office, (*see* Suppl. Br. for Def.-Appellant, at 7–22 (Ex. 3)); and

(2) The trial court erred by failing to inform Petitioner of the applicable statutory minimum sentences, (*see id.* at 23–26).

The Second Department affirmed the conviction on August 2, 2011 after determining "that there are no nonfrivolous issues which could be raised on appeal," and that Petitioner "has not raised, nor could he have raised, any nonfrivolous issues in his pro se supplemental brief." *People v. Pan toja,* 927 N.Y.S.2d 789, 789–90 (App.Div.2011).[7] The New York Court of Appeals denied leave to appeal on March 30, 2012. *People v. Pant oja,* 18 N.Y.3d 961 (2012). Petitioner did not seek a writ of *certiorari* from the United States Supreme Court. (Am.Pet.¶ 10(g) (Dkt.40).)

[7]      The Second Department denied Petitioner's request to file a supplemental *pro se* reply brief. (Exs.5, 7.)

**E. *The § 440.10 Motion to Vacate the Judgment of Conviction***

By application dated June 15, 2009, Petitioner moved to vacate the judgment of his conviction pursuant to N.Y.Crim. Proc. Law § 440.10(1) on the ground that the State had introduced fraudulent documents into evidence at trial, and that this had induced him into pleading guilty.[8] Specifically, Petitioner argued that an assignment of mortgage document was fraudulently filed in the Westchester County Clerk's Office and used against him at trial in order to permit PHH and others to obtain a restitution judgment against him. He also argued that the Westchester County District Attorney's Office was aware of the fraudulent nature of the document at the time they prosecuted Petitioner, and that this knowledge amounted to a *Brady* violation.[9] Finally, he argued that his attorney was ineffective for failing to use this or other impeachment

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

evidence at trial. (*See* Ex. 12.) On February 18, 2010, the trial court denied Petitioner's motion on the merits as well as pursuant to state procedural rules. (*See* Ex. 17.) Petitioner did not seek leave from the Second Department to appeal this decision.

8    "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment...." N.Y.Crim. Proc. Law § 440.10(1).

9    *Brady v. Maryland,* 373 U.S. 83 (1963).

**F. The First § 440.20 Motion to Set Aside the Sentence**
Before the trial court decided Petitioner's first § 440.10 motion, Petitioner also moved, by application dated September 2, 2009, to set aside his sentence relating to the first-degree grand larceny conviction pursuant to N.Y.Crim. Proc. Law § 440.20. [10] Specifically, he argued that the court misled him by implying "that the PHH restitution money judgment entered in this case would satisfy any ensuing foreclosure judgment." (Ex. 14 ¶ 6.) On February 18, 2010, the court denied the motion on the merits. (*See* Ex. 17, at 6–7.) Petitioner did not seek leave from the Second Department to appeal this decision.

10    "At any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law...." N.Y. Crim. Proc. Law § 440.20(1).

**G. The Second § 440.20 Motion to Set Aside the Sentence**
**\*4**  By application dated September 2, 2009. Petitioner filed a second motion to set aside that part of his sentence that pertained to the first-degree grand larceny count involving PHH pursuant to N.Y.Crim. Proc. Law § 440.20. [11] Petitioner raised the same arguments in this motion as he did in his first § 440.20 motion. (*See* Ex. 18.) On January 3, 2011, the trial court denied the motion pursuant to a state procedural rule. [12] (Ex. 20.) The Second Department denied leave to appeal this decision on July 1, 2011. (Ex. 23.)

11    Respondent states it was not served with a copy of this second motion until August 25, 2010. (Resp't's Aff., at 9.)

12    Specifically, the court denied the motion pursuant to N.Y.Crim. Proc. Law § 440.20(3), which provides:

> Notwithstanding the provisions of subdivision one, the court may deny such a motion when the ground or issue raised thereupon was previously determined on the merits upon a prior motion or proceeding in a court of this state, other than an appeal from the judgment, or upon a prior motion or proceeding in a federal court, unless since the time of such determination there has been a retroactively effective change in the law controlling such issue. Despite such determination, however, the court in the interest of justice and for good cause shown, may in its discretion grant the motion if it is otherwise meritorious.

N.Y.Crim. Proc. Law § 440.20(3); (*see* Ex. 20, at 2–3).

**H. The Instant Federal Civil Action**
By application dated April 6, 2011, Petitioner filed an action in the Eastern District of New York seeking declaratory relief as well as a federal writ of *habeas corpus.* (Dkt.1.) On December 21, 2011, the court dismissed Petitioner's claims except to the extent that he sought relief from his 2008 Westchester County conviction pursuant to 28 U.S.C. § 2254. (Dkt.37.) The *habeas* claim was then transferred to the Southern District of New York. (Dkt.38.)

By Order dated January 13, 2012, Petitioner was ordered to file an amended petition that specifically set forth the constitutional bases of his claims and which described his efforts to exhaust those claims. (Dkt.39.) Petitioner's amended petition, dated January 31, 2012, enumerates five separate but substantially overlapping grounds for *habeas* relief. (Dkt.40.) All five *habeas* claims center on his contention that, at the time of his trial, the prosecution knew that Banco Popular was being criminally investigated for banking violations and deliberately manipulated the mortgage fraud charges against him in order to avoid disclosing the confidential Banco Popular investigation. Petitioner claims, *inter alia,* that the prosecution's actions deprived him of a fair trial and due process, constituted a *Brady* violation, and rendered his guilty plea invalid. (*See id.; see also generally* Reply Mem. of Law of Pet'r Rafael Manuel Pantoja in Supp. of Writ of Habeas Corpus (28 U.S.C. 2254) ("Pet'r's Reply") (Dkt.52).)

Respondent contends that the claims raised in the amended petition are unexhausted and argues that this Court should exercise its discretion pursuant to 28 U.S.C. § 2254(b)(2) to deny the claims as plainly meritless. (*See* Resp't's Mem., 5–11.) As set forth below, I agree with Respondent that Petitioner's claims are unexhausted. For this reason, I respectfully recommend that the Court dismiss the petition without prejudice.

### III. *DISCUSSION*

**A. *Applicable Law on Habeas Corpus Review***
"Habeas review is an extraordinary remedy...." *Bousley v. United States,* 523 U.S. 614, 621 (1998). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. Among other things, the applicable statute prohibits a federal court from granting *habeas* relief unless the petitioner has first exhausted his claims in state court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *see* § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."); *id.* § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented."). This exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. *Rose v. Lundy,* 455 U.S. 509, 518–19 (1982).

**\*5** To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims."

*Petrucelli v. Coombe,* 735 F.2d 684, 687 (2d Cir.1984) (citing *Smith v. Phillips,* 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez v. Keane,* 394 F.3d 68, 73 (2d Cir.2005). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution." in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court.

However, " '[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' " *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997) (quoting *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991)). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey,* 933 F.2d at 120. Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. *See, e.g., Reyes,* 118 F.3d at 139. However, absent a showing of either " 'cause' for the [procedural] default and 'prejudice attributable thereto,' " *Harris v. Reed,* 489 U.S. 255, 262 (1989) (quoting *Murray v. Carrier,* 477 U.S. 478, 485 (1986)), or "actual innocence." *Schlup v. Delo,* 513 U.S. 298, 315 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly

meritless." *Rhines v. Weber,* 544 U.S. 269, 277 (2005); *see* § 2254(b)(2) ( "An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also, e.g., Padilla v. Keane,* 331 F.Supp.2d 209, 216 (S.D.N.Y.2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### B. *Application*

**\*6** It is clear that Petitioner has failed to exhaust each of the claims raised in his *habeas* petition because he has not presented them "in each appropriate state court (including a state court with powers of discretionary review)." *Baldwin,* 541 U.S. at 29. Although Petitioner has fully exhausted the claims raised on direct appeal and in his second § 440.20 motion, those claims do not concern the issues raised in the instant *habeas* petition.

Petitioner's fully exhausted claims are: (1) those claims raised in his supplemental appellate brief regarding (a) the trial court's subject-matter jurisdiction, and (b) Petitioner's knowledge of the statutory minimum sentences; and (2) the claim raised in his second § 440.20 motion seeking to set aside the first-degree grand larceny sentence due to the court's statements regarding any ensuing foreclosure proceeding.

In this petition, Petitioner essentially alleges that at the time of his trial, the prosecution knew that Banco Popular-the entity Petitioner initially submitted his falsified loan application to-was being criminally investigated for banking law violations. Petitioner also alleges that the prosecution intentionally conspired to name PHH as the owner of the mortgage in order to keep secret the information concerning Banco Popular's pending criminal investigation. Petitioner contends that the prosecution's actions, *inter alia,* deprived him of a fair trial and due process, constituted a *Brady* violation, and rendered his guilty plea unknowingly and involuntarily entered. (*See generally* Pet'r's Reply.)

It is clear that the factual premise of each of Petitioner's *habeas* claims-the alleged concealment of criminal activity by Banco Popular-was not presented to any state court. *See Galdamez,* 394 F.3d at 73. Because Petitioner's claim are based on alleged facts which are *dehors* the record, Petitioner may still pursue his claims through a collateral motion in state court. *See* N.Y.Crim. Proc. Law § 440.10(1) (motion to vacate judgment may be made "[a]t any time"). Meanwhile, however, Petitioner's *habeas* claims are plainly unexhausted.

However, I do not agree with Respondent insofar as Respondent argues that this Court should retain jurisdiction over the completely unexhausted petition, address the merits, and deny the petition as plainly meritless. It is clear that "there is no basis to retain jurisdiction over a petition that contains only unexhausted claims." *Shomo v. Maher,* No. 04 Civ. 4194(KMK), 2005 WL 743156, at \*7 n. 12 (S.D.N.Y. Mar. 31, 2005). Moreover, because this case does not involve a "mixed" petition containing at least one exhausted claim, *see Rhines,* 544 U.S. at 275–78, this Court may not stay the proceedings to give the petitioner an opportunity to exhaust his unexhausted claims. [13] Such an approach "would turn federal courts into a 'jurisdictional parking lot' for unexhausted claims and undermine the comity interests promoted by the exhaustion requirement." *Shomo.* 2005 WL 743156, at \*7 n. 12 (quoting *Baity v. McCary,* No. 02 Civ. 1817(LAP)(AJP), 2002 WL 31433293, at \*2 (S.D.N.Y. Oct. 31, 2002)).

[13]   When confronted with a "mixed petition" containing both exhausted and unexhausted claims, a federal court has the following options: (1) it may stay the proceedings and hold the petition in abeyance in order to permit the petitioner to return to state court and exhaust the unexhausted claims; (2) it may dismiss without prejudice the entire petition; (3) it may permit the petitioner to amend the petition and excise any unexhausted claims; or (4) it may review each claim and dismiss the petition if it is plainly meritless. *See Rhines,* 544 U.S. at 277–78; *see also* 28 U.S.C. § 2254(b)(2); *Zarvela v. Artuz,* 254 F.3d 374, 378–82 (2d Cir.2001); *Reyes v. Morrissey,* No. 07 Civ. 2539(LAP)(DF), 2010 WL 2034531, at \*9 (S.D.N.Y. Apr. 21, 2010) (Report & Recommendation), *adopted by* 2010 WL 2034527 (S.D.N.Y. May 19, 2010).

**\*7** The appropriate disposition of this case is therefore dismissal without prejudice. *See id.; see also, e.g., Diguglielmo v. Sankowski,* 42 F. App'x 492 (2d Cir.2002) (dismissing *habeas* petition without prejudice where petitioner failed to exhaust any claim); *Cain v. Hunt,* No. 07 Civ. 5919(KMK)(PED), 2010 WL 8367771, at \*5 (S.D.N.Y. Nov. 10, 2010) (Report & Recommendation), *adopted by* 2012 WL 340117 (S.D.N.Y. Feb. 2, 2012) (recommending same); *Kalu v. New York,* No. 08 Civ. 4984(NGG), 2009 WL 7063100, at \*5 (E.D.N.Y. Sept. 15, 2009) (collecting cases and holding that "the stay-and[-]abeyance procedure

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 67 of 130
Pantoja v. New York State Div. and Bd. of Parole, Not Reported in F.Supp.2d (2013)
2013 WL 866869

described in *Rhines* is not available" "where, as here, the petition is not mixed, and contains only unexhausted claims"); *Brown v. Superintendent of Fishkill Corr. Facility,* No. 07 Civ. 327(SJF), 2007 WL 1958914, at *2 (E.D.N.Y. June 29, 2007) ("Since the petition is facially defective for failing to set forth any [exhausted] grounds for relief, it is dismissed without prejudice.").

### IV. *CONCLUSION*

For the reasons set forth above, I conclude-and respectfully recommend that Your Honor should conclude-that the petition be **DISMISSED WITHOUT PREJUDICE.** Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000).

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to serve and file written objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the Honorable Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 866869

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 68 of 130
Shomo v. Maher, Not Reported in F.Supp.2d (2005)
2005 WL 743156

2005 WL 743156
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jose SHOMO, Petitioner,
v.
Michael MAHER, Respondent.

No. 04-CV-4149KMK.
|
March 31, 2005.

**Attorneys and Law Firms**

Jose Shomo, DIN 01A0080, Wende Correctional Facility, Alden, NY, Petitioner, pro se.

Robert M. Morgenthau, District Attorney, New York County, Morrie I. Kleinbart, Eli R. Koppel, Assistant District Attorneys, New York, NY, for Respondent.

*OPINION AND ORDER*

KARAS, J.

**\*1** Petitioner Jose Shomo ("Shomo" or "Petitioner"), imprisoned by the State of New York on a murder and weapons possession conviction, petitions for a writ of *habeas corpus,* pursuant to 28 U.S.C. § 2254. Respondent Michael Maher ("Respondent") moves to dismiss the *habeas* petition on the ground that Shomo has failed to exhaust his claims in state court pursuant to 28 U.S.C. § 2254(b) .[1] Specifically, Respondent argues Shomo failed to utilize available state remedies when he did not appeal the denial of his petition for a writ of error *coram nobis* to the New York Court of Appeals. For the reasons discussed below, the motion to dismiss is GRANTED without prejudice to refiling if Shomo's claims are exhausted.

[1]     Respondent's Notice of Motion appears to erroneously refer to the provision as 28 U.S.C. § 2244(b).

*I. Background*

On December 15, 2000, Shomo was convicted of murder in the second degree and criminal possession of a weapon in the second degree. The conviction was affirmed by the Appellate Division, *see People v. Shomo,* 757 N.Y.S.2d 272 (App.Div.2001), and his application for leave to appeal was denied by the New York Court of Appeals, *see People v. Shomo,* 100 N.Y.2d 542 (2003).

Following this unsuccessful direct appeal, on May 28, 2003, Petitioner filed a *pro se* writ of error *coram nobis,* pursuant to the procedure outlined in *People v. Bachert,* 69 N.Y.2d 593 (1987), alleging ineffective assistance of appellate counsel based on his lawyer's failure to include a number of claims on direct appeal. The petition was denied by the appellate division on October 23, 2003. *People v. Shomo,* 767 N.Y.S.2d 65 (App.Div.2003). Shomo concedes this adverse decision was not appealed to the New York Court of Appeals. Shomo explains in his *habeas* petition that he did not do so because "[b]y Statute a Petition for a Writ of Error is not appealable. [sic] to the New York State Court of Appeals." (Habeas Pet. ¶ 12(d))

On April 20, 2004,[2] Petitioner filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his custody on essentially the same grounds raised in his writ of error *coram nobis.*[3] On August 26, 2004, Respondent filed the instant motion to dismiss the petition on the ground that the claims raised are unexhausted because Shomo failed to seek leave to appeal the denial of his writ of error *coram nobis* to the New York Court of Appeals.[4]

[2]     The petition is deemed filed as of the date it is delivered to prison officials. *See Fernandez v. Artuz,* 402 F.3d 111, 2005 WL 623141, at *2-*3 (2d Cir. Mar. 17, 2005). The petition was received by the *pro se* clerk's office in this District on April 26, 2004.

[3]     Specifically, the petition outlines eight issues appellate counsel allegedly failed to raise: (1) there was no probable cause for the warrantless search of Petitioner's apartment; (2) the subsequently issued search warrant lacked probable cause; (3) the lower court committed reversible error when it failed to comply with N.Y. C.P.L. § 690.40(1) (erroneously referred to as § 490.40(1) in a heading in Shomo's *habeas* petition (Mem. in Support of Habeas Pet. at 31)); (4) the prosecution's failure to turn over

favorable *Brady v. Maryland* and *People v. Rosario* material to the defense deprived Petitioner of his constitutional rights to a fair trial; (5) the lower court's failure to hold an in depth *Rodriguez* hearing deprived Petitioner of his constitutional rights to a fair trial; (6) certain witnesses should have been precluded from identifying Petitioner at trial because of the prosecutor's failure to give proper notice pursuant to N.Y. C.P.L. § 710.30; (7) Petitioner's guilt was not proven beyond a reasonable doubt; and (8) the introduction of a certain witness's testimony about alleged prior bad acts and uncharged crimes was reversible error. Respondent represents that Petitioner's *pro se* writ of error *coram nobis* alleged that appellate counsel failed to include *seven* claims on direct appeal: "(1) there was no probable cause for the police search of petitioner's apartment; (2) the search warrant that directed the police to search petitioner's apartment alleged inadequate probable cause; (3) the trial court violated New York Criminal Law Section [690.40 (erroneously cited as 490.40) ]; (4) the People failed to disclose certain material pursuant to *Brady v. Maryland* and *People v. Rosario;* (5) there was no pretrial hearing regarding confirmatory identifications of petitioner; (6) the People failed to provide New York Criminal Procedure Law Section 710.30(1) (b) notice; (7) the People failed to prove guilt beyond a reasonable doubt." (Koppel Aff. ¶ 6)

Thus, it appears that Shomo raises an additional claim in his federal *habeas* petition-the eighth claim relating to the introduction of a witness's testimony regarding alleged prior bad acts and uncharged crimes-that arguably was not exhausted in the state court proceeding. Respondent, however, does not argue that Shomo failed to raise the same arguments below, only that he failed to appeal them to the highest court. (Koppel Aff. ¶ 8 ("[P]etitioner seeks a writ of habeas corpus, repeating the same claims he raised in his writ of error *coram nobis* to the Appellate Division, First Department."))

The Court need not address at this time the question of whether all of Petitioner's claims were raised before the state court. Because the Court concludes the petition should be dismissed because of failure to appeal to the New York Court of Appeals, the Court does not examine the issue of whether

some of Shomo's claims have not been exhausted because he failed to raise them below.

4    A week later, on September 3, 2004, this case was reassigned to this Court. On January 10, 2005, this Court withdrew the referral of this case to a magistrate judge.

Shomo has submitted several responsive documents. Initially, it appeared that Shomo had not responded to the motion to dismiss, as the docket reflected that no response was filed. Therefore, on January 4, 2005, the Court issued an order providing Shomo with a final opportunity to respond by January 21, 2005. Shomo timely submitted a response on January 19, 2005 ("Shomo Response"). Subsequently, the Court located two undated documents Shomo appears to have submitted previously, although they were not properly filed or docketed: (1) an undated, typed document entitled "Opposition to Respondent['s] Motion to Dismiss Petitioner['s] Writ of Habeas Corpus" ("Undated Shomo Opposition"); and (2) an undated, handwritten document entitled "Addendum to Opposition to the Respondent['s] Motion to Dismiss Petitioner's Writ of Habeas Corpus" ("Undated Shomo Addendum"). [5] These two documents were subsequently forwarded for docketing. The Court has reviewed and considered all of Shomo's responsive documents in rendering this decision on the motion to dismiss. [6]

5    It appears that these documents had not been filed because of apparent procedural irregularities identified by the *pro se* clerk's office.

6    The Court notes that Shomo's Response appears to be largely duplicative of the undated documents.

## II. Discussion

**\*2** Petitioner alleges that his appellate counsel was constitutionally ineffective in failing to raise several purported defects in his state trial. Respondent, at this stage, does not challenge the merits of Petitioner's claim. Instead, Respondent limits his objection to the supposed failure of Petitioner to exhaust his remedies under New York state law. In particular, Respondent claims that Petitioner failed to appeal the denial of his writ of error *coram nobis* to the New York Court of Appeals. As a result, Respondent asks this Court to dismiss the petition without prejudice.

### A. The Exhaustion Requirement

Pursuant to 28 U.S.C. § 2254(b)(1), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." Section 2254(c) provides that a *habeas* petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." Thus, "[i]t is well-established that 'a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus.' " Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir.2003) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)) (additional citations omitted).

The exhaustion requirement is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U .S. 509, 518 (1982). Rigorous enforcement of this requirement "will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." Id. at 518-19. Such a rule thereby "reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999) (quoting Darr v. Buford, 339 U.S. 200, 204 (1950)).

"To exhaust his federal claims, a habeas petitioner must 'fairly present[ ] to the state courts the substance of his federal habeas corpus claim.' " Powell v. Greiner, No. 02 Civ. 7352, 2003 WL 359466, at *1 (S.D.N.Y. Feb. 18, 2003) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982)). This does not require petitioners to attempt to invoke "extraordinary remedies" to satisfy the exhaustion prerequisite. O'Sullivan, 526 U.S. at 844 ("[S]tate prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past."). However, exhaustion means, *inter alia*, that the petitioner must "present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119

(2d Cir.1991); *see also* O'Sullivan, 526 U.S. at 848; Rosa v. McCray, 396 F.3d 210, 217 (2d Cir.2005). This requires pursuit of even discretionary state appellate remedies. *See* Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 848; Garraway v. Phillips, No. 02 Civ. 9657, 2004 WL 1088097, at *3 (S.D.N.Y. May 14, 2004).

### B. Whether Petitioner Failed to Exhaust

**\*3** The initial question is whether there was an available state remedy that Shomo failed to exhaust. Shomo concedes that he did not appeal the denial of his writ of error *coram nobis* to the New York Court of Appeals. Historically, "there was no comprehensive statutory mechanism to address collateral claims of ineffective assistance of appellate counsel." People v. Stultz, 2 N.Y.3d 277, 281 (2004). New York courts "held, however, that a defendant who claims to be aggrieved by appellate counsel's failures could proceed by writ of error *coram nobis* before the appellate court in which the allegedly deficient representation took place." Id.; see also Sweet v. Bennett, 353 F.3d 135, 142 n. 7 (2d Cir.2003) (citing People v. Bachert, 69 N.Y.2d 593 (1987)). However, "[i]n the absence of a statutory scheme, [the New York Court of Appeals] recognized that it had no power to entertain appeals from appellate orders granting or denying *coram nobis* relief." Stultz, 2 N.Y.3d at 281. Thus, until recently, there was no appellate remedy for a person, such as Shomo, whose writ of error *coram nobis* was denied by the appellate division.

However, effective November 1, 2002, "[t]he Legislature remedied the problem by amending [the statute] authorizing appeals (by permission) to [the Court of Appeals] from appellate orders granting or denying *coram nobis* relief based on claims of ineffective assistance or wrongful deprivation of appellate counsel." Id.; see also McPherson v. Greiner, No. 02 Civ. 2726, 2003 WL 22405449, at *12 n. 14 (S.D.N.Y. Oct. 22, 2003). The statutory provision authorizing such an appeal now provides, in pertinent part:

> Provided that a certificate granting leave to appeal is issued pursuant to section 460.20, an appeal may, except as provided in subdivision two, be taken to the court of appeals by either the defendant or the people from any adverse or partially adverse order of an intermediate appellate court entered upon an appeal taken to such intermediate appellate court pursuant

to section 450.10, 450.15, or 450.20
*or from an order granting or denying
a motion to set aside an order of
an intermediate appellate court on
the ground of ineffective assistance
or wrongful deprivation of appellate
counsel.*

N.Y. C.P.L. § 450.90(1) (emphasis added to reflect 2002
Amendments). Such an appeal must be taken "[w]ithin thirty
days after service upon the appellant of a copy of the order
sought to be appealed...." N.Y. C.P.L. § 460.10(5)(a). "The
amendment should be accorded prospective application, and
as such it authorizes motions for permission to appeal from
only those Appellate Division orders made on or after the
statute's effective date." People v. Jones, 100 N.Y.2d 606,
607-08 (2003).

In this case, Shomo's writ of error *coram nobis* was denied
by the appellate division on October 23, 2003. People v.
Shomo, 767 N.Y.S.2d 65. At that time, pursuant to the 2002
Amendment, Shomo could have appealed that decision to the
New York Court of Appeals, but Shomo failed to exercise
that available remedy. Therefore, Shomo's *habeas* petition is
unexhausted. See Castro v. Fisher, No. 04 Civ. 0346, 2004
WL 1637920, at *26 (S.D.N.Y. July 23, 2004) ("[Petitioner's]
challenge to the constitutionality of the coram nobis device
was not pursued to the New York Court of Appeals, as it could
and should have been."). [7]

[7]  Shomo advances a number of arguments as to
why his failure to exhaust should be excused. For
example, Shomo has said that he was unaware
of the change in the law and that the State of
New York is responsible for this supposed lack of
knowledge because the Appellate Division failed
to inform him of his right to appeal the denial of
his *coram nobis* application, and because the prison
library allegedly did not maintain sufficiently
current information to advise him of his appellate
rights. To the extent these claims are necessary
to provide a justification for his failure to appeal
to the New York Court of Appeals, they should
first be addressed to that court. Cf. Priester v.
Senkowski, No. 01 Civ. 3441, 2002 WL 1448303,
at *7 (S.D.N.Y. July 3, 2002) (rejecting claim

by *habeas* petitioner that return to state court
would be futile "because it is inconsistent with the
doctrine of comity which assumes State courts will
perform their assigned review function and because
it is inconsistent with the explicit exhaustion
requirement contained in 28 U.S.C. § 2254(b)(1)
(A)"). For now, it suffices to say that as a matter
of federal law Petitioner's alleged unawareness
of the change in the law by itself is insufficient
to excuse Shomo's failure to exhaust under these
circumstances. See Castro, 2004 WL 1637920,
at *26 (rejecting petitioner's argument that "No
Appeal Lies From Coram Nobis Traditionally");
Priester, 2002 WL 1448303, at *5 ("The mere
failure of a petitioner to be aware of a particular
area of the law ... does not constitute 'cause.' ").
Indeed, the exhaustion requirement admits only
to limited exceptions, neither of which involves
a petitioner's knowledge of his exhaustion duties.
See Ruine v. Walsh, No. 00 Civ. 3798, 2002 WL
1349713, at *2 (S.D.N.Y. June 19, 2002) ("Th[e]
exhaustion requirement is excused only if there is
no available procedure for the petitioner to obtain
review of his claim in the state courts, or if any state
procedure available would be ineffective under the
circumstances.") (citing 28 U.S.C. § 2254(b)(1)(B)
(i)-(ii)).

Shomo also maintains that default may be excused
where the alleged federal violation challenges
the validity of the state trial itself, where the
alleged federal violation is motivated by malice,
and where failure to excuse the default would
result in a miscarriage of justice. These arguments
go either to the merits of Shomo's petition or to
whether any procedural default may be excused.
See Washington v. James, 996 F.2d 1442, 1447
(2d Cir.1996) ("If there has been a 'fundamental
miscarriage of justice,' ... a procedural default
may be excused even without a showing of cause
and prejudice.") (quoting Murray v. Carrier, 477
U.S. 478, 495-96 (1986)). Because, as noted
below, the Court concludes that Shomo's challenge
to the effectiveness of his appellate counsel
is unexhausted, but not necessarily procedurally
barred, the Court does not reach the merits of
the petition or the issue of whether if the claims
are ultimately deemed procedurally barred by the
state court, such procedural default is excused.

Therefore, these claims potentially await resolution for another day.

### C. How the Petition Should be Disposed

**\*4** Having determined that Shomo failed to exhaust his claims, there remains the question of how the Court should dispose of the petition. "Generally, a petition for writ of habeas corpus with unexhausted claims is dismissed without prejudice to allow the petitioner to return to the state courts to exhaust all available state judicial remedies." *Montalvo v. Mantello,* 233 F.Supp.2d 554, 562 (S.D.N.Y.2002). "However, if the petitioner no longer has 'remedies available' in the state courts," the petitioner's claims may be deemed exhausted. *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994). In such an instance, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed,* 489 U.S. 255, 263 n. 9 (1989); *see also Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997) (holding that petitioner's defaulted claim was properly denied without review of the merits); *Bossett,* 41 F.3d at 829 (noting that it would be "fruitless" to require petitioners to pursue procedurally barred claims in state court). [8]

[8]  The same comity concerns that underlie the exhaustion requirement also drive the procedural default doctrine. *See Lambrix v. Singletary,* 520 U.S. 518, 523 (1997); *Harris,* 489 U .S. at 260-64. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson,* 501 U.S. 722, 732 (1991). If a state *habeas* petitioner were allowed to bring procedurally defaulted claims in federal court, it would permit an end run around the federal courts' jurisdiction and undermine the states' interest in enforcing their own laws. *See id .* at 731.

In this case, as noted, Shomo's petition fails to get to first base since he has not exhausted his state remedy of seeking leave to appeal the denial of his *coram nobis* application to the New York Court of Appeals. However, it appears that Shomo's ability to seek such leave may be time barred. As noted above, an appeal from a denial of *coram nobis* relief must be taken "[w]ithin thirty days after service upon the appellant of a copy of the order sought to be appealed...." N.Y. C.P.L. § 460.10(5)(a). A party, however, may obtain up to a one-year extension of time to file, pursuant to N .Y. C.P.L. § 460.30, which provides, in pertinent part:

> ... [U]pon motion to the court of appeals of a defendant who desires to take an appeal to such court from an order ... of an intermediate appellate court, but has failed to make an application for a certificate granting leave to appeal to the court of appeals, or has failed to file a notice of appeal with the intermediate appellate court, within the prescribed period, such ... court of appeals ... may order that the time for the taking of such appeal or applying for leave to appeal be extended to a date not more than thirty days subsequent to the determination of such motion, upon the ground that the failure to so file or make application in timely fashion resulted from (a) improper conduct of a public servant or improper conduct, death or disability of the defendant's attorney, or (b) inability of the defendant and his attorney to have communicated, in person or by mail, concerning whether an appeal should be taken, prior to the expiration of the time within which to take an appeal due to the defendant's incarceration in an institution and through no lack of due diligence or fault of the attorney or defendant. Such motion must be made with due diligence after the time for the taking of such appeal has expired, *and in any case not more than one year thereafter.*

**\*5** N.Y. C.P.L. § 460.30 (emphasis added). This one-year time limit is inflexible. *See People v. Thomas,* 47 N.Y.2d 37, 43 (1979) ("We remain convinced that strict construction is appropriate since the time limits within which appeals must be taken are jurisdictional in nature and courts lack inherent power to modify or extend them."); *People v. Smith,* 696 N.Y.S.2d 720, 720 (App.Div.1999) ("Because the motion for an extension of time to take an appeal was made more than one year and 30 days from the date of sentencing, the motion is untimely. Defendant's failing health does not excuse the failure to move within the statutory time period.") (citing

2005 WL 743156

N.Y. C.P.L. § 460.30); *People v. Peguero,* 696 N.Y.S.2d 728, 728 (App.Div.1999) ("Because the motion for an extension of time to take an appeal was made more than one year and 30 days from the date of sentencing, the motion is untimely. Motion to extend time to take appeal dismissed as untimely.") (citing N.Y. C.P.L. § 460.30). [9]

[9]    While the New York courts strictly apply the one-year time limit, the New York Court of Appeals has allowed for the possibility that prosecutorial misconduct might bar the prosecution invoking the one-year limit under § 460.30. *See Thomas,* 47 N.Y.2d at 43 ("[B]ecause the omissions on the part of the prosecutor, though no doubt made more critical by assigned counsel's less than assiduous performance, frustrated the good faith exercise of the defendant's right to the remedy of CPL 460.30, the People should be estopped from invoking the bar of the one-year limit.").

In this case, both the time to seek leave to appeal to the New York Court of Appeals, and the time to obtain an extension to file an application for such leave, have apparently expired. The petition was denied by the appellate division on October 23, 2003. *See People v. Shomo,* 767 N.Y.S.2d 65. The thirty-day window to appeal therefore expired on November 22, 2003. The additional one-year grace period expired on November 22, 2004. Thus, any motion seeking leave to appeal brought now might not meet the requirement of being "made with due diligence after the time for the taking of such appeal has expired, and in any case not more than one year thereafter." N.Y. C.P.L. § 460.30(1). [10]

[10]    It is unclear that Shomo could even allege facts that would entitle him to apply for the maximum one-year extension. Section 460 .30 permits a would-be appellant to seek such an extension under limited circumstances, including allegedly improper conduct by a public official, any improper conduct, death or disability of the appellant's attorney, or the inability of the appellant and his attorney to have communicated. Failure to allege any of these is fatal to an application to file an appeal beyond the thirty-day deadline. *See People v. Kaczynski,* 507 N.Y.S.2d 946 (App.Div.1986) (denying motion to extend time pursuant to § 460.30 "on the ground that the papers fail to contain sworn allegations of facts claimed to establish

improper conduct, inability to communicate, or other facts essential to support the motion").

Therefore, it is conceivable Shomo no longer has an "available" remedy in state court, and, it is arguably pointless for this Court to provide Shomo with an opportunity to pursue his claims in state court. There is some authority for the proposition that under these circumstances, a petitioner's claim "should be denied under the 'unexhausted but deemed exhausted and procedurally barred' doctrine." *Castro,* 2004 WL 1637920, at *26. This is "because any attempt at exhaustion in the face of this procedural default would be futile." *Reyes,* 118 F.3d at 139; *see also Perez v. Greiner,* 296 F.3d 123, 124 n. 2 (2d Cir.2002) ("A petition is unexhausted only if the petitioner can still receive the relief he seeks from the state system. At the point when he brought his federal claim, [petitioner] no longer had the option of proceeding in state court, since only one petition is allowed under New York rules, and the time to file a petition had expired. Thus it was clearly proper to deem his claims exhausted for purposes of federal habeas review.") (internal citations omitted); *Grey,* 933 F.2d at 120 ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b).") (quoting *Harris,* 489 U.S. at 263 n. 9) (additional internal citations omitted).

**\*6** There appears, however, to be a conflict of authority regarding when, if ever, it is appropriate for a federal court to deem a claim procedurally barred before providing petitioner with an opportunity to pursue fully his appellate rights in the New York state court system. In *Pesina v. Johnson,* the Second Circuit explained:

> We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition. [Petitioner], by failing to appeal the denial of his Section 440.10 motion, has not fulfilled this requirement with respect to his ineffective assistance claim.... While [the] statutory limit may ultimately be held by state courts to preclude them from reaching the merits of [petitioner's] ineffective assistance claim, he must still

present that claim to the highest state court. We have no authority to declare as a matter of state law that an appeal from the denial of his original Section 440.10 motion is unavailable or that he cannot raise the ineffective assistance claim in a new Section 440.10 action. Until [petitioner] presents his claim to the highest state court-whether or not it seems likely that he will be held to be procedurally barred-he has not exhausted available state procedures. *See* 28 U.S.C. § 2254(c).

913 F.2d 53, 54 (2d Cir.1990) (per curiam) (internal citations omitted); *see also Letlow v. Sabourin,* 240 F.Supp.2d 196, 201-02 (E.D.N.Y.2002) ( "Although we are now well beyond the one year time limit, and Petitioner has apparently not availed himself of the relief afforded by § 460.30, the Court hesitates to rule as a matter of state law that § 460.30 is unavailable.") (citing *Pesina,* 913 F.2d at 54) (additional citations omitted).

However, "[t]he *Pesina* rule has been called into question by several district courts based on *Bossett v. Walker,* 41 F.3d 825 (2d Cir.1994), and *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997), which note that it is pointless to require a habeas petitioner to return to state court to pursue a claim that is obviously procedurally barred." *Castillo v. Hodges,* No. 01 Civ. 2172, 2004 WL 613075, at *4 (S.D.N.Y. Mar. 29, 2004) (collecting cases); *see also Weeks v. Senkowski,* 275 F.Supp.2d 331, 341 (E .D.N.Y.2003) ( "Although the *Pesina* rule clearly cuts against the grain of *Bossett* and mandates fruitless, time-consuming and expensive litigation, the case has never been explicitly overruled. In light of *Bossett,* this court will not follow *Pesina.* Petitioner's claim is rejected on the ground that it is procedurally barred. The Second Circuit rule in *Pesina* should be explicitly reconsidered.") (internal citations omitted). In addition to the Second Circuit's decisions in *Bossett* and *Reyes,* these cases have relied on the reasoning of *Coleman v. Thompson,* 501 U.S. at 729-32, which applied the independent and adequate state ground doctrine to dismiss a federal *habeas* petition when the state court had ruled that the petitioner had failed to meet a state procedural requirement, thus declining to reach the federal constitutional question. *See Castillo,* 2004 WL 613075, at *4; *Thomas v. Greiner,* 111 F.Supp.2d 271, 277 (S.D.N.Y.2000);

*DeVito v. Racette,* No. CV-91-2331, 1992 WL 198150, at *4-*5 (E.D .N.Y. Aug. 3, 1992). According to this view, "[i]n order to comply with *Coleman,* the federal courts must at some point do what *Pesina* declined to do-'declare as a matter of state law that an appeal ... is unavailable.' " *Thomas,* 111 F.Supp. at 278 (quoting *Pesina,* 913 F.2d at 54); *see also DeVito,* 1992 WL 198150, at *5 ( "*Coleman* appears to put to rest *Pesina'* s concern that federal courts lack the 'authority' to declare claims procedurally defaulted at the state level.") (quoting *Pesina,* 913 F.2d at 54).

**\*7** While there is much to be said for those courts that have recognized the wavering viability of *Pesina,* its demise cannot be declared by this Court. *See Priester,* 2002 WL 1448303, at *7 (explaining that while the "rule in *Pesina* has properly been called into question by several district courts ... [,][t]his Court ... cannot overrule the holding in *Pesina"* ); *Bloomer v. Costello,* No. 00 Civ. 5691, 2001 WL 62864, at *5 (S.D.N.Y. Jan. 24, 2001) ("[I]f *Pesina* is a 'derelict on the waters of the law,' it is not for this Court to sink it.") (quoting *Lambert v. California,* 355 U.S. 225, 232 (1957) (Frankfurter, J., dissenting)). As Judge Lynch has observed, the Supreme Court's comments about the independent and adequate state grounds doctrine pre-date *Pesina,* and in *Coleman,* unlike in *Pesina,* the state court had explicitly ruled that the petitioner had procedurally defaulted under state law. *Bloomer,* 2001 WL 62864, at *5. Moreover, the Second Circuit's cases which post-date *Pesina* have considered defaults that involved different procedural provisions, and none of them have suggested overruling *Pesina. Id.* "Under these circumstances, it is not for a district court to declare *Pesina* overruled." *Id; see also Priester,* 2002 WL 1448303, at *7 ("In an analogous context, the Supreme Court has held that '[i]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." ' ) (quoting *Agostini v. Felton,* 521 U.S. 203, 237 (1997)) (additional citations and quotations omitted); *Carpenter v. Reynolds,* 212 F.Supp.2d 94, 97 (E.D.N.Y.2002) ( "Despite what appears to be a procedural bar, this Court cannot deem Carpenter's claims exhausted in light of ... *Pesina* ....").

Under the binding authority of *Pesina,* therefore, the Court concludes that the most appropriate course of action in this case is dismissal of the petition without prejudice for failure to exhaust. [11] That is, the Court will not deem the claims to

be procedurally barred, but will allow Shomo to "presen[t] his claim to the highest state court-whether or not it seems likely that he will be held to be procedurally barred." *Pesina,* 913 F.2d at 54 . [12]

[11]  Interestingly, Respondent does not advocate that the Court treat Shomo's petition as procedurally barred. Rather, Respondent maintains that "a dismissal for failure to exhaust is the appropriate remedy," pointing out that Petitioner "can still attempt to file an untimely leave application with the New York Court of Appeals." (Respondent's Br. at 3 n. 1)

[12]  The Court has considered, but rejects, the alternative of staying this action to permit Shomo an opportunity to exhaust his state remedies. While a stay might permit Shomo the opportunity to exhaust his state claims without risk that his petition would be time barred, there is no basis to retain jurisdiction over a petition that contains only unexhausted claims. *See Carpenter,* 212 F.Supp.2d at 98; *Ramos v. Superintendent of Clinton Corr. Facility,* 01 Civ. 8743, 2002 WL 1226860, at *3 (S.D.N.Y. Apr. 12, 2002). Moreover, entering a stay in cases such as this would turn federal courts into a "jurisdictional parking lot" for unexhausted claims and undermine the comity interests promoted by the exhaustion requirement. *Baity v. McCary,* No. 02 Civ. 1817, 2002 WL 31433293, at *2 (S.D.N.Y. Oct. 31, 2002). In cases involving only unexhausted claims, the propriety of a stay is a different question than otherwise raised in cases involving mixed petitions-containing some claims that have been exhausted in the state courts and some that have not. *See Rhines v. Weber,* No. 03-9046, __ S.Ct. __, 2005 WL 711587 (Mar. 30, 2005); *see also Zarvela v. Artuz,* 254 F.3d 374 (2d Cir.2001). In any event, the dismissal ordered in this case is without prejudice to Shomo to claim, if appropriate, that any subsequently filed petition would be timely as a matter of equity. *See Rodriguez v. Bennett,* 303 F.3d 435, 438-39 (2d Cir.2002) (holding that a *habeas* petitioner may be entitled to claim equitable tolling of the statute of limitations when the petition is dismissed to satisfy the exhaustion requirement); *Hust v. Costello,* 329 F.Supp.2d 377, 380 (E.D.N.Y.2004) (dismissing *habeas* petition, but expressly noting that petitioner

would not be barred from asserting equitable tolling claim on later petition).

Respondent further suggests that the filing of an untimely application for leave to appeal to the New York Court of Appeals would create "no time-bar problem ... since [the] writ of error *coram nobis* would still be 'pending' " under 28 U.S.C. § 2244(d)(2). (Respondent's Br. at n. 1 (citing *Carey v. Saffold,* 536 U.S. 214, 219-21 (2002))). Whether this holds true in this case is a question for another day.

Finally, there is the question of granting Shomo a certificate of appealability. For such a certificate to issue, Petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that " 'reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." ' *Rhagi v. Artuz,* 309 F.3d 103, 106 (2d Cir.2002), *cert. denied,* 538 U.S. 950 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)) (additional quotations and citations omitted). In this case, Petitioner has made no such showing. Accordingly, the Court denies a certificate of appealability.

### *III. Conclusion*

**\*8**  For the reasons set forth above, it is hereby

ORDERED, that Respondent's motion to dismiss the petition for a writ of *habeas corpus* is GRANTED; and it is further

ORDERED, that the petition for a writ of *habeas corpus* is dismissed without prejudice for Petitioner's failure to exhaust his state law remedies; and it is further

ORDERED, that the Court declines to issue a certificate of appealability; and it is further

ORDERED, that the Clerk of the Court is directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

2005 WL 743156

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 743156

---

---

KeyCite Overruling Risk - Negative Treatment

Overruling Risk    Williams v. Taylor,    U.S.Va.,    April 18, 2000

2000 WL 235986
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Wayne MORGAN, Petitioner,
v.
G. FILLION, Superintendent of Marcy
Correctional Facility, Respondent.

No. 98 CIV 986 DAB SEG.
|
Jan. 31, 2000.

*REPORT AND RECOMMENDATION TO
THE HONORABLE DEBORAH A. BATTS*

GRUBIN, Magistrate J.

 **\*1** Petitioner *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging revocation of his parole on the following alleged six instances of denial of due process: (1) the New York State Division of Parole failed to hold hearings on the revocation of his parole in the time periods set by statute; (2) the Supreme Court, Bronx County, issued a decision that failed to recognize that the Division of Parole lacked jurisdiction; (3) the revocation occurred after the Division of Parole had lost jurisdiction over him by failing to execute its warrant against him in a timely fashion; (4) he was held beyond the maximum expiration date of his term of imprisonment without a final parole revocation hearing; (5) the Division of Parole did not act in a timely manner; and (6) the Division of Parole was not authorized to issue a warrant by a parole aide and by an area supervisor on the same date and under the same warrant number.

*FACTUAL BACKGROUND*

Viewing the facts in a light favorable to the state as required, *see, e.g., Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Einaugler v. Supreme Court of New York,* 109 F.3d 836, 839–40 (2d Cir.1997); *Maldanado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996),* the record establishes as follows. On May 16, 1988 petitioner was convicted upon a guilty plea in New York

State Supreme Court, Bronx County, of attempted murder in the second degree, attempted criminal possession of a weapon in the third degree, and criminal sale of a controlled substance in the fifth degree. He was sentenced to thirty to ninety months imprisonment on the attempted murder count, to one concurrent year on the weapons offense, and to a conditional discharge on the drug offense. The maximum expiration date of his sentence was thus November 13, 1995. On February 15, 1991 petitioner was conditionally released on parole pursuant to N.Y. Exec. Law § 259–i(2)(d) for the purpose of deportation to the United Kingdom. Petitioner signed a form acknowledging that one condition of his parole was that he not return to the United States prior to November 13, 1995 without the approval of the New York State Board of Parole. [1] He was placed on a flight to England by the United States Immigration and Naturalization Service on March 9, 1991.

[1]    The New York State Division of Parole is the executive department charged with supervising inmates released on parole. The Board of Parole is an entity within the Division of Parole. which is vested with the power to grant and revoke parole. *See* N.Y. Exec. Law §§ 259–a to 259–d. For purposes of this Report and Recommendation, I shall refer to both simply as "the Division."

Sometime in 1991, without seeking approval or informing the Division, petitioner reentered the United States. The Division learned of his return from a police report issued on or about October 23, 1991, showing that he had been arrested and taken into custody in the Bronx under the name English Morgan on charges of possession of drugs, drug paraphernalia and a weapon. The Division issued a parole revocation warrant on October 29, but petitioner was released on bail before the warrant was served. Petitioner was indicted on the charges in the Bronx, but did not appear when required in court on September 1, 1992. The court issued a bench warrant, and the Division placed him in Absconder Status.

 **\*2** On October 10, 1995 petitioner was again arrested in the Bronx, this time under the name Anthony Smith, for sale of marijuana and was not released on bail. On November 2 he pleaded guilty to attempted sale of marijuana and was sentenced to a term of imprisonment. [2] The Division had served petitioner with parole violation papers on October 13 and had held a probable cause hearing on October 26. A final revocation hearing occurred on January 18, 1996, after which the administrative law judge ruled that petitioner had violated

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 78 of 130
Morgan v. Fillion, Not Reported in F.Supp.2d (2000)
2000 WL 235986

his parole as of October 23, 1991, ordered it revoked, and remanded him to serve the remainder of his sentence, adding four years and twenty days to the maximum expiration date. This ruling was affirmed by the Commissioner of the Division on January 26, 1996.

2      The length of the term of incarceration imposed is not set forth in any of the papers in the file.

*PROCEDURAL BACKGROUND*

The chronology of petitioner's various state court filings challenging his confinement is somewhat murky because the records submitted by the parties are incomplete. We do, however, have enough information to piece together facts that are sufficient for a decision herein. Petitioner first challenged his confinement sometime in the fall of 1995 in Supreme Court, Bronx County, by a petition for a writ of habeas corpus, which was dismissed on April 3, 1996. The only record found of this proceeding is the brief, short order decision by Justice John N. Byrne, that "Though some of these violations occurred in 1991, defendant's whereabouts were unknown until 1995 when he was rearrested." *People ex rel. Morgan v. Warden of Rikers Island,* No. 734/96 (Sup.Ct. Bronx Co. April 3, 1996). The decision was not appealed. While that proceeding was pending, on December 21, 1995 petitioner brought another proceeding in Bronx County Supreme Court under Article 78 of the New York Civil Practice Law and Rules. He argued therein that the Division had failed to exercise due diligence in serving its warrant in 1991 and 1992 and had thereby waived the parole violations and lost jurisdiction over him. He also contended that the Division had lacked jurisdiction to hold him beyond November 13, 1995 for the parole revocation hearing in January 1996 because his sentence had expired on November 13, 1995.

In an opinion dated May 23, 1996 Justice Bernard Burstein denied the Article 78 petition. The court stated that as petitioner had offered no evidence at either the preliminary or final revocation hearing, he had failed to establish that the Division could have located him had it exercised due diligence, and, moreover, that it had been his obligation to have notified the Division of his whereabouts. As for the period for which petitioner was held, the court noted that he had been held beyond the November 13 date also on his conviction for attempted sale of marijuana, and the court found petitioner suffered no prejudice because he would receive credit for all the time he was incarcerated. *Morgan*

*v. New York State Division of Parole,* No. 6254/96 (Sup.Ct. Bronx Co. May 23, 1996).

*3   Petitioner did not appeal this decision, but on June 29, 1996 filed another petition for a writ of habeas corpus, again in Bronx County Supreme Court. He again argued the failure of the Division to exercise due diligence and the untimeliness of its final hearing, and added a claim that the conditions of his parole release in 1991 had been coercive and, hence, invalid because he would not have been released had he not agreed to them. In a decision dated January 3, 1997 Justice Denis J. Boyle denied the petition. The court rejected the first two claims under the doctrine of res judicata because they had already been litigated in the Article 78 proceeding. The court further held that there had been nothing inherently coercive in the circumstances of petitioner's release. *People ex rel. Morgan v. New York State Division of Parole,* No. 623/97 (Sup.Ct. Bronx Co. Jan. 3, 1997).

Petitioner filed a notice of appeal from this decision and was appointed counsel by the Appellate Division. The assigned attorney, however, applied to withdraw on the ground that there were no nonfrivolous grounds on which to appeal (*see generally Anders v. California,* 386 U.S. 738 (1967)). On January 28, 1999 the Appellate Division granted the application, agreed that there were no nonfrivolous points on which to appeal, stated that it found contentions raised in a *pro se* supplemental brief from petitioner to be without merit, and affirmed the decision below. *People ex rel. Morgan v. New York State Division of Parole,* 257 A.D.2d 540, 682 N.Y.S.2d 591 (1st Dep't). Leave to appeal to the New York Court of Appeals was denied on June 30, 1999. *People ex rel. Morgan v. New York State Division of Parole,* 93 N.Y.2d 811, 694 N.Y.S.2d 633.

Prior to the decision on his appeal, petitioner had filed sometime in 1997 still another petition for habeas corpus in Bronx County Supreme Court. He reiterated his claims that the Division had failed to exercise due diligence and had lost jurisdiction over him after his term of imprisonment expired. He also filed a supplemental petition therein, claiming that the respondent (through the state Attorney General's office) had failed to respond to discovery requests for documents and that the service of the parole violation warrant had been procedurally irregular. In an opinion dated August 26, 1997, Justice Robert L. Cohen denied the petition. The court rejected the first two claims as barred by "res judicata (collateral estoppel)." It also rejected those claims on the merits, stating that it had been petitioner's obligation to

Morgan v. Fillion, Not Reported in F.Supp.2d (2000)

2000 WL 235986

have notified the Division of his whereabouts, that there had been no showing that the Division had knowledge of his whereabouts until his second arrest in October 1995, and, citing *People ex rel. Flores v.. Dalsheim,* 66 A.D.2d 381, 388, 413 N.Y.S.2d 188, 193 (2d Dep't 1979), that "[a] parolee who absconds from supervision cannot assert an immunity from apprehension due to delay alone by the State in finding him." The court dismissed petitioner's complaints about discovery, saying that the Attorney General's office was not required to provide discovery and, in any event, the state had provided petitioner with most of the requested materials. Finally, the court rejected petitioner's claims of improper service of his parole violation papers as being "totally unsupported by the record ." *People ex rel Morgan v. Warden, Rikers Island,* Wt. No. 167098 (Sup.Ct. Bronx Co., Aug. 26, 1997).

**\*4** The instant petition was received by this court's *Pro Se* Office on January 13, 1998, before petitioner's appeal had been perfected in the Appellate Division. [3]

[3]    On August 25, 1999 my chambers received an "Amended Petition" from petitioner, which will be discussed below.

### DISCUSSION

Several general rules of law are applicable to petitioner's claims. The first is the doctrine of exhaustion. It is a statutory requirement under the federal habeas corpus law that a person in state custody exhaust his or her state remedies before seeking federal habeas corpus review. 28 U.S.C. § 2254(b)(1) (A). This rule is based on considerations of comity between the federal and state courts, ensuring that the state courts have an opportunity to consider and correct any violations of their own prisoners' federal constitutional rights. *See, e.g., Duncan v. Henry,* 513 U.S. 364, 365–66 (1995) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275 (1971); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994), *cert. denied,* 515 U.S. 1118 (1995); *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048 (1984); *Colon v. Johnson,* 19 F.Supp.2d 112, 115 (S.D.N.Y.1998); *Mercado v. Henderson,* 733 F.Supp. 19, 21 (S.D.N.Y.1990). Exhaustion requires a petitioner to have presented to the highest level of the state courts the same federal constitutional claims, legally and factually, as he raises in his petition to the federal court so that the state courts will have been alerted to them and have had the initial opportunity to pass on them. *Duncan v. Henry,* 513 U.S. at 365–66; *Picard*

*v. Connor,* 404 U.S. at 275–76; *Daye v. Attorney General,* 696 F.2d at 191. *See also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *McGann v. New York,* 870 F.2d 908, 910 (2d Cir.1989); *Morgan v. Jackson,* 869 F.2d 682, 684 (2d Cir.), *cert. denied,* 493 U.S. 920 (1989); *Brown v. Miller,* No. 97 Civ. 1874(SS), 1998 WL 91081, at  *2, 1998 U.S. Dist. LEXIS 2270, at  *4 (S.D.N.Y. March 3, 1998). However, if there is no longer a way to raise a claim in the New York courts, it may be considered exhausted. "For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' " *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997), *quoting Harris v. Reed,* 489 U.S. 255, 263 n. 9 (1989). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991).

Yet, if a petitioner is barred from presenting a claim in the state courts under their procedural rules, although the claim has thus been "exhausted," the federal doctrine of procedural forfeiture bars this court's review of the claim:

> [W]hen a state prisoner has failed to raise his federal constitutional claim in the state courts in accordance with state procedural rules, including those requiring that claims of constitutional defects in the trial be raised on direct appeal from a conviction, there has been a procedural default that bars federal habeas review unless the petitioner shows both cause for the noncompliance and prejudice resulting from the alleged constitutional violation.

**\*5** *Roman v. Abrams,* 822 F.2d 214, 222 (2d Cir.1987), *cert. denied,* 489 U.S. 1052 (1989). *See Stewart v. LaGrand,* 526 U.S. 115, 119 S.Ct. 1018, 1021 (1999); *Coleman v. Thompson,* 501 U.S. 722; *Cuevas v. Henderson,* 801 F.2d 586, 589 (2d Cir.1986), *cert. denied,* 480 U.S. 908 (1987); *Cooper v. Lefevre,* No. 94–CV–5958 (SJ), 1998 WL 386340, at  *2, 1998 U.S. Dist. LEXIS 12277, at  *4 (E.D.N.Y. July 8, 1998); *Jerrel v. Keane,* No. 93 Civ. 7746(MBM), 1995 WL 653369,

Case 9:17-cv-01299-MAD-TWD  Document 35  Filed 03/03/21  Page 80 of 130
Morgan v. Fillion, Not Reported in F.Supp.2d (2000)
2000 WL 235986

at *2, 1995 U.S. Dist. LEXIS 16463, at *4 (S.D.N.Y. Nov. 7, 1995).

Although it is apparent that petitioner has not exhausted in the state courts all the claims he presents herein, it is also apparent that the state would no longer entertain such claims because petitioner failed to present them properly when he had the opportunity. While his first habeas corpus petition was pending, he filed another proceeding under Article 78. While that was pending, the decision on the habeas corpus petition was issued, but petitioner never appealed it. Nor did he then appeal the denial of his Article 78 petition, but filed another habeas corpus petition raising, among other things, the same issues he had already raised in his first habeas corpus petition and in the Article 78 case. In denying the second petition, the court held, *inter alia,* that those claims already decided in the Article 78 proceeding were barred by res judicata. While he appealed that decision, which was ultimately affirmed, he brought his third habeas corpus petition which was denied, again, *inter alia,* on res judicata grounds. He did not appeal that decision.

Under New York law an appeal must be taken within thirty days after the judgment to be appealed or the right to appeal is lost. N.Y. C.P.L.R. 5513(a); *see, e.g., Sanchez v. New York State Tax Commission,* 112 A.D.2d 487, 487, 490 N.Y.S.2d 902, 903 (3d Dep't 1985). Having failed properly to appeal his claims other than those raised in his second habeas corpus petition, which were held already barred by res judicata, petitioner would not now be permitted to raise any of his instant claims in state court.[4] But, because of this procedural bar in the state courts, each of his claims herein has been procedurally forfeited and should be dismissed for that reason. Such is the case not only because of his failure to appeal, but also because res judicata is an additional independent and adequate state ground which bars federal habeas corpus review of the claims subject to it. *See, e.g., Moore v. Reynolds,* 153 F.3d 1086, 1096–97 (10th Cir.1998), *cert. denied,* 119 S.Ct. 1266 (1999); *Gilbert v. Moore,* 134 F.3d 642, 657 (4th Cir.1998), *cert. denied,* 119 S.Ct. 103 (1999); *Dennis v. Mitchell,* 68 F.Supp.2d 863, 880–81 (N.D.Ohio 1999). Petitioner offers no cause for his procedural lapses, nor does he establish prejudice.

[4]    I note that while petitioner presented the same factual arguments in his various state court proceedings that he asserts here, he apparently did

not present them under the constitutional cloak of "due process."

Given, however, the plethora of petitioner's previous litigation surrounding these claims, I recommend that we also address each claim on its merits in the hope that petitioner will find the filing of further cases raising the same claims unnecessary. Accordingly, his claims will be addressed *seriatim* below, despite their forfeiture.

### Ground One

**\*6** Petitioner's first claim is that he is entitled to relief because "under Executive Law, § 259–i, he ha[d] the right to 'Notice of Violation' and to have a Preliminary hearing within 15 days; the right to a Final Revocation Hearing within 90 days." Petition ¶ 12A. This claim presents no issue cognizable on a federal habeas corpus petition. This court has jurisdiction to entertain a petition by a state prisoner for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See Chandler v. Florida,* 449 U.S. 560, 571 (1981) ("This Court has no supervisory authority over state courts, and, in reviewing a state court judgment, we are confined to evaluating it in relation to the Federal Constitution."); *see also Smith v. Phillips,* 455 U.S. 209, 221 (1982); *Cupp v. Naughten,* 414 U.S. 141, 146 (1973). Alleged errors of state law are not reviewable in a federal habeas corpus proceeding. *Wainwright v. Sykes,* 433 U.S. 72, 81 (1977). *See also Longo v. Carberry,* No. 96–CV–1417 (RSP) (DNH), 1998 WL 236177, at *3 n. 5, 1997 U.S. Dist. LEXIS 22488, at *6 n. 5 (N.D.N.Y. May 7, 1998) (failure of Division to meet deadlines does not implicate a federal constitutional interest for habeas corpus relief). The Supreme Court has "long recognized that a 'mere error of state law is not a denial of due process.' " *Engle v. Isaac,* 456 U.S. 107, 121 n. 21 (1982) (citation omitted).

In any event, the claim is plainly meritless as a factual matter. N.Y. Exec. Law § 259–1(3)(c)(iii) requires that an alleged parole violator receive notice within three days of the execution of the warrant of a hearing and the conditions of parole he is alleged to have violated. Petitioner was served with the warrant and notice on October 13, 1995, as he admitted through counsel at the preliminary hearing. Transcript of Hearing of October 26, 1995, at 6. As petitioner asserts, the preliminary hearing must be held within 15 days of the execution of the warrant under N.Y. Exec. Law § 259–i(3)(c)(i). His preliminary hearing was held on October 26, 13 days after the execution of the warrant. The final hearing

is to be held within 90 days of the determination that there is probable cause to hold the parolee, N.Y. Exec. Law § 259–i(3)(f)(i), and petitioner's final hearing was held on January 18, 1996, 84 days after the probable cause finding at the preliminary hearing.

*Ground Two*

Petitioner's second ground concerns his first state petition for habeas corpus. He complains that the decision of Justice Byrne to dismiss the case was "contrary to lawful procedure and that he failed to uphold the fact that the NYS Board of Parole admitted its lack of jurisdiction over Petitioner." Petition ¶ 12B.

This ground does not state a claim for which habeas corpus relief may be granted. Even read liberally, this is a claim simply that the state court was wrong in failing to rule in favor of petitioner. As discussed above, the federal courts "ha[ve] no supervisory authority over state courts," *Chandler v. Florida,* 449 U.S. at 571, and a federal habeas corpus petition is not a substitute for state appellate procedure, nor does it serve the same functions. The Supreme Court explained as follows in *Beck v. Washington,* 369 U.S. 541, 554–55 (1962):

   **\*7** [T]he petitioner's argument here comes down to a contention that [state] law was misapplied....We have said time and again that the Fourteenth Amendment does not "assure uniformity of judicial decisions ... or immunity from judicial error." Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question.

(Citation omitted).

*Grounds Three, Four and Five*

The third, fourth and fifth grounds of the petition overlap because petitioner argues essentially the same issues in each. He claims that the Division failed to act diligently to execute its warrant between October 29, 1991 and October 13, 1995 when the warrant was eventually served, and, thus, waived the parole violations and lost its right to exercise jurisdiction over him. He further argues that the Division was not authorized to hold him in custody beyond November 13, 1995, the date his original sentence expired. He states that Ground Three is "relating to Habeas Corpus in App. Div. 1st Dept"; Ground Four is "relating to Bronx Sup.Ct.—Art 78"; and Ground Five

is "Relating to Bronx County Supreme Court, Article 78." Petition ¶ 12C–12E.

*(a) Delay*

While under some circumstances arrest for a parole violation by state authorities after unreasonable delay and lack of due diligence may implicate due process concerns under the Fourteenth Amendment, *see McCowan v. Nelson,* 436 F.2d 758, 760 (9th Cir.1970); *United States v. Gernie,* 228 F.Supp. 329, 337 (S.D.N.Y.1964), no such concerns are present here. Under New York law "[i]t was the primary responsibility of petitioner to contact [the Division] with information of his whereabouts, rather than [the Division]'s obligation to infer petitioner's whereabouts." *People ex rel. Merritt v. New York State Division of Parole,* 257 A.D.2d 435, 435, 682 N.Y.S.2d 579, 579 (1st Dep't 1999); *see People ex rel. Harris v. Dalsheim,* 69 A.D.2d 911, 911, 415 N.Y.S.2d 909, 910 (2d Dep't 1979); *People ex rel. Flores v. Dalsheim,* 66 A.D.2d 381, 388–89, 413 N.Y.S.2d 188, 193 (2d Dep't 1979). Petitioner, in the country illegally and using false names, cannot profit from his own wrongful actions. "Obviously, a violator who has succeeded in evading the authorities is in no position to complain of a delay." *Id.,* 66 A.D.2d at 389, 413 N.Y.S.2d at 193, *quoting Shelton v. United States Board of Parole,* 388 U.S. 567, 574 (D.C.Cir.1967).

Furthermore, there is no reviewable error in the state courts' various decisions on these issues. 28 U.S.C. § 2254(e)(1) requires a federal court on habeas corpus review to "presume to be correct" a factual determination made by a state court of competent jurisdiction, unless a petitioner meets "the burden of rebutting the presumption of correctness by clear and convincing evidence." Justice Byrne found that "defendant's whereabouts were unknown until 1995"; Justice Burstein held that petitioner had made no showing before him that due diligence would have resulted in the Division's finding petitioner, that petitioner did not deny that he failed to notify the Division of his whereabouts and that he was using an assumed name. Justice Boyle found the claims barred by res judicata because they had been decided by Justice Burstein, and the Appellate Division rejected the claims on the merits and upheld the lower court's decision. Justice Cohen, while noting that Justice Burstein's decision barred petitioner from relitigating these issues, also found that petitioner did not notify the Division of his whereabouts, that petitioner had also made no showing before him that the Division had knowledge of his whereabouts, and that the Division's Absconder Unit had been unable to locate him. Petitioner has offered nothing herein that rebuts these findings of the state courts.

**\*8** Moreover, there is yet another reason petitioner's claims must be rejected. 28 U.S.C. § 2254(d)(1) states that "[a]n application for a writ of habeas corpus ... shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The state courts' decisions here were neither contrary to, nor an unreasonable application of, clearly established federal law. [5] To establish that a state court's decision was "contrary to" federal law, "the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome," *Matteo v. Superintendent,* 171 F.3d 877, 888 (3rd Cir.) (en banc) (emphasis original), *cert. denied,* 120 S.Ct. 73 (1999), or that the decision "reaches a legal conclusion or a result opposite to and irreconcilable with that reached in the precedent that addresses the identical issue," *Green v. French,* 143 F.3d 865, 870 (4th Cir.1998), *cert. denied,* 119 S.Ct. 844 (1999). Petitioner points to no such Supreme Court precedent, and I am not aware of any that would support his claims. Nor has petitioner demonstrated that the state courts' decisions were an "unreasonable application" of federal law. "[A]n application of law to facts is unreasonable only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Drinkard v. Johnson,* 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997); *accord, Rodriguez v. Bennett,* No. 98 Civ. 580(LBS), 1998 WL 765180, at *3, 1998 U.S. Dist. LEXIS 17274, at *9 (S.D.N.Y. Nov. 2, 1998). *See Neelley v. Nagle,* 138 F.3d 917, 924 (11th Cir.1998), *cert. denied,* 119 S.Ct. 811 (1999) (writ can be granted "only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists").

[5]    The Second Circuit "has yet to determine upon what circumstances a state court decision is reviewed de novo to determine whether it is 'contrary to' clearly established federal law, instead of being reviewed under the more deferential 'reasonable application of' standard," *Smalls v. Batista,* 191 F .3d 272, 278 (2d Cir.1999), and there is a split among other circuits and among district judges in this circuit. *See Patterson v. Headley,* 58 F.Supp.2d 274, 279–81 (S.D.N.Y.1999) (collecting cases). However, because it is clear that the Appellate Division's decision was neither contrary to, nor an unreasonable application of, federal law, we need not join in the debate in this case.

(b) *Incarceration post-November 13, 1995*

As to petitioner's contention that his detention after November 13, 1995, the expiration date of his original sentence, was illegal because he had not received his final revocation hearing by that date, it appears, reading the petition liberally, he is making two separate claims. One is that his incarceration without the hearing violated his constitutional rights, and the second is that the Division had no jurisdiction at the time of the hearing because it did not occur until after that expiration date. In the state courts, petitioner relied on *Calhoun v. New York State Division of Parole Officers,* 999 F.2d 647 (2d Cir.1993), upon which I assume, by his reference to his state court proceedings, he also relies herein. But this reliance is misplaced. *Calhoun* was a case under 28 U.S.C. § 1983 in which the parolee had been held in custody beyond the expiration date of his sentence and then released without a final revocation hearing ever being held. While the Second Circuit did say that "without providing a final revocation hearing, the state may not constitutionally hold a defendant beyond his ... expiration date unless a final hearing would have been impracticable," 999 F.2d at 653, this dicta is inapplicable to petitioner's situation for a number of reasons. As the court explained in *Calhoun,* when a "Declaration of Delinquency" is made by the Division, by operation of N.Y. Penal Law § 70.40(3)(a), a parolee's sentence is "interrupted" as of the date of his alleged parole violation until he is returned to custody, and the term of the sentence is extended beyond its original maximum expiration date for a period of time equal to the interruption, less one day, if the parole violation is established at the final hearing. In petitioner's case, the declaration of delinquency was issued on October 23, 1991, and his sentence was thus tolled until he was returned to custody over four years later in 1995. In *Calhoun,* the interrupted period was only five days, and the parolee remained in custody beyond both his original expiration date and the adjusted date and then was released without a hearing even being held to establish that he had violated his parole. Thus, he was incarcerated the additional five days without due process of law. Petitioner, who was served with violation papers on October 13, 1995 and received a prompt probable cause hearing on October 26, did receive a timely final hearing in January 1996 at which he was found guilty of having violated his parole. His original sentence was at that time extended by the tolled period within which he had been an absconder, four years and twenty days. Petitioner's contention that he was required to be released as of November

13, 1995 turns the law on its head. If petitioner were correct, a parolee who violated parole but hid his whereabouts and remained an absconder until his maximum sentence date was reached would be rewarded for fleeing by never being subject to prosecution for his violations. The courts have long rejected this contention. In *Anderson v. Corall,* 263 U.S. 193 (1923), the Supreme Court explained that from the time of a parole violation until the parolee is retaken into custody, "[h]is status and rights [are] analogous to those of an escaped convict," and "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." 263 U.S. at 196. In *Anderson,* the Court thus rejected a claim on habeas corpus where the parolee had not even been retaken into custody until after his original sentence's expiration date had passed. In *Jones v. Fraser,* No. 96 CV 5484(EHN), 1998 WL 355341, 1998 U.S. Dist. LEXIS 8291 (E.D.N.Y. May 8, 1998), Judge Nickerson explained the principle under federal law:

> **\*9** Petitioner argues that the Commission had no authority to revoke his parole on November 21, 1992 because his term of parole had expired on April 12, 1984.

> Petitioner absconded from parole supervision on May 31, 1983. A person who absconds from parole, like an escapee from prison, is no longer considered to be serving his sentence. Petitioner's sentence of parole is tolled for the period during which he absconded. Petitioner's claim that his term of parole expired on April 12, 1984 is without merit.

> The Parole Commission's warrant issued on June 24, 1983 also served to bar the expiration of the petitioner's sentence. The warrant maintained the Commission's jurisdiction to retake the petitioner "either before or after the normal expiration date of the sentence" and to conduct a revocation hearing after the date the sentence would have expired in the absence of the warrant.

1998 WL 355341, at \*3, 1998 U.S. Dist. LEXIS 8291, at \*8– \*9 (citations omitted). *See also Vaughn v. Virginia,* 307 F.Supp. 688 (W.D.Va.1969).

Moreover, petitioner confuses procedural due process with substantive due process. Hypothetically, if the Division were to have found at the final hearing that petitioner had not violated his parole, petitioner might have been entitled to damages if it were found his incarceration had been without due process of law, but it does not follow that the Division would have somehow not had jurisdiction to conduct the hearing to determine whether he had been guilty of the violations. In any event, even if petitioner's proposition of law were correct, he could not avail himself of it because of the circumstances of his incarceration. Petitioner was incarcerated during the period before the revocation hearing on the drug offense to which he pleaded guilty. As the state court pointed out and petitioner does not contest:

> Morgan was being held not only on the parole violation warrant but also on other criminal charges *of which he was convicted.* He was afforded a final parole revocation hearing *before* the date on which he would have been released on those criminal charges.

*Morgan v. New York State Division of Parole,* slip op. at 4–5 (emphasis in original).

*Ground Six*

Petitioner's final claim is set forth merely as follows: "Division of Parole issues a Warrant by Parole Aide and Area Supervisor, allegedly on the same date, under the same Warrant Number; this is not authorized." Petition at insert next to ¶ 15. While the thrust of this claim is far from clear, it is manifest that it pertains to the Division's procedures and, for the reasons already explained above in connection with Ground One, raises no constitutional claim.

*"Amended Petition"*

On August 25, 1999, over a year after respondent herein had answered the petition, petitioner sent to the court an "Amended Petition" which was not served on respondent. The first and fourth grounds of the new petition repeat petitioner's claims that the Division failed to exercise due diligence and lost jurisdiction over him. The second ground is that the final parole revocation hearing was faulty because the Division did not call as witnesses the arresting officer and the parole officer listed on the Division's Violation of Release Report of October 16, 1995. The third claim is that petitioner received ineffective assistance of counsel on his state habeas corpus appeal when his assigned counsel submitted an *Anders* brief.

**\*10** Treating the submission as a motion for leave to amend the petition, it must be denied. Proposed amendments of

habeas corpus petitions are governed by Fed.R.Civ.P. 15(a). *See* Fed.R.Civ.P. 81(a)(2); Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts; *Letizia v. Walker,* No. 97–CV–0333E(F), 1998 WL 567840, at *1, 1998 U.S. Dist. LEXIS 13554, at *2– *4 (W.D.N.Y. Aug. 28, 1998); *Rivalta v. Artuz,* No. 96 Civ. 8043(SAS), 1997 WL 214972, at *1, 1997 U.S. Dist. LEXIS 5706, at *2 (S.D.N.Y. April 28, 1997); *Colon v. Keane,* No. CV–91–4894(CBS), 1992 WL 135032, at *4, 1992 U.S. Dist. LEXIS 8288, at *9 (E.D.N.Y. May 28, 1992), *aff'd,* 7 F.3d 221 (2nd Cir.1993). Pursuant to Fed.R.Civ.P. 15(a) leave to amend "shall be freely given when justice so requires." Undue delay, bad faith, prejudice to the opposing party and futility of the amendment, however, generally require denial of leave to amend. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *Lee v. Regal Cruises, Ltd.,* 916 F.Supp. 300, 303 (S.D.N.Y.1996), *aff'd,* 116 F.3d 465 (2d Cir.1997); *Nettis v. Levitt,* No. 96 Civ.0806(BSJ) (SEG), 1998 WL 397880, at *3, 1998 U.S. Dist. LEXIS 10623, at *7– *8 (S.D.N.Y. July 15, 1998). An amendment is "futile" if it asserts a claim that suggests no colorable ground for relief. *Sullivan v. Schweikhard,* 968 F.Supp. 910, 916 (S.D.N.Y.1997).

Petitioner's proposed first and fourth grounds merely repeat grounds in the original petition and, for reasons already discussed, are meritless. Petitioner's new second ground, concerning the Division's failure to call witnesses at his final hearing, is, like Ground One and Ground Six of the original petition, a matter of state law that raises no cognizable claim on federal habeas corpus as petitioner fails to indicate how such witnesses could have changed the result of the hearing. Moreover, even if it were to be somehow construed as a federal claim, it, too, would be procedurally forfeited from our review. As for the claim of ineffective assistance of counsel on the appeal of his state habeas corpus petition, 28 U.S.C. § 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Hence, because none of the claims in the amended petition has any colorable merit, amendment of the petition would be futile and should be denied.

*CONCLUSION*

For all the above reasons, each of petitioner's claims should be denied, and this petition be dismissed in its entirety.

Copies of this Report and Recommendation were mailed to:

Mr. Wayne Morgan

97–R–7260

Marcy Correctional Facility

P.O. Box 3600

Marcy, New York 13403–3600

Rebecca Durden, Esq.

Assistant Attorney General

**\*11** New York State Department of Law

120 Broadway

New York, New York 10271

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Deborah A. Batts and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Batts. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e), and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038 (1992); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

**All Citations**

Not Reported in F.Supp.2d, 2000 WL 235986

---

WESTLAW    © 2021 Thomson Reuters. No claim to original U.S. Government Works.                    8

2014 WL 4966748
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Christopher D. ARIOLA, Plaintiff,
v.
Darwin LaCLAIR et al., Defendants.

No. 9:08–cv–116 (GLS/RFT).
|
Signed Sept. 30, 2014.

**Attorneys and Law Firms**

Christopher D. Ariola, Syracuse, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Thomas B. Litsky, Assistant Attorney General, of counsel, New York, NY, for the Defendants. [4]

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff/petitioner *pro se* Christopher D. Ariola initially commenced this action against defendants/respondents Darwin LaClair and the New York State Division of Parole, challenging a 2007 revocation of his parole, and seeking habeas corpus relief, pursuant to 28 U.S.C. § 2254. (*See generally* Am. Pet., Dkt. No. 19.) After the amended petition was filed, however, Ariola indicated that he also sought relief from civil rights violations stemming from the same parole revocation, (Dkt. No. 32), and this action was then converted into a hybrid habeas and 42 U.S.C. § 1983 action, (Dkt. No. 33). After the conversion, Ariola filed a complaint, pursuant to § 1983, alleging identical civil rights violations related to the same parole revocation, but naming new defendants: Jim Anderson, Moss, and Tracy Carmody, (Dkt. No. 39); *see Ariola v.. Anderson,* No. 5:13–cv–577 (N.D.N.Y.). The cases have since been consolidated. *Anderson,* No. 5:13–cv–577, Dkt. No. 7.

Once all matters were ripe for judicial review, Magistrate Judge Randolph F. Treece was tasked with the laborious chore of concomitantly assessing: (1) LaClair and the Division

of Parole's motion for judgment on the pleadings, which sought to dismiss the amended habeas petition on the grounds of mootness, (Dkt. No. 37); (2) LaClair and the Division of Parole's motion for judgment on the pleadings, which sought to dismiss Ariola's claims pursuant to § 1983, (*id.*); and (3) the viability of the claims asserted in *Anderson,* upon initial screening pursuant to 28 U.S.C.1915(e). [1] In a Report–Recommendation and Order (R & R) issued on March 31, 2014, Judge Treece recommended that LaClair and the Division of Parole's motion for judgment on the pleadings be granted, and that the consolidated *Anderson* complaint be dismissed in its entirety. (Dkt. No. 46.) Pending are Ariola's objections to the R & R. (Dkt. No. 47.) For the reasons that follow, the R & R is adopted in its entirety.

### II. *Background* [2]

As intimated above, the procedural history of this case is quite convoluted. Indeed, the original habeas petition was filed on January 31, 2008, (Pet., Dkt. No. 1), and only now, nearly seven years later, is the matter ripe for review. Given Judge Treece's thorough recitation of the facts and procedural history in his R & R, (Dkt. No. 46 at 2–6, 7–9, 14–15, 21–24), the court will not repeat them fully here, but it will provide a few salient facts for context.

On February 26, 2007, after serving sentences for first degree manslaughter and third degree attempted robbery, Ariola was conditionally released under supervision. [3] (Am. Pet. ¶ 10; Dkt. No. 8, Attach. 5 at 10–11.) As part of the conditions of Ariola's parole, Anderson, Ariola's parole officer, imposed special condition 13AA, which required Ariola to enter and complete Central New York Services (CNYS). (*Id.* ¶ 10.) At his initial assessment for CNYS, which was performed by Carmody, an employee of CNYS, Ariola was presented with a Health Insurance Portability and Accountability Act (HIPAA) waiver form, and was asked to sign it. (*Id.* ¶ 11.) Believing that he could not be denied treatment even if he declined to execute the HIPAA waiver, Ariola refused to sign the form. (*Id.* ¶¶ 11–13, 15.) It was then recommended that Ariola undergo a second assessment at Hutchings Psychiatric Center, but, again, Ariola did not sign the form. (*Id.* ¶¶ 12–13, 15.)

**\*2** On April 3, 2007, Ariola was questioned by Anderson about his CNYS assessment, and Ariola responded, "[t]hey want me to get another assessment, do you want me to set it

up[?]," to which Anderson replied in the affirmative. (*Id.* ¶ 14.) Later that day, Carmody informed Anderson that Ariola refused to sign the release forms, (*id.* ¶ 15), and a parole warrant was issued, (Dkt. No. 8, Attach. 5 at 15). The next day, April 4, Anderson asked Ariola why he did not sign the releases, and Ariola stated that he " 'was following privacy law.' " (Am.Pet.¶ 15.) Anderson then informed Ariola that he was required to sign the forms, and Ariola immediately complied, but was then taken into custody by Anderson and Moss, another parole officer. (*Id.*)

On April 11, 2007, a preliminary parole revocation hearing was held, at which probable cause was found to exist with regard to a violation of parole condition 13AA because the releases were not signed and such releases were mandatory in order to complete the assessment. (*Id.* ¶¶ 16, 19.) On May 28, 2007, a final revocation hearing took place, and Ariola was found guilty of violating parole condition 13AA and violating the parole condition requiring Ariola to be truthful with his parole officer. (*Id.* ¶¶ 20, 23.) A recommendation of a time assessment of twenty-four months was imposed, (Dkt. No. 8, Attach. 2 at 59), and, after several appeals, the determination was affirmed by the State Board of Parole on January 30, 2008, (Dkt. No. 8, Attach.14). One day later, Ariola filed his first habeas petition. (*See generally* Pet.)

While this action was pending, Ariola was conditionally released on parole a second time, (Dkt. No. 24, Attach.1), and, also for a second time, violated the conditions of his parole, (*id.,* Attach .2). These violations resulted in a second parole revocation in October 2010, which culminated in the imposition of a twenty-two month time assessment. (*Id.,* Attach.5.) Ultimately, on March 5, 2013, Ariola was discharged from state prison after reaching the maximum expiration date of his sentence, and was no longer subject to parole supervision. (Dkt. No. 29, Attach.1.)

### III. *Standard of Review*

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same

papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4–5.

### IV. *Discussion*

**\*3** In his R & R, Judge Treece made three main recommendations. First, he addressed LaClair and the Division of Parole's motion for judgment on the pleadings as it related to Ariola's amended habeas petition, and recommended that the motion be granted, and the amended petition be denied as moot. (Dkt. No. 46 at 9–12.) Specifically, Judge Treece noted that, because Ariola had been released from prison and was no longer subject to any parole conditions—as he had served the maximum of his sentence—the court was incapable of providing him any relief pursuant to § 2254. (*Id .*)

Second, Judge Treece discussed the portion of LaClair and the Division of Parole's motion for judgment on the pleadings as it related to the parts of the habeas petition that could be construed as alleging civil rights violations pursuant to § 1983, and recommended that the motion be granted, and the claims dismissed. (*Id.* at 12–18.) Specifically, Judge Treece recommended: (1) dismissal of the claims against LaClair, to the extent that he was sued in his official capacity, and the Division of Parole, as barred by the Eleventh Amendment; and (2) dismissal of the claims against LaClair in his personal capacity for lack of personal involvement, as his only involvement in the action is that he was the Superintendent of the correctional facility where Ariola was housed when he commenced this litigation. (*Id.* at 12–18.)

Third, and finally, Judge Treece, conducting an initial review pursuant to 28 U.S.C. § 1915(e), assessed the viability of Ariola's claims asserted in the consolidated § 1983 complaint against Anderson, Moss, and Carmody. (*Id.* at 18–33.) Judge Treece noted that Ariola's claims consisted of four overall challenges to his 2007 parole revocation, found that each lacked merit, and recommended dismissal of the consolidated complaint in its entirety. (*Id.*) First, Judge Treece addressed Ariola's claim that the special parole conditions were unconstitutionally vague, and concluded that "the challenged parole conditions provided sufficiently clear standards for conduct," and, even if they did not, "Ariola's conduct ... fell so clearly within the core of his conditions of parole that it is clear that a reasonable officer would doubt that Ariola complied with his conditions." (*Id.* at 26–

29.) Second, Judge Treece considered Ariola's claims that Anderson and Moss arrested and prosecuted him without a warrant, and concluded that this claim is belied by the record and Ariola's own factual allegations, which demonstrate that a warrant had indeed been issued. (*Id.* at 29–30; *see* Dkt. No. 8, Attach. 2 at 2–3; Dkt. No. 8, Attach. 5 at 15.) Third, Judge Treece addressed Ariola's claims that Carmody completed a false assessment of him and provided false testimony at his final revocation hearing, and concluded, first, that Ariola's allegations were purely conclusory, and second, that even if "Carmody's report and testimony were total prevarications ... Ariola's claims still fail because he has no constitutional right to be free from being falsely accused." (Dkt. No. 46 at 30–32.) Finally, Judge Treece discussed Ariola's claim that Anderson and Carmody conspired to violate his rights, and, after scouring the record, again concluded that this claim was based only on conclusory statements, and should not survive. (*Id.* at 32–33.)

**\*4** In his objections, Ariola seemingly takes umbrage only with the portion of the R & R that recommends dismissal of the consolidated § 1983 complaint. (Dkt. No. 47.) Specifically, he "seeks to persuade the [c]ourt that there is a[n] arguable issue ... that ... [d]efendants violated [his] constitution[al] rights," by reciting facts stated in his complaint and considered by Judge Treece. (*Id* . at 2–6.) Indeed, Ariola seeks "an order from this [c]ourt ... continuing this action based upon the facts *reshown* herein ... that w[ere] originally shown in the [v]erified [c]omplain[t]." (*Id.* at 6 (emphasis added).) Ariola does not, however, argue that Judge Treece erred in any of his findings, nor does he even contend that Judge Treece failed to consider these facts. Proverbially speaking, Ariola simply attempts to take another bite out of the apple—that is, what is left of the apple. Thus, Ariola's "objections" are reviewed under a clear error standard, *see Almonte,* 2006 WL 149049, at \*4, and the court, having thoroughly reviewed the R & R for clear error, and finding none, adopts the R & R in its entirety.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Randolph F. Treece's March 31, 2014 Report–Recommendation and Order (Dkt. No. 46) is **ADOPTED** in its entirety; and it is further

**ORDERED** that LaClair and the Division of Parole's motion for judgment on the pleadings (Dkt. No. 37) is **GRANTED;** and it is further

**ORDERED** that Ariola's amended habeas petition (Dkt. No. 19) is **DENIED** and **DISMISSED;** and it is further

**ORDERED** that, because Ariola has failed to make a substantial showing of the denial of a constitutional right, no certification of appealability shall issue pursuant to 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED** that, to the extent that Ariola's habeas petition has been construed as brought pursuant to 42 U.S.C. § 1983, it is **DISMISSED;** and it is further

**ORDERED** that the consolidated § 1983 complaint (Dkt. No. 39) is **DISMISSED** pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this MemorandumDecision and Order to the parties.

**IT IS SO ORDERED.**

CHRISTOPHER D. ARIOLA,

Petitioner,

-v-

DARWIN LACLAIR; NEW YORK STATE DIV. OF PAROLE,

Respondent.

CHRISTOPHER D. ARIOLA,

Plaintiff,

-v-

JIM ANDERSON; MOSS; TRACY CARMODY,

Defendants.

Civ. No. 5:13–CV–577 (GLS/RFT)

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

This action, which has been pending since 2008, was initiated, *pro se*, by Christopher Ariola as a means of obtaining *habeas corpus* relief by challenging his 2007 revocation of parole. What started as a straightforward quest for *habeas relief* has since morphed into a civil rights challenge to the very same parole revocation. To categorize the procedural history of this case as unique would truly be an understatement. Indeed, this is the first time this Court has issued a Report–Recommendation that concomitantly involves (1) an assessment of the mootness of a *Habeas Corpus* Petition, filed pursuant to 28 U.S.C. § 2254, challenging parole revocation; (2) an assessment of the viability of a civil rights violation, pursuant to 42 U.S.C. § 1983, stemming from the same parole revocation; and (3) an initial screening of a companion civil rights action, filed pursuant to 42 U.S.C. § 1983. In light of the labyrinthine history that has brought us to this uncommon precipice, it is incumbent upon this Court to succinctly explain what procedurally has transpired in this action.

### I. PROCEDURAL HISTORY

 **\*5** On January 31, 2008, the Clerk of the Court received an undated Petition for a Writ of *Habeas Corpus* from Christopher Ariola and accordingly opened Case No. 9:08–CV–1116 ("Lead Case"). *See* Dkt. No. 1, Pet. By this Petition, Ariola challenged, pursuant to 28 U.S.C. § 2254, the 2007 revocation of his parole. The Petition named as Respondents Darwin E. LeClair and the New York State Division of Parole. *Id.* On February 4, 2008, the Honorable Gustave J. DiBianco, now-retired United States Magistrate Judge, issued a Decision and Order directing the Respondents to answer the Petition and provide relevant State Court Records. [1] Dkt. No. 3. On April 29, 2008, Respondents filed an Answer along with the relevant State Court Records. Dkt. Nos. 7 & 8 (hereinafter "State Ct. R."). Their opposition to the Petition rested mostly in Ariola's failure to exhaust, as well as the contention that he was afforded all the process he was due during his parole revocation proceedings. Dkt. No. 7. On May 8, 2008, Ariola filed a Traverse, Dkt. No. 9, and at that point the case was ready for review by the assigned Magistrate Judge, who at that time was Magistrate Judge

DiBianco. But, on April 17, 2009, this matter was reassigned to the undersigned. Dkt. No. 10.

On November 2, 2011, after more than three years had elapsed since the initiation of this action, Ariola filed a Motion to Amend his Petition, Dkt. No. 15, which was opposed by Respondents, Dkt. No. 16. Nevertheless, on January 27, 2012, the undersigned issued a Decision and Order granting in part the request to amend, Dkt. No. 18, and the Amended Petition was filed with the Court on February 13, 2012, Dkt. No. 19. As noted by the Court, although the Amended Petition was not so different from the Original Petition, we provided Respondents an opportunity to supplement their Answer and provide further State Court Records if necessary. Dkt. No. 18. After obtaining multiple extensions of time to file a response, Respondents sought permission to limit their response to the issue of whether the Petition is moot. *See* Text Orders, dated Mar. 23, 2012 & May 11, 2012; Dkt. No. 23, Resp't Lt.-Mot., dated June 14, 2012. According to Respondents, since the 2007 parole revocation, Ariola had been re-released on parole conditions and was no longer in custody pursuant to the parole revocation at issue. [2] Dkt. No. 23. The request to limit the response was granted and the Answer, relevant State Court Records, and accompanying Memorandum of Law were filed on June 22, 2012. Text Order, dated June 15, 2012; Dkt. Nos. 24 (hereinafter "Supp. State Ct. R.") & 25. On July 10, 2012, Ariola filed a Traverse. Dkt. No. 28. And, once again, the matter seemed ripe for a report-recommendation by the assigned Magistrate Judge.

Then, on March 13, 2013, Respondents filed a Letter–Brief in further support of their request to dismiss the Amended Petition as moot. Dkt. No. 29. According to Respondents, after another parole revocation unrelated to the one challenged in this action, Ariola was reincarcerated; subsequently, Ariola completed the maximum expiration date of his sentence and was released from prison on March 5, 2013 without any parole supervision. *Id.* This news propelled the trajectory of this action to meander wildly.

 **\*6** Ariola's response to the Respondents' Letter was to seek permission to convert this *Habeas Corpus* Petition to a civil rights Complaint brought pursuant to 42 U.S.C. § 1983. Dkt. No. 32. The Court was troubled by the complication posed by Ariola's request, but ever mindful of the Second Circuit's dictate placing the onus on the District Court to liberally interpret *pro se* filings and find them to raise the strongest argument suggested therein, [3] the undersigned decided to entertain Ariola's request. But, instead of converting the

action, which raised inherent statute of limitations flags, we deemed the action, pursuant to Second Circuit precedent, as originally brought pursuant to both 28 U.S.C. § 2254 and 42 U.S.C. § 1983. Dkt. No. 33 (citing *Thompson v. Choinski,* 525 F.3d 205, 209–10 (2d Cir.2008), for the proposition that if a *habeas* petitioner alleges facts entitling him to relief, a court should treat the claims as properly pleaded in the first instance as seeking "relief under both a habeas statute and a § 1983 in a single pleading"). To be fair, we provided Respondents with an opportunity to oppose any § 1983 claims that Ariola may have originally stated in this action.

In response, on June 7, 2013, Respondents filed a Motion for Judgment on the Pleadings seeking dismissal of the *habeas* and civil rights claims. But, just prior to the filing of this Motion, Ariola, beating Respondents to the proverbial punch, complicated matters further when he filed a separate civil rights action against three individual Defendants regarding the subject 2007 parole revocation. *See Ariola v. Anderson,* Civ. No. 5:13–CV–577 (GLS/RFT) ("Member Case"), at Dkt. No. 1. Accompanying that civil rights Complaint was a Motion to Proceed *in Forma Pauperis* ("IFP") and a Motion to Consolidate both pending actions. *Id.,* at Dkt. Nos. 3 & 4. On June 18, 2013, this Court determined that allowing these similar cases, based so clearly on the same nucleus of facts, to continue independently would be a waste of judicial resources and issued an Order consolidating both cases and granting Ariola permission to proceed IFP. *Id.,* at Dkt. No. 7. However, in an effort to avoid any further complication, we reserved on directing service on the newly named individual Defendants and instead explained that we would perform an initial screening of the new § 1983 Complaint at the time we review the issues that have been fully briefed in the original *Habeas* case. The newly filed Complaint was filed in the Lead Case and we granted Respondents in the *Habeas* action an opportunity to supplement their Motion for Judgment on the Pleadings; Respondents provided a brief response on June 19, 2013. Lead Case at Dkt. No. 41.

On June 24, 2013, Ariola filed his Opposition to the Motion for Judgment on the Pleadings, which he supplemented a few days later. Lead Case at Dkt. Nos. 42 & 45. At long last, it appears that all matters that can be are fully briefed and this case is, once again, ripe for review.

## II. DISCUSSION

**\*7** As set forth above, this case presents numerous procedural anomalies that complicate the manner in which this Report–Recommendation addresses each of the presented claims for relief. The Court will first address Ariola's initial request for *Habeas* relief. Then, the Court will assess Respondents' Motion for Judgment on the Pleadings insofar as the *Habeas* Petition, and Amended Petition, can be construed as having been originally brought pursuant to 42 U.S.C. § 1983. Lastly, the Court will perform an initial screening, pursuant to 28 U.S.C. § 1915, of the civil rights Complaint initially filed in the Member Case. To ensure clarity, the Court will divide the ReportRecommendation into sections, with each of the three assessments containing its own applicable standard of review and statement of fact.

### A. *Habeas Corpus* Petition

Ariola initiated this action by filing a Petition for a Writ of *Habeas Corpus,* pursuant to 28 U.S.C. § 2254. By his Amended Petition, Ariola asserts that his parole was revoked without due process of law, the conditions of his parole were unconstitutionally vague, and the violations of his parole conditions were insubstantial and did not warrant revocation. Dkt. No. 19, Am. Pet. Respondents oppose the Amended Petition and move to dismiss it on the grounds that Ariola's claims are moot in light of his re-release on parole conditions and subsequent completion of the entirety of his sentence. Dkt. No. 25 & 37. For the reasons that follow, we recommend denying the Petition on the grounds that it is moot.

### 1. Factual Background

The following facts are adduced from the State Court Records provided by Respondents. On December 2, 2002, Ariola pled guilty to Manslaughter in the First Degree and Attempted Robbery in the Third Degree in violation of New York Penal Law § § 125.20(1), 110.00, and 160.05. *See* State Ct. R., Ex. D, Heather R. Rubinstein, Esq., Affirm., dated July 17, 2007, at Ex. A, Sentence & Commitment R., dated Dec. 2, 2002. He was sentenced to a determinate term of seven years imprisonment and five years of post-release supervision for the manslaughter conviction, and an indeterminate term of one to three years for the attempted robbery conviction, with both sentences to run concurrently. *Id.*

On February 26, 2007, Ariola was conditionally released under supervision. *Id.* at Ex. B, Violation of Release Rep.,

dated Feb. 26, 2007, at p. 1. As part of the conditions of his parole, Ariola was required to participate in anti-aggression and anti-violence counseling; these conditions were further modified on March 6, 2007, with the requirement that Ariola enter and complete Central New York ("CNY") Services and could not discontinue the program without written permission from his parole officer. *Id.*

On April 4, 2007, a parole warrant was issued based upon Ariola's violation of certain conditions of his parole, [4] including his failure to complete and comply with treatment plans, failure to respond truthfully to his parole officer when questioned about his mental health appointments, and his admission that he refused to sign documents which would have led to a second mental health assessment. *Id.* And on April 5, 2007, a notice of violation was issued setting both preliminary and final hearing dates. *Id.* at Ex. C, Notice of Violation, dated Apr. 5, 2007.

**\*8** A final parole revocation hearing was held on May 22, 2007, wherein it was determined that Ariola had violated the conditions directing him to comply with the treatment plans of CNY Services and to be truthful with his parole officer. State Ct. R., Ex. A, Tr. of Parole Revocation Hr'g, dated May 22, 2007, at pp. 48–50. The administrative law judge ("ALJ") presiding over the hearing recommended that Ariola receive a time assessment of twenty-four months. *Id.* at p. 50. Ariola appealed. The ALJ's determination was affirmed by the Commissioner on June 11, 2007, and the recommended twenty-four month time assessment was imposed by the Division of Parole. State Ct. R., Ex. B, Addendum to Parole Revocation Dec. Notice, dated June 11, 2007. Ariola appealed that determination and the State Board of Parole affirmed on January 30, 2008. State Ct. R., Ex. M, Admin. Appeal Dec. Notice, dated Jan. 30, 2008.

On January 31, 2008, just one day after the State Board of Parole affirmed the parole violation revocation, this Court received Ariola's undated Petition for a Writ of *Habeas Corpus.* During the pendency of that Petition, Ariola was again conditionally released on parole on April 3, 2009. Supp. State Ct. R., Ex. 1, Cert. of Release to Parole Supervision, dated Apr. 2, 2009. Ariola was later charged with violating several conditions of that parole when, on August 25, 2010, he traveled outside of Onondaga County without first securing permission, possessed alcohol, threatened to kill a woman and her children, and caused that woman physical injury. Supp. State Ct. R., Ex. 2. As a result of these charged violations, Ariola's parole was again revoked and he received

a twenty-two month time assessment. The earliest date for release on parole was set for June 28, 2012. Supp. State Ct. R., Ex. 5, Admin. Appeal Dec. Notice (undated), & Ex. 7, Inmate Information Printout from Dep't of Corr. and Cmty. Supervision Website, dated June 19, 2012. On March 5, 2013, Ariola was discharged from state prison after reaching the maximum expiration date of his sentence and was no longer subject to parole supervision. [5] Dkt. No. 29.

*2. Mootness*

Respondents contend that because during the pendency of this proceeding, Ariola was released from the sentence under attack, the May 28, 2007/June 11, 2007 revocation of parole, his claims for *habeas* relief are moot. They first posed this argument when it came to their attention that Ariola had been re-released on parole on April 3, 2009, and then further supplemented this argument after the maximum expiration date of Ariola's underlying sentence arrived on March 5, 2013. Thus, it is Respondents' contention that this Court can no longer provide any *habeas* relief to Ariola thereby rendering the claims moot.

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a "case or controversy." *Spencer v. Kemna,* 523 U.S. 1, 7 (1998); *Swaby v. Ashcroft,* 357 F.3d 156, 159 (2d Cir.2004). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000) (internal quotations and citations omitted); *Lavin v. United States,* 299 F.3d 123, 128 (2d Cir.2002). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin–Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir.1983); *see also Clayton v. Int'l Union, United Automobile, Aerospace & Agric. Implement Workers,* 451 U.S. 679, 692 (1982) (noting that if a plaintiff "receive[s] the full relief he requested" the action becomes moot). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna,* 523 U.S. at 7 (citing *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477–478 (1990)).

**\*9** In the context of *habeas corpus* petitions, a petitioner no longer in custody must demonstrate a "collateral consequence" of the detention that can be remedied by granting the writ. *Spencer v. Kemna,* 523 U.S. at

Ariola v. LaClair, Not Reported in F.Supp.3d (2014)

2014 WL 4966748

7. When a *habeas* petitioner challenges the underlying criminal conviction, there is a presumption that collateral consequences exist. *Sibron v. New York,* 392 U.S. 40, 54–55 (1968) (cited in *Spencer v. Kemna,* 523 U.S. at 10–12). The instant Petitioner, however, is not challenging the validity of his underlying conviction; rather, he challenges the validity of a parole revocation hearing. In the context of parole revocation, collateral consequences are not presumed and it is the Petitioner's burden to demonstrate a concrete injury-in-fact stemming from the revocation. *Spencer v. Kemna,* 523 U.S. at 13–14.

We note that a prisoner challenging a parole revocation hearing is, at most, entitled to a rehearing, and so, a prisoner who has already served his sentence or who has been released ordinarily would not obtain any legal benefit from a determination that the parole revocation hearing was wrongly decided. *See Lebron v. Graham,* 2010 WL 2771878, at *3 (N.D.N.Y. July 12, 2010).

When first faced with the argument of mootness, Ariola contended that a live case or controversy existed, notwithstanding his re-release on parole conditions, because: (1) he is still subject to the allegedly unconstitutional condition of release that prompted his original 2007 parole revocation, and the constitutionality of those conditions is an issue capable of evading review; (2) the revocation affects his parole supervision intensity and score; and (3) he was collaterally estopped from bringing a civil lawsuit against CNY Services due to the 2007 parole revocation. *See generally* Pet.'s 2d Traverse. But, when his maximum expiration of his sentence occurred, Ariola seemed to relent from seeking *habeas* relief and instead sought permission to convert his claim to a civil rights action pursuant to 42 U.S.C. § 1983. Dkt. No. 32.

We need not entertain any of these contentions because Ariola's release from prison wherein he is no longer subject to any parole conditions, having served the maximum expiration of his sentence, clearly renders this Court incapable of providing him *any* relief pursuant to the *habeas corpus* statute. And Ariola's request to convert his Petition is construed by this Court as an acquiescence to that assessment. The Court is keenly aware of the inherit unfairness of this situation wherein a claim seeking relief of this magnitude and importance should go stale due to an overly congested court docket.[6] This case has languished for many years on the Court's docket, and it is only in recent months that it had became complex in nature. Nevertheless, the Court has

afforded Ariola much solicitude in construing his action as raising the strongest claims suggested therein and we are ensuring by our analysis below that he is not placed in a position without some relief being considered by this federal court.

**\*10** In light of this analysis, we recommend that Respondents' Motion be **granted** as to Ariola's claims for *habeas* relief and the *Habeas* Petition should be **denied**.

## B. Construing the *Habeas* Petition as a Civil Rights Complaint

As noted above, in response to Ariola's request to convert his *Habeas* Petition, this Court issued an Order construing his Original (and Amended) Petition as also raising civil rights violations, pursuant to 42 U.S.C. § 1983, and directed a response. Dkt. No. 33. On June 7, 2013, Respondents Darwin LaClair and the New York State Division of Parole filed a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), which is now fully briefed. Dkt. No. 37, Mot. for J. on Pleadings; Dkts. Nos. 42 & 45, Pl.'s Opp'n.

Since initiating this action, Ariola has contended that his parole was revoked because of his failure to sign privacy releases. He asserts that the revocation was unlawful because (1) the parole conditions he was found to have violated are unconstitutionally vague, (2) the revocation violated his due process rights, and (3) his violation was not substantial enough to warrant a revocation. Dkt. No. 19, Am. Pet, at ¶ 2.

### 1. Standard of Review

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988) (citation omitted). In applying Rule 12(c), a court must utilize the same standard as that applicable to a motion under Rule 12(b)(6). The *Irish Lesbian and Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998). On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all factual allegations in the complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993) (citation omitted). Further, "the court should construe the complaint liberally and draw

inferences from the plaintiff's allegations in the light most favorable to the plaintiff." *Tamayo v. City of New York,* 2004 WL 137198, at *5 (S.D.N.Y. Jan. 27, 2004) (citing *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir.1999)). The court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), and must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint, *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. at 697 (citing *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. at 679–80.

### 2. Factual Allegations

**\*11** In our usual course of reviewing a motion for judgment on the pleadings, we would apply the above standard of review and take as true all factual allegations stated in the

pleading and assess the viability of any claim for relief. Not surprisingly, this task is not so straightforward in this case.

When Ariola asked this Court to convert his *Habeas* Petition to a § 1983 Complaint, two obstacles were conjured up. First and foremost, should this Court consider this request as one seeking leave to amend and, if granted, deem this "new" pleading to have been "brought" as of the date of the request? If we pursued that route, Ariola would be stymied by a significant statute of limitations issue by seeking relief in 2013 for an alleged constitutional violation that took place in 2007. Or, faced with the futility of allowing such an amendment, would we instead have to determine whether it sufficiently related back to the initial filing? In light of his *pro se* status, and in an effort to neutralize this first obstacle, we determined, based upon Second Circuit precedent, that we had the ability, if not the obligation, to construe the action as originally having been brought as *both* a *habeas* petition and a civil rights complaint. *See* Dkt. No. 33 at p. 2 (citing *Thompson v. Choinski,* 525 F.3d 205 (2d Cir.2008).

But sliding past, if not around, this first hurdle only created a second, more dire hurdle, namely, who would be named as the proper defendants with regard to alleged civil rights violations. [7] It was not clear to this Court which individuals Ariola would intend to hold responsible for violating his civil rights, and it would not be proper for this Court to infer and *sua sponte* add individuals to this action. But before we had an opportunity to fully flesh that issue out, Ariola, perhaps sensing the troubles that lay ahead, initiated a separate civil rights actions naming individual Defendants whom he claims violated his constitutional rights.

Not surprisingly, the original Respondents moved for dismissal of the Petition-nowComplaint against them, not just because such claims are moot, but also because of Eleventh Amendment immunity and the lack of personal involvement. In light of these arguments, and because the Amended Petition and the Member Case Civil Rights Complaint are virtually identical, the Court will reserve its exhaustive recitation of the factual allegations of Plaintiff's civil rights claims for when we perform an initial screening of the companion Complaint. *See infra* Part II.C.2.

### 3. Mootness

Respondents/Defendants contend that even if this action were construed as brought pursuant to § 1983, the claims are still

moot because the only relief sought, *i.e.* Ariola's release, has been provided to him. The Court agrees that to the extent Ariola seeks such relief, his claims are rendered moot by virtue of his release from prison and parole conditions after serving the maximum expiration of his sentence. The Court finds, however, that Ariola's request for relief, insofar as it pertains to § 1983, is not limited to injunctive relief. Instead, by asking the Court for "any further, proper and just relief ... deem[ed] appropriate," it is sensible for us to construe Ariola's claim for relief as more than just injunctive in nature, but rather compensatory in nature seeking the value, if any, of damages sustained as a result of the alleged constitutional violations. Thus, we recommend that the Motion be **denied** as to the mootness of the § 1983 claims.

### 4. Eleventh Amendment

**\*12** The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. Hans v. Louisiana, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.' " Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 447–48 (2d Cir.1999) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. at 98–101; Severino v. Negron, 996 F.2d 1439, 1441 (2d Cir.1993); Daisernia v. State of New York, 582 F.Supp. 792, 796 (N.D.N.Y.1984).

Accordingly, Plaintiff's § 1983 claims against the New York State Parole Board must be dismissed insofar as New York State has not consented to suit in federal court. [8]

As for claims asserted against Darwin LeClair, to the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." Rourke v. New York State Dep't. of Corr. Servs., 915 F.Supp. 525, 539 (N.D.N.Y.1995)

(citing Berman Enters., Inc. v. Jorling, 3 F.3d 602, 606 (2d Cir.), cert. denied, 510 U.S. 1073 (1994); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir.1993)); see also Mathie v. Fries, 121 F.3d 808, 818 (2d Cir.1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer ...."). Because we have already found claims for injunctive relief to be moot, the only relief sought herein is monetary and thus, LaClair is entitled to Eleventh Amendment Immunity insofar as he is being sued in his official capacity.

### 5. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Moreover, "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." Kinch v. Artuz, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir.1995) & Wright v. Smith, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

**\*13** The only individual Defendant is Darwin LeClair, whom, upon information and belief, was the Superintendent of the correctional facility Ariola was housed when this action began. The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if it can be shown that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates

who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citations omitted).

Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)); *see also Wright v. Smith,* 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

There are no allegations contained in any pleading before the Court that implicates Darwin LaClair in any wrongdoing whatsoever. His only involvement in this action is that he acted as Superintendent of the correctional facility where Ariola was housed when he started this litigation. He clearly had no involvement in any decisions made by the Division of Parole, nor its employees, and thus, the Motion should be **granted** as it pertains to LaClair.

## C. Companion § 1983 Complaint

As noted above, Ariola initiated a separate civil action by filing a civil rights Complaint with the Clerk of the Court, accompanied by a request to have the new action consolidated with his earlier *habeas* action. *See* Member Case. Ariola also sought permission from the Court to proceed with that action *in forma pauperis* ("IFP"). The Court granted that request and directed that the cases be consolidated. However, we held off on performing an initial review and similarly abstained from directing service on the newly added individual Defendants until the Court had an opportunity to review all the pleadings presented by Ariola.

By his § 1983 Complaint, Ariola asserts that Defendant Jim Anderson, who was his former parole officer, Defendant Moss, who is another parole officer, and Defendant Tracy Carmody, who was an employee with CNY Services, violated his constitutional rights in connection with his 2007 parole

revocation. The Court now performs the initial review of the Complaint pursuant to 28 U.S.C. § 1915(e).

### *1. Standard of Review*

**\*14** Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.In determining whether an action is frivolous, the Court must consider whether the Complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Id.* at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the Court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the Court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

In assessing whether a pleading states a claim for relief, courts employ the same standard used when assessing a motion to dismiss. A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U .S. at 697 (citing *Twombly* ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc.*

*v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v.. Iqbal,* 556 U.S. at 679–80. The Court will now turn to a consideration of the Plaintiff's Complaint under the above standards.

### 2. Factual Allegations

**\*15** In accordance with the applicable standard of review, the following facts are adduced from the newly filed § 1983 Complaint. Because the Complaint references and relies upon matters outside that pleading, and because we have consolidated this action with the prior *Habeas* matter, which contains the relevant State Court Records, the Court will also, when necessary, utilize information available therein in assessing the viability of the Complaint. [9]

On February 26, 2007, Ariola was released to parole. Am. Pet. at ¶ 10. Thereafter, on March 6, 2007, Parole Officer Anderson imposed special condition 13AA, which required Ariola to "enter and complete CNY Services" and further prohibits him from discontinuing that program without written permission from the parole officer. [10] Compl. at ¶ 18. Ariola was not advised at that time that he did not possess privacy rights guaranteed by the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.*

On March 20, 2007, Defendant Tracy Carmody performed an assessment of Ariola, and, according to Ariola, she determined that he was "guarded, fearful and manipulative for exercising HIPAA rights." *Id.* at ¶ 19, n. 1, & Ex. A. Based upon the content of the form provided to him for review and signature, which he refused to sign, it was Ariola's understanding that he could not be denied treatment due to his failure to execute a HIPAA waiver. *Id* . & Ex. C. Upon reviewing Carmody's assessment, Dr. Zebrowski, who is not a Defendant in this action, determined that Ariola did not have a chemical dependency and should be referred to Hutchings

Psychiatric Center ("HPC") for another assessment. *Id.* at ¶ 21 & Ex. D. On March 28, 2007, Todd Bishop, another employee from CNY, [11] spoke with Ariola about the doctor's recommendation that he be assessed by HPC; Ariola left that conversation with the impression that he did not need to sign releases in order to get that second assessment. *Id.* at ¶ 23.

On April 3, 2007, Ariola was questioned by Defendant Anderson about his CNY assessment, to which Ariola replied, "[t]hey want me to get another assessment, do you want me to set it up?" [12] *Id.* at ¶ 24. Anderson replied in the affirmative and that concluded their conversation. *Id.* On April 4, 2007, Anderson received a five-paged fax from Carmody, which included the releases Ariola failed to sign as well as a letter from Carmody. *Id.* at ¶ 26 & Ex. H. Therein, Carmody wrote that

> Christopher [Ariola] was not cooperative enough in revealing historical information for us to make an accurate assessment of dangerousness.... It was determined that Christopher be referred to Hutchings Psychiatric Center for further assessment and treatment, however, Christopher refused to sign the necessary paperwork for CNY Services to initiate contact and begin the referral process.

*Id.* at n. 2 & Ex. H.

That same date, Ariola arrived in Anderson's office and upon being questioned as to why he didn't sign the releases, Ariola stated that he "was following privacy laws, and CNY told me I don't have to." *Id.* at ¶ 27. Anderson advised Ariola that he did not have that right and he must sign the forms; Ariola complied and was immediately taken into custody by Defendants Anderson and Moss. *Id* .

**\*16** On April 11, 2007, a preliminary parole revocation hearing was held. Ariola testified that CNY advised him of his right to not sign the releases and he was never advised otherwise by his parole officer. Nonetheless, upon the first direction from Anderson to sign the forms, Ariola complied. *Id.* at ¶ 28. Defendants Anderson and Carmody also testified at the preliminary hearing. *Id.* at ¶¶ 29–30. According the

Ariola, at the conclusion of the hearing, probable cause was found to exist with regard to a violation of parole condition 13AA because the releases were not signed and such releases were mandatory in order to complete the HPC assessment. [13] *Id.* at ¶ 31. On April 13, 2007, Carmody sent Anderson another fax attaching her April 4th, 2007 assessment letter. The hand-written notation on the cover sheet stated "I played w/the wording a little." *Id.* at ¶ 32, n. 3, & Ex. J.

On May 22, 2007, a final revocation hearing took place. [14] Ariola, Anderson, Carmody, and Bishop each testified during the hearing. At the conclusion of the hearing, Ariola was found guilty of violating parole condition 13AA for not fully cooperating with his assessment and by not signing the releases, which were deemed necessary in order to complete the second assessment, as well as violating parole condition 5 requiring Ariola to be truthful with his parole officer, which Ariola failed to comply with when he failed to tell Anderson about the releases. *Id.* at ¶ 37; State Ct. R., Ex. A at pp. 48–50. A recommendation of a time assessment of twenty-four months was made to the parole board, which Ariola appealed. State Ct. R., Ex. A at p. 50, & Ex. D, Parole Revocation Dec. Notice.

The time assessment determination was affirmed by the Commissioner on June 11, 2007, and the recommended twenty-four month time assessment was imposed by the Division of Parole. State Ct. R., Ex. B, Addendum to Parole Revocation Dec. Notice. Ariola appealed that determination and the State Board of Parole affirmed on January 30, 2008. State Ct. R., Ex. M, Admin. Appeal Dec. Notice.

### 3. Timeliness

In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249–50 (1989)) (alterations omitted). In New York, a three-year statute of limitations applies for personal injury actions, and thus to § 1983 actions as well. *Id.; see also* N.Y.C.P.L.R. § 214(5). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) (citation omitted).

Clearly, if we were to view the new Complaint in a vacuum, we would find that the 2013 Complaint raising constitutional violations from a 2007 parole revocation was patently untimely. However, in the interest of justice and in light of his *pro se* status, we decline to take such a rigid view of the pleading. The Court notes that the civil rights Complaint is virtually identical to the Amended *Habeas* Petition. Much like the great solicitude imparted in allowing Ariola the opportunity to air his civil rights grievances in the initial *habeas* action, we shall view the claims raised in this new civil rights action as having been properly, and initially, raised in the earlier *habeas* action. The difference here is that we now have the proper individual Defendants who are alleged to have been personally involved in some constitutional wrongdoing. Thus, we will not bar review of the Complaint based on timeliness.

### 4. Ariola's Contentions

**\*17** By his § 1983 Complaint, Ariola asserts that:

(1) the parole conditions imposed upon him, specifically conditions 13AA and 5, were unconstitutionally vague and fail to give an ordinary person notice of what is required;

(2) Anderson violated Ariola's due process rights by imposing condition 13AA arbitrarily and capriciously;

(3) the condition/order requiring him to waive his HIPAA rights was invalid;

(4) Anderson violated Ariola's due process rights when he arrested him without a warrant;

(5) Anderson and Moss abused the process of revocation proceedings when they arrested Ariola without a warrant;

(6) Carmody falsely assessed Ariola and provided false testimony at the revocation hearings; and

(7) Carmody and Anderson conspired to violate Ariola's rights.

*Id.* at ¶¶ 38–69.

Generally, the above call to mind four overall challenges being interposed by Ariola. First, he challenges the constitutionality of the special parole conditions in that such were vague, failed to give him proper notice, and should not have been applied by Anderson. Second, he challenges

his arrest and prosecution by Anderson and Moss without a proper warrant. Third, he claims that Carmody falsely assessed him and testified falsely during the revocation proceeding. And, fourth, he claims that Carmody and Anderson conspired to violate Ariola's rights.

### a. Constitutionality of Parole Conditions

According to Ariola, special parole condition 13AA reads: "I will enter and complete CNY Services and will not discontinue that program until given written permission by Parole Officer Anderson." Dkt. No. 19, Am. Pet., at ¶ 24. And parole condition 5 required him to be truthful to his parole officer. *Id.* at ¶ 25. Ariola asserts that these conditions are vague both facially and as applied and did not provide him with sufficient notice that his failure to execute HIPAA releases equated to a violation. He also asserts that it was unclear that his failure to advise Anderson of his refusal to sign releases corresponded to a failure to be truthful. Dkt. No. 39, Compl., at ¶¶ 39 & 41–42.

The Supreme Court has held that, pursuant to the protections afforded by the Fourteenth Amendment, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. State of New Jersey,* 306 U.S. 451, 453 (1939) (quoted in *Farrell v. Burke,* 449 F.3d 470, 483 (2d Cir.2006)). "Vagueness challenges—as-applied and facial alike—require an inquiry into whether the challenged regulation provided adequate standards to limit the discretion of the law enforcement officers." *Farrell v. Burke,* 449 F.3d at 483. When faced with such challenges, a court must determine, objectively, "whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *Id.* at 485.

**\*18** According to the Second Circuit,

> [w]hen the challenge is vagueness 'as applied', there is a two-part test: a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides

> explicit standards for those who apply it.

*Id.* at 486 (quoting *United States v. Nadi,* 996 F.2d 548, 550 (2d Cir.1993)).

Unlike the condition at issue in *Farrell* concerning a parole condition which prohibited the parolee from possessing pornography, the conditions at issue requiring Ariola to complete CNY Services and to be truthful with his parole officer are not so vague as to fail to provide a person of ordinary intelligence the contours of what activity would be deemed impermissible. Indeed, failing to answer questions posed at an intake session by CNY employees cannot be reasonably construed as complying with the condition of completing services with CNY. According to the documents submitted in these proceedings, CNY could not make an assessment because Ariola refused to answer questions and so they referred him to HPC for another assessment. Ariola's failure to sign medical waivers prevented CNY from setting up that assessment. Ariola claims that he was unaware that his failure to sign waivers would have interfered with a second assessment, yet he reported to his parole officer that he was "appealing" the decision to have a second assessment. But his purported ignorance does not render the condition vague when viewed objectively from a reasonable person perspective.

As for the second prong of the vagueness assessment, we must assess whether the condition provides explicit standards for those applying it. In making this assessment, a court

> may determine either (1) that a statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement or (2) that, even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in

other, hypothetical applications of the statute.

*Farrell v. Burke,* 449 F.3d at 494.

"Where a statute provides insufficient general guidance, an as-applied vagueness challenge may nonetheless fail if the statute's meaning has a clear core." *Id.* at 493 (citations omitted). Thus, if the conduct at issue "falls so squarely in the core of what is prohibited by the law that [then] there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." *Id.* at 494.

Based upon all of the submissions before the Court, we find that the challenged parole conditions provided sufficiently clear standards for review. But even if it didn't, Ariola's conduct, to wit, his failure to answer questions during his CNY assessment, and then failure to sign medical waivers to allow for another assessment, fell so clearly within the core of his conditions of parole that it is clear that a reasonable officer would doubt that Ariola complied with his conditions.

*19 As for Ariola's challenge to the facial validity of his parole conditions, such claims must also fail. To succeed on this claim, having failed to establish that the condition was unconstitutionally vague as applied to him, Ariola must "demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497 (1982) (quoted in *Farrell v. Burke,* 446 F.3d at 495). Notably, "[w]hen a regulation does not threaten the exercise of fundamental rights, one whose conduct is clearly proscribed by the regulation cannot successfully challenge it for vagueness." *Farrell v. Burke,* 446 F.3d at 495 (internal quotation marks, alterations, and citations omitted). It has been held that "a [p]laintiff's privacy right in his medical records is neither fundamental nor absolute." *Crawford v. Manion,* 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997) (citing *Whalen v. Roe,* 429 U.S. 589, 603–04 (1977) & *Jarvis v. Wellman,* 52 F.3d 125, 126 (6th Cir.1995), for the proposition that "release of medical records did not violate a fundamental Constitutional right")). While the above statement has been rendered in the context of discovery, it is no less applicable in that the federal statute providing privacy rights to individuals (HIPAA), does not confer a fundamental right. Therefore, it is clear that Ariola's facial challenge to his parole conditions must fail as well.

Because it is clear that Plaintiff's vagueness challenge to his parole conditions fail to state a claim upon which relief could be granted, we recommend dismissing this claim pursuant to 28 U.S.C. § 1915(e).

### *b. Arrest and Prosecution*

Construing Ariola's claims liberally, it appears that Ariola contends that he was improperly arrested by Anderson and Moss without a warrant and that Anderson thereafter abused the process by pursuing revocation proceedings. Compl. at ¶ 49. Plaintiff's claim is clearly belied by his own factual allegations, as well as the record supplied in this action. First, it is clear that a parole warrant had indeed been issued as references to that warrant are replete throughout the record. *See, e.g.,* State Ct. R., Ex. A, Final Parole Revocation Hr'g Tr. (with numerous references to the warrant number); Ex. B, Parole Revocation Determination (same); & Ex. D, Violation of Release Rep. (noting that a senior parole official had issued the parole warrant after being advised of the facts supporting the violation). The representation of no warrant is particularly disingenuous in light of the fact that Ariola signed a Notice of Violation which specifically references a warrant number. State Ct. R., Ex. D, Notice of Violation. There are no allegations asserting that this warrant was procured using fraud or misrepresentation. And, absent any allegation contesting the validity of the arrest warrant, this Court may presume that probable cause exists, as was found at the conclusion of the preliminary parole revocation hearing, and therefore would act as a bar against any claim for false arrest. *Jangly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006) (noting that probable cause is an absolute defense to a false arrest claim). Ariola does not contest the facts underlying the parole violation, but instead claims ignorance that his behavior would have constituted a parole violation. In light of the uncontested facts of events as they unfolded, there is simply no basis upon which Ariola can state that he was falsely arrested or that the process used was an abuse of process. Thus, we recommend dismissing this claim pursuant to 28 U.S.C. § 1915(e).

### *c. False Testimony*

*20 Ariola claims that Carmody completed a false assessment of him at CNY and that she provided false testimony during the final revocation hearing. In making this claim, Ariola attacks Carmody's qualifications as a "qualified health professional" and accuses her of falsely testifying to

Ariola's alleged dangerousness in contravention of what Dr. Zebrowski diagnosed. Compl. at ¶¶

As with the prior claim, the facts presented in this action simply do not correspond with Ariola's proffered causes of action. According to the records provided, Dr. Zebrowski made an assessment based upon Ariola's responses and non-responses during the intake session. According to Dr. Zebrowski's affidavit, attached to the Complaint, she made provisional diagnoses based upon the intake process with Carmody and because the diagnoses did not include alcohol/substance abuse, Ariola did not meet the criteria to become a CNY patient and therefore a referral to HPC was made. Compl., Ex. E, Paula Zebrowski Aff., dated June 18, 2009, at ¶¶ 24–28 & 36. In her intake report, Carmody stated that Ariola "displayed very guarded behavior in that he would not sign any releases but this was not paranoid in nature but more domineering. More specifically, [Ariola] displayed very controlling behavior and it was evident that he was pleased with the control he had over the situation with his information.... He displayed a deceitful, manipulative behavior and attitude." *Id.,* Ex. A. In the letter she faxed to Parole Officer Anderson, Carmody stated that Ariola was "not cooperative enough in revealing historical information for [CNY] to make an accurate assessment of dangerousness. Typically when patients are withholding there is either 1) a level of psychosis or 2) a level of dangerousness[.]" *Id.,* Ex. H. Carmody's testimony during the final revocation hearing did not touch upon Ariola's purported dangerousness, but instead dealt with her experience with him during the intake session and the reasons why he was referred to HPC. State Ct. R., Ex. A, at pp. 20–28. Carmody also testified that CNY could not complete their assessment because he refused to answer questions, and they could not complete a referral to HPC because he refused to sign medical releases. *Id.*

It is simply unclear to this Court in what manner Ariola alleges that Carmody testified falsely. And as to the pertinent reason for his ultimate revocation, that being his failure to complete the assessment, there is no dispute between Carmody's testimony and Ariola's account. Instead, as noted above, he merely disputes that his behavior should have been viewed as a parole violation. Such conclusory allegation does not state a claim for relief under § 1983.

But even if we assume that Carmody's report and testimony were total prevarications, or laced with false information, Ariola's claims still fail because he has no constitutional right to be free from being falsely accused. *See Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir.1997). Just as a prison inmate has no constitutional right to be free from being falsely accused, neither would a parolee, as long as he was provided with adequate due process before being denied his right to liberty. *See Threat v. Russi,* 784 F.Supp. 65 (W.D.N.Y.1992). Here, there is no challenge to the process Ariola received after a notice of parole violation was issued, nor can this Court conceive of any after reviewing the relevant State Court Record. *See Morrissey v. Warden,* 408 U.S. 471 (1972). Indeed, Ariola received adequate notice of the charges, had a preliminary revocation hearing that determined probable cause existed for the charges, and had a final revocation hearing before a neutral judge. Pointedly, at that final hearing Ariola was represented by counsel and had an adequate opportunity to testify on his own behalf and cross-examine other witnesses that testified. He also pursued timely appeals of the decision rendered to revoke his parole. All of this, and more, satisfied due process. *Id.* at 488–89. Thus, we recommend dismissal of this claim pursuant to 28 U.S.C. § 1915(e).

### d. Conspiracy

**\*21** To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002).

In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (citations, internal quotation marks, and internal alterations omitted).

There are simply no factual allegations in the Complaint that support Ariola's conclusory statement that Defendants Anderson and Carmody conspired in an effort to inflict an unconstitutional injury. Nor has this Court found any constitutional violation from any of the above allegations examined. Thus, we recommend that this claim be dismissed pursuant to 28 U.S.C. § 1915(e).

Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 100 of 130

### III. CONCLUSION

For the reasons stated herein, and after careful review affording Ariola all possible leniency, it is hereby

**RECOMMENDED,** that the Motion for Judgment on the Pleadings (Dkt. No. 37) be **GRANTED;** and it is further

**RECOMMENDED,** that the Amended *Habeas* Petition (Dkt. No. 19) be **DISMISSED;** and it is further

**RECOMMENDED,** that because the Court finds that Ariola has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should be issued with respect to any of his *Habeas* claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**RECOMMENDED,** that to the extent Ariola's *Habeas* Petition has been construed as brought pursuant to 42 U.S.C. § 1983, it should be **DISMISSED,** in light of the above recommendation to grant the Motion for Judgment on the Pleadings (Dkt. No. 37); and it is further

**RECOMMENDED,** that the consolidated § 1983 Complaint (Dkt. No. 39) should be **DISMISSED** pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED,** that, in light of the above, this entire action be closed; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

**\*22** Filed March 31, 2014.

[1] Ariola's complaint in *Anderson* was accompanied by a motion for leave to proceed *in forma pauperis* (IFP). *Anderson,* No. 5:13–cv–577, Dkt. No. 3.

[2] Unless otherwise noted, the facts are drawn from Ariola's amended petition and his consolidated complaint, and presented in the light most favorable to him. The court also looks to, and takes judicial notice of, matters of public record, including certain documents filed in other courts. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir.1992).

[3] In connection with the manslaughter charge, Ariola was sentenced to a term of seven years imprisonment, with five years of post-release supervision. (Dkt. No. 8, Attach. 5 at 10.) In connection with the attempted robbery charge, Ariola was sentenced to an indeterminate term of one to three years imprisonment. (*Id.*) Both sentences were to run concurrently. (*Id.*)

[4] The New York State Attorney General has not yet made an appearance on behalf of Defendants Jim Anderson, Moss, and Tracy Carmody, who were named in the Complaint originally filed in the Member Case, *Ariola v. Anderson, et al.,* Civ. No. 5:13–CV–577. *See Ariola v. LaClair,* Civ. No. 9:08–CV–116 ("Lead Case"), at Dkt. Nos. 39 & 41.

[1] The focal point of this Decision and Order was the question of whether the Court should excuse Ariola's patent failure to exhaust available state court remedies prior to bringing this application for *habeas* relief. Dkt. No. 3. Magistrate Judge DiBianco stated that there was insufficient information in the Petition to allow for a determination of that issue and directed service of the Petition on the Respondents. *Id.*

[2] As explained by Respondents, Ariola had been re-released on parole on April 3, 2009. Dkt. No. 23. However, that parole was similarly revoked on September 16, 2010, when it was determined that Ariola violated his conditions of parole, thus, his

Ariola v. LaClair, Not Reported in F.Supp.3d (2014)

2014 WL 4966748

incarceration at that moment in time was not due to the parole revocation at issue in this action. *Id.*

3    See *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *see also Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191 (2d Cir.2008); *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not the legal claims set out in his pleadings."); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) ("[W]e read [a *pro se* litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

4    The specifics of the allegations leading to the issuance of a parole warrant and eventual revocation of parole will be discussed in more detail when the Court assesses Ariola's civil rights violation allegations under 42 U.S.C. § 1983. *See infra* Part II .C.2.

5    It appears that on February 6, 2012, the Parole Board determined that Ariola would be conditionally released, with the earliest release date being June 28, 2012. While we have not received any records confirming his re-release on parole on June 28th, nor would we have expected such documentation in light of the claims presented, it appears that Ariola was released at some point and then re-incarcerated, perhaps through another parole violation, on January 18, 2013, and served the remainder of his sentence in prison. *Compare* Supp. State Ct. R., Ex. 6, Parole Bd. Release Dec., dated Feb. 6, 2012, *with* Dkt. No. 29–2.

6    The Court notes that when this action was transferred to the undersigned on April 17, 2009, Ariola had already been re-released on conditions of parole. Had we issued a review of the Petition at that point in time, we would have considered his contentions that despite his release on other parole conditions, he may have continued to suffer collateral consequences and therefore a live case or controversy remained. Notwithstanding, even as early as May 8, 2008, when the matter was fully briefed before Magistrate Judge DiBianco, there was serious question, as borne out by the

original filings by the parties, that Ariola did not properly exhaust his administrative remedies prior to seeking federal relief.

Generally, *habeas corpus* petitioners must exhaust the available state court remedies prior to seeking federal relief, unless the state corrective process is unavailable or that which is available would be ineffective. 28 U.S.C. § 2254(b)(1). Because Ariola stated in his Original Petition that he did not fully exhaust, but that state court avenues are rendered unavailable to him, a response was directed by Magistrate Judge DiBianco. Dkt. No. 1, Pet., at ¶¶ 3 & 4; Dkt. No. 3, Order. "To exhaust a denial of parole under New York Law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78.... and if [that] petition is denied, the petitioner must appeal that denial to the highest state court capable of reviewing it." *Scales v. New York State Div. of Parole,* 396 F.Supp.2d 423, 428 (S.D.N.Y.2005) (internal quotation marks and citations omitted); *see also Cotto v. Herbert,* 331 F.3d 217, 237 (2d Cir.2003) ("A petitioner satisfies the 'fair presentation' aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.") (internal quotation marks and citation omitted).

In responding to the Original Petition, Respondents contended that Ariola failed to fully exhaust his state court remedies when he failed to file an Article 78 petition challenging the revocation of his parole, and instead filed two state *habeas corpus* petitions. Dkt. No. 7–2 at pp. 14–15. Respondents further contended that Ariola had not fully pursued the state *habeas* petitions to the highest courts available, but more importantly, at that moment in time, he could still have filed an Article 78 petition. *Id.* at pp. 15–16.

7    A *habeas* petitioner must name as a respondent the person who has "custody" over him or her. 28 U.S.C. § 2242. In the case where a petitioner challenges his revocation of parole, the proper respondent has been construed to be the parole board who imposed the revocation. *See Billiteri v. United States Bd. of Parole,* 541 F .2d 938, 948

2014 WL 4966748

(1976) (noting that Billiteri should have named the warden of the prison where he was incarcerated in rather than the parole board, as distinguishable from a situation where a prisoner had been released on parole and the parole board caused the current detention due to violation of the conditions of parole). A civil rights plaintiff seeking vindication under 42 U.S.C. § 1983, must name as defendants "persons," as defined by the statute, whom are alleged to have personally violated the plaintiff's constitutional rights.

8      Alternatively, the Court notes that Ariola's civil rights claims against the New York State Division of Parole, an entity that has since merged with the former Department of Correctional Services to form the Department of Corrections and Community Supervision, fails to state a cause of action because neither a State nor its agencies are considered to be a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64 (1989); *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998).

9      "Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski,* 1997 WL 394667, at *2 (N .D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint'* may be considered by the court in ruling on such a motion." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007) (quoting *Cortec Indus ., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)).

10     Pursuant to his parole conditions, Ariola was also required to participate in anti-aggression, anti-violence counseling and be truthful with his parole officer. Dkt. No. 8, State Ct. R., Ex. D, Violation of Release Rep.

11     Mr. Bishop is not a named Defendant in this action.

12     Notably, this conflicts with the testimony provided by Anderson and Ariola at the final parole revocation hearing. Both of them testified that in response to Anderson's question about the status of the CNY assessment, Ariola told him that they referred him to HPC, but that he is appealing that assessment. State Ct. R., Ex. A, Final Revocation Hr'g Tr., at pp. 9 & 43. According to Anderson's testimony, subsequent to his conversation with Ariola, Anderson contacted Carmody and was told that she could not share any information with him because Ariola refused to sign medical release forms. *Id.* at pp. 9–11.

13     According to the Violation of Release Report, there were four violation charges stemming not just from his failure to complete forms and complete his assessment with CNY, but also his failure to participate in anti-aggression, anti-violence counseling, and his failure to be truthful with his parole officer. State Ct. R., Ex. D, Violation of Release Rep. While we don't have the record from the preliminary hearing, and absent any challenge in this regard, we presume that probable cause was found to support all four charges because these charges were the subject of the final revocation hearing held on May 22, 2007. State Ct. R., Ex. A.

14     In the Complaint, Ariola states that the final hearing took place on May 28, 2007. Compl. at ¶ 33. However, in accordance with the relevant State Court Records submitted in response to the *Habeas* Petition, that final hearing actually took place on May 22, 2007. State Ct. R., Ex. A.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4966748

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2771878
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Elvin LEBRON, Petitioner,

v.

Harold GRAHAM, Respondent.

No. 9:09–CV–1021 (GLS).
|
July 12, 2010.

**Attorneys and Law Firms**

Elvin Lebron, pro se.

Hon. Andrew M. Cuomo, New York State Attorney General,
Priscilla I. Steward, Esq., Assistant Attorney General, of
Counsel, New York, NY, for the Respondent.

**MEMORANDUM–DECISION AND ORDER**

GARY L. SHARPE, District Judge.

**I. BACKGROUND**

*1 The records reflects that on May 24, 1994, petitioner,
*pro se* Elvin LeBron pleaded guilty in New York County to
the crimes of first degree manslaughter, first degree robbery,
third degree criminal possession of a weapon, and a parole
violation. *See People v. Lebron,* 238 A.D.2d 150 (1 st Dep't
1997). He was thereafter sentenced to an indeterminate prison
term of between seven and one-third (7 1/3) to twenty-
two (22) years on the manslaughter conviction, eleven (11)
to twenty-two (22) years on the robbery conviction, and
lesser, concurrent sentences on the remaining convictions. *Id.*
The New York State, Supreme Court, Appellate Division,
First Department, unanimously affirmed the judgment of
conviction, *id.,* and New York's Court of Appeals denied
Lebron's subsequent application seeking leave to appeal that
decision. *People v. Lebron,* 90 N.Y.2d 895 (1997).

The record further reflects that Lebron was denied release to
parole on four separate occasions; in June, 2004, July, 2006,

November, 2007, and August, 2008. *See* Dkt. No. 6–4; *see
also* Petition (Dkt. No. 1) at p. 7. [1]

[1] Lebron attached several unnumbered pages to his
petition when he commenced this action. *See*
Petition and attached pages. When that pleading
was docketed, page numbers were generated by the
Clerk of Court's docketing system for each page
of that pleading, including all attached pages. The
Court's reference to the page numbers of Lebron's
pleading throughout this Memorandum–Decision
and Order refer to the page numbers generated
when Lebron's petition was docketed.

In the habeas petition he filed with this Court on September
4, 2009, Lebron asserts several arguments in support of
his claim that his parole applications were wrongfully
denied. Specifically, he claims that the New York State
Board of Parole ("Parole Board"): i) did not possess
documents it was required to consider in conjunction with
his parole applications, including, *inter alia,* sentencing
recommendations made by the trial court, the prosecutor, and
Lebron's trial counsel, reports relating to Lebron's behavior
while in prison, the sentencing transcript, and "mitigating
and aggravating factors" relating to Lebron's crimes; ii) did
not accurately state the circumstances relating to Lebron's
crimes in conjunction with its decisions that denied his
applications for parole; iii) improperly suggested that Lebron
was incarcerated for a sentence that he had already fully
served; and iv) utilized both incomplete and factually
inaccurate information in denying those parole applications.
*See* Petition at pp. 7–10. By this action, Lebron requests that
this Court reverse the Parole Board's decisions and release
him to parole. *Id.* at p. 10.

On October 23, 2009, Lebron was conditionally released
from prison to parole supervision by the New York State
Department of Correctional Services ("DOCS"). *See* Dkt. No.
6–5. In his memorandum of law in opposition to Lebron's
petition, respondent argues that petitioner's release to parole
supervision has rendered the current habeas application moot,
and that therefore this Court must grant his motion to dismiss
the petition. *See* Motion to Dismiss (Dkt. No. 6); Respondent's
Memorandum of Law in Support of Motion to Dismiss (Dkt.
No. 6–1) ("Resp.Mem.") at pp. 3–6.

Lebron has submitted a reply memorandum of law in further
support of his petition. Dkt. No. 8 ("Reply"). In arguing
that this action is not moot notwithstanding his release from

2010 WL 2771878

prison, Lebron contends that his release on October 23, 2009 was unrelated to any actions taken by the Parole Board but rather due to the fact that he was conditionally released on that date by DOCS based upon the time he had already spent in prison *vis-a-vis* the overall length of his indeterminate sentences. *See* Reply at pp. 1–2. He claims that because the Parole Board never properly considered his prior applications for parole, this Court must issue a decision addressing his challenges to those decisions. *Id.*

## II. *DISCUSSION*

**\*2** Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy." *Spencer v. Kemna,* 523 U.S. 1, 7 (1998); *Baur v. Veneman,* 352 F.3d 625, 631–32 (2d Cir.2003) (citation omitted); *S.E.C. v. Monarch Funding Corp.,* 192 F.3d 295, 303 (2d Cir.1999) (citation omitted); *Hill v. Mance,* 598 F .Supp.2d 371, 377 (W.D.N.Y.2009) (citation omitted) (Bianchini, M.J., on consent).[2] This constitutional requirement 'means that, throughout the litigation, the [litigant] 'must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision.' " *Spencer,* 523 U.S. at 7 (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990)).

[2]    The *Spencer* Court noted that where the federal action no longer presents a case or controversy, the action is moot and the court no longer retains subject matter jurisdiction over the proceeding. *Spencer,* 523 U.S. at 7.

This Court must therefore ascertain whether this § 2254 action is moot due to Lebron's release from prison.

The "case-or-controversy" requirement of Article III is typically satisfied in the context of federal habeas petitions challenging the validity of a criminal conviction because the incarceration "constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer,* 523 U.S. at 7; *see also Geraci v. Sheriff, Schoharie County Jail,* No. 99–CV–0405, 2004 WL 437466, at *1– 2 (N.D.N.Y. Feb. 20, 2004) (Sharpe, D.J.). However, as noted above, the present action does not challenge Lebron's criminal convictions but instead asserts that the Parole Board wrongfully denied his prior applications for release to parole supervision.

In *Spencer,* the Supreme Court considered the issue of when a habeas petition challenging a revocation of an individual's parole becomes moot. In that case, the petitioner challenged the wrongful termination of his parole status, however while his challenge was pending, his term of imprisonment ended. *Spencer,* 523 U.S. at 6. The *Spencer* Court noted that "[t]he reincarceration that he incurred as a result of [the revocation of his parole] is now over, and cannot be undone." *Id.* at 8. The *Spencer* Court noted that federal courts would continue to retain subject matter jurisdiction over that proceeding only if continuing "collateral consequences" relating to the parole revocation decision were either proven by the petitioner or properly presumed by the court.[3] *Spencer,* 523 U.S. at 8. Since the petitioner in *Spencer* failed to demonstrate the existence of such consequences, and the Court found that it would be inappropriate to "presume that collateral consequences adequate to meet Article III's injury-in-fact requirement resulted from petitioner's parole revocation," the petition was denied and dismissed as moot. *Id.* at pp. 14–18.

[3]    The collateral consequences of felony convictions include the numerous civil rights which are forfeited by individuals who have been convicted of felonies, including the inability to serve as a juror, engage in certain businesses, or vote. *Maleng v. Cook,* 490 U.S. 488, 491–92 (1989); *Johnson v. Levine,* 00 CIV. 8402, 2001 WL 282719, at *1 (S.D.N.Y. Mar. 21, 2001).

In the present action, Lebron has not articulated in his Reply, and this Court is unable to envision, any collateral consequences he will suffer as a result of the Parole Board's failure to grant him parole at the hearings that form the subject of the present action. *See, e.g., Cobos v. Unger,* 534 F.Supp.2d 400, 404 (W.D.N.Y.2008) ("There is no basis for presuming that [petitioner] will suffer any collateral consequences due to the fact parole was denied on several occasions prior to his release to parole supervision").

**\*3** Moreover, if this Court were to now consider the substance of Lebron's petition, and ultimately conclude that his habeas claims had merit, he would, at most, be entitled to a new parole hearing. *See Jones v. Giambruno,* No. 05– CV–0008, 2009 WL 1362847, at *11 (W.D.N.Y. May 14, 2009) ("A prisoner who successfully challenges a denial of parole is entitled to a rehearing, not release") (citing *Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005)). However, Lebron has already been released from prison. Therefore, any ruling by this Court on the substance of his claims challenging the

Parole Board's decisions denying his prior applications for parole would plainly be an advisory opinion as to whether those decisions were correct because Lebron has already obtained the relief sought by him when he appeared before the Parole Board—his release from prison. [4]

[4] Although Lebron correctly notes in his Reply that he was not paroled in October, 2009, but rather conditionally released by DOCS on that date, his release is still undeniably monitored by the New York State Division of Parole. *See, e.g.,* Dkt. No. 6–5. The mere fact that petitioner has been conditionally released from prison, rather than granted parole, does not afford this Court a basis upon which it can properly find that his petition is not moot.

It is well-settled that a "present, live controversy ... must exist if [the court is] to avoid advisory opinions on abstract propositions of law.' " *Hall v. Beals,* 396 U.S. 45, 48 (1969). Thus, the federal court's decision "must be able to affect the legal rights of the parties." *In re Nunez,* Nos. 98–CV–7077, 98–CV–7078, 2000 WL 655983, at *6 (E.D.N.Y. Mar. 17, 2000) (citing *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3 (1964)); *see also College Standard Magazine et al. v. Student Association of the State University of New York at Albany,* 610 F.3d. 33, ——, 2010 WL 2607145, at *2 (2d Cir. July 1, 2010) (federal proceeding is moot "where court cannot grant any effectual relief whatsoever") (internal quotation and citations omitted); *Martin–Trigona v. Shif,* 702 F.2d 380 (2d Cir.1983) ("the hallmark of a moot case ... is that the relief sought ... is no longer needed"); *Arthur v. DHS/ICE,* No. 09–CV–6130, ——— F.Supp.2d ——, ——, 2010 WL 1983075, at *3 (W.D.N.Y. May 14, 2010) (citing *Martin–Trigona); Li v. Napolitano,* No. 08 CIV 7353, 2009 WL 2358621, at *3 (S.D.N.Y. July 30, 2009) (citing *Martin–Trigona* ).

Since the relief sought by Lebron—his release to parole supervision (*see* Petition at p. 10)—is no longer needed, and no favorable judicial decision in this proceeding could now redress the injury alleged by Lebron in this matter, the Court concludes that the present action is moot and must be denied and dismissed on this basis. *See Washington v. Spears,* No. 07 CIV. 7773, 2009 WL 3459222, at *1–4 (S.D.N.Y. Oct. 28, 2009) (denying and dismissing as moot habeas petition claiming that parole was wrongfully revoked in light of petitioner's conditional release from prison); *Cobos,* 534 F.Supp.2d at 403–05 (habeas petition challenging denial of parole dismissed as moot in light of the fact that petitioner was

released to parole supervision subsequent to commencement of action); *see also Spencer,* 523 U.S. at 7; *Martin–Trigona,* 702 F.2d at 386.

## III. *CERTIFICATE OF APPEALABILITY*

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

**\*4** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court .... [5]

[5] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed.R.App.P. 22(b).

28 U.S.C. § 2253(c)(1)(A). A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c) (2). Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE,** after having reviewed the record supplied to this Court, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED,** that respondent's motion to dismiss Lebron's petition as moot (Dkt. No. 6) is **GRANTED** and his petition is **DENIED** and **DISMISSED AS MOOT** for the reasons stated above, and it is further

**ORDERED,** that the Clerk of Court serve a copy of this Memorandum–Decision and Order upon the parties to this action, and it is further

**ORDERED,** that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum–Decision and Order filed by any party).

2010 WL 2771878

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2771878

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 675081
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Samuel D. FELLS, Petitioner,
v.
Dennis BRESLIN, Superintendent, Respondent.

No. 04-CV-03849 (ADS)(JO).
|
Feb. 26, 2007.

**Attorneys and Law Firms**

Samuel D. Fells, New York, NY, Petitioner pro se.

Nassau County District Attorney's Office, by Margaret Mainusch, Assistant District Attorney, Lawrence J. Schwarz, Assistant District Attorney, of counsel, Mineola, NY, Office of the New York State Attorney General, by Malancha Chanda, Assistant Attorney General, New York, NY, for Respondent.

**ORDER**

SPATT, District Judge.

**\*1** Currently pending before the Court is a petition by Samuel D. Fells ("Fells" or the "Petitioner") pursuant to 28 U.S.C. § 2254 challenging his denial of parole related to his April 21, 1982 conviction in Nassau County Court of murder in the second degree, N.Y. Penal Law § 125.25(3), and two counts of robbery in the first degree, N.Y. Penal Law § 160.15(1).

**BACKGROUND**

On September 7, 2004, Fells filed a § 2254 petition claiming that the Parole Board improperly failed to consider his assertion of the existence of factual inaccuracies in his pre-sentence investigation report. These asserted inaccuracies include the misspelling of names; whether the victim was shot before or after the assailants entered the victim's home; his employment history; and, whether the victim was lying down when he was stabbed. Fells claims that as a result of these alleged inaccuracies, his due process rights were violated because the Parole Board rejected his requests for parole on three occasions.

On October 8, 2004, the Respondent filed a motion to dismiss the petition on the ground that this Court lacks jurisdiction to grant relief as a result of Fells' failure to secure authorization to file a second petition from the United States Court of Appeals for the Second Circuit, as required by 28 U.S.C. § 2244(b)(3)(A). On January 25, 2005, the Court referred the matter to United States Magistrate Judge James Orenstein for a Report and Recommendation.

On June 6, 2005, Judge Orenstein issued a Report and Recommendation, recommending that the Respondent's motion to dismiss be denied and that the case instead be transferred to the Unites States Court of Appeals for the Second Circuit in the interest of justice pursuant to 28 U.S.C. § 1631. This Court adopted Judge Orenstein's Report and Recommendation and ordered that the petition be transferred to the Second Circuit for a determination of whether to grant Fells leave to file a second or successive petition.

On November 7, 2005, the Second Circuit determined that the petition was not a second or successive petition and remanded the case to this Court. On April 13, 2006, this Court again referred the petition to Judge Orenstein for a Report and Recommendation.

On August 7, 2006, Judge Orenstein recommended that the petition be denied on both procedural and substantive grounds. Judge Orenstein determined that Fells failed to exhaust administrative remedies because he failed to appeal the denial of his Article 78 petition. Judge Orenstein further determined that there was no evidence that the Parole Board relied on the alleged errors in the pre-sentence investigation report and Fells had the opportunity to explain the alleged inaccuracies to the Parole Board. Moreover, Judge Orenstein found that Fells had acknowledged that he and his co-defendant shot and stabbed the victim to death during a robbery, and that fact was relied upon by the Parole Board.

On August 14, 2006, Fells filed objections to the Report and Recommendation, reiterating his claims and setting forth the procedural history of the case. On October 4, 2006, the Office of the Attorney General informed this Court that Fells was released from prison on August 24, 2006. The Respondent argues that the petition, which challenges the Petitioner's denial of parole, is moot. On November 1, 2006, the Petitioner filed a letter with this Court from a non-prison address,

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 1

2007 WL 675081

stating that he was concerned, not only with his previous failures to obtain parole, but also with possible future use of his pre-sentence investigation report. The Petitioner does not specify his concerns regarding potential use of the pre-sentence investigation report and does not deny that he has been released from incarceration.

## DISCUSSION

**\*2** "Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a 'case or controversy.' " *Butler v. Dolce,* No. 03-CV-0608, 2006 U.S. Dist. LEXIS 83390, at \*5-6 (N.D.N.Y. Nov. 16, 2006) (citing *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *Baur v. Veneman,* 352 F.3d 625, 631-32 (2d Cir.2003); *Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP,* 258 F.Supp.2d 157, 160 (E.D.N.Y.2003)). "Thus, where the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot." *Id.* (citing *City of Erie v. Pap's A.M.,* 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000)).

"The 'case-or-controversy' requirement of Article III is typically satisfied in the context of federal habeas petitions challenging the validity of a state court conviction because the incarceration constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Id* at \*7; *Casler v. United States,* No. 04-CV-1157, 2005 U.S. Dist. LEXIS 30362, at \*7 (N.D.N.Y. Nov. 17, 2005) (However, "[t]he Supreme Court has long recognized that a challenge to a criminal conviction itself presents a justiciable case or controversy even after the expiration of the sentence that was imposed as a result of the conviction"). Therefore, a habeas petition challenging a criminal conviction "is not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist." *Perez v. Greiner,* 296 F.3d 123, 125 (2d Cir.2002) (citing *Pollard v. United States,* 352 U.S. 354, 358, 1 L.Ed.2d 393, 77 S.Ct. 481 (1957)).

"[I]n *Sibron v. New York,* 392 U.S. 40, 54-56, 20 L.Ed.2d 917, 88 S.Ct. 1889 (1968), the Court, citing various collateral consequences such as deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future sentences, asserted a presumption that collateral consequences attach to criminal convictions post-release." *Id.* The Second Circuit determined that, following the Supreme Court's decision in *Sibron,* "a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Id.* (internal citations omitted). When a term of imprisonment has expired "some concrete and continuing injury other than the now-ended incarceration or parole-some collateral consequence of the conviction-must exist if the suit is to be maintained." *Casler,* 2005 U.S. Dist. LEXIS at \*7 (citing *Spencer,* 523 U.S. at 7).

Although collateral consequences can be presumed when challenging a criminal conviction because criminal convictions usually involve adverse legal consequences, no presumption applies in challenges to proceedings other than the underlying criminal convictions. *Butti v. Fischer,* 385 F.Supp.2d 183, 185 (W.D.N.Y.2005) (citing *Spencer,* 523 U.S. at 13 (challenge to a finding of parole violation); *United States v. Mercurris,* 192 F.3d 290 (2d Cir.1999) (petitioner challenging a sentence enhancement); *United States v. Probber,* 170 F.3d 345 (2d Cir.1999) (challenge to revocation of supervised release)).

**\*3** When a petitioner challenges a proceeding other than the underlying conviction, courts require that a petitioner demonstrate a concrete injury in fact in order to avoid dismissal. *Id.* at 186. In addition, courts have dismissed habeas petitions which challenged parole revocation because the petitioner was no longer in prison. *Martinson v. United States Parole Comm'n,* No. 02-CV-4913, 2005 U.S. Dist. LEXIS 10648, at \*16-18 (S.D.N.Y. June 1, 2005) (citing *Hicks v. Lacy,* Nos. 99 Civ. 4523 and 00 Civ. 2307, 2003 U.S. Dist. LEXIS 19756, at \*4 (S.D.N.Y. Nov. 4, 2003) ("A habeas petitioner no longer in custody who is challenging the result of a parole revocation hearing must therefore demonstrate a concrete, ongoing injury-in-fact attributable to his parole revocation"). Courts in other circuits have also dismissed as moot habeas petitions challenging parole decisions once the petitioner had been released from incarceration. *Id.* at \* 17 (citing *Vandenberg v. Rodgers,* 801 F.2d 377, 378 (10th Cir.1986) ("We hold that Mr. Vandenberg's appeal is moot. His petition for habeas corpus merely challenges determinations that delayed his parole date; and because he is already released from custody on parole, we find no purpose in reaching the merits of his arguments"); *Brady v. United States Parole Comm'n,* 600 F.2d 234, 236 (9th Cir.1979)

**Fells v. Breslin, Not Reported in F.Supp.2d (2007)**
Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 109 of 130
2007 WL 675081

("Appellant's § 2241 habeas corpus petition attacks the Parole Commission's decision to keep him in custody. He is now on parole and does not challenge the validity of his original conviction. On this record the case is moot")).

In the present case, Fells does not challenge his underlying criminal conviction or the sentence imposed on him following that conviction. Instead, Fells only challenges the fact that he was denied parole on three occasions. The present petition does not attack the underlying criminal conviction that resulted in the sentence imposed and Fells has served the term of imprisonment imposed on him. Moreover, the Petitioner has not demonstrated that he will suffer any collateral consequences due to the fact that his parole was denied prior to his release. "Nor can this Court envision any collateral consequences to which [the Petitioner] may be subject as a result of that [denial] sufficient to satisfy Article III's case-or-controversy requirement." *Id.* As a result, this Court finds that this action must be dismissed as moot. *Casler,* 2005 U.S. Dist. LEXIS at *11 (citing *Spencer,* 523 U.S. at 14-18; *Probber,* 170 F.3d at 347-49; *see also Hicks,* 2003 U.S. Dist. LEXIS at *4).

The Petitioner has been released from prison, and in his November 2006 letter, argues only that his pre-sentence investigation report may be used by the Division of Parole and other agencies in the future. Various courts have held that speculative alleged future collateral consequences are not sufficient to satisfy Article III's case or controversy requirement. *Butti,* 385 F.Supp.2d at 186 (citing *Spencer,* 523 U.S. at 15 (damage to reputation, potential use against petitioner in future civil or criminal proceedings and possible use to support an increased or more severe sentence in a subsequent proceeding are too speculative); *Probber,* 170 F.3d at 349 (damage to reputation or the possibility that petitioner might be wrongfully convicted in the future was too speculative to be considered a concrete injury). As a result, the Court finds that Fells' petition must be dismissed as moot.

### CONCLUSION

**\*4** For the reasons stated above, it is hereby

**ORDERED,** that the petition for a writ of habeas corpus is **DENIED;** and it is further

**ORDERED,** that the Clerk of Court is directed to close this case.

**SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2007 WL 675081

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

2007 WL 2846907
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Curtis GARNER, Petitioner,

v.

SUPERINTENDENT OF UPSTATE
CORRECTIONAL FACILITY, Respondent.

No. 9:01-CV-0501 (LEK/DEP).
|
Sept. 26, 2007.

**Attorneys and Law Firms**

Curtis Garner, Napanoch, NY, pro se.

Hon. Andrew M. Cuomo, Office of the Attorney General, State of New York, Michelle Elaine Maerov, Esq., Ass't Attorney General, of Counsel, Utica, NY, for Respondent.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

 **\*1** This matter comes before the Court following a Report-Recommendation filed on August 29, 2007, by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 65).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED. R. CIV. P. 72(b), in compliance with L.R. 72.1. No objections have been raised in the allotted time with respect to Judge Peebles' Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 65) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that the Petition for writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

CURTIS GARNER,

Petitioner,

v.

JAMES J. WALSH, Superintendent of Upstate Correctional Facility,

Respondent.

### *REPORT AND RECOMMENDATION* [1]

[1]     Several aspects of this report and recommendation previously were addressed in an order issued by me on January 25, 2005 in conjunction with this action. *See* Dkt. No. 40. For the sake of completeness, however, I have included in this report several relevant portions of the prior order which bear repeating.

DAVID E. PEEBLES, U.S. Magistrate Judge.

Petitioner Curtis Garner, a New York State prison inmate convicted in 1998 of manslaughter in the first degree, based upon the entry of a guilty plea, has commenced this proceeding seeking habeas relief pursuant to 28 U.S.C. § 2254. In support of that application, Garner challenges both the trial court's acceptance of his plea and the sentence imposed, and additionally asserts that he received ineffective assistance of counsel.

Most, though not all, of the arguments now raised by Garner in support of his petition for habeas relief were previously raised by Garner in the state courts, and rejected. Having reviewed Garner's petition, which is opposed by the respondent, taking into account the deferential standard owed to the findings of the state courts with respect to these claims, I recommend that the petition be denied.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

## I. *BACKGROUND*

Petitioner's conviction stems from an incident which occurred on February 25, 1998 in an apartment on Stanwix Street in the City of Rome, New York. *See* Transcript of Change of Plea (9/11/98) ("Plea Tr.") at 13-14. On that date, while Garner and his girlfriend, Sharonica Currie, and others, were presented in the apartment, Akeam Alston, who had previously dated Currie, forcibly kicked in the front door and entered the apartment. *Id.* Garner and Alston thereafter became embroiled in an argument concerning Currie and as the two began to fight, Garner "pulled out a gun and aimed for [Altson's] shoulder." Plea Tr. at 14-15. Garner fired a shot, resulting in a bullet passing through Alston's arm and lodging in his chest cavity. Plea Tr. at 15-17. [2] As Alston ran from the apartment, Garner fired a second, errant shot toward him in the vestibule/hallway of the building. Plea Tr. at 18-19. Alston subsequently died of the gunshot wound sustained during his altercation with Garner. Plea Tr. at 20.

[2]     Garner admitted that he aimed the gun at Alston, and that when he fired the gun he intended to cause Alston serious physical injury. Plea Tr. at 16.

## II. *PROCEDURAL HISTORY*

### A. *State Court Proceedings*

**\*2** Garner was indicted on April 7, 1998 by an Oneida County grand jury, and charged with both intentional and depraved indifference murder as a result of the shooting of Alston. *See* Indictment No. 98-157 (reproduced in Record on Appeal ("Record") at 3). On September 11, 1998, Oneida County Assistant District Attorney Raymond A. Tarkowski, Esq. ("ADA Tarkowski") advised the trial court that following negotiations with his counsel, the prosecution had agreed to allow Garner to plead guilty to one count of first degree manslaughter, in full satisfaction of all charges set forth in the indictment. Plea Tr. at 2. During that proceeding, ADA Tarkowski also represented that at sentencing, the prosecution would recommend that Garner be sentenced to a term of twelve and one-half to twenty-five years in prison, but noted that under the terms of the plea proposal, defense counsel would be permitted to argue that Garner should receive a lesser sentence than the term recommended by the prosecution. *Id.*

Prior to inquiring about the specifics of his proposed plea, the trial court advised Garner that he was required to waive

his right to appeal his conviction if he elected to accept the plea proposal offered by ADA Tarkowski. Plea Tr. at 11. After Garner responded that he was willing to waive his right to appeal, the trial court proceeded with its plea colloquy. Plea Tr. at 10-21. At the conclusion of that proceeding the court accepted Garner's guilty plea, determining that it had been entered "freely, knowingly and voluntarily." Plea Tr. at 21.

On November 19, 1998, Garner appeared before Oneida County Court Judge Michael L. Dwyer for sentencing. At that time, Garner stated his desire to "take full responsibility for [his] actions." *See* Transcript of Sentencing (11/19/98) ("Sentencing Tr.") at 38-39. Judge Dwyer thereafter proceeded to sentence Garner to a term of imprisonment of twelve and one-half to twenty-five years. Sentencing Tr. at 40-41.

Despite his waiver of that right, Garner appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department. In his appeal, petitioner claimed that 1) his waiver of his right to appeal was not knowingly and intelligently made; and 2) the sentence imposed was unduly severe. See Brief in Support of Appeal ("App.Br.") at 12-19. A panel of five judges of the the Fourth Department unanimously affirmed Garner's judgment of conviction and sentence in all respects by decision issued on December 30, 1999. *People v. Garner*, 267 A.D.2d 980, 700 N.Y.S.2d 907 (4th Dep't 1999). Leave to appeal to the New York State Court of Appeals was subsequently denied on February 22, 2000. *People v. Garner*, 94 N.Y.2d 903, 707 N.Y.S.2d 387 (2000).

On July 15, 2002, with the assistance of counsel, petitioner filed a motion to vacate his judgment of conviction pursuant to section 440.10 of the New York Criminal Procedure Law ("CPL"). In that application, petitioner alleged that following sentencing, he received statements from two separate individuals-both of whom had testified against him before the grand jury-in which they recanted their grand jury testimony. *See* Motion to Vacate Judgment of Conviction filed in *People v. Garner* (7/15/02) (Dkt. No. 17) ("CPL Motion 1") at ¶ 4. The first statement provided by Garner in support of his section 440 motion was an affidavit of his girlfriend, Sharonica Currie. CPL Motion 1, Ex. A-1 ("Currie Statement"). In that affidavit, Currie declared that prior to the incident on February 25, 1998, Alston had threatened to shoot Garner with a shotgun, and at one time had cut Garner with a razor. Currie Statement at 2-3. Currie stated that on the day Alston was killed, he had kicked in the door to Garner's

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 112 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

apartment and begun beating Currie. *Id.* at 3. According to Currie's statement, Garner then fired a shot in the air, and as Alston "rushe[d] for Garner, the gun [went] off [and Currie] heard a loud yell." *Id.* Currie alleged that she signed the statement provided to law enforcement agents, in which she claimed that Garner intentionally shot Alston, because she was "forced[,] threatened and coerced by [the] Oneida County District Attorneys office" into making those false statements. *Id.* at 4. Currie concluded her affidavit by declaring that "all statements, and testimony that [she] made against Curtis Gardner [sic] were false, and made under duress and coercion caused by the District Attorney[']s office, the Rome Police Department and the deceased [*sic* ] family." *Id.* at 6.

**\*3** The second statement submitted in support of petitioner's section 440 motion was signed by Rashita Scott before a notary on September 8, 2001, but did not indicate that the statement was either an affidavit or being made under penalty of perjury. [3] CPL Motion 1 at Exh. A-2 ("Scott Statement"). In that statement, Scott claimed that the Oneida County District Attorney's Office, as well as her own attorney, had pressured her into providing a "false statement" to law enforcement agents regarding Garner's complicity in Alston's death. [4] *Id.* at 1. Specifically, Scott claimed in her statement that the District Attorney's office informed her that if she refused to "go along with the false statements, [Scott] would be sentenced to a 25 to life long jail sentence." *Id.* Scott further indicated in her statement that she did not "see anything that happened with that situation on February 25, 1998." *Id.* at 1-2.

[3]     The attorney who filed the motion on Garner's behalf declared in his affidavit that Scott was an eyewitness to the incident, and had testified against Garner before the grand jury. CPL Motion at ¶¶ 4, 6. I am unable to verify this fact, however, since no grand jury testimony relating to Garner has been provided to the court.

[4]     Respondent did not provide this court with a copy of Scott's statement to the authorities regarding the homicide.

On September 9, 2002, Judge Dwyer issued a decision denying petitioner's section 440 application in all respects. *See People v. Garner,* No. 98-157 (Oneida Cty. Ct. Sept. 9, 2002) ("September, 2002 Decision") at 2. After reviewing the statements upon which the motion was based, Judge Dwyer determined that Garner had not provided any evidence establishing that his conviction was procured by "duress,

misrepresentation or fraud on the part of the prosecutor." September, 2002 Decision at 2. Judge Dwyer further noted that Garner had failed to provide evidence demonstrating that his conviction was obtained in violation of his rights under the United States Constitution. *Id.* Leave to appeal the denial of petitioner's first section 440 motion to the Fourth Department was denied by order dated April 4, 2002. *People v. Garner,* No. 98-157 (4th Dep't Apr. 4, 2003).

On April 26, 2005, proceeding pro se, petitioner, at this juncture, filed a second motion to vacate his judgment of conviction pursuant to CPL § 440.10. In that application, petitioner reiterated the claims raised in his first section 440 motion, claiming that after sentencing, he received statements from Sharonica Currie and Rashita Scott which recanted their grand jury testimony against him. *See* Second Motion to Vacate Judgment of Conviction (4/26/05) (Dkt. No. 42) ("CPL Motion 2") at ¶¶ 30-34. In his second section 440 application, petitioner also asserted several additional claims, alleging, *inter alia,* (1) his guilty plea was unlawful due to the ineffective assistance of trial counsel; (2) the prosecution withheld exculpatory information in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763 (1972); (3) the grand jury proceedings were defective because the prosecution solicited false testimony from witnesses; and (4) his sentence was illegal and unauthorized. *See* CPL Motion 2.

On July 1, 2005, Judge Dwyer issued a decision denying petitioner's second section 440 motion in all respects. *See People v. Garner,* No. 98-157 (Oneida Cty. Ct. July 1, 2005) ("July, 2005 Decision"). Judge Dwyer determined that petitioner's claims regarding the alleged false testimony of Currie and Scott either were previously determined by the court or, alternatively, constituted arguments related to claims on the record which Garner failed to raise on appeal, or which could have been placed on the record for appellate review. July, 2005 Decision at 2. Judge Dwyer further determined that petitioner's ineffective assistance claim was meritless, and his waiver of his right to appeal forfeited his right to challenge his sentence as harsh and excessive. *Id.* at 2-3. The county court concluded by denying the motion in its entirety based on the lack of any legal grounds to support petitioner's assertions. *Id.* at 3. Leave to appeal the denial of petitioner's second section 440 motion to the Fourth Department was denied by order dated November 28, 2006. *People v. Garner,* No. 98-157 (4th Dep't Nov. 28, 2006).

B. *Proceedings in this Court*

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

**\*4** Petitioner commenced this proceeding on April 6, 2001 and, at the court's directive, subsequently filed an amended petition on August 7, 2001. Dkt. Nos. 1, 3, 5. On November 15, 2001, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer to Garner's amended petition, accompanied by a legal memorandum as well as some of the relevant records associated with petitioner's prosecution and the state court challenges to his conviction. Dkt. Nos. 12, 13. Petitioner subsequently filed a memorandum in further support of his amended petition. Dkt. No. 14.

Petitioner later sought and obtained leave to submit a second amended petition, which was filed on October 30, 2003. Dkt. Nos. 30, 32. In that amended petition, which is now before the court, Garner argues that (1) he was not aware of the consequences of his plea, due to the ineffective assistance rendered by his counsel; (2) the trial court was biased against him; (3) the sentence imposed by the trial court was based on erroneous facts; (4) his sentence was harsh and excessive; (5) the statements provided by the recanting witnesses demonstrate that his conviction was the result of prosecutorial misconduct; and (6) the prosecution improperly withheld from the defense *Brady/Giglio* materials, in the form of a cooperation agreement into which Scott had entered with the prosecution. *See* Second Amended Petition (Dkt. No. 32). At respondent's request, the court has considered the answer and memorandum of law filed in opposition to petitioner's earlier amended petition as his response to the more recently filed petition. *See* Dkt. No. 30.

On December 17, 2003, Garner filed a motion seeking permission to make yet another amendment "to expand his petition by broadening the scope of information that the witnesses provided in their recantations including up-dated [sic] cases that would support his petition." Second Motion to Amend (Dkt. No. 35) ¶ 10. In support of that motion to amend, Garner submitted an incomplete copy of his prior amended petition together with a memorandum of law. Given that Garner (1) had not filed a complete proposed amended petition with his newest motion to amend, (2) had been afforded ample time and opportunity to submit all of his arguments and information to the court in prior amended pleadings, and (3) could have submitted this additional information in his prior motion to amend his petition but chose not to do so, petitioner's motion to revise his second amended petition was denied by order of this court dated March 10, 2004. Dkt. No. 37.

After reviewing Garner's second amended petition, I ordered him to advise the court whether he wished to (1) withdraw his previously unexhausted *Brady/Giglio* claim or (2) have his petition stayed so that he could pursue the unexhausted *Brady/Giglio* claim in the state courts. Dkt. No. 40 ("January 25, 2005 Order"). In light of Garner's decision to return to state court, the federal petition in this matter was stayed. *See* Dkt. No. 41.

**\*5** As previously noted, upon his return to the state courts Garner raised not only the unexhausted *Brady/Giglio* claim, but also a host of other claims in his second section 440 motion. *See* CPL Motion 2 (Dkt. No. 42). Upon the state court's rejection of that motion on July 1, 2005 and the denial of permission to appeal that ruling, Garner notified the court by letter dated January 4, 2007 that review of his state court motion was complete, and the stay of this proceeding was therefore lifted. Dkt. No. 53.

On February 12, 2007, Garner filed a third motion to amend his petition in this matter. Third Motion to Amend (Dkt. No. 55). Along with the motion, Garner submitted a proposed third amended petition in which he reiterated the claims previously raised, and added five new claims. Dkt. No. 55-2 at 6a. Respondent opposed the motion, arguing that Garner exceeded the scope of this court's January 25, 2005 Order, which only pertained to the previously-unexhausted *Brady/Giglio* claim, and that Garner "has shown repeated delay, bad faith, and dilatory motive over the nearly six-year course of this litigation." Dkt. No. 59 at 3. Garner subsequently submitted a reply to respondent's opposition and in further support of his motion to amend. Dkt. Nos. 59, 62. By order dated May 8, 2007, I denied Garner's motion to revise his second amended petition, finding that he had ample opportunity to submit all of his claims and noting that the stay had been granted for the sole purpose of allowing him to exhaust the *Brady/Giglio* claim in state court-a claim that was already included in his second amended petition. Dkt. No. 64.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

A. *Standard of Review*

Case 9:17-cv-01299-MAD-TWD Document 35 Filed 03/03/21 Page 114 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), brought about significant new limitations on the power of a federal court to grant habeas relief to a state court prisoner under 28 U.S.C. § 2254. Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *see also Boyette v. Lefevre,* 246 F.3d 76, 88 (2d Cir.2001) (quoting § 2254(e)(1)) (internal quotes omitted). Significantly, a federal court may not grant habeas relief to a state prisoner on a claim

that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**\*6** 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo,* 486 F.3d 61, 65 (2d Cir.2007); *Noble v. Kelly,* 246 F.3d 93, 98 (2d Cir.), *cert. denied,* 534 U.S. 886, 122 S.Ct. 197 (2001); *Boyette,* 246 F.3d at 88. When applying this test, the Second Circuit has noted that

[u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001), *cert. denied* 534 U.S. 924, 122 S.Ct. 279, 151 L.Ed. 205 (2001) (citing *Williams v. Taylor,* 529 U.S. 362, 412-13, 1120 S.Ct.

1495, 1523 (2000) and *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000) (citing *Williams* )).

Because the AEDPA's restriction on federal habeas power was premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Schriver,* 255 F.3d 45, 52-55 (2d Cir.2001). Specifically, as the Second Circuit explained in *Sellan v. Kuhlman,* "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." 261 F.3d 303, 312 (2001); *see Jimenez v.. Walker,* 458 F.3d 130, 140 (2d Cir.2006) (citing *Sellan* ), *cert. denied sub nom., Jimenez v. Graham,* 127 S.Ct. 976 (2007). Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by § 28 U.S.C. 2254(d)(1) to the state court's decision on the federal claim-*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." Sellan,* 261 F.3d at 312 (emphasis added).[5],[6]

[5]
In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under the AEDPA, in which case pre-AEDPA standards would apply. *Washington,* 255 F.3d at 52-55; *see also Noble,* 246 F.3d at 98. That court recently clarified in *Sellan,* however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[6]
In his opinion in *Sellan,* Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard. *Sellan,* 261 F.3d at 312. He noted, however, that a state court's failure to provide such useful guidance does not

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 115 of 130
Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so. *Id.*

When a state court's decision is found to be decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06, 120 S.Ct. at 1519-20. Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was " 'objectively unreasonable.' " *Sellan,* 261 F.3d at 315 (quoting *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521 (O'Connor, J.)). The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great [.]" *Francis S.,* 221 F.3d at 111.

 **\*7** If a state court does not adjudicate a petitioner's federal claim "on the merits," the federal court must instead apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim. *See Cotto v. Herbert,* 331 F.3d 217, 230 (2d Cir.2003) (citing *Aparicio,* 269 F.3d at 93).

### B. *Unlawfully Induced Guilty Plea Based Upon Ineffective Assistance of Counsel*

Central to Garner's assertion that he is entitled to habeas relief is the claim that his guilty plea, although accepted by the trial court, was not knowingly entered. Petitioner contends that his "conviction was obtained by a plea of guilty, to which was unlawfully induced [sic]" in violation of his constitutional rights. Second Amended Petition (Dkt. No. 32) ¶ 13, Ground 1. Garner primarily claims he was persuaded to plead guilty by his trial counsel, who was ineffective for failing to make Garner "aware of the circumstances of the plea." *Id.* This claim was not presented to the Appellate Division, Fourth Department or to the state court in Garner's first CPL 440.10 motion. Based upon that fact, I initially found that review of this claim was procedurally barred. *See* January 25, 2005 Order at 12-14.

Despite the limited scope of this court's order granting Garner the opportunity to exhaust only his *Brady/Giglio* claim in state court, however, Garner raised a number of additional claims in his second section 440 motion, including a detailed claim that trial counsel was ineffective by advising him to plead guilty. CPL Motion 2. Specifically, petitioner alleged that his

counsel had failed to investigate or advise him of the possible defenses of extreme emotional disturbance and justification, improperly advising him that he would not win at trial and therefore should plead guilty to avoid spending his life in prison. CPL Motion 2 at ¶¶ 50-56.

The trial court addressed this claim on the merits, finding that Garner's apparent dissatisfaction with the results of the plea bargain, "which insulated him from a conviction for Murder in the Second Degree," was "not a basis to establish a lack of meaningful representation." July, 2005 Decision at 2-3. Given that the state court has since addressed this claim on the merits in its decision on petitioner's second section 440 motion, and this claim was already alluded to by Garner in the habeas petition currently before the court, I find that the state court's findings represent an adjudication of the claim on the merits and thus are entitled to AEDPA deference.

### 1. *Clearly Established Supreme Court Precedent*

Under the well-established standard governing such claims, in order to prevail on an ineffective assistance of counsel claim a petitioner must show both that 1) his or her counsel's performance was deficient, in that it failed to conform to an objective, reasonableness threshold minimum level, and 2) that deficiency caused actual prejudice to the defense, in that the petitioner was effectively deprived of a fair trial, the results of which were reliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005), *cert. denied,* 126 S.Ct. 1363 (2006). To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Greiner,* 417 F.3d at 319 (citing *Strickland* ). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort being made to "eliminate the distorting effects of hindsight [.]" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Greiner,* 417 F.3d at 619 (citing *Strickland* ).

 **\*8** When reviewing an attorney's performance against this backdrop, a court will generally indulge in a presumption that constitutionally adequate assistance has been rendered, and significant decisions have been made through the exercise of sound professional judgment to which "a heavy measure of deference" is afforded. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066; *Greiner,* 417 F.3d at 319 (citing *Strickland* ). In a case such as this, a petitioner must establish that his or her attorney omitted significant and obvious issues while pursuing issues

Case 9:17-cv-01299-MAD-TWD Document 35 Filed 03/03/21 Page 116 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

that were clearly and significantly weaker; it is not enough to show only that counsel omitted a nonfrivolous argument, as an attorney has no duty to advance every such argument. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314 (1983); *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.) (citing *Jones* ), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81 (1994).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that but for the deficiency "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Henry v. Poole,* 409 F.3d 48, 63-64 (2d Cir.2005); *Reed v. Smith,* No. 05-CV-3969, 2006 WL 929376, at *6 (E.D.N.Y. Apr. 11, 2006).

In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and instead would have exercised his or her right to a trial. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370-71 (1985); *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.), *cert. denied,* 517 U.S. 1147, 116 S.Ct. 1445 (1996); *Baker v. Murray,* 460 F.Supp.2d 425, 434 (W.D.N.Y.2006); *Padilla v. Keane,* 331 F.Supp.2d 209, 215 (S.D.N.Y.2004).

To gauge whether a petitioner would have opted to go to a trial had his or her counsel provided more precise or extensive information, courts consider several factors. *See Padilla,* 331 F.Supp.2d at 216. First, the question of whether the record supports the finding that the plea was knowing, voluntary and intelligent must be examined. *Id.* If the record supports such a finding, a guilty plea is not invalidated simply because the petitioner confronted the choice of pleading guilty or facing trial on more serious charges. *Id.* Indeed, "[w]here a defendant ... has explicitly stated in his [or her] allocution that he [or she] fully understands the consequences of his [or her] plea and that he [or she] has chosen to plead guilty after a thorough consultation with his [or her] attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him [or her] to them." *Id.* at 217 (citations omitted).

Another relevant factor to be considered when weighing a *Strickland* claim in the context of a guilty plea involves the specific circumstances applicable to the defendant's decision. *Id* . Where the evidence of a defendant's guilt is overwhelming, as in Garner's case, "the burden of demonstrating prejudice to satisfy the second *Strickland*

prong is virtually insurmountable." *Id* . (citing *Strouse v. Leonardo,* 928 F.2d 548, 556 (2d Cir.1991)). Additionally, where a defendant obtains a meaningful strategic benefit by pleading guilty, most courts consider it unlikely that an involuntary or ill-advised plea ensued. *Id.* (citing, *inter alia, Feliz v. United States,* No. 01 Civ. 5544, No. 00 Cr. 53, 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002) ("[N]o prejudice exists when a plea agreement lessens the severity of the sentence defendant would face if convicted at trial.").

**\*9** Lastly, when assessing the voluntariness of a guilty plea in a setting such as that presented, habeas courts look to whether a defendant has submitted any new evidence to suggest he or she in fact would have made a different decision but for his attorney's allegedly improper advice. *Id.* at 217-18. Unsupported and conclusory allegations that the defendant would have acted differently, however, are inadequate to establish prejudice under *Strickland. Id.* at 218.

As the Supreme Court noted,

> [a] guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608 (1973) (citations omitted). To be successful in his quest for habeas relief, Garner must show not only that there was an actual constitutional error, but that counsel's advice to plead guilty without having uncovered those errors fell outside the

Case 9:17-cv-01299-MAD-TWD Document 35 Filed 03/03/21 Page 117 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

range of professionally competent assistance. *Tollett,* 411 U.S. at 267, 93 S.Ct. at 1608; *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2052.

### 2. *Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent*

Analyzed under these standards, the record fully supports the trial court's finding that Garner has not established a lack of effective representation.

First, despite petitioner's protestations to the contrary, the record firmly discloses that his counsel's performance was clearly reasonable. Although Garner asserts that his attorney did not investigate possible defenses, the record refutes that claim. From as early as the pre-trial motion stage of the case, counsel investigated possible defenses, recognized and advanced the theory that Garner acted under extreme emotional disturbance, and argued that the preliminary hearing testimony established only that Garner was guilty of first degree manslaughter. CPL Motion 2, Exh. A at 6. Between the plea and sentencing, counsel prepared an extensive pre-sentence memorandum, eliciting and compiling several letters written by petitioner's friends and family members. Record at 27-135. In his pre-sentence memorandum, Garner's counsel boasted about petitioner's good character, asserting that in his community, Garner was considered to be a "decent, wellmannered and respectful young man." *Id.* at 33. When passing sentence, counsel urged the court to consider that Garner was simply protecting himself and Currie. *Id.* At sentencing, counsel again advanced these arguments, urging the court to impose the minimum sentence. Sentencing Tr. at 17-38.

**\*10** Even assuming, *arguendo,* that counsel's conduct was in fact deficient, falling below the *Strickland* threshold minimum level of competence, the record discloses no actual prejudice suffered by Garner. In this regard, it is evident that Garner's plea was knowing, voluntary and intelligent. A review of the plea allocution in this matter reflects that the trial court made a thorough inquiry to determine whether petitioner's plea of guilty was voluntary and intelligent. The court explained the proposed plea agreement in detail to Garner, and clarified that at the time of sentencing, the prosecutor would ask the court to impose a sentence of twelve and one-half to twenty-five years in prison, as in fact occurred, but that Garner's attorney would likely argue for less time, and the court would consider the arguments and decide what sentence would be appropriate. Plea Tr. at 4-5. Both defendant and his counsel indicated they had discussed

the terms of the proposed plea agreement. Plea Tr. at 6-9, 21. During the plea colloquy, the court established that no threats or promises had been made to induce Garner's plea, including that no one promised him he would receive less than twelve and one half to twenty-five years. Plea Tr. at 5-6. The court's questions, and Garner's answers to them, established that Garner had no difficulty understanding the proceedings. Plea Tr. at 5-7. The court ensured that Garner was apprised of and understood the rights he was relinquishing by pleading guilty. Plea Tr. at 8-13. Lastly, the trial court ascertained that Garner understood the nature of the charge to which he was pleading guilty, and through Garner's extensive allocution, ascertained that he did in fact commit that crime. Plea Tr. at 13-21. In light of the record, Garner's bare assertion that he would not have pleaded guilty had counsel informed him more fully of possible defenses rings insincere. Given the overwhelming evidence against him, it is unlikely Garner would have been outright acquitted of all charges; as such, the plea worked to his advantage.

As the state court noted, moreover, Garner's counsel negotiated a plea agreement that insulated his client from possible conviction on two counts of second degree murder, resulting in a significant strategic benefit to the petitioner. I note that Garner's exposure, had he been convicted after trial, was a maximum time of incarceration of between twenty-five years and life in prison. N.Y. Penal Law § 70.00(2)(a), 3(a)(i). Under the terms of the plea agreement, by contrast, Garner was permitted to plead guilty to first degree manslaughter with the hope of a sentence less than the maximum permitted under the statute. Plea Tr. at 2-5; Sentencing Tr. at 17-38.

In sum, based upon my review of the state court record, including transcripts of Garner's plea and sentencing and counsel's pre-sentence memorandum, I conclude that Garner has failed to establish that the state court's denial of his ineffectiveness claim is either contrary to or an unreasonable application of established Supreme Court precedent. I therefore recommend that this ground of Garner's petition be denied.

### C. *Trial Judge's Bias When Imposing Sentence*

**\*11** In his petition, Garner also claims that his guilty plea should be vacated because the trial judge was biased and made "prejudicial remarks toward the Petitioner" during sentencing. Second Amended Petition (Dkt. No. 32) ¶ 13, Ground 1. In support of this contention, petitioner cites to the following comments made by Judge Dwyer during sentencing, construed by him as prejudicial, and maintains

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 118 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

that as a result, his plea and sentence did not coincide with the facts of his case:

> Despite what you say and despite what your attorney says, I, for one minute, don't believe that you were up here to go to college. You had ample time to enroll in any school. You weren't up here to go to school. You came up with a gun, and you came up with someone that brought up drugs to this area. And quite frankly, the people of this community are sick and tired of people coming up here from New York City with their guns and with their drugs. Week in and week out I'm sentencing people from New York City for drug possession, drug sales, weapons possession and weapons sales and assaults and murders. We are fed up with it. You weren't up here to go to school. You were involved in the same type of thing. You came up here with someone that had a boat load of drugs on them, and you brought a gun. To that means, you thought about that you were going to do.

Sentencing Tr. at 39-40.

In the direct appeal of his conviction taken by the petitioner, relying on the same sentencing colloquy as alleged herein and cited above, Garner argued that the trial judge predicated his sentence upon improper considerations, citing as an example the sentencing judge's statements regarding drug dealing. Appellant's Br. at 12-14; *see also infra* at Part III.D. Petitioner, however, never specifically argued in the state courts that the acceptance of his guilty plea was itself infected by the bias allegedly demonstrated against him by the court's statements during sentencing. *Id.* As a threshold matter, I must therefore determine the legal consequences, if any, associated with this failure to present the argument now being made to the state courts.

1. *Exhaustion*

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or establish either an absence of available state remedies or that such remedies cannot adequately protect his or her rights. *Aparicio,* 269 F.3d at 89 (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269 (1985). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982). "Comity concerns lie at the core of the exhaustion requirement." *Galdamez v. Keane,* 394 F.3d 68, 72 (2d Cir.2005). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Id.* "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye,* 696 F.2d at 192 (footnote omitted).

**\*12** This exhaustion requirement is satisfied if the federal claim has been "fairly presented" to the state courts. *See Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye,* 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio,* 269 F.3d at 90 (citing *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997)); *Lurie v. Wittner,* 228 F.3d 113, 124 (2d Cir.2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied* 532 U.S. 943, 121 S.Ct. 1404 (2001). As such, I must determine whether it would futile for petitioner to present the newly-asserted theory regarding trial court bias to the state courts.

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 119 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

Petitioner cannot now file a direct appeal with the Fourth Department in order to advance this claim, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio,* 269 F.3d at 91. Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner cannot now properly raise this claim, which is based upon the record, in a third section 440 motion. *Aparicio,* 269 F.3d at 91; *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436 (1995). This claim is therefore "deemed exhausted" for purposes of petitioner's habeas petition. *Spence v. Superintendent, Great Meadow Corr. Fac.,* 219 F.3d 162, 170 (2d Cir.2000); *Senor v. Greiner,* No. 00-CV-5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).

### 2. *Procedural Default*

Although Garner's claim that the trial court was biased against him is "deemed exhausted," it is also procedurally defaulted. *See Aparicio,* 269 F.3d at 90. Accordingly, a federal court may not engage in habeas review of the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or (2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice. *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000); *Garcia v. Lewis,* 188 F.3d 71, 76-77 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995). Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[,]" *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986); *see also House v. Bell,* 126 S.Ct. 2064, 2076 (2006); *Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994), "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Murray,* 477 U.S. at 495, 106 S.Ct. at 2649 (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576 (1982)).

**\*13** To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566-67 (citing *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645); *Restrepo v. Kelly,* 178 F.3d 634, 639 (2d Cir.1999) (citing, *inter alia, Coleman* ). Examples of such external mitigating circumstances can include "interference

by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal. [7] *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. When a petitioner has failed to establish adequate cause for his or her procedural default, the court need not go on to also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Long v. Lord,* No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, S.J.) (citing *Stepney* ); *Staley v. Greiner,* No. 01 Civ. 6165, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003) (citing *Stepney* ). In such a case, absent evidence to show the petitioner's innocence of the crime of conviction, no basis is presented to conclude that the failure to consider the merits of the federal claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration." *Spence,* 219 F.3d at 170.

[7]
> It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error .' " *Coleman,* 501 U.S. at 753, 111 S.Ct. at 2566-67 (quoting *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645).

Garner has failed to establish cause for his failure to exhaust this claim, and has never argued, in either the state courts or this proceeding, that his appellate counsel rendered ineffective assistance by failing to argue in the state courts that the trial judge was biased against him. Since Garner has not established cause for his procedural default, I need not decide whether he suffered actual prejudice, inasmuch as federal habeas relief is generally unavailable as to procedurally defaulted claims unless *both* cause and prejudice are demonstrated. *See Stepney,* 760 F.2d at 45; *Staley,* 2003 WL 470568, at *7; *Pou,* 977 F.Supp. at 581. Additionally, particularly in view of Garner's failure to offer any evidence to show his actual innocence of the crime for which he was convicted, I find no basis to conclude that this court's failure to consider the merits of this claim would result in a fundamental miscarriage of justice, which has been interpreted as amounting to "an unjust incarceration." *Spence,* 219 F.3d at 170. I therefore recommend that this aspect of Garner's petition be denied on this procedural basis. [8]

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 120 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

8    I note that respondent does not argue that this claim is procedurally barred. *See* Respondent's Memorandum (Dkt. No. 13) at 6, 8-9. Although a district court can raise a petitioner's failure to exhaust and a procedural default as a basis for the denial of federal habeas relief sua sponte, *see, e.g., Acosta v. Artuz,* 221 F.3d 117, 121 (2d Cir.2000) (*citing, inter alia, United States v. Vincent,* 507 F.2d 1309, 1312 (2d Cir.1974)), the Second Circuit has held that before dismissing a habeas claim on procedural grounds on its own initiative, a district court must afford the petitioner notice of its intention to dismiss the claim on a procedural basis and an opportunity to be heard. *Acosta,* 221 F.3d at 124-26. Accordingly, if petitioner believes that his claim relating to the trial court's alleged bias against him has not been procedurally forfeited, he should raise this contention in timely-filed objections to this report and recommendation.

D. *Propriety of Sentence and Abuse of Discretion*

In tandem with his allegations of trial court bias, Garner also claims that his sentence was the product of the trial court's reliance upon misinformation and erroneous conclusions about him, thereby violating his due process rights. Specifically, Garner alleges the sentencing court improperly concluded that he did not travel to Oneida County from New York City for the purpose of enrolling in school, as he asserted; that he brought a gun with him and traveled with someone who brought drugs to the area; and that Garner was involved in the "same type of thing"-that is, drug dealing. Second Amended Petition (Dkt. No. 32), Grounds 1-2. Garner also claims that this conviction was his first, eliminating any basis for the court to conclude he was involved in anything illegal. *Id.* Finally, Garner contends that the sentencing court failed take into account the circumstances surrounding the crime for which he was convicted, including his contention that when shooting the victim, he was simply protecting his pregnant girlfriend and their unborn child. *Id.*

*14    The claims now being raised in connection with his sentencing were raised by Garner in his direct appeal. In its decision, the Appellate Division noted that the record did not support Garner's claim that "he was sentenced on the basis of materially untrue assumptions or misinformation." *Garner,* 267 A.D.2d at 980-81, 700 N.Y.S.2d at 907. The court also found that Garner was "properly punished for a crime that he committed, not for crimes committed by others." *Id.* at 981, 700 N.Y.S.2d at 907.

It is well-settled that judges retain the inherent authority to exercise broad discretion when imposing sentences within a statutorily prescribed range. *See United States v. Booker,* 543 U.S. 220, 233, 125 S.Ct. 738, 743-44 (2005). As such, a petitioner's assertion that a judge abused his discretion when imposing a sentence is generally not a federal claim which is subject to review by a habeas court. *See Fielding v. LeFevre,* 548 F.2d 1102, 1109 (2d Cir.1977). This is so even in circumstances where a defendant is young, where there are positive factors in the pre-sentencing memorandum and where a defendant has few, if any, prior convictions. *Fielding,* 548 F.2d at 1109 (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports); *see also Valentine v. Lord,* No. 03 Civ. 4834, 2006 WL 1997708, at *4 (S.D.N.Y. July 18, 2006) (argument that sentence harsh and excessive due to petitioner's youth when she committed the crime and her lack of prior criminal record is not a constitutional basis for overturning a sentence when it otherwise lies within the prescribed statutory range); *Steele v. Filion,* 377 F.Supp.2d 332, 337 (W.D.N.Y.2005) (no abuse of discretion in imposing consecutive sentences where sentence within the applicable statutory range, even though petitioner had one prior misdemeanor conviction and positive factors in the pre-sentencing profile); *Davis v. Senkowski,* No. 97-CV-2328, 1998 WL 812653, at *8 (E.D.N.Y. Aug. 6, 1998) (rejecting argument that sentence was excessive in light of petitioner's youth and prior criminal record).

Even if this court were empowered, on habeas review, to examine the rationale for the sentence imposed upon Garner, I would find that the record in this case is fully supportive of the Appellate Division's finding that Garner was not sentenced on the basis of materially untrue assumptions or misinformation, or that he was punished for any crime but the one he committed. It should be noted that "at sentencing, 'the judge may consider hearsay, evidence of uncharged crimes, dropped counts of an indictment, and crimes charged that resulted in acquittal.' " *Jones v. Donnelly,* 487 F.Supp.2d 403, 416 (S.D.N.Y.2007) (quoting *Arocho v. Walker,* No. 01-CV-1367, 2001 WL 856608, at *4 (S.D.N.Y. July 27, 2001)). A sentencing court may not, however, rely upon information that is "clearly unreliable or inaccurate." *Jones,* 487 F.Supp.2d at 416-17.

*15    When Garner pleaded guilty, he allocuted and described the circumstances surrounding the death of the victim. Plea Tr. at 16-22. At the time his plea was entered, Garner explained

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 121 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

that he and the victim had engaged in a physical altercation over a shared girlfriend, Sharonica Currie, and admitted he shot the victim with the intent to cause serious physical injury, further acknowledging that he used a 9 millimeter handgun which he brought from New York City to shoot the victim. Plea Tr. at 15-16. Garner further admitted that he was adjudicated a youthful offender in 1995 for criminal possession of a controlled substance in the third degree. *Id.* at 7.

Prior to sentencing, Garner's counsel prepared and submitted a pre-sentence memorandum, *see* Record at 27-135, which was discussed at sentencing and considered by the court. Sentencing Tr. at 16-17, 40. The prosecutor asked the judge to further consider the prior youthful offender adjudication and a portion of the grand jury minutes which revealed that Garner and his cousin brought cocaine from New York City the day before the victim was killed, and that another person was arrested for possession of that cocaine. *Id.* at 16-17. Defense counsel then spoke on Garner's behalf, including setting forth Garner's version of events that included the theory that he was trying to protect Currie from the victim. *Id.* at 17-38. During his sentencing, Garner apologized and took "full responsibility" for his actions. *Id.* at 38-39.

The sentencing court considered these arguments and the documents submitted when imposing sentence. Judge Dwyer noted that Garner brought a gun from New York City and traveled with a person who brought a "boat load" of drugs along with them. Sentencing Tr. at 40. The court, after stating that it read through "every single letter" from Garner's family members and teachers, concluded that Garner was "not the same person described in the pre-sentence memorandum. You are not. You've taken a life, and you need to be punished for it." *Id.* The court then imposed the maximum allowable sentence. *Id.* at 40-41.

As there is no evidence that the sentencing court relied upon misinformation, the court did not exceed its discretion when it considered Garner's transportation of a gun, his association with a drug courier, and his prior youthful offender adjudication when it imposed the maximum sentence. *See Jones,* 487 F.Supp.2d at 417. Accordingly, I recommend that Garner's petition on this ground be denied.

### E. *Harsh and Excessive Sentence*
Garner claims that the sentence imposed was harsh and excessive in light of his background as well as the facts and circumstances surrounding the incident that resulted in his

conviction. Second Amended Petition (Dkt. No. 32) ¶ 13, Ground 2. At the time of the plea, Garner waived his right to appeal on the condition that he would be sentenced to no more than twelve and one-half to twenty-five years in prison. Plea. Tr. at 12. Garner does not now challenge the validity of the waiver of appeal in his habeas petition. *See* Second Amended Petition (Dkt. No. 32).

**\*16** Despite his legally effective waiver of appeal, Garner appealed his conviction, challenging both the length and propriety of the sentence imposed. In its decision, the Appellate Division concluded that under New York state law, Garner's knowing and intelligent waiver of appeal "encompassed the right to challenge the sentence as harsh and excessive." *Garner,* 267 A.D.2d at 980, 700 N.Y.S.2d at 907 (citing *People v. Hidalgo,* 91 N.Y.2d 733, 737, 675 N.Y.S.2d 327, 329 (1998)).

Garner again challenged his sentence in his second section 440 motion. Like the Appellate Division, the county court found that the sentence claim was forfeited by virtue of Garner's valid waiver of appeal. July, 2005 Decision at 3.

1. *Garner's Claim Is Procedurally Barred by Virtue of His Waiver of the Right to Appeal*
As a matter both of comity, and in keeping with the principles of federalism, a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground which is both "independent and adequate," unless a petitioner can show both cause and prejudice or a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 736, 111 S.Ct. at 2558; *Harris v. Reed,* 489 U.S. 255, 261, 109 S.Ct. 1038, 1042 (1989); *Murden v. Artuz,* --- F.3d ----, 2007 WL 2282658, at *8 (2d Cir. Aug. 10, 2007); *Monroe v. Kuhlman,* 433 F .3d 236, 240-41 (2d Cir.2006); *Brown v. Greiner,* 409 F.3d 523, 532 (2d Cir.2005). While a procedural forfeiture is typically the product of a failure to comply with a state's requirements regarding timely presentment of issues to the court, the question of whether a default discerned by a state court is sufficiently adequate and independent to preclude federal habeas review is governed by federal law. *Monroe,* 433 F.3d at 241.

Addressing the issue of adequacy, the Second Circuit has observed that

Case 9:17-cv-01299-MAD-TWD   Document 35   Filed 03/03/21   Page 122 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question. When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review. Nonetheless, the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law.

cause for this procedural default; namely, although Garner challenged the *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999) (internal citations and quotation marks omitted). As may be self-evident, a state court determination is sufficiently independent, for purposes of this rule, if it is divorced from and bears no relation to the merits of the federal law claim presented. *See Brown,* 409 F.3d at 532. When addressing the question of procedural forfeiture, a court should presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion[.]' " *Coleman,* 501 U.S. at 733, 111 S.Ct. at 2556 (quoting *Michigan v. Long,* 463 U.S. 1032, 1040-41, 101 S.Ct. 3469, 3476 (1983)).

**\*17** For a federal court to deny habeas review based on the independent and adequate state ground doctrine, it must be clear that the state court actually relied upon the procedural bar as an independent basis for its disposition of the claim. *Fama,* 235 F .3d at 809. In a case where both procedural and substantive arguments have been advanced by the parties but no opinion is issued by the state court explaining its rejection of a claim, a federal court may properly assume that the state court based its decision on state procedural grounds absent "good reason" to believe the state courts' silence represents a decision to deny the claim on its merits. *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993). In instances where a state court has expressly found both a failure to preserve the argument for appellate review and alternatively or "in any event" that

the argument lacks merit, the procedural bar applies. *Fama,* 235 F.3d at 810 n. 4 (citing *Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996), *cert. denied* 520 U.S. 1108, 117 S.Ct. 1116 (1997) and *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990)). If there is ambiguity, however, as in "when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama,* 235 F.3d at 810; *see also Coleman,* 508 U.S. at 735, 111 S.Ct. at 2557.

In the present case, the state courts predicated dismissal of petitioner's harsh and excessive sentence claim on his waiver of his right to appeal. Under New York law, a knowing and voluntary waiver of the right to appeal precludes appellate review of whether a sentence was harsh and excessive. *See* N.Y.Crim. Proc. Law § 450.10(1)(a) (stating that defendant may appeal "[a] judgment other than one including a sentence of death, unless the appeal is based solely upon the ground that a sentence was harsh or excessive when such sentence was predicated upon entry of a plea of guilty and the sentence imposed did not exceed that which was agreed to by the defendant as a condition of the plea and set forth on the record"); *People v. Hidalgo,* 91 N.Y.2d 733, 737, 675 N.Y.S.2d 327, 329 (1998) (asserting that waiver of right to appeal encompassed sentencing claim where defendant pleaded guilty without an agreed-upon sentence, was informed of the maximum time she faced, and indicated that she understood the terms of the plea and the waiver). A state procedural bar is considered "adequate" if it " 'is firmly established and regularly followed by the state in question' ", *Murden,* 2007 WL 2007 WL 2282658, at *8 (quoting *Monroe,* 433 F.3d at 241), and courts within this circuit have held that the affirmative waiver of a petitioner's right to appeal indeed provides an adequate and independent state ground to deny habeas relief. *See McClane v. Superintendent,* No. 05 CV 5833, 2007 WL 295599, at *3 (E.D.N.Y. Jan. 24, 2007) (noting that petitioner's claims were procedurally barred based upon independent and adequate state law grounds given that defendant's waiver of his right to appeal foreclosed appellate review of his sentence as harsh and excessive); *Acosta v. Giambruno,* 326 F.Supp.2d 513, 522 (S . D.N.Y.2004) (indicating that petitioner's valid waiver of his right to appeal as a condition to his plea agreement was an independent and adequate state law ground on which to deny habeas relief for his claims of harsh and excessive sentence); *Singh v. Kuhlmann,* No. 94 CIV. 2213, 1996 WL 337283, at *4 (S.D.N.Y. June 19, 1996) (same); *but see Nicholas v. Smith,* No. 02-CV-6411, 2007 WL 1213417, at *17 (E.D.N.Y.

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 123 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

Apr. 24, 2007) (noting that under the circumstances of this case, where petitioner raised questions concerning whether he had validly waived his appellate rights under state law, it was possible that the procedural bar as to his harsh and excessive sentence claim was not an adequate state law ground).

**\*18** The state courts rejected Garner's claim that the waiver of the right to appeal was not knowing and intelligent, and found that the waiver encompassed the claim that the sentence imposed was harsh and excessive. *See Garner,* 267 A.D.2d at 980, 700 N.Y.S.2d at 907; *see also* July, 2005 Decision. In so doing the courts relied upon, and cited to, state law. *See Garner,* 267 A.D.2d at 980, 700 N.Y.S.2d at 907 (citing *Hidalgo,* 91 N.Y.2d at 737, 675 N.Y.S .2d at 329); *see also* July, 2005 Decision at 3 (citing *Hidalgo* ). Since the state courts specifically predicated the dismissal of Garner's excessive sentence claim on his waiver of the right to appeal, the decision rests upon an independent and adequate state ground, and federal review accordingly is barred. *Coleman,* 501 U.S. at 731, 111 S.Ct. at 2554-55; *Engle,* 456 U.S. at 128-129, 102 S.Ct. at 1572; *Acosta,* 326 F.Supp.2d at 522-523. Such a determination by a state court constitutes a finding of procedural default, and my review of this ground is therefore conditioned upon identifying a proper basis, if any, for excusing or overlooking petitioner's default, specifically a finding of cause and prejudice or a fundamental miscarriage of justice. *See Fama,* 235 F.3d at 809; *Garcia,* 188 F.3d at 76-77.

Garner has not offered any basis to cast doubt on the validity of his waiver of appeal. In the course of his direct appeal to the Appellate Division, Garner failed to contend in his habeas application that the waiver was invalid because, for example, his trial counsel was ineffective. Since petitioner was not demonstrated cause for his procedural default, I need not decide whether he suffered actual prejudice because federal habeas relief is generally unavailable to procedurally defaulted claims unless *both* cause and prejudice is demonstrated. *See Stepney,* 760 F.2d at 45. Additionally, I find no basis to conclude that Garner is actually innocent of the charge to which he plead guilty. In light of the foregoing, I recommend that petitioner's claim alleging his sentence was harsh and excessive be denied and dismissed given that federal review is precluded based on the independent and adequate state law doctrine.

#### 2. *Garner's Claim Is Not Cognizable*

In any event, this portion of Garner's petition overlooks the firmly established principle that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (*citing Underwood v. Kelly,* 692 F.Supp. 146 (E.D .N.Y.1988), *aff'd mem., 875 F.2d 857 (2d Cir.1989), cert denied,* 493 U.S. 837, 110 S.Ct. 117 (1989). Since Garner does not argue that the court's sentence was not authorized by statute, and given that the imposed sentence was within the statutory range having a minimum of three to twelve and one-half years and a maximum of six to twenty-five years, *see* N.Y. Penal Law §§ 125.20 (defining first-degree manslaughter as a class B felony); 70.02(2)(a), (3)(a) and (4) (defining the sentences for class B felonies), this theory cannot afford him relief.

**\*19** Garner's challenge to his sentence arguably could be construed as a claim that the sentence imposed resulted in his suffering cruel and unusual punishment in violation of the Eighth Amendment. That amendment, however, forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade,* 538 U.S. 63, 72-73, 123 S.Ct. 1166, 1172-73 (2003); *Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 2701 (1991). It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense. *See White,* 969 F.2d at 1383; *Lou v. Mantello,* No. 98-CV-5542, 2001 WL 1152817, at \*13 (E.D.N.Y. Sept. 25, 2001). The Supreme Court has held that, for offenses less than manslaughter, sentences longer than twenty-five years are not grossly disproportionate. *See Staubitz v. Lord,* No. 03-CV-0671, 2006 WL 3490335, at \*2 (E.D.N.Y. Dec. 1, 2006) (citing *Ewing v. California,* 538 U.S. 11, 123 S.Ct. 1179 (2003) (twenty-five years to life for grand theft) and *Harmelin,* 501 U.S. at 1104, 111 S.Ct. at 2706 (life in prison without the possibility of parole for cocaine possession)). Garner's sentence clearly was within the realm contemplated by relevant law.

In sum, since the sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction, I recommend that this ground of Garner's petition be denied.

#### F. *Prosecutorial Misconduct*

Garner claims in Ground III of his second amended petition that statements provided by two recanting witnesses, Sharonica J. Currie and Rashida Butler Scott, demonstrate that his guilty plea and conviction were the result of "duress misrepresentation or fraud on the part of the prosecution." Second Amended Petition (Dkt. No. 32) ¶ 13, Ground 3,

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 124 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

Affidavit at A, B. Specifically, Garner claims that these witnesses were threatened with prosecution if they did not testify falsely against him, and had he known they lied, he would not have pleaded guilty. *Id.*

Although Garner did not raise this claim on direct appeal, he did raise the allegations in his first CPL 440 motion, and attached the same affidavits from the recanting witnesses that are attached to his current habeas petition. *See* CPL Motion 1, Exh. 1. The state court denied relief, finding no evidence that the judgment of conviction was obtained by duress, fraud or misrepresentation by the prosecutor. *See* September, 2002 Decision. Garner again raised this claim in his second section 440 motion, and the county court denied the petitioner's assertion "relating to claims of false testimony" reasoning that

> [it was] previously determined by the Court, or the arguments relate to claims that are on the record and the defendant failed to raise them on appeal, or the arguments could, with due diligence have been placed on the record for appellate review.... the said arguments [therefore] remain subject to a mandatory bar pursuant to C.P.L. Section 440.10(2)(a) and a permissive procedural bar under C .P.L. Section 440.10(3)(b).

*\*20* July, 2005 Decision at 2. Complicating the matter, the county court also concluded its opinion by denying the motion in its entirety pursuant to CPL § 440.30(4)(a). *Id.* at 3.

CPL § 440.10(2)(a) is a mandatory state bar that requires a court to deny a motion to vacate a conviction when the ground raised in the motion was previously determined on the merits on appeal. N.Y.Crim. Proc. Law § 440.10(2)(a). CPL § 440.10(3)(b) is a permissive state bar that allows a state court to deny a motion to vacate a conviction where the ground raised was previously determined on the merits in a prior motion to vacate. N.Y.Crim. Proc. Law § 440.10(3)(b). It is questionable whether the state court's reliance on these sections constitutes a procedural bar to federal review. District courts within the Second Circuit disagree as to whether a state court's reliance on CPL § 440.10(2)(a) in denying a constitutional claim results in the procedural default of that claim on federal habeas review. *See, e.g., Cruz*

*v. Berbary,* 2006 WL 2946946, at *8 (W.D.N.Y. Oct. 16, 2006) (concluding that CPL § 440.10(2)(a) constitutes adequate and independent state ground resulting in procedural default of petitioner's federal habeas claims); *Hronopoulos v. Keane,* 1999 WL 529559, at *4 (E.D.N.Y. July 21, 1999) (finding that petitioner's claim was procedurally barred under CPL § 440.10(2)(a)); *Encarnacion v. Walker,* 1998 WL 34002608, at *4-5 (N.D.N.Y. Aug. 21, 1998) (Sharpe, M.J.) (identifying CPL §§ 440.10(2)(a) and (b) as adequate and independent state procedural rules), *adopted,* No. 96-329, Dkt. No. 17 (N.D.N.Y. Aug. 24, 1999) (Scullin, D.J.); *cf. Douglas v. Hollins,* 2004 WL 187130, at * 6 n. 5 (S.D.N.Y. Jan. 29, 2004) (finding that state court ruling under CPL § 440.10(2)(a) "does not constitute a finding of procedural default that precludes federal habeas review of the merits"); *Guzman v. Couture,* 2003 WL 165746, at *11 (S.D.N.Y. Jan. 22, 2003) ("A dismissal under § 440.10(2)(a) is not based on any procedural default. To the contrary, it is premised on a prior decision.") (quotations omitted); *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 546 (E.D.N.Y.1999) (same); *see also Williams v. Duncan,* No. 03-CV-568, 2007 WL 2177075, at *19 (N.D.N.Y. July 27, 2007) (Kahn, D.J. and Treece, M.J.) (recognizing diverging case law). [9] While the case law regarding section 440.10(3)(b) is less prolific, a state court's reliance therein also may result in a procedural bar to habeas review. *See, e.g., Soto v. Portuondo,* No. 02-CV-28, 2004 WL 2501773, at *5 (E.D.N.Y. Nov. 5, 2004) (alluding to section 440.10(3)(b) as a procedural bar).

[9]
> The Second Circuit has not conclusively determined whether CPL § 440.10(2)(a) is an adequate and independent state ground precluding federal habeas review on the merits. *See Fernandez v. Artuz,* 402 F.3d 111, 115 n. 4 (2d Cir.2005) (identifying CPL §§ 440.10(2)(a) and 440.10(2)(c) as procedural bars under New York law) (citing *Artuz v. Bennett,* 531 U.S. 4, 8 (2000)); *but see Silverstein v. Henderson,* 706 F.2d 361, 368 (2d Cir.1983) (stating that a state court ruling under CPL § 440.10(2)(a) "does not constitute a finding of procedural default that would bar federal consideration of [petitioner's] claims").

On the other hand, under CPL § 440.30(4)(a), "[u]pon considering the merits of the motion, the court may deny it without conducting a hearing ... if [t]he moving papers do not allege any ground constituting legal basis for the motion." N.Y.Crim. Proc. Law § 440.30(4)(a). Habeas courts generally consider a state court's reliance on section 440.30(4)(a) to

Case 9:17-cv-01299-MAD-TWD Document 35 Filed 03/03/21 Page 125 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

constitute an adjudication on the merits. *See Ortiz v. Keohane,* No. CV-94-0124, 1995 WL 669904, at *4 n. 5 (E.D.N.Y. Nov. 5, 1995) (asserting that section 440.30(4)(a) in fact provides that a trial court may deny a motion to vacate "upon considering the merits"); *Muhammad v. Kirk,* No. 90 Civ. 1667, 1993 WL 37502, at *4 (S.D.N.Y. Feb. 8, 1993) (same).

**\*21** While Garner's prosecutorial misconduct claim arguably is procedurally defaulted, given the diverging views regarding which standard a federal habeas court should apply when a state court ruling relies on CPL § 440.10(2)(a) and in light of the ambiguity inherent in the state court's holding on petitioner's second section 440 motion, wherein the court seemed to rely on both procedural and substantive grounds to dismiss petitioner's claims based on false witness testimony, I have opted to conduct a *de novo* review of the county court's decision denying this theory of relief. *See Aparicio,* 269 F.3d at 93; *cf. Soto,* 2004 WL 2501773, at *5 (choosing to decline to "untangle the complicated procedural bar issues" and instead reviewing petitioner's claims on the merits where issues were "easily resolvable").

1. *Perjured Testimony*

"The Supreme Court analyzes claims for wrongful conviction based on perjured testimony under the Due Process Clause of the Fourteenth Amendment." *Drake v. Portuondo,* 321 F.3d 338, 344-45 (2d Cir.2003) (citing *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177 (1959)). A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397 (1976); *United States v. Gallego,* 191 F.3d 156, 161-62 (2d Cir.1999) (citation omitted), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220 (2000), *rev'd on other grounds, Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354 (2004). A prosecutor "has a duty to refrain from eliciting and relying upon testimony known to be perjurious." *United States v. Gaggi,* 811 F.2d 47, 59 (2d Cir.1987), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214 (1987) (citing *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 341-42 (1935) (per curiam)). Like other forms of prosecutorial misconduct, the knowing use of perjured testimony to obtain a conviction violates a defendant's due process right when the misconduct alleged is so severe and is of sufficient significance to infect the trial resulting in the denial of the defendant's right to a fair trial. *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3108-09 (1987); *Blissett v. Lefevre,* 924 F.2d 434, 440 (2d Cir.1991), *cert. denied,* 502 U.S. 852, 112 S.Ct. 158 (1991); *Floyd v. Meachum,* 907 F.2d

347, 353 (2d Cir.1990) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647-48, 94 S.Ct. 1868, 1873-74).

To successfully challenge a conviction based upon the prosecutor's alleged use of perjured testimony, the petitioner has the burden of demonstrating, by a preponderance of evidence, that false testimony was given; in determining whether perjury occurred, a court must "weigh all the evidence of perjury before it." *See Ortega v. Duncan,* 333 F.3d 102, 106-07 (2d Cir.2003); *see also Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397. The mere showing that perjured testimony was presented does not alone mandate habeas relief. *Ortiz v. Woods,* 463 F.Supp.2d 380, 393 (W.D.N.Y.2006); *Vail v. Walker,* No. 96-CV-578, 1999 WL 34818638, at *1 (N.D.N.Y. Aug. 24, 1999). Where the government is unaware of witness perjury at the time of trial, a federal habeas petitioner must establish that the perjured testimony was material, in which case habeas relief is warranted if "the court [is left] with a firm belief that but for the perjured testimony, [he or she] would most likely not have been convicted." *Fama,* 235 F.3d at 816.

**\*22** In circumstances where a petitioner alleges that a witness has recanted his or her testimony, a petitioner must demonstrate that the recantation was reliable and that the elimination of the perjured testimony would probably result in an acquittal or a retrial. *Ortiz,* 463 F.Supp.2d at 395. Recantations are inherently unreliable and are viewed with "utmost suspicion." *Sanders v. Sullivan,* 863 F.2d 218, 225 (1988); *Johnson v. Sanbourin,* No. 03 Civ. 0791, 2005 WL 2663039, at *7 (S.D.N.Y. Oct. 14, 2005). A court must be satisfied that the recantation could not have been discovered sooner with the exercise of due diligence. *Ortiz,* 463 F.Supp. at 395.

2. *Prosecutorial Misconduct Did Not Result Where Alleged Perjured Testimony Would Not Change the Outcome of Petitioner's Conviction*

The evidence in this case, when judged by this standard, establishes that Garner's conviction was not the product of fraud, duress, or misrepresentation on the part of the prosecution. Garner has not established that Scott and Currie committed perjury, much less that the testimony was material and he would not have been convicted but for the alleged falsities.

Garner claims that Currie was pressured to give false testimony against him, although he does not specifically identify the way in which that testimony was false. A careful

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 126 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

review of her statement reveals that according to Currie, she has reconsidered her earlier impression that Garner acted with intent to kill the victim. In Currie's alleged recantation, she claims that the police interviewed her when she was in shock and in the hospital, and that she simply nodded in agreement with the police version of events that Garner acted intentionally when he shot the victim, further stating that the prosecutor threatened her with a conspiracy prosecution if she refused to testify at the preliminary hearing. *See* Currie Statement.

Currie made two statements at issue in this petition-one to police, dated February 25, 1998, *see* Second Amended Petition (Dkt.32) Appendix A-1 ("Police Statement"), and the recantation attached to Garner's second amended petition, dated September 27, 2001 ("Currie Statement"). Currie's accounts of the events that resulted in the shooting recorded in those two statements are virtually identical. In her statement to police, and in her recantation, Currie stated that she was at Garner's apartment on February 25, 1998 and that as she and a friend were leaving, the victim was coming up the stairs toward the apartment. Police Statement at 1; Currie Statement at 1. Currie also stated that the victim kicked in the door to the apartment and grabbed her to try to make her leave with him; Garner then pointed a gun at the victim, and the victim told Garner to "do what he got to do." Police Statement at 1; Currie Statement at 3; *see also* Pre-Sentence Statement at 1-2. In each statement, Currie recounted that the victim had been shot by Garner, and Currie and the victim went into the bathroom, where Currie slammed the door shut and shouted that she was coming out of the bathroom before opening the door again. Police Statement at 1; Currie Statement at 3. Currie explained in each statement that she walked the victim down the stairs, where a second confrontation with Garner ensued. Police Statement at 1; Currie Statement at 4.

 **\*23**  It is true that Currie's statements differ with regard to exactly how the victim was shot and how many shots were fired, both in the apartment and at the bottom of the stairs of the building. In her statement to police, Currie stated Garner shot the victim in the stomach while they were in the apartment, and in the recantation, Currie claims Garner fired the gun in the air and the victim was shot. Police Statement at 1-2; Currie Statement at 3-4. Currie told police that, when they reached the bottom of the stairs, Garner pointed the gun at her and the victim, that Garner's cousin pushed her out of the way so Garner had a shot at the victim, and Garner fired two more times. Police Statement at 1. In the recantation, Currie described a struggle taking place during which the

victim rushed Garner, and the gun went off again. Currie Statement at 4. In each account, Currie noted that her arm was cut in the process. Police Statement at 2; Currie Statement at 4.

Currie's two statements are fully consistent in noting an ongoing dispute between Garner and the victim, centering around her. The chief, material difference between the two statements is that Currie told police Garner's actions were intentional, describing how Garner tried to lure the victim to the apartment, and stated that Garner asked if she would tell on him if he killed the victim, while in the recantation, Currie portrayed Garner as her protector who was simply trying to prevent the victim from assaulting her and that while fulfilling that role, the victim was shot and killed-a version Garner advanced during his guilty plea and at sentencing. *See* Police Statement at 1-2; Currie Statement 1-5; Plea Tr. at 14-17; Sentencing Tr. at 17-32.

I also note that Garner likely was aware of Currie's apparent change of heart regarding her impression of his intent because she also expressed that sentiment in a statement she wrote in support of Garner's pre-sentence memorandum. Record, Pre-Sentencing Memorandum at 92-95. Under these circumstances, I view Currie's alleged recantation of her impression that Garner acted intentionally with extreme skepticism, and in any event remain unconvinced, particularly in light of the pre-sentence memorandum statement, that it could not have been discovered sooner by the petitioner.

In any event, Garner did not plead guilty to intentionally killing the victim. Instead, he pleaded guilty to first degree manslaughter, admitting that he shot the victim with intent to cause serious physical injury. Plea Tr. at 17-19. Garner himself advanced the argument that he was simply trying to protect Currie and had no intent to kill-an argument surely considered by the prosecutor when recommending an agreement allowing Garner to plead to first degree manslaughter. Thus, even if Currie's statement to police contained a false impression regarding Garner's state of mind, that impression did not result in a conviction for murder. And, given the consistency in the accounts advanced by Currie in her multiple statements, the outcome would not have been altered even absent Currie's initial impressions.

 **\*24**  The same is true of Garner's claim regarding the alleged recantation by Scott. Garner has presented some evidence, in the form of Scott's plea and sentencing minutes, that Scott testified against him in the grand jury and at a pretrial hearing,

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

and that she also gave a statement to police. Garner does not, however, attach a copy of Scott's original statement to police or any of the testimony given by Scott, making it all but impossible to draw a comparison between the initial statements/testimony and the alleged recantation. Scott alleges in her recantation that she did not take a gun from Garner and that she did not "see anything that happened with that situation on February 25, 1998." *See* Second Amended Petition (Dkt. No. 32) Appendix C. It is reasonable to deduce that Scott previously told police, and testified, that Garner handed her the gun and that she witnessed at least part of the incident. [10]

[10]  In Currie's statement to police, she claimed that Garner handed the gun to "one of the black girls from the downstairs apartment," that he took the gun back and pointed it at her and the victim. Police Statement at 1. In her statement, however, Currie does not identify Scott by name. *Id.*

Upon careful *de novo* review, I find that Scott's recantation does not impact upon the constitutionality of Garner's conviction. Even if Scott had initially told police that she did not see anything and that Garner did not give her the gun, as asserted in her recanted statement, the outcome resulting in petitioner's conviction would not have changed. Garner admitted not only to possessing the gun, but to using it to shoot the victim, and Currie's essentially consistent eyewitness account of the events surrounding the shooting supported Garner's allocution. Garner's claim of prosecutorial misconduct should therefore be denied.

### G. *Brady/Giglio* Claim

In the final ground raised in his petition, Garner claims that the prosecution entered into a cooperation agreement with Scott but failed to disclose it to him or to his counsel. *See* Second Amended Petition (Dkt. No. 32) Affidavit at 3. According to the petitioner, Scott now claims she only agreed to testify against him because she was threatened by the prosecution that she would be sentenced to twenty-five years to life if she did not subscribe to the prosecution's false version of the relevant events. *Id.* Garner claims that the prosecution's failure to disclose the agreement, and the failure to disclose Scott's alleged perjury, prevented him from advancing a justification defense. *Id.* at 4. Finally, despite Scott's new assertion that she did not even witness the shooting, Garner claims that the prosecution acted to discourage Scott from testifying in his defense. *Id.* at 7-8.

This claim was raised by Garner in his second section 440 motion, following the stay of this proceeding in order to permit him to exhaust the claim in state court. *See* CPL Motion 2. In that application, Garner alleged that the prosecutor entered into a plea agreement with Scott, who was arrested the same day the victim was shot, after police found her in possession of cocaine weighing more than half an ounce. CPL Motion 2, Exh. J. Scott was subsequently charged with two counts of criminal possession of a controlled substance in the third degree, a class B felony. *Id.* According to the minutes of the court proceeding at which she entered her plea, Scott faced a maximum sentence of eight and one third to twenty-five years in prison if convicted, but was promised no worse than one to three years in prison and a youthful offender adjudication if she continued to cooperate and to tell the truth in an unrelated case. *Id.* at 2-3. Although the plea minutes do not specifically reference Garner's case, the prosecutor noted on the record that "the trial of which [Scott's] cooperating has been scheduled by this Court for September 14"-the same day that Garner's trial was scheduled to begin. *Id.* at 16; *see also* Plea Tr. at 5.

**\*25**  Scott was sentenced on September 30, 1998. At her sentencing, the prosecutor informed the court that Scott had cooperated in a "homicide case" by "giving a statement, testifying before the grand jury, testifying at a hearing." CPL Motion 2, Exh. K at 2. The court adjudicated Scott a youthful offender, and sentenced her to serve one year in the county jail. *Id.* at 4.

In its decision denying relief under CPL § 440.10, the county court did not specifically address Garner's *Brady/ Giglio* claim. As was previously discussed, the county court reiterated that Garner's claim with regard to the alleged false testimony of two witnesses "has been previously determined by the Court, or the arguments relate to claims that are on the record and the defendant failed to raise them on appeal, or the arguments could, with due diligence, have been placed on the record for appellate review" and ruled that the claims were procedurally barred under CPL §§ 440.10(2)(a) and 440.10(3) (b). *See* July, 2005 Decision at 2.

A careful review of Garner's direct appeal and first CPL 440 motion, however, shows that the specific claim that the prosecutor withheld information about a cooperation agreement with Scott in violation of *Brady/Giglio* was not raised in either forum, a fact which prompted this court to allow Garner the option to exhaust the claim in a second CPL 440 motion. While the state court also denied Garner's

Case 9:17-cv-01299-MAD-TWD Document 35 Filed 03/03/21 Page 128 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

second motion to vacate in its entirety based upon CPL § 440.30(4)(a), which permits a state court to deny a motion where, after considering the merits of the claim, the moving papers do not allege a legal ground for the motion, the July, 2005 Decision fails to mention the *Brady/Giglio* claim, and, thus, there is no state court finding that I can say with certainty represents an adjudication of the *Brady/Giglio* claim on the merits. Accordingly, in light of the ambiguity inherent in the county court's decision, I will review *"de novo* the state court disposition of the petitioner's federal constitutional claims." *Aparicio,* 269 F.3d at 93.

A petitioner may be entitled to federal habeas relief if he or she shows that the government violated the right to due process by failing to turn over "material exculpatory evidence" before trial. *Giglio v. United States,* 405 U.S. 150, 153-54, 92 S. Ct 763 (1972); *Brady v. Maryland,* 373 U.S. 83, 86-87, 83 S.Ct. 1194, 1196 (1963); *see generally Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936 (1999). Under *Brady* and its progeny, prosecutors must disclose information that is favorable to the defense, either because it is exculpatory (relating to the factual innocence of the defendant) or because it serves to impeach the government's witnesses. *Strickler,* 527 U.S. at 280, 119 S.Ct. at 1948; *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380 (1985). Evidence that is favorable because of its impeachment value may be material where the witness supplied the only evidence linking a defendant to the crime at issue, or where the witness supplied the only support for an essential element of the crime. *United States v. Avellino,* 136 F.3d 249, 256-57 (2d Cir.1998). The duty to disclose extends to plea agreements with cooperating witnesses:

> **\*26** When the government enters into an agreement or understanding with one of its key witnesses regarding a pending prosecution ... the prosecutor has two interrelated obligations. First, the prosecutor must disclose the agreement to the defense. Second, the prosecution may not knowingly solicit false trial testimony about the deal or allow false testimony to go uncorrected if it appears.

*Chandras v. McGinnis,* No. 01 Civ. 2519, 2002 WL 31946711, at \*4 (E.D.N.Y. Nov. 13, 2002) (citations omitted); *see also Shabazz v. Artuz,* No. 97 CV 1704, 2002 WL 873319, at \*3 (E.D.N.Y. Apr. 29, 2002), *aff'd,* 336 F.3d 154 (2d Cir.2003); *People v. Sibadan,* 240 A.D.2d 30, 34, 671 N.Y.S.2d 1, 4 (1st Dept.1998) ("The prosecution's duty to disclose *Brady* material applies to evidence affecting the credibility of a government witness, including evidence of any agreement or promises of leniency given to the witness in exchange for favorable testimony against an accused.") (citations omitted), *leave denied,* 92 N.Y.2d 861, 677 N.Y.S.2d 91 (1998); *People v. Arthur,* 175 Misc.2d 742, 767-68, 673 N.Y.S.2d 486, 506 (N.Y.Sup.Ct.1997). A petitioner bears the burden of proving that the prosecution withheld material information. *Harris v. United States,* 9 F.Supp.2d 246, 275 (S .D.N.Y.1998). "Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [the petitioner] to relief." *Id.* (quotations omitted).

Favorable evidence is material, where a defendant enters a guilty plea, if there is a " 'reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but would instead have insisted on going to trial.' " *Avellino,* 136 F.3d at 256 (quoting *Tate v. Wood,* 963 F.2d 20, 24 (2d Cir.1992)). Materiality represents a mixed question of fact and law, and a reviewing court's inquiry focuses on " 'the likely persuasiveness of the withheld information.' " *Id.* (quoting *Tate* ).

When considering *Brady/Giglio* claims in the context of a guilty plea, the United States Supreme Court has drawn a distinction between exculpatory evidence tending to establish that a defendant is factually innocent and impeachment evidence. *See United States v. Ruiz,* 536 U.S. 622, 633, 122 S.Ct. 2450, 2457 (2002); *see also McCann v. Mangialardi,* 337 F.3d 782, 787-88 (7th Cir.2003). While a prosecutor must disclose information that would establish that a defendant was innocent prior to acceptance of a guilty plea, in order to ensure that those factually innocent of crimes do not nonetheless plead guilty, the "Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Ruiz,* 536 U.S. at 631, 633, 122 S.Ct. at 2450, 2457; *see also Phillips v. United States,* No. 02 Civ. 7002, 2003 WL 21878802, at \*1 (S.D.N .Y. Aug. 8, 2003) (quoting *Ruiz* ); *but see Avellino,* 136 F.3d at 255 (noting that the obligation to disclose *Brady* material is pertinent for trial and for the determination of whether to plead guilty); *Tate* 963 F.2d at 24 (same). The Supreme Court has explained that impeachment information is "special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary." Ruiz,* 536 U.S. at 629, 122 S.Ct. at 2455 (emphasis in original).

Case 9:17-cv-01299-MAD-TWD    Document 35    Filed 03/03/21    Page 129 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...

2007 WL 2846907

**\*27** In so ruling, the Supreme Court has noted two central considerations. The first consideration revolves around the difficulty in determining how useful the impeachment material would be, particularly in light of a defendant's own knowledge of the case against him. *Id.* at 630, 122 S.Ct. at 2456. Second, the Court has observed that the recognition of a constitutional obligation to provide impeachment material during plea bargaining could "seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 631, 122 S.Ct. at 2456. Finally, the Court noted that "the Constitution ... does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver for various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.* at 630.

In this instance, Garner does not claim that the prosecution had, but withheld from him, evidence that he was factually innocent of the crime of conviction. Garner's claim is based instead upon evidence that the prosecutor entered into a cooperation agreement with Scott in exchange for her testimony against Garner. Significantly, Garner has not presented any evidence, aside from his bald assertion, that the prosecutor failed to advise him and defense counsel of the cooperation agreement. Thus, Garner has not established that this information was suppressed by the prosecutor. *See Brady,* 373 U.S. at 83, 83 S.Ct. 1194; *Harris,* 9 F.Supp.2d at 275.

Moreover, the allegedly-suppressed information is relevant to Scott's credibility, and thus would qualify as impeachment material which must be disclosed prior to *trial.* Garner retained no constitutional right to the disclosure of the cooperation agreement with Scott prior to pleading guilt since the agreement represents impeachment material and not evidence of his actual innocence. *See Ruiz,* 536 U.S. at 633, 122 S.Ct. at 2457. Further, Scott was not the only witness against Garner, and her apparent testimony regarding the disposal of the weapon and whether she saw anything the day of the shooting did not supply the only evidence of the necessary elements of the crime of first degree manslaughter. *See Avellino,* 136 F.3d at 256-57. As was previously noted, Currie was an eyewitness to the incident. Despite her "recantation," Currie's statements support Garner's allocution and ultimate guilty plea. Whether Scott took the gun from Garner or not, Garner admitted he used it to shoot the victim, with the intent to cause serious physical injury to the victim,

and that gunshot ultimately resulted in the victim's death. *See Mason v. United States,* No. 01-CR-376, 2005 WL 2709283, at *6 (N.D.N.Y. Oct. 20, 2005) ("Given *Ruiz* and *Brady,* [impeachment information regarding a single government witness] has little bearing on whether Petitioner's decision to waive his constitutional right [to a jury trial] was invalid."). I therefore recommend that the petitioner's *Brady/Giglio* claim be denied as lacking in merit.

## IV. *SUMMARY AND RECOMMENDATION*

**\*28** With the assistance of counsel, Garner entered a plea to a reduced charge of first degree manslaughter, acknowledging both the rights being relinquished as a result of the plea and his culpability for the criminal act forming the basis for his conviction. The state courts' determination that there was no indication in the record that Garner's plea was obtained in violation of the New York or United States Constitutions, viewed through the deferential lens superimposed under the AEDPA, is neither contrary to, nor an unreasonable application of clearly established Supreme Court precedent. Counsel negotiated a favorable plea agreement, allowing Garner to escape the threat of a conviction for second degree murder and a much longer prison sentence than that ultimately imposed. Turning to that sentence, since it fell within the ranges authorized by statute, no Eighth Amendment violation is implicated, and there is no support in the record for the claim that the sentencing court abused its discretion. Upon *de novo* review, it is apparent that Garner has failed to establish that his conviction was the product of fraud, duress or misrepresentation by the prosecutor, and further has failed to demonstrate a violation of his due process rights pursuant to *Brady/Giglio.* Finally, Garner's claim that the trial court was biased against him, while unexhausted, should be deemed exhausted and procedurally barred. Having found no constitutional violation associated with Garner's conviction, it is hereby

RECOMMENDED that Garner's petition be DENIED and DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to this report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

Case 9:17-cv-01299-MAD-TWD     Document 35     Filed 03/03/21     Page 130 of 130

Garner v. Superintendent of Upstate Correctional Facility, Not Reported in F.Supp.2d...
2007 WL 2846907

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties electronically.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2846907

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.